IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| VIRGINIA INNOVATION SCIENCES, INC., <br>       Plaintiff, <br>   v. <br> AMAZON.COM, INC., <br>       Defendant. | Civil Action No.4:18-cv-00474-ALM <br><br> JURY TRIAL DEMANDED |
| INNOVATION SCIENCES, LLC, <br>       Plaintiff, <br>   v. <br> RESIDEO TECHNOLOGHIES, INC., <br>       Defendant. | Civil Action No.4:18-cv-00475-ALM <br><br> JURY TRIAL DEMANDED |
| INNOVATION SCIENCES, LLC, <br>       Plaintiff, <br>   v. <br> HTC CORPORATION, <br>       Defendant. | Civil Action No.4:18-cv-00476-ALM <br><br> JURY TRIAL DEMANDED |
| INNOVATION SCIENCES, LLC, <br>       Plaintiff, <br>   v. <br> Vector Security, Inc., <br>       Defendant. | Civil Action No.4:18-cv-00477-ALM <br><br> JURY TRIAL DEMANDED |

**Motion for Protective Order**

**Table of Contents**

INTRODUCTION ............................................................................................................................. 1

ARGUMENTS .................................................................................................................................. 2

    I.    The Eastern District Recognizes that Claim Charts Based on
        Public Information can be Confidential ............................................................................... 2

    II.   The Competitively Valuable Information in Innovation's
        Claim Charts Fall within the Definition of "Confidential Information"
        Provided in the Protective Order ......................................................................................... 3

        1.    IS's Technical Analysis is Confidential Proprietary
              and Business Information and/or Trade Secrets." ................................................... 3

        2.    Public Disclosure of Innovation's Technical Analysis
              Would Undeniably Damage Innovation and place it
              at a Competitive Disadvantage ................................................................................ 5

        3.    Defendants Admit Innovation's Technical Analysis does
              not Meet the Exclusions Provided in the Protective Order ...................................... 6

        4.    There is No Prejudice to Defendants by Maintaining
              Innovation's Technical Analysis as Confidential. ................................................... 6

    III.  Defendants' Other Arguments in the Meet and Confer are Unavailing ............................. 7

        1.    Defendants' Request for Infringement Contention as
              to Other Parties is Irrelevant and, also, Harms Innovation ..................................... 7

        2.    Any Perceived Public Benefit does not Outweigh Harm
              to Innovation ............................................................................................................ 8

        3.    The Fractus Cases is Distinguishable. ..................................................................... 9

    IV.  Defendants apply a double-standard to confidential information ....................................... 9

CONCLUSION ............................................................................................................................... 10

Pursuant to the provision of the common Protective Order ("PO")[1] and certifications provided by Defendants Amazon, HTC and Resideo and Vector[2] in the four actions referenced in the caption ("Innovation")[3] files this common Motion for Protective Order in each of the four actions to preserve the confidentiality of the technical analysis in its claim charts.

## INTRODUCTION

Innovation is a technology development company that both practices and licenses its technology. Just like other technology companies, Innovation maintains a competitive edge by choosing to keep certain competitive analysis confidential. The value of such information is specifically tied to the fact that such analysis remains confidential. No one would expect Amazon, HTC, Resideo, or Vector to publicly disclose their confidential competitive analysis. And, they should not force Innovation to do so either.

More specifically, Innovation's claim charts, which contain competitively valuable technical analysis, should remain confidential because (1) the Court has entered a Protective Order that expressly defines what information may be designated as "Confidential Information," (2) Innovation's claim charts fall within this definition and not within any of the enumerated exceptions, (3) the removal of the confidentiality would not only damage Innovation, but would also place Innovation at a competitive disadvantage, and (4) this District has specifically recognized claim charts can be designated as confidential in circumstances such as these.

Innovation has also accommodated reasonable requests by Defendants for expanded access to the confidential information. For example, in addition to the individuals enumerated in the protective order, Innovation has agreed that Defendants can share the confidential claim charts with officers, directors, and employees that have a need to know the contents along with third-

---

[1] The same protective order was entered in each action, which is contained for example as Dkt. 10 in the -474 Action.
[2] Defendants refers to Amazon.Com, Inc. ("Amazon"), Resideo Technologies, Inc. ("Resideo"), HTC Corporation ("HTC"), and Vector Security, Inc. ("Vector") in Case Nos. 4:18-cv-0474, -0475, -0476, -0477
[3] Virginia Innovation Sciences, Inc. is the currently named plaintiff in the '-474 action. An opposed motion to substitute Innovation Sciences, LLC as plaintiff is currently pending. *See* Dkt. No. 22.

party suppliers – provided such suppliers are identified and agree to be bound by the protective order.

In seeking to make public Innovation's confidential information, Defendants have identified no relevant need for this case or corresponding prejudice. Rather, Defendants have argued they want to keep open the possibility of using and publicizing Innovation's confidential information as they wish down the road. Such a generic request does not outweigh the detrimental harm to Innovation.

Defendant's approach is also a double-standard. While seeking to publicize Innovation's confidential information, they simultaneously routinely seal venue facts, invalidity analysis, and strategic positions made in litigation, such as, indemnity positions.

## ARGUMENTS

### I. The Eastern District Recognizes that Claim Charts Based on Public Information can be Confidential

The Federal Rules allow the Court to protect a party's "confidential research, development, or commercial information." See, e.g. Fed. R. Civ. Pro. 26(c)(1)(G). Consistently, the Eastern District of Texas allows claim charts to be designated as confidential. *See ExitExchange Corp. v. Casale Media Inc., et al.,* Case No. 2:10-cv-297 (E.D. Tex) (Dkt. 223) (May 20, 2011)). ("[T]he Court will allow, generally, documents such as claim charts to be deemed confidential.").

The *ExitExchange* case dealt with the confidentiality of claim charts twice. First, Judge Ward resolved a dispute as to whether claim charts could be "excluded categories" from the protective order. More particularly, in addition to standard categories such as "advertising materials" and "documents or information that the disclosing party has submitted to any governmental entity without request for confidential treatment," the accused infringers sought to exclude "Rule 3-1 disclosures [or claim charts]." *ExitExchange* at Dkt. No. 208-1 (May 12, 2011). Judge Ward rejected the accused infringers' argument, reasoning that "documents such as claim charts may contain information that is confidential technical or business information that is not

2

generally known, that would not normally be revealed to third parties, and for which its disclosure would be detrimental to the party's business." *ExitExchange* at Dkt. 223 (May 20, 2011).

In the same *ExitExchange* case, the Defendants later sought to remove the confidentiality designation of the infringement contentions arguing "[the] claim charts merely apply the claims of the patent to internet screen captures, publicly available code, and links to internet web sites." Dkt. No. 229 (May 31, 2011) at 6 (quoting Defendants' motion filed under seal). Judge Gilstrap denied such relief "in all respects," finding the infringement contentions contained "information not generally known," "information not normally revealed to third parties," and "information detrimental to the conduct of the party's business." *ExitExchange* at Dkt. No. 330 (March 23, 2012). As a result of the *ExitExchange* case, parties in this District label infringement contentions as "Confidential" when they contain competitively valuable information as here.

## II. The Competitively Valuable Information in Innovation's Claim Charts Fall within the Definition of "Confidential Information" Provided in the Protective Order

### 1. IS's Technical Analysis is Confidential Proprietary and Business Information and/or Trade Secrets."

The Protective Order describes "Confidential Information" as "confidential proprietary, and business information and/or trade secrets" as well as information that – by its nature – is "confidential, proprietary, and/or [a] trade secret." Dkt. 10 at 7, ¶¶1, 3.

Innovation's claim charts meet such definition because they contain a valuable technical analysis of Defendant' products – an analysis accumulated through hundreds of hours of research to discern Defendants' respective operation. Innovation considers and treats the information provide in the claim charts as competitive business information. Innovation has never disclosed such competitive business information to any party – other than to the respective Defendants as required by the local rules. This information is competitively sensitive in nature and has value by the specific virtue of its non-disclosure. Innovation has (and wishes to maintain) a competitive advantage through non-disclosure of this analysis. This type of information is no different than the competitive analysis that Amazon, HTC, Resideo or Vector might conduct of its own competitors.

In the meet and confer processes, Defendants alleged that the claim charts couldn't be confidential because portions are "based on public information." This argument fails and misses the point. The technical analysis and corresponding accumulation from different resources is the confidential information – not the underlying building blocks. For example, a business's confidential customer list or supplier list may be comprised entirely of the names of companies that are well-known to the general public. This does not make the list non-confidential. Here, the technical analysis and corresponding accumulation from different resources yield a valuable product that is more than just the building blocks on which it is based. Innovation wishes to maintain that value.

Defendants' *specific* argument was also rejected in *ExitExchange*. More specifically, the infringing parties argued that the charts were not confidential because they "merely apply the claims of the patent to internet screen captures, publicly available code, and links to internet web sites." *ExitExchange* at Dkt. No. 229 (May 31, 2011) at 6 (quoting Defendants' motion filed under seal). As referenced *supra*, Judge Gilstrap rejected such an argument and denied the motion "in all respects." *ExitExchange* at Dkt. No. 330 (March 23, 2012).

In the meet and confer process, Defendants further alleged that Innovation doesn't treat its claim charts as confidential. Not true. There is no evidence that the competitive analysis Innovation provided Defendants under a confidentiality designation has ever been public or that Innovation would ever desire to share such information with the public. The sole example one of the Defendants provided in the meet and confer process was a different case with different patents in the context of a motion to compel. However, the treatment of such information in that case shouldn't forever govern all future information. Parties such as Amazon readily understand a distinction with its own source code. While Amazon chooses to publish certain of its source code

as open source on the Internet,[4] Amazon also safeguards other of its source code with extremely heightened levels of protection.[5]

### 2. Public Disclosure of Innovation's Technical Analysis Would Undeniably Damage Innovation and place it at a Competitive Disadvantage

The protective order explains that one of the reasons information can be protected as confidential is because it avoids either (1) "damage" to a party or (2) placing a party at a "competitive disadvantage." PO at 7, ¶2. Both such scenarios exist with Innovation's technical analysis. Defendants did not readily dispute such harm in the meet and confers.

The value of the Innovation's competitive technical analysis is specifically tied to its confidential nature. Absent a confidential status, Innovation's competitors can freely use such confidential information as a blue-print to competitively map their own products and/or patents onto Defendant's technology. When more patents cover a particular product, each patent loses value relative to the value it would have had if fewer patents covered that product. Thus, Innovation's patents may be devalued if other companies' patents can be mapped onto Defendants' products using Innovation's analysis as a resource. Also, Innovation's particular analysis of a Defendant's product provides insight into how Innovation evaluates competitor's products. Public disclosure of such information places Innovation at a competitive disadvantage by providing road map as to as to the specific things Innovation considers in its analysis. With such a roadmap, Innovations' competitors can design around Innovation's patent and/or conceal certain operations.

Also, with the public dissemination of Innovation's confidential information, third parties can damage Innovation by filing declaratory judgment actions and filing administrative IPR proceedings based on perceived otherwise non-public threats from Innovation.

---

[4] Pursuant to Rule of Evidence 201, the Court may take judicial notice. See https://aws.amazon.com/opensource/ and http://amzn.github.io/
[5] *See In Re: PersonalWeb Technologies, LLC et al.* Case No. 5:18-md-02834 (N.D. Cal) (Dkt. 314) (Nov. 28, 2018) (in seeking to seal information, arguing "Disclosure of Amazon's proprietary S3 source code will reveal key information about the operation of the service and would put Amazon at a competitive disadvantage with respect to competitors and competing services.").

These are the very types of harm articulated in the *ExitExchange* case. *See ExitExchange* at Dkt. 229 (May 31, 2011) (discussing access by competitors, declaratory judgment, and administrative proceeding).

3.  **Defendants Admit Innovation's Technical Analysis does not Meet the Exclusions Provided in the Protective Order**

Just like the protective order in *ExitExchange,* the protective order in these cases specifies that confidential information "shall not include (a) advertising materials, (b) materials that on their face show that they have been published to the general public, or (c) documents that have submitted to any governmental entity without request for confidential treatment." In the meet and confers, Defendants admitted that these exclusions do not apply.

4.  **There is No Prejudice to Defendants by Maintaining Innovation's Technical Analysis as Confidential.**

In the meet and confers, Defendants were unable to identify any relevant need or corresponding prejudice that would result from maintaining Innovation's information as confidential. This is because Innovation has already agreed that Defendants can share the contentions with the officers, directors, and employees that have a need to know the contents of the contentions – in addition to those allowed to view under the protective order ("outside counsel of record" and "[e]mployees of such counsel . . . assigned to and necessary to assist such counsel in the preparation and trial of this action"). Innovation has also agreed that Defendants can also share Innovation's confidential with third-party suppliers provided they identify them and have such suppliers agree to be bound by the protective order.

To the extent there are other categories of individuals (e.g., experts) that need to review confidential information in the case, the parties are free to discuss and amend the protective order.

Instead of identifying a specific relevant need, Defendants informed Innovation that they didn't know what uses they might want to make of the Innovation 'confidential information. Rather, that they wanted to keep open the possibility of using Innovation's confidential information as they wished down the road. This argument fails. Defendants' desire to freely use confidention information is no reason to allow undeniably harm to Innovation's business.

### III. Defendants' Other Arguments in the Meet and Confer are Unavailing

#### 1. Defendants' Request for Infringement Contention as to Other Parties is Irrelevant and, also, Harms Innovation

Defendants argued that Innovation should be required to produce infringement contentions from other cases and/or they should be allowed to share contentions with one another. Such requests should be rejected.

Contentions as to other parties – even as to parties concerning the same patent are irrelevant. *See Tivo v. Verizon Communications, Inc. et al.*, Case No. (E.D. Tex. Aug. 1, 2011) and *Zenith Lab., Inc. v. Bristol-Myers Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994). And, even if there is no harm (which there is), discovery requests must be specifically be tied to relevance – a threshold inquiry. An alleged lack of harm does not trump relevance.

Also, to the extent Defendants argue that they need Innovation's infringement contentions from other cases to assist them in a coordinated invalidity contention effort,[6] such an argument should likewise be rejected. Just like a plaintiff doesn't have access to invalidity contentions in order to prepare its infringement contentions, a defendant cannot credibly argue that they need infringement contentions to prepare their invalidity contentions. Defendants in this case have had no problem preparing invalidity as part of a joint defense group – despite lacking access to *confidential* infringement contentions from other parties. As a non-limiting example, the plaintiff's infringement contentions in the consolidated action of *Uniloc USA, Inc. et al v. Amazon.com, Inc. et al*, Case No. 2-16-cv-00570 (E.D. Tex) were labeled as confidential. Yet, Amazon was able to coordinate with its co-defendants and serve invalidity contentions. *Id.* at Dkt. 91 (Jan. 13, 2017). Moreover, this exact same argument was presented and rejected in *ExitExchange*. *ExitExchange* at Dkt. No. 229 (May 31, 2011) at 6 (characterizing motion filed under seal arguing need for invalidity contentions).

Finally, as recognized by Defendants in other cases, the disclosure of this information

---

[6] This issue did not rise in the meet and confers, but subsequent emails suggested Defendants were developing new arguments as to a potential need.

7

competitively damages Innovation's ability to license its technology.[7] No doubt, parties would delve into compare/contrast scenarios inquiring into why certain or different analysis may or may not have been done for certain technologies, but not others. Such desired use has no bearing on relevance and only harms Innovation's ability to effectively license its technology.

### 2. Any Perceived Public Benefit does not Outweigh Harm to Innovation

In the meet and confers, Defendants also argued that the public should have the right to view Innovation's technical analysis. This argument also fails.

First, while the world at large can always benefit in the short run when confidential information is disclosed, such a benefit comes at the cost of the party who held such confidential information – here, Innovation. The world would also benefit from Amazon, HTC, Resideo, and Vector also disclosing their trade secrets and confidential source code, but such disclosure would respectively harm them.

Second, such disclosure to the world would have no relevance to the case at hand. The purpose of a claim charts is to provide a party notice.[8] The charts have done that. To the extent Defendants argues that they are relevant for claim construction or an invalidity analysis, this is incorrect. As repeatedly held by the Federal Circuit, claims are construed *without regards to the accused instrumentality*.[9] To the extent the world has a desire to understand how a claim is interpreted, the intrinsic evidence provides such an understanding. And, the world will understand the parties' further interpretation in yet-to-be filed *Markman* briefs.

---

[7] As discussed *infra*, Amazon has sought to limit disclosure of indemnification information because it would "reveal information about its litigation-related negotiations with third parties, and disadvantage Amazon in future indemnity negotiations."

[8] *See* e.g., *Mobile Telecomm. Techs. v. Sprint Nextel et al.*, No. 2:12-cv-00832 (E.D. Tex. April 25, 2014).

[9] *See* e.g., *Jurgens v. McKasy*, 727 F.2d 1552, 1560, 18 U.S.P.Q.2d 1031, 1037 (Fed. Cir. 1991) ("claim is construed without regard to the accused product"); *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991) ("In 'claim construction' the words of the claims are construed independent of the accused product, in light of the specification, the prosecution history, and the prior art."); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324, 92 U.S.P.Q.2d 1340 (Fed. Cir. 2009) ("Claims are properly construed without the objective of capturing or excluding the accused device."); and *SRI Intern. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1118(Fed. Cir. 1985) (en banc) (emphasis in original) ("A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device.").

### 3. The Fractus Cases is Distinguishable.

In the various meet and confers, Defendants could only cite a single case to support their argument: *Fractus S.A. vs. Samsung Co.,* Case No. 6:09-cv-203 (E.D. Tex. June 7, 2010). However, the facts in *Fractus* are clearly distinguishable. In *Fractus*, the parties <u>agreed</u> to a Protective Order that specifically excluded claim charts as an enumerated exception. Here, as admitted by Defendants, the claim charts are not amongst the enumerated exceptions. The *ExitExchange* case rejected the *Fractus* argument for the same reasons. *ExitExchange* at Dkt. 223 (May 20, 2011) (holding that *Fractus* is not controlling because it was "*based on the previously entered protective order*.") (emphasis in original))

## IV. Defendants apply a double-standard to confidential information

While challenging Innovation's designation of confidential information, Defendants themselves have sealed information in their various litigations – including, sealing interrogatory answers, as well as the following:

- <u>Venue facts - Amazon</u>: *Kaavo Inc. v. Amazon.com, Inc. et al,* Case No. 1-14-cv-0035 (D. Del.) (Dkt. Nos. 17, 18, and 19) (Sept. 13, 2014); and *Eolas v. Amazon Eolas Technologies Incorporated v. Amazon.com, Inc.,* Case No. 6:15-01038 (E.D. Tex) (Dkt. 20) (Feb. 5, 2016).

- <u>Venue facts – Vector</u>: *Innovation Sciences, LLC v. Vector Security, Inc.,* Case No. 4:18-md-00477 (E.D. Tex.) (Dkt. 18) (Nov. 19, 2018) (as revealed in redacted filing, sealing protected the location of documents, the number of employees, the location where its employees travel, the number of offices and the knowledge of people in such offices, and the knowledge of its employees).

- <u>Venue facts – HTC</u>: *AGIS Software Development LLC v. HTC Corporation*, Case No. 2:17-cv-00514 (E.D. Tex.) (Dkt. 98) (Dec. 27, 2018)

- <u>Venue facts – Resideo</u>: *Innovation Sciences, LLC v. Resideo Technologies, Inc.,* Case No. 4:18-md-00475 (E.D. Tex.) (Dkt. 14) (Oct. 2, 2018) (for corresponding 1404/1406 motion: "The Motion and accompanying Declarations include detailed sensitive business operational information about Honeywell's business sectors that Honeywell considers highly confidential.

9

If made public, others could use this confidential information to gain an unfair competitive advantage knowing how Honeywell structures and supports its resources. ").

- Terms of Amazon's Indemnification of Customers:  *In Re: PersonalWeb Technologies, LLC et al.* Case No. 5:18-md-02834 (N.D. Cal.) (Dkt. 324) (Nov. 28, 2018) (arguing that it would "reveal information about its litigation-related negotiations with third parties, and disadvantage Amazon in future indemnity negotiations.").

- Expert Report Regarding Invalidity: 1:16-cv-00861-LO-MSN, (Dkt. 148) (Sep. 21, 2017) (seeking to seal "Exhibit N: June 2, 2017 Expert Report of Dr. B. Clifford Neuman Regarding Invalidity of U.S. Patent No. RE46,140.")

Innovation's confidential technical analysis is at least as confidential as Defendant's own stated categories.

## CONCLUSION

For the foregoing reasons, Amazon's attempt to publicize Innovation's claim charts by removing the confidentially designations from should be denied.

Date:   March 1, 2019               Respectfully submitted:

*/s/ Ryan S. Loveless*
Donald L. Jackson VA Bar No. 42,882
(Admitted E.D. Tex.)
James D. Berquist VA Bar No. 42,150
(Admitted E.D. Tex.)
Davidson Berquist Jackson & Gowdey LLP
8300 Greensboro Dr., Suite 500
McLean, Virginia  22102
571-765-7700 (p)
571-765-7200 (f)

James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

DATED:  March 1, 2019  /s/ Ryan S. Loveless
Ryan S. Lovelesss

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel of record for Plaintiff have conferred with counsel of record for Defendants.  Defendants are opposed to this motion.

DATED:  March 1, 2019  /s/ Ryan S. Loveless
Ryan S. Loveless