# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| VIRGINIA INNOVATION SCIENCES, INC. <br><br> v. <br><br> AMAZON.COM, INC., et al | Civil Action No. 4:18-cv-474 <br> Judge Mazzant |
| INNOVATION SCIENCES, LLC <br><br> v. <br><br> RESIDEO TECHNOLOGIES, INC. | Civil Action No. 4:18-cv-475 <br> Judge Mazzant |
| INNOVATION SCIENCES, INC. <br><br> v. <br><br> HTC CORPORATION | Civil Action No. 4:18-cv-476 <br> Judge Mazzant |
| INNOVATION SCIENCES, INC. <br><br> v. <br><br> VECTOR SECURITY, INC. | Civil Action No. 4:18-cv-477 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Motion of Defendant Amazon.com, Inc. to Transfer Venue

to the Eastern District of Virginia ("Amazon's Motion to Transfer"), *Virginia Innovation Sciences,*

*Inc. v. Amazon.com, Inc.* ("*Amazon III*"), 4:18-cv-474, (Dkt. #9); Plaintiff's Contested Motion to

Substitute Party ("Motion to Substitute"), *Amazon III*, 4:18-cv-474, (Dkt. #22); Motion to Stay of

Amazon.com, Inc., Amazon Digital Services, LLC, and Amazon Web Services, Inc.[1] Pending Decision on Their Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Motion to Stay"), *Amazon III*, 4:18-cv-474, (Dkt. #105); Honeywell International Inc.'s Motion to Dismiss for Improper Venue Under 28 U.S.C. § 1406, or, in the Alternative, to Transfer to a More Convenient Forum Under 28 U.S.C. § 1404 ("Honeywell's Motion to Dismiss or Transfer"), *Innovation Sciences, LLC v. Resideo Technologies, Inc.* ("*Resideo*"), 4:18-cv-475, (Dkt. #15); Motion of Defendant HTC Corporation to Transfer Venue to the Eastern District of Virginia ("HTC's Motion to Transfer"), *Innovation Sciences, LLC v. HTC Corporation* ("*HTC III*"), 4:18-cv-476, (Dkt. #22); and Motion of Defendant Vector Security, Inc. to Transfer Venue to the Eastern District of Virginia Pursuant to 28 U.S.C. § 1404(a) ("Vector's Motion to Transfer"), *Innovation Sciences, LLC v. Vector Security, Inc.* ("*Vector*"), 4:18-cv-477, (Dkt. #16). Having considered the motions and the relevant pleadings, the Court finds that Amazon's Motion to Transfer, Honeywell's Motion to Dismiss or Transfer, HTC's Motion to Transfer, and Vector's Motion to transfer should be denied, that the Motion to Stay should be denied as moot, and the Motion to Substitute should be granted.

## BACKGROUND

The four above-mentioned patent lawsuits presently before the Court have been consolidated for pretrial purposes. The patent infringement allegations include U.S. Patent No. 9,723,443 ("the '443 Patent") and the '798 Patent Family, including U.S. Patent Nos. 9,942,798 ("the '798 Patent"), 9,912,983 ("the '983 Patent"), and U.S. Patent No. 9,729,918 ("the '918 Patent") (collectively "the patents-in-suit"). Plaintiff asserts the '443 Patent and the '798 Patent Family against Defendant Amazon.com, Inc. ("Amazon"), the '983 Patent against Honeywell

---

[1] On March 22, 2019, Plaintiff filed an Amended Complaint, adding Amazon Digital Services, LLC and Amazon Web Services, Inc. *Amazon III*, 4:18-cv-474, (Dkt. #79).

International, Inc. ("Honeywell"), the '798 Patent Family against HTC Corporation ("HTC"), and the '983 Patent against Vector Security, Inc. ("Vector").[2]

Plaintiff alleges that Amazon infringes the '798 Patent Family with the Amazon Echo, Echo Plus, Echo Show along with Amazon's Alexa Voice Service and associated back-end servers (the "Accused Echo Instrumentalities"), the Amazon Dash Button, Dash Replenishment Service (the "Accused Dash Instrumentalities"), and the Amazon Fire TV and family of devices associated and back-end servers (the "Accused Fire TV Instrumentalities"). *Amazon III*, 4:18-cv-474, (Dkt. #1). Plaintiff alleges Amazon infringes the '443 Patent with Accused Dash Instrumentalities. *Amazon III*, 4:18-cv-474, (Dkt. #1). Plaintiff alleges that Honeywell infringes the '983 Patent with its wireless hub system, which includes the L5200 and L7000 series security systems, the C2 Wi-Fi Security Camera, Honeywell Smart Home Security System, and associated mobile apps (the "Accused Honeywell Instrumentalities"). *Resideo*, 4:18-cv-475, (Dkt. #1). Plaintiff alleges that HTC infringes the '798 Patent Family with a wireless hub system and wireless apparatus, including the HTC U 11 and U 12 smartphones (the "Accused HTC Instrumentalities"). *HTC III*, 4:18-cv-476, (Dkt. #1). Plaintiff alleges Vector infringes the '983 Patent with its wireless hub system, which includes the Vector Security Home Security System, the Vector Security Home Security Video System, the Vector Security Voice Control with Amazon's Echo Dot, and the Vector Security Mobile App (the "Accused Vector Instrumentalities"). *Vector*, 4:18-cv-477, (Dkt. #1).

On October 1, 2018, Amazon filed Amazon's Motion to Transfer Venue. *Amazon III*, 4:18-cv-474, (Dkt. #9). Plaintiff sought five extensions of time to file a response to the motion. *Amazon III*, 4:18-cv-474, (Dkt. #11; Dkt. #13; Dkt. #15; Dkt. #17; Dkt. #20). As they were filed unopposed, the Court granted the motions. *Amazon III*, 4:18-cv-474, (Dkt. #12; Dkt. #14;

---

[2] Amazon, Honeywell, HTC, and Vector will collectively be referred to as Defendants.

Dkt. #16; Dkt. #18; Dkt. #21). On December 4, 2018, Plaintiff filed its response to Amazon's motion to transfer. *Amazon III*, 4:18-cv-474, (Dkt. #24). Amazon filed a reply on December 18, 2018 (Dkt. #28) and Plaintiff filed a sur-reply on December 26, 2018. *Amazon III*, 4:18-cv-474, (Dkt. #30). Further, on May, 10, 2019, Amazon filed its Notice of Supplemental Evidence in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). *Amazon III*, 4:18-cv-474, (Dkt. #113). Plaintiff filed a response to the supplemental evidence on May 15, 2019. *Amazon III*, 4:18-cv-474, (Dkt. #117).

Also, during this time, on November 29, 2018, prior to filing its response to Amazon's Motion to Transfer, Plaintiff filed its Motion to Substitute. *Amazon III*, 4:18-cv-474, (Dkt. #22). Amazon filed a response on December 13, 2018. *Amazon III*, 4:18-cv-474, (Dkt. #25). On December 20, 2018, Plaintiff filed a reply to the motion. *Amazon III*, 4:18-cv-474, (Dkt. #29). No sur-reply was filed.

On October 2, 2018, Honeywell filed Honeywell's Motion to Dismiss or Transfer. *Resideo*, 4:18-cv-475, (Dkt. #15). Plaintiff sought four extensions of time to file a response. *Resideo*, 4:18-cv-475, (Dkt. #20; Dkt. #22; Dkt. #24; Dkt. #27). As they were filed unopposed, the Court granted the motions. *Resideo*, 4:18-cv-475, (Dkt. #21; Dkt. #23; Dkt. #25; Dkt. #28). Plaintiff filed its response on December 4, 2018. *Resideo*, 4:18-cv-475, (Dkt. #31). On December 7, 2018, Honeywell field a supplemental brief in support of the motion. *Resideo*, 4:18-cv-475, (Dkt. #35). Plaintiff filed a response to the supplemental brief on December 14, 2018. *Resideo*, 4:18-cv-475, (Dkt. #38). Additionally, on December 18, 2018, Honeywell filed its reply to the motion. *Resideo*, 4:18-cv-475, (Dkt. #43). Finally, Plaintiff filed its sur-reply on December 26, 2018. *Resideo*, 4:18-cv-475, (Dkt. #46).[3]

---

[3] The parties in this case also filed redacted copies of the motion, response, and reply. However, as the initial briefing is filed under seal, the Court references the initial briefing.

On December 27, 2018, HTC filed HTC's Motion to Transfer. *HTC III*, 4:18-cv-476, (Dkt. #22). On January 11, 2019, Plaintiff filed its response. *HTC III*, 4:18-cv-476, (Dkt. #30). Then, HTC filed its reply on January 18, 2019. *HTC III*, 4:18-cv-476, (Dkt. #32). Finally, on January 28, 2019, Plaintiff filed a sur-reply. *HTC III*, 4:18-cv-476, (Dkt. #34).

On November 15, 2018, Vector filed Vector's Motion to Transfer. *Vector*, 4:18-cv-477, (Dkt. #16). Plaintiff filed its response on November 29, 2018. *Vector*, 4:18-cv-477, (Dkt. #21). Vector filed its reply on December 7, 2018, and Plaintiff filed its sur-reply on December 17, 2018. *Vector*, 4:18-cv-477, (Dkt. #27; Dkt. #30).

On April 29, 2019, Amazon filed its Motion to Stay pending the resolution of the motion to transfer venue. *Amazon III*, 4:18-cv-474, (Dkt. #105). Vector, HTC, and Honeywell joined in the motion. *Amazon III*, 4:18-cv-474, (Dkt. #106; Dkt. #107; Dkt. #110). On May 13, 2019, Plaintiff filed a response to the motion. *Amazon III*, 4:18-cv-474, (Dkt. #115). On May 14, 2019, Defendants filed their Joint Notice of Ripeness Regarding Motion to Stay Pending Decision on Motions to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). *Amazon III*, 4:18-cv-474, (Dkt. #116).

On July 2, 2019, Defendants filed their Joint Notice of Ripeness Regarding Pending Motions. *Amazon III*, 4:18-cv-474, (Dkt. #149). Further, on July 3, 2019, Amazon filed its Notice of Relevant Federal Circuit Determination in Support of Motions to Transfer Venue Pursuant to 28 U.S.C. § 1404(a). *Amazon III*, 4:18-cv-474, (Dkt. #156). On July 8, 2019, Plaintiff filed a response to the notice. *Amazon III*, 4:18-cv-474, (Dkt. #159). On July 12, 2019, Plaintiff filed a supplemental response to the notice. *Amazon III*, 4:18-cv-474, (Dkt. #160).

# ANALYSIS

## I.      Motion to Substitute

Plaintiff seeks to substitute Innovation Sciences, LLC ("Innovation") for Virginia Innovation Sciences, Inc. ("VIS") as plaintiff in this case because VIS merged into Innovation. VIS was terminated and all issued and outstanding stock of VIS was converted into limited liability company membership interests in Innovation. Plaintiff maintains that VIS no longer exists, and holds no right, title, or interest in the patents-in-suit. Innovation now holds all rights, title, and interest in the patents-in-suit. Therefore, according to Plaintiff, Innovation is the proper plaintiff in this case. Amazon[4] contests the Motion to Substitute, arguing that the merger is a sham to manipulate venue. However, the Court finds these arguments more appropriate for a discussion on the motions to transfer venue, as opposed to the Motion to Substitute.[5] Instead, the Court focuses on the law surrounding party substitution.

Federal Rule of Civil Procedure 25(c) dictates that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee

---

[4] A motion to substitute was filed in all of the consolidated cases. Honeywell, HTC, and Vector no longer oppose the motions to substitute in their respective cases. Amazon is the only remaining defendant who contests the substitution.

[5] Amazon attempts to support its position that this is a reason to deny a motion to substitute party with three cases, which fall short. First, Amazon cites *Advanced Marketing Group, Inc. v. Business Payment Systems, LLC* arguing that the Southern District of New York denied a motion to substitute when there was a question about whether an asset transfer was a sham. 269 F.R.D. 355, 359 (S.D.N.Y. 2010). However, upon the Court's review, and as argued by Plaintiff, there was the additional fact in that case that the defendant had transferred its assets to a third party, allowing the third party to assert the defendant's counterclaims in the suit, but providing immunity for any of defendant's liability. *Id.* at 357–58. The court focused on the fact that substituting the party would complicate what was currently a simple case. *Id.* The complications included the question of whether the transfer agreement was a sham, but it was not singularly dispositive. Next, Amazon relies on *Virtue Global Holdings, Limited v. Rearden LLC* for the proposition that a court should not grant a motion to substitute when the motion is based on false representations. No. 15-cv-797-JST, 2016 WL 4259213, at *5 (N.D. Cal. Aug. 11, 2016). However, in *Virtue Global*, the court granted a stipulated motion to substitute party based on representations that the substituted party would participate in the litigation. Subsequently, that turned out to be false and the court withdrew the substitution. *Id.* There is nothing similar in the present case. Finally, Amazon maintains that *Ultimax Cement Manufacturing Corporation v. CTS Manufacturing Corporation* supports its position that the Court should not grant a motion to substitute when it does not promote clarity and judicial economy. No. SA CV 02-578, 2010 WL 11484178, at *3 (C.D. Cal. July 23, 2010). While the Central District of California found the facts of that case would not promote clarity and judicial economy, they are dissimilar from the facts presented here. *Id.* In that case, the original party had potential liability in the case that would not be bound to the successor-in-interest. *Id.* Such, is not the case here.

to be substituted in the action or joined with the original party." As has previously been identified in the Eastern District of Texas, "[a] 'transfer of interest,' as described in Rule 25(c), includes circumstances where a corporation is the successor to the original corporate party by merger." *IDQ Operating, Inc. v. Aerospace Commc'ns Holding*, 6:15-cv-781, 2016 WL 6877772, at *1 (E.D. Tex. July 5, 2016). This is a permissive rule that is generally left to the Court's discretion. *See id.*

Here, a merger occurred and "the separate existence" of VIS "ceases" to exist. *Rosenbrock v. Deutsche Lufthansa, A.G., Inc.*, No. 6:16-cv-3, 2016 WL 2756589, at *7 (S.D. Tex. May 9, 2016), *report and recommendation adopted by*, 2016 WL 11088850 (S.D. Tex. June 21, 2016) (quoting TEX. BUS. ORG. CODE § 10.008(a)(1)). At that time, "'all liabilities and obligations of [VIS was] allocated to [Innovation] in the manner provided by the plan of merger.'" *Jacob v. BAC Home Loan Servicing, LP*, No. MO-14-cv-36, 2014 WL 11531132, at *2 (W.D. Tex. Aug. 11, 2014) (quoting TEX. BUS. ORG. CODE § 10.008(a)(3)). As there is an active proceeding pending, the litigation may continue as if the merger did not occur or Innovation, the party "'to which the liability, obligation, asset, or right associated with that proceeding is allocated to and vested in under the plan of merger[,] may be substituted in the proceeding.'" *Id.* (quoting TEX. BUS. ORG. CODE § 10.008(a)(5)). The Court finds the latter course of action is appropriate here as Innovation is the real party-in-interest and is the party that has all substantial rights in the patents-in-suit. *See id.*; *IDQ Operating*, 2016 WL 6877772, at *1.

Not only will substitution allow the real party-in-interest to be the plaintiff in this suit, but it also simplifies the case, which is a "primary consideration" in deciding this motion. *Advanced Mktg. Grp.*, 269 F.R.D. at 359 (quotations omitted). Here, the other three defendants in the pending cases, which have been consolidated for pretrial purposes, have agreed to the substitution and

granting the motion as to Amazon will allow the plaintiff to be the same in all four cases. Considering these facts, the Court finds substitution is appropriate. *See Jacob*, 2014 WL 11531132, at *2; *IDQ Operating*, 2016 WL 6877772, at *2; *Advanced Mktg. Grp.*, 269 F.R.D. at 359.

## II.      Motion to Dismiss or Transfer Based on Improper Venue

Honeywell first moves to dismiss or transfer this case arguing that venue is improper in the Eastern District of Texas. Plaintiff maintains that venue is proper in the Eastern District of Texas.

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). It has been held "as a matter of Federal Circuit law that, upon motion by the Defendant challenging venue in a patent case, the Plaintiff bears the burden of establishing proper venue." *In re ZTE (USA), Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:13-cv-459, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the [C]ourt is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco*, 570 F.3d at 238 (quotations omitted). If venue is improper, the Court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

Venue in patent infringement actions is governed by 28 U.S.C. § 1400(b). *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) (holding § 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions"). Under § 1400(b), venue is only proper (1) in

the district in which the defendant resides or (2) in a district "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In *TC Heartland*, the Supreme Court reiterated that, under the first prong, "for purposes of § 1400(b) a domestic corporation 'resides' only in its State of incorporation." 137 S. Ct. at 1517. Under the second prong, a regular and established place of business must be (1) "a physical place in the district," (2) that is "a regular and established place of business," and (3) "it must be the place of the defendant." *In re Cray, Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

In the present case, the parties agree that venue is not proper under the first "residence" prong of § 1400(b). The dispute lies in the second "regular and established place of business" prong. There are four facilities involved in the present dispute, which are located the Eastern District of Texas, specifically in Plano,[6] Richardson, Orange, and Beaumont. Honeywell contends

---

[6] Honeywell challenges that this location cannot support venue because it is not "of the defendant." According to Honeywell, the Plano facility is actually owned by its subsidiary Intermec Technologies Corporation ("Intermec") and that cannot be imputed onto Honeywell for purposes of establishing venue unless Intermec and Honeywell have disregarded corporate separateness. Several district courts have found that in order to impute a subsidiary company's regular and established place of business on a parent corporation, the two "must lack formal corporate separateness, which is a difficult standard to meet." *E.g.*, *Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-293, 2017 WL 5126158-RWS-RSP, at *1 (E.D. Tex. Oct. 31, 2017), *report and recommendation adopted by*, 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017) (holding "a subsidiary's presence in a venue cannot be imputed to a parent unless the corporations disregard their separateness and act as a single enterprise," but also noting that there may be things "in the record to indicate specific or unusual circumstances that justif[y] ignoring the corporate separateness."). Plaintiff makes an intriguing argument that the Federal Circuit's holding in *In re ZTE* should be applied in this case and to related entities in general, as opposed to narrowly applying when dealing with a third-party's facility. In *In re ZTE*, the Federal Circuit explained that "to be complete, the district court must give reasoned consideration to all relevant factors or attributes of the relationship in determining whether those attributes warrant [a third-party partner's facility] being deemed a regular and established place of business of [a defendant]." *In re ZTE*, 890 F.3d at 1015. Based on this, Plaintiff argues the Court should look to the factors laid out in both *In re Cray* and *In re ZTE* to see if Honeywell on its own, as opposed to the subsidiary, meets the factors. The factors established by these two cases are essentially: (1) whether the defendant owns or leases the building or the equipment; (2) whether the defendant holds the business out to be its place with signage, marketing, advertisements, website listings, or telephone listings; (3) the relationship between the defendant and the employees or the defendant and the third-party or subsidiary; (4) whether the physical place was directed by the defendant or whether it can move locations without the permission of the defendant; and (5) any other relevant factors to determine the extent of the relationship. *See id.*; *In re Cray*, 871 F.3d at 1364. The Court notes that Plaintiff presented some evidence that Honeywell meets these factors and also that maybe corporate formalities are not being kept between the two entities (including that, Honeywell seems to control, at least in part, the general policy of the subsidiary and may have an overlapping officer, *Resideo*, 4:18-cv-475, (Dkt. #31 at p. 12); Honeywell has, at least, two signs on or around the Plano Facility, *Resideo*, 4:18-cv-475, (Dkt. #31, Exhibit 30); Honeywell is associated with the Plano facility through google maps, *Resideo*, 4:18-cv-475, (Dkt. #31, Exhibit 30); Honeywell is involved with the employees at the Plano facility as it lists job postings for that location, *Resideo*, 4:18-

that, despite these four locations, venue is not proper in the Eastern District of Texas. As to the Richardson, Orange, and Beaumont facilities, Honeywell does not challenge that these locations are physical locations, of regular and established places of business, or of the defendant, instead admitting that it maintains these addresses.[7] Regardless, Honeywell contends that they cannot serve as a basis for venue because they are not pleaded and are not related to the alleged infringement. The Court addresses both arguments in turn.

First, Honeywell avers that because Plaintiff did not plead the Richardson, Orange, and Beaumont facilities as a basis for venue in its complaint, the Court cannot consider these locations in its analysis. Plaintiff counters that it did not exclusively plead Plano as the basis for proper

<hr />

cv-475, (Dkt. #31, Exhibit 31; Dkt. #31, Exhibit 32; Dkt. #31, Exhibit 33; Dkt. #31, Exhibit 34; Dkt. #31, Exhibit 35); Intermec's LinkedIn page lists the company as "Intermec by Honeywell", directs its viewers to Honeywell's website as its own, and also lists 1385 current employees, which appears unlikely for a subsidiary of a company in Plano and seems more likely to include Honeywell employees in that number, *Resideo*, 4:18-cv-475, (Dkt. #33, Exhibit 29); that LinkedIn page can be compared to the LinkedIn page of Intermec Technologies Corporation—the alleged subsidiary of Honeywell located in Plano—maintaining its own LinkedIn page listing only nineteen employees, none of whom work in Texas, much less in Plano, *Resideo*, 4:18-cv-475, (Dkt. #31 at p. 14 n.6 (citing https://www.linkedin.com/company/intermec-technologies-corporation)); in its SEC 10-K filings, Intermec, incorporated in Washington, was listed as a subsidiary in 2013; however, in 2017 it changed to Intermec Technologies (S) Pte Ltd incorporated in Singapore leaving off any mention of Intermec, the corporation at issue here, from its filings, suggesting that Intermec may no longer be a subsidiary, *Resideo*, 4:18-cv-475, (Dkt. #31, Exhibit 26 at p. 230; Dkt. #33, Exhibit 27 at p. 121); and finally, regardless of whether it is Intermec or Intermec Technologies (S) Pte Ltd, Honeywell owns 100% of the stock of Intermec, *Resideo*, 4:18-cv-475, (Dkt. #33, Exhibit 26 at p. 230; Dkt. #31, Exhibit 27 at p. 121)). Plaintiff additionally asked for venue discovery to be able to provide more evidence on this issue. However, the Court does not find venue discovery necessary as it finds venue to be established through the other three Honeywell locations in the Eastern District of Texas. Accordingly, the Court does not rule on whether Honeywell and Intermec have disregarded corporate formalities, whether *In re ZTE* changed the analysis for related entities, or whether Plaintiff met its burden to show that Honeywell in fact met the argued updated analysis for parents and subsidiaries.

[7] As previously identified and established by the Federal Circuit, once a defendant challenges venue, it is the plaintiff's burden to prove venue. Moreover, to prove a regular and established place of business for purposes of § 1400(b), there are three factors: (1) "a physical place in the district," (2) that is "a regular and established place of business," and (3) "it must be a place of the defendant." *In re Cray, Inc.*, 871 F.3d at 1361. Here, Honeywell does not challenge any of the three factors. In fact, Honeywell acknowledges that it "maintains other addresses located in the Eastern District of Texas[.]" *Resideo*, 4:18-cv-475, (Dkt. #15 at pp. 11–12; Dkt. #15, Exhibit 1 ¶ 8). Although it is Plaintiff's burden to prove a regular and established place of business, because Honeywell did not challenge these three factors, and instead acknowledges "maintain[ing]"and "havi[ng ]", *Resideo*, 4:18-cv-475, (Dkt. #15 at pp. 11–12; Dkt. #15, Exhibit 1 ¶ 8), a physical place in the district that produces chemicals, materials, devices, and services, (Dkt. #15, Exhibit 1 ¶ 8), Plaintiff need not prove each factor. Therefore, the Court finds no need for Plaintiff to respond to factors that Honeywell already acknowledged were satisfied.

venue.[8]  The Court agrees with Plaintiff.  Plaintiff did not base its venue allegations solely on the

Plano facility.  While Plaintiff only specifically listed the Plano facility, it maintained its right to

assert other facilities as well: "Honeywell . . . has a regular and established place of business

within this District, *including, without limitation*, at [the Plano facility]."  *Resideo*, 4:18-cv-475,

(Dkt. #1 ¶ 6) (emphasis added).  As such, although not specifically pleaded, these three facilities

are not excluded by Plaintiff's pleadings.  While it is Plaintiff's burden to plead and prove venue,

in determining whether venue is proper "the [C]ourt is permitted to look at evidence in the record

beyond simply those facts alleged in the complaint and its proper attachments."  *Ambraco*, 570

F.3d at 238.  Both Honeywell and Plaintiff have now provided evidence of these three locations

inside the Eastern District of Texas, and there is no reason for the Court not to consider them.

Thus, the Court considers the Richardson, Orange, and Beaumont facilities, even though not

referenced in the complaint, in determining whether venue is proper.

Additionally, Honeywell argues that the three locations within the Eastern District of Texas

are not related to the infringement,[9] and thus, cannot serve as a basis for venue in this case pursuant

to § 1400(b).[10]  Plaintiff disagrees, arguing that § 1400(b) does not require this.

The Federal Circuit has not answered the question of whether a defendant's acts of

infringement need to be related to the defendant's regular and established place of business in the

---

[8] Plaintiff also argues that Plaintiff is not under any obligation to plead specific facts in its complaint to support venue; however, the case Plaintiff cites as support was decided before the Federal Circuit's holding in *In re ZTE*, placing the burden on plaintiff to prove venue.  *Soverain IP, LLC v. Apple, Inc.*, No. 2:17-cv-204, 2017 U.S. Dist. LEXIS 140039, at *8 (E.D. Tex. July 25, 2017).  Being before the *In re ZTE* decision, that court explained "[w]ith the burden of establishing improper venue on the defendant, the plaintiff is under no obligation to plead specific facts supporting venue in the complaint."  *Id.*  As such, with the burden now on Plaintiff, the Court is not persuaded by Plaintiff's support for its argument.  Moreover, Plaintiff argues that if the Court finds its pleading insufficient, the Court should permit Plaintiff to amend its complaint as opposed to dismissing or transferring the case.  On principle, the Court agrees, but the Court finds amending unnecessary at this time.
[9] Honeywell does not challenge that there are proper allegations of infringement within the Eastern District of Texas.
[10] Honeywell additionally argues the Plano facility is not related to the acts of infringement; however, the Court is not analyzing the Plano facility at this time.

district. Courts have reached different conclusions in answering this question. The Court, along with the majority of courts, finds that the better reasoned approach is that no relation is required between the two. *See, e.g.*, *Raytheon Co. v. Cray, Inc.*, 258 F. Supp. 3d 781, 791 (E.D. Tex. 2017), *mandamus granted on other grounds*, *In re Cray*, 871 F.3d 1355; *Bristol-Myers Squibb Co. v. Mylan Pharms. Inc.*, No. 17-379-LPS, 2017 WL 3980155, at *20–21 (D. Del. Sept. 11, 2017) (collecting cases); 14D CHARLES ALAN WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3823 (4th ed. 2019) (collecting cases) (explaining "[i]f a division of a corporation has a regular and established place of business with a district, the test is satisfied, even though the acts of infringement were committed by a different division of the corporation that has no regular place of business there."). Section 1400(b) requires only that "the defendant has committed acts of infringement *and* has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added); *accord Raytheon*, 258 F. Supp. 3d at 791 (quotations omitted). "So long as the two requirements are satisfied in a particular district—that is, so long as the defendant has committed acts of infringement in the district and has a regular and established place of business in that same district—venue is proper." *Bristol-Myers*, 2017 WL 3980155, at *20. "Nothing in the language of [§] 1400(b) justifies the conclusion that a defendant's place of business in the district must have some connection with the accused device." *Raytheon*, 258 F. Supp. 3d at 791 (quotations omitted).

> The statute does not state that in order for venue to be proper the defendant is to have committed acts of infringement in a district "arising from" a regular and established place of business in that district. The statute is silent as to any necessity of relationship or connection between the two requirements. The Court does not read this statutory silence to contain an implicit nexus requirement. *See generally Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 183–85 (1994) ("[I]t is not plausible to interpret the statutory silence as tantamount to an implicit congressional intent to impose . . . liability.").

*Bristol-Myers*, 2017 WL 3980155, at *20 (alteration in original).

Honeywell asserts that this holding goes against the Federal Circuit's holding in *In re Cordis, Corp*., 769 F.2d 733 (Fed. Cir. 1985). The Court is unconvinced. Like the *Bristol-Myers* court, the Court does not ignore the fact that *In re Cordis* contains language that might suggest a relationship requirement. *In re Cordis*, 769 F.2d at 737 (stating "while there was evidence that the sales representative therein conducted seminars with distributors to promote his employer's products, there was no evidence to demonstrate that such activities were carried on concerning the specific product which was the subject of the infringement action."). However, the Court agrees with the holding in *Bristol-Myers* that while the Federal Circuit alludes to a relationship in *In re Cordis*, "its statement does not purport to impose a requirement that such a relationship must exist." *Bristol-Myers*, 2017 WL 3980155, at *20. As such, the Court concludes that no relationship is required. Therefore, regardless of whether the Richardson, Orange, or Beaumont facilities are actually involved with or related to the accused products, they are regular and established places of business located within the Eastern District of Texas and, thus, make venue proper in the Eastern District of Texas.

Although the Court has decided that venue is proper based on the Richardson, Orange, and Beaumont facilities, the Court must address the effect of a spin-off Honeywell completed after Plaintiff initiated suit. Honeywell has four different business segments: Aerospace; Safety and Productivity Solutions; Performance Materials and Technology; and Home and Building Technologies. Within the Home and Building Technologies segment, Honeywell has what it calls the Homes business unit. On December 7, 2018, Honeywell filed a supplement, notifying the Court that Honeywell completed a spin-off of Honeywell's Homes business unit into a new corporate entity called Resideo Technologies ("Resideo"). *Resideo*, 4:18-cv-475, (Dkt. #35). Resideo is now responsible for the design, development, marketing, and distribution of the

Accused Honeywell Instrumentalities, as this was a responsibility of the Homes business unit. The spin-off includes former Honeywell International subsidiaries ADI Global Distribution ("ADI") and AlarmNet, Inc. ("AlarmNet"). However, it does not include Intermec, which is the subsidiary of Honeywell that maintains an office in Plano, Texas. It also did not include the facilities located in Richardson, Orange, and Beaumont.

Plaintiff claims that, at that time, the parties were attempting to work out an agreement to substitute Resideo for Honeywell in the present lawsuit. Plaintiff represented it would not agree unless Resideo would stand in the shoes of Honeywell for purposes of jurisdiction, venue, and determination of the most convenient forum, but no agreement had been reached at that time. Related to this discussion, on November 29, 2018, Plaintiff filed a motion to substitute party to reflect VIS merging into Innovation. *Resideo*, 4:18-cv-475, (Dkt. #29). At the time filed, the motion was contested. *Resideo*, 4:18-cv-475, (Dkt. #29). However, on December 18, 2018, Honeywell filed a notice of non-opposition, representing to the Court that after meeting and conferring, the parties reached an agreement that Honeywell would not oppose Plaintiff's motion to substitute party and Plaintiff would not oppose Honeywell's motion to substitute. *Resideo*, 4:18-cv-475, (Dkt. #44). Subsequently, Honeywell filed its unopposed motion to substitute, explaining the spin-off to the Court. *Resideo*, 4:18-cv-475, (Dkt. #47). There was no explanation in any of these filings if the parties' agreement regarding the motions to substitute included an agreement to have Resideo stand in the shoes of Honeywell for purposes of proper venue. The Court granted both motions on January 3, 2019. *Resideo*, 4:18-cv-475, (Dkt. #51; Dkt. #52).[11]

---

[11] The Court recognizes that it has granted a motion to substitute party, and the defendant is now Resideo as opposed to Honeywell. However, for purposes of clarity in this order, the Court will refer to this defendant as Honeywell, except as needed to explain the specific facts of the spin-off. In its citations, the Court also refers to the case using Resideo, as this is an accurate reflection of the docket. Going forward in the case, the Court will refer to this defendant as Resideo.

Regardless of any agreement, when determining whether venue is proper, the Court is to look at the time the complaint is filed. *Norsworthy v. Mystik Transp., Inc.*, 430 F. Supp. 2d 631, 633–34 (E.D. Tex. 2006) (citing *Harris v. Black Clawson Co.*, 961 F.2d 547, 549–50 (5th Cir. 1992); *Horihan v. Hartford Ins. Co. of the Midwest*, 979 F. Supp. 1073, 1076 (E.D. Tex. 1997)); *see also Pers. Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 931 (E.D. Tex. 2017) (reaching the same conclusion in a patent case interpreting 28 U.S.C. §1400(b) and referring to Federal Circuit and Supreme Court of the United States guidance). Based on this rule, venue is not affected by events that occur subsequent to filing, such as the spin-off that occurred in this case. Accordingly, the Court does not consider any post-filing facts in its venue analysis and its analysis remains unchanged.

### III.     Motion to Transfer Based on Convenience and in the Interest of Justice

While only Honeywell moves to dismiss, all Defendants ask the Court to transfer the cases to the Eastern District of Virginia because they argue that it is the clearly more convenient forum. Plaintiff responds that the Eastern District of Virginia is not clearly more convenient.

Section 1404 permits a district court to transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to 'an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The purpose of § 1404 "is to prevent the waste 'of time, energy and money' and 'to protect the litigants, witnesses and the public

against unnecessary inconvenience and expense . . . .'" *Van Dusen,* 376 U.S. at 616 (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26–27 (1960)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties consent to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (citations omitted). These enumerated factors are neither exhaustive nor exclusive, and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* The plaintiff's choice of venue is not a factor in this analysis, but rather contributes to the defendant's burden to show good cause for the transfer. *Id.* at 314, 314 n.10 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."). However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315. And while the multi-factor analysis is informative, ultimately, "'the district court has broad discretion in deciding whether to order a transfer.'" *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

The Court addresses the Defendants' motions with these guidelines in mind, first looking to the threshold inquiry, then moving to the private interest factors, and concluding with the public interest factors. The Court addresses the motions together when it is appropriate to do so, but analyzes the motions separately when required to do so.

## A. Threshold Inquiry

As a threshold matter, the Court must first determine whether venue is proper in the Eastern District of Virginia. *Vargas v. Seamas Drivers Int'l, LLC*, No. 2:10-cv-178, 2011 WL 1980001, at *3 (E.D. Tex. May 20, 2011) (citing *In re Volkswagen I*, 371 F.3d at 203). Plaintiff does not dispute that this suit could have originally been filed in the Eastern District of Virginia. Therefore, the threshold inquiry is satisfied, and the Court will turn to whether the Eastern District of Virginia is the more convenient forum.

## B. The Effect of Merging, Relocating, or Creating a Spin-Off

Before discussing the convenience factors, the Court must address post-filing events and their effect on the convenience analysis.[12] There have been two post-filing actions: Plaintiff merged and relocated and Defendant Honeywell completed a spin-off, which resulted in a new, separate entity—Resideo. The Court addresses both in turn.

As to Plaintiff's relocation, a common argument presented throughout all Defendants' motions and in several different factors is that the Court should not consider the fact that Plaintiff relocated to Texas in its convenience analysis. Defendants maintain that Plaintiff moved to manufacture and manipulate venue and, thus, the Court should consider the facts as they existed when the lawsuit was filed. Plaintiff responds that the move was not made to manufacture venue because venue was already proper prior to the move. Moreover, according to Plaintiff, VIS merged

---

[12] The Court addresses the arguments broadly in this section and will address the effect this has under the appropriate factor.

into Innovation, which was formed in Texas to benefit from Texas' tax laws, as opposed to attempting to manipulate venue.

The Court first notes that it agrees with Plaintiff—that any arguments claiming Plaintiff is manufacturing venue are unpersuasive. Whether venue is proper is not premised on whether Plaintiff is located in Texas or in Virginia. As noted earlier, venue in patent cases is governed by 28 U.S.C. § 1400(b), which states venue is proper based on the location or actions of the defendant and makes no mention of a plaintiff's location.[13]

As to the claims that the Court should consider the facts presented at the time Plaintiff filed suit based on Plaintiff's alleged venue manipulation, the Court notes that there is a bright line rule for courts in the Fifth Circuit determining proper venue; that is, Courts are to look at the facts as they existed at the time the lawsuit was filed. *Norsworthy*, 430 F. Supp. 2d at 633–34 (citing *Harris*, 961 F.2d at 549–50); *Horihan*, 979 F. Supp. at 1076. However, when a motion to transfer is at issue, the rule is not as bright.[14] "The Supreme Court has long urged courts to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempt at manipulation." *In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011). As such,

> the Supreme Court explained that Section 1404(a) "should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient and just." A plaintiff's attempts to manipulate venue in anticipation of litigation or a motion to transfer venue falls squarely within these prohibited activities.

[13] Under § 1400(b), venue is only proper (1) in the district in which the *defendant* resides or (2) in a district "where the *defendant* has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added).

[14] HTC cites *Hoffman v. Blaski*, 363 U.S. 335 (1960), for the proposition that convenience needs to be decided based on the time the suit was filed, as opposed to considering facts that occurred after suit was filed. However, the Supreme Court of the United States considered whether a court could use § 1404 to transfer a case to a court that, at the time suit was filed, did not have proper venue. *Hoffman*, 36 U.S. at 1085–86. The Supreme Court decided that the phrase contained in § 1404 "where the action 'might have been brought'" should not be broadly construed, and that courts can only transfer to another court where venue was proper at the time the complaint was filed. *Id.* at 1098–90.

*In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (quoting *Van Dusen*, 376 U.S. at 625) (discussing converting evidence into an electronic format and transferring the evidence to litigation counsel in Texas, with that being the only connection to Texas). Accordingly, "[t]he Federal Circuit cautions that where a plaintiff's 'presence in Texas appears to be recent, ephemeral, and an artifact of litigation,' courts should not be misled." *Seven Networks, LLC v. Google LLC*, No. 2:17-cv-442, 2018 WL 4026760, at *6 (E.D. Tex. Aug. 14, 2018). However, "timing alone . . . is not sufficient to establish venue manipulation." *Id.*

Based on this law "the Court takes allegations of venue manipulation seriously" and must decide whether such manipulation occurred in this case. *Id.* This, however, is a fact intensive inquiry. Accordingly, the Court compares the facts of this case to the facts presented in other cases—a sample of the cases cited by Defendants—to determine whether this case falls into the realm of concern posed by the Supreme Court of the United States and the Federal Circuit.

In *In re Hoffman-La Roche, Inc.*, the Federal Circuit determined that the transfer of 75,000 pages of documents from the plaintiff's counsel in California to the plaintiff's litigation counsel in Texas was an action that was made purely in anticipation of litigation. 587 F.3d at 1337. The Federal Circuit determined that the action was "a fiction[,] which appear[ed] to be [] created to manipulate propriety of venue" and determined it was entitled to no weight in the court's venue analysis. *Id.*

In *In re Microsoft, Corp.*, the plaintiff incorporated under the laws of Texas prior to filing suit and maintained an office in Texas. 630 F.3d at 1363. However, the office in Texas did not employ any individuals and was not the basis of the operations. *Id.* at 1362. All operations attributed to the office in Texas were actually directed by and operated from the United Kingdom. *Id.* The Federal Circuit also noted that

"[u]nder modern conditions corporations often obtain their charter from states where they no more than maintain an agent to comply with local requirements, while every other activity is conducted far from the chartering state." The Court further explained that the "[p]lace of corporate domicile in such circumstances might be entitled to little consideration" under the doctrine of forum non conveniens, "which resists formalization and looks to the realities that make for doing justice."

*Id.* (alterations in original) (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527–28 (1947)). Based on the realities in that case—that the plaintiff actually was operating out of the United Kingdom and not Texas—the Federal Circuit found that the district in which the plaintiff maintained this office was not the clearly more convenient forum. *Id.*

Finally, in *In re Zimmer*, the plaintiff claimed that the Eastern District of Texas was the more convenient forum because that was where it maintained its principal place of business. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010). However, upon looking at the facts of the case, the Federal Circuit determined that the plaintiff's claim was unsubstantiated, as it appeared the plaintiff had merely transported patent prosecution files to an office located in Texas that it shared with another of the plaintiff's counsel's clients. *Id.* Further, the plaintiff was an LLC with a registered office in Michigan, and the two corporate officers resided in Michigan. *Id.* Accordingly, the Federal Circuit determined the plaintiff's "presence in Texas appear[ed] to be recent, ephemeral, and an artifact of litigation." *Id.* The Federal Circuit found this to be "a classic case where the plaintiff [was] attempting to game the system by artificially seeking to establish venue by sharing office space with another of the trial counsel's clients." *Id.*

These cases present different scenarios than what is presently before the Court. The Court does not ignore the fact that the move is recent. Plaintiff filed suit against Defendants on July 5, 2018. At this time, Plaintiff was actually its former company, VIS, and located in Virginia. Defendants filed their motions on October 1, 2018, October 2, 2018, November 15, 2018, and

December 27, 2018. As to the motions filed in October, Plaintiff sought several extensions[15] of time to respond to the motions, representing conflicts with schedule, seeking new counsel, and the new counsel then gaining familiarity with the case. The last of these extensions was filed on November 13, 2018. Plaintiff then, on November 29, 2018, filed its motions to substitute party based on VIS's merger into Innovation. Plaintiff then filed responses to the motions to transfer starting on November 29, 2018, with its final response being filed on January 11, 2019, using its merger and new location to respond to the motions. "The Court does find the timing [of the merger] to be worthy of questioning, but [again] timing alone . . . . is not sufficient to establish venue manipulation." *Seven Networks*, 2018 WL 4026760, at *6.

Although the merger and relocation were recent, after suit was filed, and after some of the motions to transfer were filed, the Court finds the evidence does not support a finding that it is an artifact of litigation. In her sworn declaration, Dr. Anne Wong, CEO of Innovation, states that the merger was contemplated prior to filing this action. *Amazon III*, 4:18-cv-474, (Dkt. #24, Exhibit 23 ¶ 9). This statement was made under the penalty of perjury. *Amazon III*, 4:18-cv-474, (Dkt. #24, Exhibit 23 at p. 6). As such, the Court accepts the statement as a fact of the case. Other than the timing of the merger, Defendants presented no concrete evidence to the contrary. Moreover, not only were documents moved to Texas, as in *In re Zimmer* and *In re Hoffman-La Roche*, but the entire company relocated. VIS merged into Innovation, and VIS no longer exists. Innovation offices in Plano, not in Virginia. Unlike in *In re Hoffman-La Roche,* all documents are stored in the actual office of Innovation, not of its litigation counsel. Moreover, the office is operated from CEO Dr. Anne Wong's residence, and she is not sharing a residence with any of Innovation's counsel's other clients, like the facts presented in *In re Zimmer*. Innovation is actually

---

[15] The extensions were only sought in the two cases with the motions filed on October 1, 2018 and October 2, 2018.

operated out of Plano, instead of being operated from another state or country like the facts presented in *In re Microsoft*. As such, the Court does not find this move to be an artifact of litigation.

Finally, there is no evidence to suggest that this move is ephemeral. There are no facts to suggest that the company or Dr. Anne Wong will move back to Virginia as soon as litigation is complete. The evidence actually suggests the opposite. Dr. Anne Wong has moved herself[16] and her business to Texas. She rented out her apartment in Virginia and listed her home in Virginia for sale. *Amazon III*, 4:18-cv-474, (Dkt. #117, Exhibit 2; Dkt. #117, Exhibit 3). Finally, Dr. Anne Wong also obtained a Texas driver's license, thereby surrendering her Virginia driver's license. *Amazon III*, 4:18-cv-474, (Dkt. #117, Exhibit 4). Based on these facts, the Court does not find this move to appear ephemeral.

The Court finds this case aligns with the facts in *Cookteck Induction Systems*, where even though the relocation and merger did not occur until after the commencement of the lawsuit, "[p]laintiff had intent to merge and relocate" "[p]rior to the initiation of this lawsuit" and "Defendants ha[d] not demonstrated that Plaintiff's physical relocation after the initiation of this suit was an attempt to manufacture venue." *Cookteck Induction Sys., LLC v. I/O Controls Corp.*, 4:15-cv-548, 2016 WL 4095547, at *3 (E.D. Tex. Aug. 2, 2016) (citing *Core Wireless Licensing S.a.r.l. v. LG Elecs. Inc.*, No. 2:14-cv-911, 2015 WL 5143395, at *5 n.6 (E.D. Tex. Sept. 1, 2015)); *accord Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 872–73 (E.D. Tex. 2013). Because Defendants have not met their burden, the Court will consider the consequences of Plaintiff's

---

[16] The Court does note that in his deposition, Dr. Ronald (Tiejun) Wang stated that Dr. Anne Wong still resided in Virginia; however, based on the nature of the question and the number of times that Dr. Ronald (Tiejun) Wang has stayed with Dr. Anne Wong in Virginia, the Court does not find this to be a reason to discredit Dr. Anne Wong's statement, and evidence supporting, that she lives in Texas.

relocation when addressing the motions to transfer, as opposed to considering the facts as they existed at the time of filing.

Moreover, as previously mentioned when discussing Honeywell's motion to dismiss for improper venue, Honeywell completed a spin-off of its Homes business unit into a new corporate entity called Resideo, which includes ADI and AlarmNet. This presents a relevant fact for venue considerations, as Resideo is now responsible for the design, development, marketing, and distribution of the Accused Honeywell Instrumentalities. ADI is a wholesale distributor of the Accused Honeywell Instrumentalities. AlarmNet is responsible for certain communication aspects related to the Accused Honeywell Instrumentalities. Similar to Defendants, Plaintiff does not meet its burden to suggest that the spin-off was accomplished to manipulate convenience, and thus, the Court considers the spin-off and the location of the witnesses and documents of Resideo where they are located at this point.

### C. Private Interest Factors

Defendants maintain that the private interest factors support transfer. Plaintiff disagrees. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial of a case easy, expeditious, and inexpensive." *Volkswagen II, Inc.*, 545 F.3d at 315 (quotations omitted). The Court addresses each in turn.

### 1. The Relative Ease of Access to Source of Proof

The first private interest factor is the relative ease of access to the sources of proof. *Volkswagen I*, 371 F.3d at 203. In examining this factor, the Court considers the location of documentary and physical evidence, as opposed to witnesses. *In re Volkswagen II*, 545 F.3d at

316. "The Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (citing *Volkswagen II*, 545 F.3d at 316)). "'The Federal Circuit has observed that [i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer, and therefore the location of the defendant's documents tends to be the more convenient venue.'" *Cooktek Induction Sys.*, 2016 WL 4095547, at *3 (alteration in original) (quoting *DataQuill, Ltd.*, 2014 WL 2722201, at *3). "However, where evidence is dispersed across venues, this private interest factor will be neutral." *Id.* (citing *Principal Tech. Eng'g, Inc. v. SMI Cos.*, No. 4:09-cv-316, 2009 WL 4730609, at *5 (E.D. Tex. Nov. 12, 2009)). The Court addresses each Defendant separately.

### a. Amazon

The Amazon briefing on this factor centers on Plaintiff's merger from VIS into Innovation and relocation from Virginia to Texas. According to Amazon, when VIS existed and was located in Virginia, the vast majority of all corporate records were located five miles from federal courthouse in Alexandria, which is part of the Eastern District of Virginia ("Alexandria Courthouse"). *Amazon III*, 4:18-cv-474, (Dkt. #9, Exhibit 5 ¶ 17). However, VIS no longer exists, and Plaintiff's documents are maintained at Plaintiff's office in Plano, Texas. *Amazon III*, 4:18-cv-474, (Dkt. #24, Exhibit 23 ¶ 15). Amazon acknowledges that the burden on Amazon is relatively the same in either forum. However, Amazon argues that this factor weighs in favor of transfer because the Court should not consider the merger and should act as if the documents are still in Virginia. As previously discussed, the Court finds that Defendants did not meet their burden

to show that Plaintiff is attempting to manipulate venue.[17]  As such, regarding Amazon, this factor weighs slightly against transfer.

### b.  Honeywell

Honeywell presents arguments regarding documentary evidence maintained by both Plaintiff and Honeywell.  As to Plaintiff's documents, Honeywell presents the same or similar arguments as Amazon, which the Court has already addressed.  As to its own evidence, Honeywell argues that the Eastern District of Virginia is more convenient.

Plaintiff responds[18] that the Court should not transfer the case because a transfer would merely shift the burden from Honeywell to Plaintiff.  However, the Court is not persuaded.  While the Court acknowledges that it should not transfer a case if it merely shifts the burden from one party to another, it also has to acknowledge the fact that in patent cases, it is presumed that the bulk of the evidence comes from the accused infringer.  *See Goodman Co., L.P. v. A & H Supply, Inc.*, 396 F. Supp. 2d 766, 776 (S.D. Tex. 2005); *Cooktek Induction Sys.*, 2016 WL 4095547, at *3.  Thus, more weight must be attributed to the accused infringer's evidence and a transfer would not be simply shifting the burden.  As such, the Court looks to where Honeywell's evidence is located to determine whether transferring the case to the Eastern District of Virginia is the more convenient venue.  Honeywell asserts that it has evidence in both the Eastern District of Virginia and also Melville, New York, which Honeywell maintains is closer to the Eastern District of Virginia than the Eastern District of Texas.

---

[17] The Court notes that even if Defendants had met their burden, the Court would not act as if the documents were still in Virginia.  Instead, "[a]t most, the Court would simply not consider the documents in its analysis." *Seven Networks*, 2018 WL 4026760, at *6.

[18] Plaintiff also argues that Honeywell did not specifically identify witnesses that would need to be called at trial and did not argue that product design and strategic decisions were made in Virginia.  However, this is not the concern of this factor and the Court does not consider these arguments.

Honeywell argues that it has evidence pertinent to the Accused Honeywell Instrumentalities in the Eastern District of Virginia.  ADI is headquartered in Melville, New York, but maintains four locations in the Eastern District of Virginia: Alexandria; Norfolk; Richmond; and Sandston.  *Resideo*, 4:18-cv-475, (Dkt. #35, Exhibit 1 ¶ 7).  ADI is a wholesale distributor of the Accused Honeywell Instrumentalities and is responsible for sales and distribution of the Accused Honeywell Instrumentalities.  *Resideo*, 4:18-cv-475, (Dkt. #35, Exhibit 1 ¶ 7).  However, Honeywell does not specify any evidence that is maintained in these facilities.  While the Court recognizes the ADI division may contain documents concerning damages, this was not argued by Honeywell.  It is critical for a movant to identify specific evidence that is likely to be present in a district for the Court to conduct a proper analysis.  *See Seven Networks*, 2018 WL 4026760, at *4.  Moreover, Honeywell did not suggest that this information is not also kept in Honeywell's principal executive offices and major operations, which are located in Golden Valley, Minnesota and Melville, New York—primarily Melville, New York for the Accused Honeywell Instrumentalities.  It is presumed that the bulk of the discovery material related to a corporate party is located in that party's corporate headquarters or primary offices.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).  Without any argument otherwise, the Court presumes this information is available in New York and does not consider its facilities in the Eastern District of Virginia.

As to the evidence maintained in New York, Honeywell likewise does not specifically identify evidence present in New York.  However, Honeywell argues that

> [t]he vast majority of . . . evidence relevant to the design, development, manufacture, marketing, offering, and sales of the [Accused Honeywell Instrumentalities], including technical, financial, and marketing evidence . . . are based in Melville, New York, approximately 280 miles from the Eastern District of Virginia, as opposed to 1,570 miles from [the Eastern District of Texas].

*Resideo*, 4:18-cv-475, (Dkt. #15 at pp. 27–28). The Court finds this argument, along with the presumption that the bulk of a company's evidence is located in its headquarters, is sufficient to demonstrate that a majority of relevant evidence in this case will likely come from New York. *See Seven Networks*, 2018 WL 4026760, at *4.

However, Honeywell is not seeking to transfer the case to New York, where the bulk of its evidence is likely located. Rather, Honeywell, along with the other Defendants, asks the Court to transfer the cases to the Eastern District of Virginia. The Court only looks to where Honeywell's evidence is located because of the Federal Circuit's determination that the bulk of the relevant evidence comes from the accused infringer and is not shifting the convenience because "*the place* where the defendant's documents are kept weighs in favor of transfer *to that location*." *In re Genentech*, 566 F.3d at 1345 (emphasis added). The Federal Circuit did not hold the same for a location that the accused infringer's documents are close to.

Nevertheless, the Court does not discount the fact that Honeywell's sources of proof are closer to the Eastern District of Virginia than the Eastern District of Texas. The Court compares this to Plaintiff's sources of proof being located in the Eastern District of Texas, within the Sherman Division specifically. The Court also notes that neither Plaintiff's nor Honeywell's headquarters are located in the Eastern District of Virginia and, as such, transferring this case would result in the suit being litigated where neither party is located. Accordingly, the Court finds this factor to be neutral as to Honeywell.

### c. HTC

HTC's briefing is similar to Amazon's in that it focuses on the merger and relocation of Plaintiff. However, as opposed to acknowledging that the burden for HTC would be neutral in either location, HTC simply does not mention its own burden in relation to this factor.

Accordingly, for the same reasons mentioned in Amazon's analysis, this factor weighs slightly against transfer as to HTC.

### d. Vector

Vector presents arguments regarding documentary evidence maintained by both Plaintiff and Vector. As to Plaintiff, Vector presents the same or similar arguments as the other Defendants, which the Court has already addressed.

Regarding its own evidence, Vector argues that it "maintains its potentially relevant technical, marketing, and financial documents outside of [the Eastern District of Texas], in Fairfax, Virginia and Warrendale, Pennsylvania." *Vector*, 4:18-cv-477, (Dkt. #16 at p. 11). Accordingly, Vector maintains that the burden to transport physical documents or evidence is less with respect to the Alexandria Courthouse, than the courthouse in Sherman, Texas of the Eastern District of Texas ("Sherman Courthouse"). Plaintiff responds that the Court should not transfer the action to simply shift the burden from Plaintiff to Vector, resulting in trial occurring where neither party is located.[19]

As analyzed above, the Court does not consider finding in favor of transfer on this factor to be simply shifting the inconvenience from one party to the other based on the fact that the bulk of the relevant evidence comes from the accused infringer in patent cases. The difference in the analysis for Vector is some of Vector's relevant evidence is located in the Eastern District of Virginia, which is where it is requesting the Court to transfer this case.[20] The Court does note,

---

[19] Plaintiff also argues that Vector did not specifically identify witnesses that would need to be called at trial and did not argue that product design and strategic decisions were made in Virginia. However, this is not the concern of this factor and the Court does not consider these arguments.

[20] Plaintiff asserts that Vector does not argue that the documents located in Virginia cannot also be found in other locations and possibly could be located in Vector's locations within the Eastern District of Texas. However, Vector admits that any electronic documents can be easily transmitted to either location, but only references physical documents and/or samples that are located closer to or in the Eastern District of Virginia. *Vector*, 4:18-cv-477, (Dkt. #16 at p. 11).

however, that it is merely some of the evidence, as some of it is also in Pennsylvania.[21] Moreover, again, the Court acknowledges the fact that Plaintiff has evidence in the Eastern District of Texas, and Vector's headquarters are not located in the Eastern District of Virginia; as such, the Eastern District of Virginia is not home to any party. Considering all these facts, the Court finds that, as to Vector, this factor weighs in favor of transfer, but only slightly.

### 2. The Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private interest factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen I*, 371 F.3d at 203. Under Federal Rule of Civil Procedure 45, a court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. FED. R. CIV. P. 45(c)(1)(B). Similarly, a court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. FED. R. CIV. P. 45 (a)(2); FED. R. CIV. P. (c)(1)(A). Moreover, party witnesses do not require compulsory process for trial and are not given much weight in this factor. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary. *See Ingeniador, LLC v. Adobe Sys. Inc.*, No. 2:12-cv-805, 2014 WL 105106, at *2 (E.D. Tex. Jan. 10, 2014).

The Court addresses each Defendant separately for this analysis in order to weigh the factor accurately; however, as there is strong overlap between the arguments, the Court references arguments, analysis, and conclusions made in prior sections as it deems fit for efficiency.

---

[21] As it did for Honeywell, the Court finds evidence that is in close proximity to the desired forum to carry little weight.

### a. Amazon

In the Amazon briefing concerning this factor, the parties mention the following people: William Halal, Christopher Tobin, Dr. Ronald (Tiejun) Wang, Professor Ximing Wang, and Dr. Anne Wong. The Court addresses each witness in turn.

### i. William Halal and Christopher Tobin

Amazon lists William Halal and Christopher Tobin as witnesses for whom compulsory process would be necessary to secure their presence at trial. Halal and Tobin are both non-party witnesses. William Halal is a named inventor and Christopher Tobin is a prosecutor of some of the patents contained in the '492 Patent Family[22] and U.S. Patent No. 8,135,398 ("the '398 Patent"), patents in the prior art, but not asserted in this case. Halal and Tobin both live and work in Washington D.C., and are within the subpoena range of the Alexandria Courthouse but not the Sherman Courthouse.

Amazon avers that, even though these patents are not asserted in this case, Halal and Tobin will likely provide relevant testimony for claim construction and the priory date for the '798 Patent Family, which is asserted in this case. Plaintiff counters that the patents Halal and Tobin are associated with are not asserted in this case and, thus, they are not likely to testify at trial. Plaintiff maintains that priority dates will not be determined by Halal or Tobin, but instead, determined by finding the earliest patent application that supports the claimed invention. Additionally, Plaintiff maintains that their testimony bears no weight on claim construction since claim construction is based on intrinsic evidence in the record and extrinsic evidence to establish knowledge of those of

---

[22] The '492 Patent Family consists of U.S. Patent Nos. 7,899,492 ("the '492 Patent"), 8,050,711 ("the '711 Patent"), 8,903,451 ("the '451 Patent"), 8,948,814 ("the '814 Patent"), 9,118,794 ("the '794 Patent"), 8,712,471 ("the '471 Patent"), 9,286,853 ("the '853 Patent"), and 9,355,611 ("the '611 Patent").

ordinary skill in the art.[23]  Finally, Plaintiff maintains that Defendants do not specifically explain how Halal and Tobin are relevant to issues in the case.

The Court agrees with Plaintiff.  As to the claim that the Court would have to issue a subpoena to guarantee their appearance at the claim construction hearing, the Court is not convinced.  The likelihood of having witness testimony of any kind during a claim construction hearing is low.  The Court examines a patent's intrinsic evidence to define the patented invention's scope.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313–14 (Fed. Cir. 2005); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  Intrinsic evidence includes the claims, the rest of the specification, and the prosecution history.  *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267.  Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art."  *Phillips*, 415 F.3d at 1317 (quotation omitted).  Expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful."  *Id.*  Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms."  *Id.*

Halal and Tobin are not part of the intrinsic record.  At best, Halal and Tobin might be able to offer extrinsic evidence, which the Court only looks to secondarily and may not even look to at all.  Moreover, Amazon has not given any specific indication as to what extrinsic evidence either Halal or Tobin could offer to assist the Court in making its claim construction decision.

As to Amazon's claim that Halal and Tobin will be necessary to determine applicable priority dates, the Court is similarly unpersuaded.  "Determination of a patent's priority date is

---

[23] Amazon and HTC do not address these arguments in their reply briefs.

purely a question of law if the facts underlying that determination are undisputed." *Medtronic CoreValve, LLC v. Edwards Lifesciences Corp.*, 741 F.3d 1359, 1363 (Fed. Cir. 2014) (citing *E.I. du Pont de Nemours & Co. v. MacDermid Printing Sols., LLC,* 525 F.3d 1353, 1359 (Fed. Cir. 2008)). Amazon has made no effort to describe why the Court would need to have live testimony from Halal and Tobin to make any determinations on the patents' priority dates, as it is a question of law for the Court to decide. Nor has Amazon offered any possible factual dispute regarding the priority dates that Halal and Tobin will need to help resolve through their testimony in a hearing or at trial.

Moreover, aside from these two reasons, Amazon offers no argument why either Halal or Tobin would provide necessary testimony at trial.

> [W]hen parties simply name third-party witnesses subject to the subpoena power of a particular court without identifying the nature of the testimony or asserting, on a good faith basis, whether a party intends to depose or call a witness to trial, analysis of this factor is a futile and pointless exercise. At a minimum, in order to allow the Court to properly weigh this factor, litigants should not only specifically identify potential unwilling witnesses, but also should identify the relevancy and materiality of the information such witnesses would provide and therefore the foreseeability that a particular witness would be deposed, called to trial, or both. This identification enables the Court to give proper weight to each witness and analyze whether a particular witness is actually subject to a particular court's subpoena power. Indeed, the bounds of such power is not the same for both commanding a witness to trial and deposition. *See* FED. R. CIV. P. 45(c)(1)(A)–(B).

*Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6729907, at *4 (E.D. Tex. Dec. 28, 2017) (alteration in original) (quoting *Adaptix, Inc. v. Cello P'ship*, No. 6:15-cv-45 (E.D. Tex. Aug. 12, 2015) (Dkt. #32 at p. 7)). The Eastern District of Texas, being familiar with trying patent cases, has previously noted "'inventors or prior art rarely, if ever, actually testify at trial." *Id.* (quoting *PersonalWeb Techs. LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *8 n.13 (E.D. Tex. Mar. 21, 2013)). The Court finds no reason why a prosecuting attorney would have a higher likelihood of testifying at trial, and actually finds the likelihood to

be much lower. If the Court were to consider the location of Halal and Tobin in its analysis without any explanation as to their relevance, it would allow "litigants to cherry-pick third parties who happen to have an invention in [or prosecuted patents in] the relevant art and are located in the litigant's preferred district in order to sway the convenience analysis." *Id.* (quoting *Cello P'ship*, No. 6:15-cv-45 (Dkt. #32 at p. 8)). As such, the Court does not consider Halal and Tobin's location in its analysis on this factor.[24]

### ii.    Dr. Ronald (Tiejun) Wang

Amazon additionally argues that the Court will need to subpoena Dr. Ronald (Tiejun) Wang to testify at trial. Dr. Ronald (Tiejun) Wang is Dr. Anne Wong's brother, a co-inventor of three of the four patents asserted against Amazon in this case. Plaintiff claims he is a likely witness at trial. Dr. Ronald (Tiejun) Wang is a consultant of Plaintiff, but not an employee within its control. Dr. Ronald (Tiejun) Wang resides in China, but is a permanent resident of the United States of America, and as such, must visit the United States at least every six months. While in the United States, Dr. Ronald (Tiejun) Wang resides with his sister, Dr. Anne Wong.

Amazon and Plaintiff disagree regarding where the Court should consider Dr. Ronald (Tiejun) Wang and Dr. Anne Wong to reside. Amazon contends that the Court should disregard Dr. Anne Wong's relocation to Texas and consider her to still live in Virginia. Plaintiff argues that the Court should not ignore Plaintiff's or Dr. Anne Wong's relocation to Texas. As the Court has already decided, it will not disregard the relocation.[25] Accordingly, when Dr. Ronald (Tiejun)

---

[24] If there is any testimony necessary for the claim construction or for determining a priority date, a deposition will be sufficient and the Court can issue a deposition subpoena as to Halal and Tobin. FED. R. CIV. P. 45 (a)(2); FED. R. CIV. P. 45 (c)(1)(A).

[25] The argument that the Court should pretend that a person lives where they do not, for a convenience motion to transfer, is simply illogical. *See Evolutionary Intelligence, LLC v. Apple, Inc.*, No. 6:12-cv-783, 2013 WL 8360309, at *7 (E.D. Tex. Aug. 27, 2013) (measuring a witness' convenience based on where he resided at the time of the motion as opposed to where he resided when the suit was filed). The Court is focused on the convenience of the witnesses and parties and will not transfer a case based on a venue that used to be convenient. As a previous court in the Eastern District of Texas found, when discussing documentary evidence, the more reasoned approach would be to

Wang is in the United States of America and staying with Dr. Anne Wong, he will be staying at her residence in Plano, Texas. "A subpoena may command a person to attend a trial, hearing, or deposition only as follows: . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" FED. R. CIV. P. 45(c)(1)(A). As such, as a permanent resident residing in Plano, Texas, at least every six months, Dr. Ronald (Tiejun) Wang will be within the subpoena range of the Court and not the Eastern District of Virginia.

### iii. Professor Ximing Wang

In response to Amazon's Motion to Transfer, Plaintiff claims that Professor Ximing Wang, Dr. Anne Wong's father and co-inventor of the '443 Patent, is a likely witness within the subpoena range of the Court. Professor Ximing Wang also resides in China and stays with Dr. Anne Wong when he visits the United States of America, but there is no evidence or argument that he is a permanent resident or that he frequently visits the United States.

Amazon first challenges, as it has before, Dr. Anne Wong's residency in Plano, and thus Professor Ximing Wang's visits to Plano, Texas. The Court has previously explained it will not discredit Dr. Anne Wong's move, and likewise, will not do so here.

Amazon also contends that Plaintiff did not prove that Professor Ximing Wang is within the subpoena power of the Court because Plaintiff did not provide evidence that Professor Ximing Wang is a resident, is employed, or regularly transacts business within 100 miles of the Sherman Courthouse. As previously stated, "[a] subpoena may command a person to attend a trial, hearing, or deposition only as follows: . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person[.]" FED. R. CIV. P. 45(c)(1)(A). The Court agrees with Amazon that Plaintiff has not produced the required evidence to show Professor Ximing Wang

---

simply not consider the location of the witnesses, as opposed to considering the witnesses to be located where they are not. *See Seven Networks*, 2018 WL 4026760, at *6.

resides, is employed, or regularly transacts business in Plano, Texas. Thus, the Court cannot say, at this time, whether Professor Ximing Wang is within the subpoena range of the Court and declines to include him when weighing this factor.

### iv.    Dr. Anne Wong

In its reply, Amazon maintains that when suit was filed, Dr. Anne Wong was within the subpoena range of the Alexandria Courthouse. Dr. Anne Wong is a named inventor on all the patents-in-suit asserted against Amazon, is the CEO and sole employee of Plaintiff, and operates the business out of her residence. Accordingly, Dr. Anne Wong is a party witness. As previously mentioned, the focus of this factor is non-party witnesses because party witnesses do not require compulsory process to appear at trial. *See Ingeniador, LLC*, 2014 WL 105106, at *2. Thus, the Court does not consider her when weighing this factor.

### v.    Conclusion

Under this factor for Amazon, the Court only weighs the location of Dr. Ronald (Tiejun) Wang and accordingly finds this factor weighs against transfer.

### b.  Honeywell

In the Honeywell briefing concerning this factor, the parties mention the following people: Halal, Tobin, Dr. Ronald (Tiejun) Wang, Professor Ximing Wang, and Dr. Ning Wang. The arguments regarding Halal, Tobin, and Dr. Ronald (Tiejun) Wang are the same or substantially similar to those already addressed in the Amazon briefing and they equally apply to Honeywell's briefing. Accordingly, for the same reasons noted above, the Court is not convinced that Halal and Tobin are relevant to the case or that Dr. Ronald (Tiejun) Wang should be considered to still reside in Virginia with his sister, Dr. Anne Wong. However, the Court needs to address Professor Ximing Wang, as to Honeywell, and Dr. Ning Wang.

### i. Professor Ximing Wang and Dr. Ning Wang

Honeywell argues that as co-inventors of asserted patents, Professor Ximing Wang and Dr. Ning Wang will provide relevant testimony at trial. Although they both live in China, they stay with Dr. Anne Wong in Virginia when they visit the United States. First, as has already been discussed, the Court will not disregard Dr. Anne Wong's residence. Second, and more important here, Professor Ximing Wang and Dr. Ning Wang are not co-inventors of the '983 Patent, which is the only patent asserted against Honeywell. Accordingly, Professor Ximing Wang and Dr. Ning Wang are not relevant to Honeywell's case and the Court does not give weight to their location in its analysis.

### ii. Conclusion

Therefore, considering only Dr. Ronald (Tiejun) Wang's location under this factor as to Honeywell, the factor weighs against transfer.

### c. HTC

In the HTC briefing concerning this factor, the parties mention the following people: Halal, Tobin, and Dr. Ronald (Tiejun) Wang. HTC's arguments surrounding these three witnesses are the same, or substantially similar, as the ones presented by Amazon and Honeywell. Accordingly, for the same reasons, the Court is not convinced that Halal and Tobin are relevant to the case or that Dr. Ronald (Tiejun) Wang should be considered to reside in Virginia. Accordingly, considering only the location of Dr. Ronald (Tiejun) Wang, the Court finds that this factor weighs against transfer, as to HTC.

#### d. Vector

In the Vector briefing concerning this factor, the parties mention the following people: Halal, Tobin, Dr. Ronald (Tiejun) Wang, Dr. Ning Wang,[26] and Professor Ximing Wang. Initially, the Court identifies that, similar to Honeywell, Professor Ximing Wang and Dr. Ning Wang are not co-inventors of the patent asserted against Vector. As to the remaining identified witnesses, the arguments presented are substantially similar to others previously addressed and the analysis equally applies to Vector's motion. Thus, the Court does not consider the location of Halal, Tobin, Dr. Ning Wang, and Professor Ximing Wang but does consider Dr. Ronald (Tiejun) Wang to reside in Plano, Texas and within the subpoena range of the Eastern District of Texas. Therefore, this factor weighs against transfer.

### 3. The Cost of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. *Volkswagen I*, 371 F.3d at 203. In *Volkswagen II*, the Fifth Circuit noted that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317. The Fifth Circuit established the "100-mile" rule to determine the convenience of the transferee district to the witnesses and parties. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. The "100-mile" rule applies because the Alexandria Courthouse is more than

---

[26] Vector mentions Dr. Ning Wang in its statement of facts but not in its argument; however, in its response, Plaintiff responds to an argument regarding Dr. Ning Wang. Accordingly, the Court addresses Dr. Ning Wang out of an abundance of caution.

100 miles from the Sherman Courthouse. *See id*. When inconvenience would exist in either potential venue, merely shifting inconvenience from one party's witnesses to the other is insufficient to affect a transfer of venue analysis. *In re Google Inc.*, 412 F. App'x 295, 296 (Fed. Cir. 2011). Moreover, "'[w]hile the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Seven Networks, LLC*, 2018 WL 4026760 at *12 (quoting *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-cv-134-JRG-RSP, 2017 WL 750290, at *5 (E.D. Tex. Feb. 27, 2017); *accord Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012)).

Again, the Court addresses each Defendant separately for this analysis in order to weigh the factor accurately; however, as there is strong overlap between the arguments, the Court references arguments, analysis, and conclusions made in prior sections as it deems fit for efficiency.

### a. Amazon

In the Amazon briefing concerning this factor, the parties mention the following people: Dr. Anne Wong, Dr. Ronald (Tiejun) Wang, Professor Ximing Wang, and a variety of Amazon witnesses spread across the United States, Europe, and India. The Court addresses each witness in turn.

### i. Dr. Anne Wong

In its motion, Amazon contends that Dr. Anne Wong is a willing witness attending trial. Amazon and Plaintiff disagree on where the Court should consider Dr. Anne Wong to reside. As the Court has previously explained, it will not consider Dr. Anne Wong to reside in Virginia and

considers her relocation. Thus, the Sherman Courthouse is more convenient for Dr. Anne Wong as she lives in Plano, Texas.

### ii.    Dr. Ronald (Tiejun) Wang

Amazon also lists Dr. Ronald (Tiejun) Wang as a willing witness under this section, as well as listing him under the compulsory process factor. The arguments are much the same in this factor. The Court simply applies its previous analysis in this section and finds the Sherman Courthouse to be more convenient for Dr. Ronald (Tiejun) Wang.

### iii.    Professor Ximing Wang

While the Court found there was not enough evidence to determine whether Professor Ximing Wang would be subject to compulsory process by the Court, the parties also discuss Professor Ximing Wang as a willing witness for trial. As Professor Ximing Wang stays with his daughter when visiting the United States of America, the parties again dispute whether the Court should consider him to stay in Virginia or in Texas. As the Court has done previously, it considers Professor Ximing Wang to stay with his daughter, Dr. Anne Wong, at her new residence, in Plano, Texas. Based on this decision, the Sherman Courthouse is more convenient than the Alexandria Courthouse.

### iv.    Defense Witnesses

In its motion, Amazon claims that its witnesses are scattered across the United States, Europe, and India, but that there are no relevant witnesses in the Eastern District of Texas.

As to the witnesses located in Europe and India, because these witnesses would have to travel a significant distance regardless of whether they have to travel to the Alexandria Courthouse or Sherman Courthouse, the Court does not consider their location. *In re Genentech, Inc.*, 566 F.3d 1338, 1343–44 (Fed. Cir. 2009).

Amazon argues that its witnesses who reside in the United States of America are spread out between Cambridge, Massachusetts, San Francisco, California, and Seattle, Washington. Plaintiff argues that Amazon's witnesses located in Seattle and San Francisco are more important and the Eastern District of Texas is more convenient for these witnesses. Amazon counters that its witnesses are widely scattered across the United States and that the West Coast witnesses are not more important than the East Coast witnesses.

This demonstrates why there is a need to specifically identify witnesses, to the best of a party's ability, in their motion to transfer. *See, e.g.*, *Seven Networks*, 2018 WL 4026760, at *4 (citing *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017), *cert. denied* 138 S. Ct. 1699 (2018)). In this case, witnesses located in San Francisco and Seattle would be closer to the Eastern District of Texas, making the Sherman Courthouse more convenient. Whereas witnesses located in Cambridge will be closer to the Eastern District of Virginia, making the Alexandria Courthouse more convenient. However, without knowledge of how many witnesses are located in each location and their importance to the issues presented at trial, the Court is not "able to make an informed inquiry into the true convenience of" Amazon's witnesses. *Id.* (citing *Utterback*, 716 F. App'x at 245 n.10).

### v. Conclusion

As such, after weighing the convenience of the witnesses presented, the Court finds that this factor weighs against transfer as to Amazon.

### b. Honeywell

In the Honeywell briefing concerning this factor, the parties mention the following people: Dr. Anne Wong, Tobin, Dr. Ronald (Tiejun) Wang, Professor Ximing Wang, and a variety of Honeywell witnesses spread across the East Coast. The Court has previously addressed all the

arguments Honeywell raises as to Dr. Anne Wong, Tobin, Dr. Ronald (Tiejun) Wang, and Professor Ximing Wang. This analysis equally applies to this factor for Honeywell and, therefore, the Court does not consider the location of Tobin or Professor Ximing Wang and will consider Dr. Anne Wong[27] and Dr. Ronald (Tiejun) Wang[28] to reside in Plano, Texas.

As to the Honeywell witnesses, as has been previously discussed, the division responsible for the design, development, marketing, and distribution of the Accused Honeywell Instrumentalities spun-off into its own entity called Resideo. Resideo is a Delaware corporation, with its principal executive offices and major operations split between Golden Valley, Minnesota and Melville, New York. The spin-off includes former Honeywell International subsidiaries ADI and AlarmNet. ADI was a wholesale distributor of the Accused Honeywell Instrumentalities prior to the spin-off and now continues to perform that function as part of Resideo. ADI has four sites within the Eastern District of Virginia located in Alexandria, Norfolk, Richmond, and Sandston. AlarmNet is, and was, responsible for certain communication aspects related to the Accused Honeywell Instrumentalities. AlarmNet is incorporated in Delaware and has its principal place of business[29] in Melville, New York. According to Honeywell, "[t]he most knowledgeable witnesses (now Resideo employees), responsible for the design, development, marketing, and distribution of the Accused [Honeywell] Instrumentalities . . . are located in or near Melville, New York and will remain there." *Resideo*, 4:18-cv-475, (Dkt. #35 at p.4). Plaintiff counters that Honeywell has not specifically identified any witnesses from these locations who will testify or how they are relevant to the case.

---

[27] Honeywell additionally argues that it would not be inconvenient for Dr. Anne Wong to travel to the Eastern District of Virginia because that is where she lived from at least 1999–2013. The Court is not convinced. Under this factor, the Court does not hold that a witness's prior residence lightens the burden in traveling to a certain venue.

[28] Honeywell additionally argues that Dr. Ronald (Tiejun) Wang is listed as a second owner on Dr. Anne Wong's property in Virginia. But as identified before, Dr. Anne Wong has rented out her apartment and listed her house for sale. Thus, this has no bearing on the analysis.

[29] The Court notes that Honeywell uses the phrase main place of business, as opposed to principal place of business.

As an initial matter, the Court agrees that Honeywell has not offered any explanation, justification, or reasoning why any witness from ADI, a wholesale distributor, will be relevant to this case. Thus, the Court does not consider the fact that ADI has locations within the Eastern of District of Virginia to be persuasive for this factor.

Moreover, while specifically identifying witnesses to testify is required for the Court to perform a proper convenience analysis, the Court finds Honeywell has, at the very least, demonstrated a strong likelihood that there will be relevant witnesses located in Melville, New York. *See Seven Networks*, 2018 WL 4026760, at *5; *Evolutionary Intelligence*, 2013 WL 8360309, at *7. The employees responsible for the design, development, marketing, and distribution of the Accused Honeywell Instrumentalities likely have relevant testimony to offer in this case. No party disputes that the Eastern District of Virginia is more convenient for witnesses located in New York and the Court agrees.

As such, the Court must determine how to weigh this factor considering the location of Dr. Anne Wong, Dr. Ronald (Tiejun) Wang, and Honeywell's likely witnesses. Plaintiff argues that because Honeywell only identifies witnesses in New York, which is simply closer to the Eastern District of Virginia and Plaintiff actually identifies witnesses in the Eastern District of Texas, the convenience of its witnesses outweighs Honeywell's. The Court disagrees. The focus of this factor is not whether there are witnesses located within the specific district, but instead assesses the convenience of the witnesses to testify at trial. As previously identified, "'[w]hile the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Seven Networks, LLC*, 2018 WL 4026760 at *12 (quoting *Godo Kaisha IP Bridge 1*, 2017 WL 750290, at *5; *accord Frito-Lay N. Am.*, 867 F. Supp. 2d at 870–71. The only

non-party witness here is Dr. Ronald (Tiejun) Wang. However, considering the facts of the case, that Dr. Ronald (Tiejun) Wang stays with his sister, Dr. Anne Wong who is a party witness, the weight to be given the non-party witness is reduced. The Court, however, is mindful that "[a] case should not be transferred if the only practical effect is to shift inconvenience from the moving party to the nonmoving party." *Goodman Co., L.P*, 396 F. Supp. 2d at 776 (quotations omitted). With all that in mind, the Court finds this factor to be neutral for Honeywell.

### c. HTC

In the HTC briefing concerning this factor, the parties discuss Dr. Anne Wong and Dr. Ronald (Tiejun) Wang. The parties disagree about where the Court should consider these witnesses to be located. HTC also acknowledges that the cost of its witnesses, as it is headquartered in Taipei, Taiwan is likely neutral. As the Court has previously explained, it will not consider Dr. Anne Wong and Dr. Ronald (Tiejun) Wang to be located in a state where they do not reside in analyzing the convenience of witnesses. Accordingly, this factor weighs against transfer, as it relates to HTC.

### d. Vector

In the Vector briefing concerning this factor, the parties mention the following people: Halal, Tobin, Dr. Ronald (Tiejun) Wang, Dr. Anne Wong, Professor Ximing Wang, and Vector witnesses who are located in Virginia and Pennsylvania.[30] The Court previously addressed Professor Ximing Wang, Halal, and Tobin's relevance to Vector's case and has previously

---

[30] In its sur-reply, Plaintiff also argues that Vector's website suggested that its supplier of relevant hardware for its security products, and specifically the Accused Vector Instrumentalities, is a company formerly known as 2GIG Technologies, which is now part of Network Security & Control LLC, located in California. The Court finds that Plaintiff raised the witnesses related to this supplier late, not giving Vector a chance to respond to the new witnesses. Therefore, the Court does not consider this in its analysis.

addressed the arguments presented about Dr. Anne Wong and Dr. Ronald (Tiejun) Wang's location and that analysis equally applies to this factor concerning Vector.

As to Vector's witnesses, Vector maintains that its likely witnesses who have relevant information on marketing, finances, and the Accused Vector Instrumentalities and related hardware are located in Fairfax, Virginia and Warrendale, Pennsylvania. Vector contends that it is unlikely that any witnesses will come from its small branch offices located in the Eastern District of Texas as these branches serve less than one percent of Vector's residential customers and only employ ten people. Plaintiff counters that Vector did not identify specific witnesses that would be relevant from Virginia or Pennsylvania and criticizes Vector for only supplying evidence in relation to its Authorized Dealer Division, which only makes up thirty-three percent of the business. However, as the Court similarly concluded with Honeywell, although Vector did not provide specific names of witnesses, it has provided evidence that the employees in this division of its company will likely provide testimony that will be relevant at trial in this case. Plaintiff also challenges the fact that because there are no specific witnesses identified, it suspects that most relevant witnesses will actually be in Pennsylvania as opposed to Virginia. The Court finds that regardless of whether the witnesses are in Pennsylvania or Virginia, the Eastern District of Virginia presents the more convenient forum for Vector's witnesses.

Thus, the Court must decide the weight of this factor, considering Dr. Anne Wong, Dr. Ronald (Tiejun) Wang, and Vector's likely witnesses. For the same reasons considered by the Court in determining how to weigh this factor for Honeywell, the Court finds this factor is neutral.[31]

---

[31] Although Vector likely has some witnesses located in the Eastern District of Virginia, whereas Honeywell just had witnesses close to the Eastern District of Virginia, the Court does not find this fact to change the analysis.

## 4. Other Practical Problems

Although not an enumerated factor, judicial economy can be considered when determining whether it is appropriate to transfer a case in the interest of justice. *In re Volkswagen of Am., Inc.* ("*Volkswagen III*"), 566 F.3d 1349, 1351 (Fed. Cir. 2009). The Court must use the facts of every case individually to determine the importance of this factor. *See Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)) (holding "[c]onsideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result."); *but see In re Zimmer*, 609 F.3d 1378 (explaining that the convenience considerations may outweigh judicial economy when the overlap between cases is slight). Both Plaintiff and Defendants contend that this factor weighs in their favor. The Court addresses both sides' arguments in turn.

### a. Defendants' Position

Defendants[32] first argue that this factor supports transferring the case to the Eastern District of Virginia, specifically to Judge Liam O'Grady, because Judge O'Grady is familiar with the same or similar technology. Amazon and Vector additionally argue that Plaintiff's behavior in this case amounts to gamesmanship and runs afoul of systemic integrity and fairness. The Court analyzes each argument separately.

### i. Eastern District of Virginia's Familiarity

According to Defendants, the patents and products that are asserted in this case are the same or similar to the patents that were asserted and products accused in prior cases filed in the

---

[32] Honeywell discusses this argument under this private interest factor, creates an additional public interest factor of judicial economy, and finally the public interest factor of "the familiarity of the forum with the law that will govern the case." The Court does not address the public interest factor of judicial economy, as that is what it is addressing as a private interest factor. Further, as all other parties agree that the familiarity of the forum with the law that will govern the case is neutral, the Court finds that its analysis in this factor equally applies to Honeywell's argument for the familiarity factor and, as such, does not specifically address this argument under that factor.

Eastern District of Virginia. Plaintiff maintains that the patents asserted here are different from the first suits it filed in the Eastern District of Virginia, that the second suits are irrelevant, and that any related claim or product examined from the first suits were not examined enough to create any specialized knowledge. To address the arguments surrounding judicial efficiency, the Court must discuss the prior cases filed by Plaintiff in the Eastern District of Virginia.

### aa. Facts

In February 2016, Plaintiff, who at the time was VIS, filed its first complaint against HTC and its subsidiary HTC America, Inc. ("HTCA"). VIS asserted that HTC and HTCA infringed the '492 Patent Family with its HTC smartphones, mobile phones, and tablet products ("*HTC I*"). The case was initially assigned to the Honorable Henry C. Morgan in the Alexandria Division.

In July 2016, VIS filed a patent infringement suit against Amazon in the Eastern District of Virginia, and the case was assigned to Judge O'Grady. Plaintiff asserted that Amazon infringed the '492 Patent Family, the '398 Patent, U.S. Patent No. 9,369,844 ("the '844 Patent"), and U.S. Reissue Patent No. RE46,140 ("the '140 Patent")[33] ("*Amazon I*"). VIS alleged that Amazon infringed the '492 Patent Family with its Fire TV and Fire Tablet products, that Amazon infringed the '398 Patent with its Fire TV products, that Amazon infringed the '844 patent with the Dash Button, and, finally, that Amazon infringed the '140 Patent with the Amazon Pay Service. In October 2016, based on the similarities and in the interest of judicial economy, Judge Morgan transferred *HTC I* to Judge O'Grady to be handled simultaneously with *Amazon I*.[34]

Both HTC and Amazon moved to dismiss the '492 Patent Family based on 35 U.S.C. § 101 grounds. Judge O'Grady granted the motions finding the '492 Patent Family was not directed to

---

[33] Plaintiff added the '140 Patent after Judge O'Grady granted the § 101 motion to dismiss as to the '492 Patent Family, as will be further detailed.
[34] *HTC I* and *Amazon I* remained separate cases.

patent-eligible subject matter ("the § 101 Order"). *Va. Innovation Scis. v. Amazon.com, Inc.* ("*Amazon I*"), 227 F. Supp. 3d 582 (E.D. Va. 2017). Judge O'Grady issued his ruling in *Amazon I* and entered an order that adopted the same ruling in *HTC I*.[35]

As the '492 Patent Family was the only patent family at issue in *HTC I*, this decision concluded *HTC I*. However, *Amazon I* proceeded against the '398 Patent, the '844 Patent, and the '140 Patent. Subsequently, Judge O'Grady issued a claim construction order, construing eleven claim terms contained in the three remaining patents ("the Claim Construction Order"). *Amazon I*, No. 1:16-cv-861, 2017 WL 3599642 (E.D. Va. Aug. 18, 2017). In so construing, Judge O'Grady rejected VIS's proposed construction for terms that were directly tied to VIS's contention for infringement on the '398 Patent; identified that VIS's proposed constructions as to the '844 Patent ran "contrary to the overwhelming thrust of the patent"; and determined that the '140 Patent lacked detail concerning a term that was directly related to whether the patent was eligible under § 101. *See generally id.* Following the Claim Construction Order, VIS stipulated to noninfringement of the '844 Patent but maintained its right to appeal the Claim Construction Order. Subsequently, Judge O'Grady resolved competing motions for summary judgment, determining that Amazon was not infringing the '398 Patent and the '140 Patent was invalid under § 101 based on the Claim Construction Order.[36]

---

[35] VIS appealed these rulings. The Federal Circuit combined the appeal from *Amazon I* and *HTC I*. *Innovations Scis., Inc. v. HTC Corp.*, 718 F. App'x 988 (Fed. Cir. 2018). The Federal Circuit affirmed Judge O'Grady's ruling on the motions to dismiss pursuant to § 101 as to the '492 Patent Family. *Id.*

[36] Plaintiff appealed these rulings. On July 2, 2019, the Federal Circuit issued its ruling on these appeals. *Innovation Scis, LLC v. Amazon.com, Inc.*, 2018-1495, 2019 WL 2762976 (Fed. Cir. July 2, 2019). The Federal Circuit affirmed Judge O'Grady's grant of summary judgment as to the '140 Patent and the '398 Patent. *Id.* at *1–4, *9–10. As to the '844 Patent, the Federal Circuit affirmed three of the four challenged terms Judge O'Grady construed in the Claim Construction Order. *Id.* at *4–8. Based on this decision, the Federal Circuit affirmed the noninfringement ruling on one independent claim, but as to independent claim 35 and 52 of the '844 Patent, the Federal Circuit maintained that it could not determine whether Plaintiff's stipulation was based on one term or all four, and thus decided to vacate and remand the case for further proceedings. *Id.* at *8.

In August 2017, in the midst of *Amazon I*, VIS filed a second patent infringement suit against both Amazon and HTC, separately, in the Eastern District of Virginia. The second Amazon case was assigned to the Honorable Mark S. Davis in the Norfolk Division ("*Amazon II*"). In *Amazon II*, VIS asserted that Amazon infringed the '398 Patent, the '844 Patent, the '918 Patent, and the '443 Patent. At this time, VIS alleged that Amazon infringed the '398 Patent and '844 Patent with its Fire TV, Fire Phones, and Dash Replenishment Service. Moreover, VIS maintained that Amazon infringed the '918 Patent and the '443 Patent with the Fire TV, Fire Tablets, Fire Phones, Amazon Echo, Dash Buttons, and Dash Replenishment Service. The second HTC case was assigned to the Honorable John A. Gibney, Jr. ("*HTC II*") in the Richmond Division. In *HTC II*, VIS alleged that HTC and HTCA infringed the '918 and '398 Patents with HTC's smartphones, mobile phones, HTC Media Link HD, and tablet products including Google Nexus 9, HTC MHL-HDMI adapter, and HTC EVO 3D Dock. After a hearing on the motions for summary judgment in *Amazon I*, VIS voluntarily dismissed *Amazon II* and *HTC II* without prejudice.[37]

In the present cases, Plaintiff asserts that Amazon infringes the '443 Patent and the '798 Patent Family. *Amazon III*, 4:18-cv-474, (Dkt. #1). Plaintiff alleges that Amazon infringes the '798 Patent Family with the Accused Echo Instrumentalities, the Accused Dash Instrumentalities, and the Accused Fire TV Instrumentalities and infringes the '443 Patent with Accused Dash Instrumentalities. *Amazon III*, 4:18-cv-474, (Dkt. #1). Plaintiff also asserts that HTC infringes the '798 Patent Family. *HTC III*, 4:18-cv-476, (Dkt. #1). Plaintiff alleges that HTC infringes the '798 Patent Family with the Accused HTC Instrumentalities. *HTC III*, 4:18-cv-476, (Dkt. #1). Finally, Plaintiff asserts that Vector and Honeywell infringes the '983 Patent. *Resideo*, 4:18-cv-475, (Dkt. #1); *Vector*, 4:18-cv-477, (Dkt. #1). Plaintiff alleges that Honeywell infringes the patent

---

[37] The Court does not comment on the relation between the two events; the Court merely presents a timeline.

with the Accused Honeywell Instrumentalities.  *Resideo*, 4:18-cv-475, (Dkt. #1).  Plaintiff alleges Vector infringes the patent with the Accused Vector Instrumentalities.  *Vector*, 4:18-cv-477, (Dkt. #1 at p. 4).

### ba.    Analysis

Defendants first contend that all of the patents-in-suit have been asserted in or are related to patents asserted in the previous Eastern District of Virginia cases.[38]  Plaintiff argues that the Court should not consider any overlap[39] between this case and *Amazon II* and *HTC II* because these cases were not assigned to Judge O'Grady, and the cases were voluntarily dismissed without prejudice in an early stage of litigation.  The Court agrees and, as such, only looks to arguments surrounding overlap between this case and *Amazon I* and *HTC I*.[40]

Defendants next contend that even without looking to *Amazon II* or *HTC II*, all of the patents asserted in this case are related to patents asserted in *Amazon I* and *HTC I* and the products accused are the same or similar to those accused in *Amazon I* and *HTC I*, specifically referencing the '492 Patent Family, the '398 Patent, and the '844 Patent.  Plaintiff maintains that there is not a sufficient overlap to warrant a transfer in this case.

---

[38] The Court combines the arguments of Defendants for the sake of efficiency.  However, the Court will specifically identify arguments made by specific Defendants, as necessary.  Moreover, the Court notes that Amazon and Vector focus on the Amazon line of cases only; HTC addresses both the HTC and Amazon line of cases; and, Honeywell refers to the Amazon line of cases, the HTC line of cases, but additionally adds a case against LG Electronics, Inc. and a line of cases against Samsung Electronics Company.

[39] The Court acknowledges that the '443 Patent and the '918 Patent were asserted in *Amazon II* and the '918 Patent was asserted in *HTC II*, but as the Court holds, overlap between *Amazon II* and *HTC II* are not relevant to the present analysis.

[40] Additionally, Honeywell maintained that the Court should consider the Samsung line of cases and the LG case. However, Samsung similarly was not in front of Judge O'Grady.  As such, the argument Honeywell makes concerning determining applicable priority dates and evaluating validity under 35 U.S.C. §§ 102 and 103 for patents related to the '983 Patent, citing only the case against Samsung, is unpersuasive. The LG case was filed in front of Judge O'Grady, *Virginia Innovations Sciences, Inc. v. LG Electronics, Inc., et al.*, 1:16-cv-128 (E.D. Va. Feb. 16, 2016); however, there are no specific arguments presented as to the similarities between this case and the present case, aside from the fact that the '492 and '711 Patents were asserted in that case.

"This factor concerns judicial economy, including duplicative suits involving the same or similar issues that may create practical difficulties." *Lifestyle Sols., Inc. v. Abbyson Living, LLC*, No. 2:16-cv-1290, 2017 WL 5257006, at *4 (E.D. Tex. Nov. 10, 2017) (citing *Volkswagen III*, 566 F.3d at 1351 (Fed. Cir. 2009). "These problems especially deserve consideration when the same patent is simultaneously being litigated in another district." *Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 737 (E.D. Tex. 2005) (citations omitted); *accord Cont'l Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 26 (1960) (explaining "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent."); *Volkswagen III*, 566 F.3d at 1351; *TiVo Inc. v. Verizon Commc'ns, Inc.*, No. 2:09-cv-257, 2010 WL 11468564, at *9 (E.D. Tex. Sept. 17, 2010).

The benefits courts are attempting to actualize in keeping related cases in the same district include the ability to save time, energy, and money. *See Cont'l Grain Co.*, 364 U.S. at 26. For example, in patent cases: the parties could coordinate discovery; courts could consolidate cases for pretrial purposes; and the parties could save expense by participating in one claim construction hearing and briefing. The Court finds these benefits will not be realized in this case.

As an initial matter, there is no dispute that *HTC I* is not being actively litigated. The Eastern District of Virginia issued its ruling dismissing this case in 2017, which was appealed and affirmed by the Federal Circuit in 2018. As such, *HTC I* is complete.

As to *Amazon I*, the Court notes that on July 2, 2019, the Federal Circuit remanded an appeal in *Amazon I*. As previously explained, the case was remanded as to the '844 Patent based on the Federal Circuit finding error in the construction of one disputed term. However, Plaintiff maintains that it will petition the Federal Circuit for rehearing as to its determination on the term

"This factor concerns judicial economy, including duplicative suits involving the same or similar issues that may create practical difficulties." *Lifestyle Sols., Inc. v. Abbyson Living, LLC*, No. 2:16-cv-1290, 2017 WL 5257006, at *4 (E.D. Tex. Nov. 10, 2017) (citing *Volkswagen III*, 566 F.3d at 1351 (Fed. Cir. 2009). "These problems especially deserve consideration when the same patent is simultaneously being litigated in another district." *Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 737 (E.D. Tex. 2005) (citations omitted); *accord Cont'l Grain Co. v. The Barge FBL–585*, 364 U.S. 19, 26 (1960) (explaining "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent."); *Volkswagen III*, 566 F.3d at 1351; *TiVo Inc. v. Verizon Commc'ns, Inc.*, No. 2:09-cv-257, 2010 WL 11468564, at *9 (E.D. Tex. Sept. 17, 2010).

The benefits courts are attempting to actualize in keeping related cases in the same district include the ability to save time, energy, and money. *See Cont'l Grain Co.*, 364 U.S. at 26. For example, in patent cases: the parties could coordinate discovery; courts could consolidate cases for pretrial purposes; and the parties could save expense by participating in one claim construction hearing and briefing. The Court finds these benefits will not be realized in this case.

As an initial matter, there is no dispute that *HTC I* is not being actively litigated. The Eastern District of Virginia issued its ruling dismissing this case in 2017, which was appealed and affirmed by the Federal Circuit in 2018. As such, *HTC I* is complete.

As to *Amazon I*, the Court notes that on July 2, 2019, the Federal Circuit remanded an appeal in *Amazon I*. As previously explained, the case was remanded as to the '844 Patent based on the Federal Circuit finding error in the construction of one disputed term. However, Plaintiff maintains that it will petition the Federal Circuit for rehearing as to its determination on the term

"updated condition of merchandise", among other things.  *Amazon III*, 4:18-cv-474, (Dkt. #160).

According to Plaintiff, if the Federal Circuit does not grant rehearing and then reverse its decision

on this term, "Innovation has concluded that it cannot maintain its allegations of infringement

under the '844 Patent, the only infringement allegation being remanded to the district court[.]"

*Amazon III*, 4:18-cv-474, (Dkt. #160).  As such, there are not co-pending suits at the district court

level involving the same or similar patents or issues.

Even if the Federal Circuit grants rehearing and reverses the decision of the Federal Circuit,

which could take a significant amount of time, the typical judicial economy courts are trying to

accomplish would not be realized from transferring the case.  Transferring the present cases to the

Eastern District of Virginia will result in either one of three scenarios.  First, the Eastern District

of Virginia may attempt to actualize the benefits of trying cases together and stay the pending cases

pending the rehearing in *Amazon I*.  This would not be an efficient use of the parties' time in this

case and could result in these cases languishing.  Second, the Eastern District of Virginia may

choose to proceed with the present cases, while *Amazon I* is on rehearing, and litigating the cases

at different times, thereby not creating the judicial efficiency this factor is aimed to accomplish.

Third, the Federal Circuit either does not grant rehearing or grants rehearing and does not reverse

its prior determination.  In this instance, Plaintiff will not pursue its allegations as to the '844

Patent and there will be no co-pending infringement suits.  Therefore, the Court finds that there is

not much judicial economy to gain from transferring the case.

Moreover, the difficulties that courts are trying to avoid when analyzing this factor include

inconsistent rulings and claim constructions.  *Invitrogen Corp. v. Gen. Elec. Co.*, 6:08-cv-112,

2009 WL 331891, at *4 (E.D. Tex. Feb. 9, 2009).  Judge O'Grady has already issued his orders in

the previous cases making various decisions on the patents asserted in *Amazon I* and *HTC I*.  The

Court is aware of the previous cases and their corresponding orders. "If some overlap does arise, the Court can take appropriate action to minimize the risk of judicial inefficiency and inconsistent claim construction by consulting [Judge O'Grady's] Orders in the [previous cases]." *j2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. 6:08-cv-211, 2008 WL 5378010, at *6 (E.D. Tex. Dec. 23, 2008); *accord ConnecTel, LLC v. Cisco Sys., Inc.*, No. 2:04-cv-396, 2005 WL 366966, at *4 (E.D. Tex. Feb. 16, 2005) (maintaining that "the gains in judicial economy are at best minimal, and possibly non-existent since such gains could be realized by simply referring to [a previous judge's] claim construction, if necessary."). Even further, Plaintiff agrees that the Claim Construction Order, as affirmed, is "instructive if not controlling here." *Amazon III*, 4:18-cv-474, (Dkt. #159 at p. 4). Thus, the Court finds that, regardless of the knowledge the Eastern District of Virginia and Judge O'Grady have of the case, continuing with the case in the Eastern District of Texas would not create difficulties or create the risk of inconsistent claim constructions, which appears to be a primary concern of this factor. *See Lifestyle Sols., Inc.*, 2017 WL 5257006, at *4; *Invitrogen Corp.*, 2009 WL 331891, at *4.

Nevertheless, courts have held that if there is a significant overlap between the patents asserted and products accused in one suit as one previously litigated in another court, judicial economy may support a transfer. The Court first points out that there are no patents asserted in this case that were asserted in *Amazon I* or *HTC I*, which distinguishes this case from several of the cases Defendants cited to support their argument. *See In re Eli Lilly & Co.*, 541 F. App'x 993, 994 (Fed. Cir. 2013) (giving deference to a district court's decision to transfer a case to a district court that had "prior familiarity with the patents and [the] opportunity to resolve two cases involving the same product and patents."); *In re Vistaprint, Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010) (finding no error in refusing to transfer a patent case when the district court "became very

familiar with the only asserted patent and the related technology during a prior litigation."); *MGM Well Servs., Inc. v. Prod. Control Servs., Inc.*, No. 6:10-cv-88, 2010 WL 11553307, at *6 (E.D. Tex. Nov. 22, 2010) (transferring a case to a district where a judge had previously held a *Markman* hearing, issued a claim construction order, presided over a bench trial, and issued findings of facts and conclusions of law over one of the patents in suit with the remaining two patents being overwhelmingly similar); *Invitrogen Corp.*, 2009 WL 331891, at *5 (transferring a case when another district court was "'intimately familiar' with the technology in [the] case, having construed three of the six patents at issue and presided over a jury trial," with the remaining three patents being "continuations of the patents which have been construed."); *Zoltar Satellite*, 402 F. Supp. 2d at 735–37 (transferring a case where three out of four asserted patents overlapped with a previously filed suit, and the plaintiff was unable to identify any differences in the technology).

However, there are cases in which the patents in the two cases are simply "closely related," and the district court decided to transfer the case based on judicial economy. *See, e.g.*, *Kinetic Concepts, Inc. v. Medela AG*, No. 2:07-cv-187, 2008 WL 112120, at *2 (E.D. Tex. Jan. 9, 2008) (transferring case when previous court held a twenty-two-day trial on patents that were related to the patents-in-suit). In determining whether to transfer a case based on closely related patents, "a court must consider the extent to which transfer will increase judicial economy and lower the risk of inconsistent adjudication." *j2 Glob. Commc'ns*, 2008 WL 5378010, at *5. "At all times, the burden falls on the party seeking transfer to show that transfer is 'clearly more convenient.'" *j2 Glob. Commc'ns*, 2008 WL 5378010, at *5 (quoting *In re Volkswagen II*, 545 F.3d at 315). "[T]ransfer is most appropriate when one court has extensive familiarity with the technology or the legal issues involved, a claim construction opinion has been prepared, and the cases involve the same or similar defendants with the same or similar products." *Invitrogen Corp.*, 2009 WL

331891, at *4.[41]  "On the other hand, if the overlap between cases is small, then the risk of duplicative judicial work and inconsistent claim construction is also small." *Id.* (quotations omitted).  The Court addresses why it finds the overlap in this case is slight by first addressing the similarities in defendants, then turning to the products accused, and finally focusing on Judge O'Grady's opportunity to become familiar with the specific patents, technology, and issues presented and the Claim Construction Order.

As to the defendants, there are currently four cases before the Court, which have been consolidated for pretrial purposes.  In total between the four cases, there are six defendants, including the parties Plaintiff added in *Amazon III* in its Amended Complaint.  Two defendants, HTC and Amazon, were present in the previous Eastern District of Virginia cases.  Two defendants, Vector and Honeywell, are distinct from the former cases.

As to the products accused in *Amazon I* and *HTC I* and those accused in the present case, the Court acknowledges that there are certain similarities and overlap; however, there are also distinctions.  Starting with *Amazon I*, the Accused Dash Instrumentalities were asserted in *Amazon I.  Amazon III*, 4:18-cv-474, (Dkt. #28, Exhibit 4).  Accused Fire TV Instrumentalities were also accused in *Amazon I*; however, the Court notes that the versions of the devices are different and now have Alexa capabilities, which differentiates them from those in *Amazon I.  Amazon III*, 4:18-cv-474, (Dkt. #28, Exhibit 4).  Finally, as agreed by Amazon, the Accused Echo Instrumentalities were not asserted in the first case.  Moving to *HTC I*, while there are smart phones accused in both cases, the products are different versions, and in fact the HTC U11 and U12, which are accused in this case, were not produced at the time of *HTC I*.  The new products include Alexa technology, which was not available on HTC smart phones at the time.  Finally, regarding the products accused

---

[41] The Court notes that this rule comes from a case that had overlapping patents, as opposed to merely closely related patents.

against Vector and Honeywell, the Accused Vector Instrumentalities and Accused Honeywell Instrumentalities were not asserted in *Amazon I* or *HTC I*. Judge O'Grady was never presented with a home security system of any kind in any of the previous cases at issue in the Eastern District of Virginia.

As to the familiarity with the patents, technology, and issues presented in this case, the Court finds that Judge O'Grady does not have extensive familiarity with the technology or the legal issues involved. The Court details the reasons why starting with timing, then turning to the nature of the proceedings—manners of disposition—in the Eastern District of Virginia cases, and then, finally, looking at the actual overlap in the claims asserted in *Amazon I*, *HTC I*, and the present cases.

As an initial matter, *Amazon I* was filed in July 2016, *HTC I* was transferred to Judge O'Grady in October 2016, and Judge O'Grady issued his rulings in these cases in 2017. The Court finds a significant amount of time has passed, which reduces the value of judicial economy in the case, as familiarity with the case, patents, and technology diminish over time. *Am. Vehicular Scis. LLC v. Toyota Motor Corp.*, No. 6:12-cv-404, 2013 WL 8180623, at *6–7 (E.D. Tex. June 12, 2013), *mandamus granted on other grounds*, *In re Toyota Motor Corp.*, 747 F.3d 1338 (Fed. Cir. 2014).

Aside from the passage of time, the Court agrees with Plaintiff that the ways in which *Amazon I* and *HTC I* were disposed of reduces Judge O'Grady's familiarity with the technology and legal issues involved in this case. The Court addresses the disposition of each patent or patent family in turn.

As to the '492 Patent Family, Judge O'Grady granted a motion to dismiss pursuant to § 101. Although HTC argues that the patents asserted in this case are directed to the same abstract

idea, Judge O'Grady decided the § 101 Order under step two of the *Alice*/*Mayo* test, which focuses on the specific claims of the patents asserted as opposed to looking at the general focus of the patent.[42]  Judge O'Grady granted the motion finding the claims asserted in the '492 Patent Family presented functional terms without presenting specific instructions, rendering the claims abstract; however, Judge O'Grady noted that modifications to the patent "could conceivably render the claims patent-eligible."  *Amazon I*, 227 F. Supp. 3d at 600, 603.  As argued by Plaintiff, the § 101 Order was decided entirely based on "what [was] claimed" and "*how* the invention [was] claimed." *Amazon III*, 4:18-cv-474, (Dkt. #24 at p. 16) (emphasis in original).[43]  Accordingly, new claims and modifications to the related claims asserted will present entirely new issues for the Court to decide, should there be a § 101 challenge.  Not only will there be new issues, but due to an early dismissal based on § 101, Judge O'Grady was never exposed to claim construction of the '492 Patent Family or determinations of whether there was any infringement based on the '492 Patent Family in *Amazon I* or *HTC I*.  Thus, Judge O'Grady would not have had the opportunity to become familiar with claim construction or infringement issues regarding the '492 Patent Family, or related claims.  *See In re Echostar Corp.*, 388 F. App'x 994, 995 (Fed. Cir. 2010).

As to the '398 and '844 Patents, Judge O'Grady issued the Claim Construction Order, construing claims against VIS.  Based on this negative claim construction, VIS stipulated to noninfringement of the '844 Patent and Judge O'Grady granted a motion for summary judgment finding noninfringement of the '398 Patent.  Accordingly, Judge O'Grady's familiarity with these patents lie in his claim construction order and the effect these constructions had on VIS's patent

---

[42] Judge O'Grady did analyze the '492 Patent Family under the first step of the *Alice*/*Mayo* framework and determined that the '492 Patent Family was directed toward a general focus and was an abstract idea.  *Amazon I*, 227 F. Supp. 3d at 596–97.  However, this was not where the final decision of the case rested.  *Id.* at 597–605.  Moreover, as previously detailed, the Court is aware of this ruling and, if a § 101 challenge presents itself in this case, the Court can reference Judge O'Grady's reasoning, if necessary, to reduce the risk of inconsistent rulings.
[43] Plaintiff makes this argument in response to multiple motions; however, the Court only cites to one.

claims in *Amazon I*. Judge O'Grady construed nine terms from the '398 and '844 Patents, and out

of the nine terms, two terms overlap in the claims asserted in the present case: "item status signal"[44]

and "unique identifier."[45] Accordingly, the Court finds that Judge O'Grady's familiarity with the

issues presented in *Amazon I* do not have a strong overlap with the issues that will be presented in

the present case.

Moreover, this demonstrates why, even though Judge O'Grady issued the Claim

Construction Order in *Amazon I*, that is not determinative based on the facts of this case.

> [T]his case involves more than just construing claims that were previously
> construed . . . . Four patents, [which are different from those asserted in *HTC I* and
> *Amazon I*], with [several different] claims to construe, are at issue here. Given the
> number of claims at issue, Judge [O'Grady's] previous claim construction does not
> determine the fate of this case.

*ConnecTel*, 2005 WL 366966, at *4. Additionally, the Court is well aware of the previous orders

and can reduce any risk of inconsistent rulings by referring to the Claim Construction Order. *j2*

*Glob. Commc'ns*, 2008 WL 5378010, at *6; *ConnecTel,*, 2005 WL 366966, at *4.

Regarding the actual overlap of the issues presented in the cases, the Court turns to each

Defendant's arguments separately.

Amazon focuses its argument on the similarities between the language in the claims

asserted to compare the '798 Patent Family to the previously litigated '492 Patent Family and the

'443 Patent to the previously litigated '844 Patent. Out of roughly thirty claims[46] asserted from

the '492 Patent Family in *Amazon I*, Amazon only compares one claim asserted in *Amazon I* with

---

[44] Judge O'Grady's construction of "item status signal" was affirmed on appeal.

[45] Judge O'Grady determined that "unique identifier" needed no construction and construed "unique identifier to mean "unique identifier."

[46] VIS alleged that Amazon directly and/or indirectly infringed, at least, the following claims: Claims 1 and 23 of the '492 Patent; Claims 1, 15, and 21 of the '711 Patent; Claims 1, 47, 59, and 67 of the '451 Patent; Claims 18, 21, 28 and 41 of the '814 Patent; Claims 15 and 19 of the '794 Patent; Claims 2, 8, 9, 16, 26, 27, 36, 41, 42, 43, 46, and 50 of the '471 Patent; Claim 34 of the '853 Patent; and Claims 1, 31, and 48 of the '611 Patent. *Amazon III*, 4:18-cv-474, (Dkt. #9, Exhibit 14).

one claim asserted here. *Amazon III*, 4:18-cv-474, (Dkt. #28, Exhibit 1 ¶ 17) (comparing claim 1 of the '798 Patent with claim 47 of the '451 Patent). The claim Amazon uses to compare the present case to *Amazon I* was not used as an exemplary claim in the § 101 Order. *See generally Amazon I*, 227 F. Supp. 3d 582. Not only did Amazon present one claim comparison, the two claims were not identical as claim 1 of the '798 Patent had undergone modifications since the '451 Patent. *Amazon III*, 4:18-cv-474, (Dkt. #28, Exhibit 1 ¶ 17). Moreover, as to the '443 Patent, while Amazon shows the similarities between the claim language, it ignores the vast differences, including the addition of claim limitations. *Amazon III*, 4:18-cv-474, (Dkt. #28 at ¶ 14); (Dkt. #30 at pp. 4–5). Amazon did not meet its burden to show significant overlap that would result in Judge O'Grady having extensive familiarity with the issues, technology, or patents-in-suit. *See In re Echostar Corp.*, 388 F. App'x at 995 (finding mandamus relief not warranted when district judge did not transfer case when only four out of thirty-six patent claims overlapped in the two suits); *j2 Glob. Commc'ns*, 2008 WL 5378010, at *5 (discussing the burden placed on the movant).

As opposed to a focus on claim language, Vector's first argument focuses on the actual familial relationship between the '983 Patent and patents previously asserted. Vector avers that because the '983 Patent is a continuation-in-part of the '492 Patent, a continuation-in-part of the '398 Patent, and shares a patent application with the '844 Patent, the patents are closely related. However, as identified by Plaintiff, the '983 Patent and the '492 Patent are separated by eleven generations, including three continuations-in-part. Further, the '398 Patent, and shared patent application are even farther down the line of prior art and add additional continuations-in-part. Accordingly, the Court is not convinced that simply because the '983 Patent is within the same generational line of the '492 Patent, the '398 Patent, and shared patent application with the '844

Patent, that they are similar enough to find Judge O'Grady has extensive familiarity with the '983 Patent, such that the Court should transfer the case to promote judicial economy.

Vector and Honeywell also focus on the similarities in patent specifications and figures. Vector and Honeywell[47] argue that the '983 Patent shares several specifications and figures with the '844 Patent. However, as identified by Plaintiff, while there is some overlap between the specifications and figures, there is still a substantial amount of new specifications and figures. Vector and Honeywell did not show a significant overlap between the issues Judge O'Grady faced in its previous cases and what the Court will see in this case.

Finally, HTC's argument focuses on the similarities between the technologies asserted in the previous case and the present case. HTC asserts that the claims asserted in this case contain, at least, an element of signal conversion technology, which is what Judge O'Grady analyzed in the § 101 Order. HTC focuses its argument on Claims 9 and 99 of the '918 Patent.[48] Plaintiff responds that it is not alleging infringement of any claims based solely on signal conversion technology, thereby withdrawing any assertion of Claims 1, 9, and 99 of the '918 Patent. Plaintiff does, however, assert Claim 111 of the '918 Patent, which Plaintiff maintains is removed outside of signal conversion technology and into smart home technology, although Plaintiff admits it contains an element of signal conversion technology. As such, according to Plaintiff, Judge O'Grady is not familiar with the technology. The Court first acknowledges that although there are three patents asserted against HTC, HTC focuses on a few claims from one patent. Moreover, the Court agrees with Plaintiff that "[w]hether done by this Court or by Judge O'Grady, a district court will be

---

[47] The Court notes that Vector was more specific with its arguments, whereas Honeywell wrote in broader terms.
[48] The only argument regarding the '798 Patent is "VIS makes the identical infringement allegations with respect to the '798 Patent." *HTC III*, 4:18-cv-476, (Dkt. #22 at p. 12) (citing Dkt. #1 ¶¶ 49–50). It remains unclear whether HTC is comparing the infringement contentions regarding the '798 Patent to *HTC I* or to *HTC II*. Regardless, HTC did not meet its burden to demonstrate the overlap by merely referring the Court to the filings in the present case.

required to learn about the Alexa technology and the smart home technology patent claims asserted by Innovation from scratch." *HTC III*, 4:18-cv-476, (Dkt. #30 at p. 14). While there may be some overlap in the technology, HTC fails to meet its burden to show that the similarities in the technology were greater than the differences. *See j2 Glob. Commc'ns*, 2008 WL 5378010, at *5. Accordingly, the Court finds that Judge O'Grady is not extensively familiar with the smart home technology presented in this case to suggest judical economy would be increased by transferring the case.

### ii.    Systemic Integrity and Fairness

Amazon and Vector also argue that Plaintiff's "behavior is an affront to the 'factors of systemic integrity and fairness' that courts must consider when deciding whether to transfer." *Amazon III*, 4:18-cv-474, (Dkt. #9 at p. 18) (citations omitted). Amazon and Vector maintain that Plaintiff exclusively filed in the Eastern District of Virginia "until it lost there. [Plaintiff] chose to file its second suit against Amazon in Virginia, but dismissed it when it became clear it would lose. [Plaintiff's] attempt to re-assert the patents and claims in a different district lays its gamesmanship bare." *Amazon III*, 4:18-cv-474, (Dkt. #9 at p. 18) (citations omitted). The Court is unpersuaded. Plaintiffs are allowed to file a lawsuit wherever permitted by the Federal Rules of Civil Procedure. Additionally, as previously discussed, Amazon and Vector have not met their burden to show Plaintiff acted in an unsavory manner in this case.

### b.  Plaintiff's Position

Plaintiff argues that this factor weighs against transfer because the Eastern District of Texas is intimately familiar with Amazon and its products and because there are co-pending patent infringement cases here.

First, Plaintiff failed to adequately demonstrate how the similarities between cases in other divisions of this district[49] would promote judicial economy. Thus, the Court is not convinced that any judicial economy is gained based on the prior cases against Amazon in the Eastern District.

Regarding the claim that the co-pending infringement actions are all pending in the Eastern District of Texas, the Court is considering all of the motions together. As such, the Court does not find the fact that they are all pending to be a reason, by itself to weigh against transfer. However, the Court does find that this factor is concerned with having litigation involving the same patents and issues pending at the same time being litigated in the same court. Here, the four suits involve the same patents and will likely present the same or similar issues, demonstrated by the fact that the Court consolidated all four cases for pretrial purposes.

The Court finds that some of the convenience factors as to Honeywell and Vector do favor transfer; however, finding that all factors weigh against transfer or are neutral as to Amazon and HTC. Accordingly, to the extent, any one case would be more convenient in the Eastern District of Virginia, this factor would weigh strongly against transfer, considering the fact that the patents asserted are the same.[50] *See Regents of Univ. of Cal.*, 119 F.3d at 1565 (holding "[c]onsideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.").

---

[49] There are about 6 out of the 140 cases, excluding the one currently pending, related to Amazon and its products that were filed in the Sherman Division. Even as to these cases, Plaintiff has not met its burden to show any connection between the patents, products, or technology.

[50] The Court does not find that this factor is determinative, but simply includes the finding when weighing all the public and private interest factors together.

### c. Conclusion

Based on the Court's analysis of both Plaintiff's and Defendants' arguments, the Court finds this factor to mostly be neutral; however, to the extent necessary, finds this factor weighs against transfer.

### D. Public Interest Factors

The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of law or in the application of foreign law." *Volkswagen II, Inc.*, 545 F.3d at 315.

### 1. Administrative Difficulties Flowing from Court Congestion

In considering this factor, "the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech, Inc.*, 566 F.3d at 1347 (citations omitted). The Federal Circuit has noted that this factor appears to be the most speculative, and case-disposition statistics may not always tell the whole story. *Id.*

Defendants maintain that this factor weighs in favor of transferring the case to the Eastern District of Virginia because the median time for civil cases in the Eastern District of Virginia to get to trial is around twelve months compared to around nineteen months[51] in the Eastern District of Texas. Amazon and Vector argue that the Eastern District of Virginia is known as the "rocket docket" for its speed in getting cases to trial and also points out that the Eastern District of Virginia does preside over patent cases. Honeywell additionally avers that transferring the case to the Eastern District of Virginia would reduce the burden on the Eastern District of Texas because the

---

[51] Honeywell references that the median time to trial in the Eastern District of Virginia is 484 days compared to 728 days in the Eastern District of Texas.

Eastern District of Texas has substantially more civil filings, specifically patent filings. As such, Honeywell maintains the Eastern District of Virginia has more time to handle the case.

Plaintiff counters that the Eastern District of Texas is uniquely situated to administer these cases because of its intimate familiarity with patent cases and trials. Plaintiff asserts that between 2012 and 2018, the Eastern District of Virginia had only six patent jury trials and one patent bench trial, whereas the Eastern District of Texas presided over 103 patent jury trials and nineteen patent bench trials, with the Sherman Division alone presiding over twelve patent jury trials. Moreover, Plaintiff asserts that the number of patent filings in the Eastern District of Texas has actually decreased by almost twenty-eight percent, reducing filings overall by ten percent since 2017 with the Supreme Court of the United States' decision in *TC Heartland*, whereas the Eastern District of Virginia saw an increase. According to Plaintiff, the reduction in filings suggests that the Eastern District of Texas is better prepared to receive additional filings, and adding anymore to the Eastern District of Virginia would create a stronger burden.

While a case may proceed to trial slightly faster in the Eastern District of Virginia than the Eastern District of Texas, the Court finds the time difference negligible, considering the amount of complex patent litigation cases taking place within the Eastern District of Texas. Complex cases, including patent cases, generally need more time for discovery and take longer to get to trial based on the nature of the case. As such, the discrepancy in the slight time difference can be attributed to the volume of patent infringement cases within the Eastern District of Texas. Moreover, the Court notes that the Eastern District of Texas has Local Rules specifically for patent cases to help the cases move through the litigation process efficiently. Therefore, the Court finds this factor to weigh against transfer for all Defendants.

## 2. The Local Interest in Having Localized Interests Decided at Home

The second public interest factor is the local interest in having localized interests decided at home. *Volkswagen II*, 545 F.3d at 315. "'Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" *Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (quoting *Volkswagen I*, 371 F.3d at 206)). The mere sale of "several" or "some" of the allegedly infringing products in a given district is not enough to shift this factor in favor of one party. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008). The Court will look to the interests that each district has, starting with the Eastern District of Texas then turning to the Eastern District of Virginia.

Regarding the Eastern District of Texas's interest in the case, the briefing is similar among all the motions to transfer. Plaintiff maintains that the Eastern District of Texas has a stronger local interest in this case because the district has a strong interest in litigating patent suits owned by a Texas company and because the district has an interest in alleged infringement by a company with office, personnel, and business within it.[52] Defendants contest the allegations in a similar fashion; thus, the Court addresses the arguments together.

Regarding Plaintiff's location in the Eastern District of Texas, Defendants again argue that the Court should not afford any weight to Plaintiff's relocation. As the Court has previously determined, the Court will not disregard Plaintiff's relocation to Plano, Texas because Defendants did not meet its burden to show the relocation was an attempt to manufacture venue. Generally, when the plaintiff and owner of the patents-in-suit are located in a district, that district has a significant connection to the case. *Cooktek Induction Sys.*, 2016 WL 4095547, at *3 (citing *iFly Holdings, LLC v. Indoor Skydiving Ger. GMBH*, No. 2:14-CV-1080, 2015 WL 5909729, at *5

---

[52] HTC is not included in this argument, as Plaintiff and HTC agree that HTC is based in Taipei, Taiwan.

(E.D. Tex. Oct. 7, 2015) ("Texas residents have a strong interest in deciding a patent infringement dispute involving a patent owned by a Texas company.")).  While this is true, the Court cannot ignore the effect that the recent move has on the strength of the connection.  While the patent is owned by a Texas resident, the patent was not invented here and Dr. Anne Wong along with Plaintiff are recent Texas residents.  As such, while the Court does consider the fact that Plaintiff is located in Plano, Texas, it does not find this fact to create a significant connection based on the facts of this case.

Regarding the Defendants' locations, Amazon and Vector do not contest that they have locations in the Eastern District of Texas.  Honeywell did not contest that it had locations in the Eastern District of Texas; however, the Court is now looking at Resideo's connections, and Resideo does not maintain an office in the Eastern District of Texas.  While it is true that the Eastern District of Texas "has an interest in a case involving alleged patent infringement by a company with an office, personnel, and business within it," *E-System Design, Inc. v. Mentor Graphics Corp.*, No. 4:17-cv-682, 2018 WL 2463795, at *6 (E.D. Tex. June 1, 2018), the Court acknowledges that the offices, personnel, and businesses located in the Eastern District of Texas are not connected to the infringement or the accused products in this case.  Moreover, Amazon's fulfillment facility[53] located within the Eastern District of Texas is not unique to the Eastern District of Texas and similar ones can be found nationwide.  The Court disregards any interest that "could apply virtually to any judicial district or division in the United States[.]"  *Volkswagen II*, 545 F.3d at 318.

Regarding the local interest of the Eastern District of Virginia, all Defendants present the argument that the Eastern District of Virginia has expended time and interest in learning the patents

---

[53] Vector did not argue that the facilities it maintains are nationwide, such that there is a facility in virtually every district or division in the United Sates.

and technology asserted in this case. As the Court previously discussed, the Court does not find a substantial overlap between the present cases and those asserted in the Eastern District of Virginia. Just as the Court found this argument unpersuasive in the other practical problems factor, the Court is unpersuaded here.

Moreover, Honeywell (Resideo) and Vector both have facilities in the Eastern District of Virginia. Neither maintain their headquarters in the Eastern District of Virginia, but the facilities located in the Eastern District of Virginia are connected to the Accused Honeywell Instrumentalities and the Accused Vector Instrumentalities. "[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Acer Am. Corp.*, 626 F.3d at 1256. The Court finds that facilities associated with the design, development, and manufacturing of the accused products bear a significant connection.

Considering the local interests of both courts for all Defendants, the Court finds this factor is neutral as to Amazon and HTC and weighs in favor of transfer as to Honeywell and Vector.

### 3. The Remaining Public Interest Factors

The parties agree that the remaining factors are neutral. Accordingly, the Court finds that the remaining factors are netural.

### E. Conclusion

In summary, as to Amazon, the Court found that "the relative ease of access to sources of proof" factor weighs slightly against transfer, "the availability of compulsory process to secure the attendance of witnesses" factor weighs against transfer, "the cost of attendance for willing witnesses" factor weighs against transfer, the "all other practical problems that make a trial of a case easy, expeditious, and inexpensive" factor is neutral, "the administrative difficulties flowing

from court congestion" factor weighs against transfer, "the local interest in having localized interests decided at home" factor is neutral, "the familiarity of the forum with the law that will govern the case" factor is neutral, and "the avoidance of unnecessary problems of conflict of law or in the application of foreign law" factor is neutral. *Volkswagen II, Inc.*, 545 F.3d at 315. As such, Amazon has not shown that the Eastern District of Virginia is "clearly more convenient" than the Eastern District of Texas. *See id.*

As to Honeywell, the Court found that "the relative ease of access to sources of proof" factor is neutral, "the availability of compulsory process to secure the attendance of witnesses" factor weighs against transfer, "the cost of attendance for willing witnesses" factor is neutral, the "all other practical problems that make a trial of a case easy, expeditious, and inexpensive" factor weighs strongly against transfer, "the administrative difficulties flowing from court congestion" factor weighs against transfer, "the local interest in having localized interests decided at home" factor weighs in favor of transfer, "the familiarity of the forum with the law that will govern the case" factor is neutral, and "the avoidance of unnecessary problems of conflict of law or in the application of foreign law" factor is neutral. *See id.* As such, Honeywell has not shown that the Eastern District of Virginia is "clearly more convenient" than the Eastern District of Texas. *See id.*

As to HTC, the Court found that "the relative ease of access to sources of proof" factor weighs slightly against transfer, "the availability of compulsory process to secure the attendance of witnesses" factor weighs against transfer, "the cost of attendance for willing witnesses" factor weighs against transfer, the "all other practical problems that make a trial of a case easy, expeditious, and inexpensive" factor is neutral, "the administrative difficulties flowing from court congestion" factor weighs against transfer, "the local interest in having localized interests decided

at home" factor is neutral, "the familiarity of the forum with the law that will govern the case" factor is neutral, and "the avoidance of unnecessary problems of conflict of law or in the application of foreign law" factor is neutral. *See id.* As such, HTC has not shown that the Eastern District of Virginia is "clearly more convenient" than the Eastern District of Texas. *See id.*

Finally, as to Vector, the Court found that "the relative ease of access to sources of proof" factor weighs slightly in favor of transfer, "the availability of compulsory process to secure the attendance of witnesses" factor weighs against transfer, "the cost of attendance for willing witnesses" factor is neutral, the "all other practical problems that make a trial of a case easy, expeditious, and inexpensive" factor weighs strongly against transfer, "the administrative difficulties flowing from court congestion" factor weighs against transfer, "the local interest in having localized interests decided at home" factor weighs in favor of transfer, "the familiarity of the forum with the law that will govern the case" factor is neutral, and "the avoidance of unnecessary problems of conflict of law or in the application of foreign law" factor is neutral. *See id.* As such, Vector has not shown that the Eastern District of Virginia is "clearly more convenient" than the Eastern District of Texas. *See id.*

## IV. Motion to Stay

As the Court issues a ruling on the motions to transfer venue, the Court hereby denies the motion to stay as moot.

## CONCLUSION

It is therefore **ORDERED** that Motion of Defendant Amazon.com, Inc. to Transfer Venue to the Eastern District of Virginia, *Amazon III*, 4:18-cv-474, (Dkt. #9) is hereby **DENIED**; Plaintiff's Contested Motion to Substitute Party, *Amazon III*, 4:18-cv-474, (Dkt. #22) is hereby **GRANTED**; Motion to Stay of Amazon.com, Inc., Amazon Digital Services, LLC, and Amazon

Web Services, Inc. Pending Decision on Their Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), *Amazon III*, 4:18-cv-474, (Dkt. #105) is hereby **DENIED as moot**; Honeywell International Inc.'s Motion to Dismiss for Improper Venue Under 28 U.S.C. § 1406, or, in the Alternative, to Transfer to a More Convenient Forum Under 28 U.S.C. § 1404, *Resideo*, 4:18-cv-475, (Dkt. #15) is hereby **DENIED**; Motion of Defendant HTC Corporation to Transfer Venue to the Eastern District of Virginia, *HTC III*, 4:18-cv-476, (Dkt. #22) is hereby **DENIED**; and Motion of Defendant Vector Security, Inc. to Transfer Venue to the Eastern District of Virginia Pursuant to 28 U.S.C. § 1404(a), *Vector*, 4:18-cv-477, (Dkt. #16) is hereby **DENIED**.

 **SIGNED this 15th day of July, 2019.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE