**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| INNOVATION SCIENCES, LLC,<br>Plaintiff,<br>v.<br>AMAZON.COM, INC., ET AL.,<br>Defendants. | Civil Action No.4:18-cv-00474-ALM<br>*Consolidated Lead Case* |
| INNOVATION SCIENCES, LLC,<br>Plaintiff,<br>v.<br>RESIDEO TECHNOLOGIES, INC.,<br>Defendant. | Civil Action No.4:18-cv-00475-ALM<br>*Member Case* |
| INNOVATION SCIENCES, LLC,<br>Plaintiff,<br>v.<br>HTC CORPORATION,<br>Defendant. | Civil Action No.4:18-cv-00476-ALM<br>*Member Case* |
| INNOVATION SCIENCES, LLC,<br>Plaintiff,<br>v.<br>VECTOR SECURITY, INC.,<br>Defendant. | Civil Action No.4:18-cv-00477-ALM<br>*Member Case* |

## INNOVATION SCIENCES' MOTION FOR SANCTIONS AGAINST
## AMAZON.COM, INC., AMAZON DIGITAL SERVICES, LLC,
## AND AMAZON WEB SERVICES, INC.

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ........................................................................................................ 2

     A.    Failure to Produce Documents and Failure to Produce Documents Timely.... 2

     B.    Failure to Produce Cost of Goods Sold and ███████████
            ███████████████████████████████ 6

     C.    Failure to Timely Produce Schematics and Software Description
            Documents ................................................................................................... 9

     D.    Failure to Provide Lists of Email Custodians and Description of Why
            Significant .................................................................................................. 14

III.   CONCLUSION ................................................................................................... 15

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

## TABLE OF AUTHORITIES

**Cases**

*PerdiemCo, LLC v. IndusTrack LLC,*
    2016 WL 8189021 (E.D. Tex. October 25, 2016) ........................................................... 14

*VirnetX Inc. v. Cisco Systems, Inc.,*
    2012 WL 7997962 (E.D. Tex. Aug. 8, 2012) ................................................................ 14

**Rules**

Fed. R. Civ. P. 16 ...................................................................................................................... 1, 14

Fed. R. Civ. P. 37 ...................................................................................................................... 1, 14

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

I.      **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 16 and 37, Plaintiff Innovation Sciences, LLC ("Innovation")

files this motion for sanctions to address the prejudice attributable to defendants Amazon.com, Inc.,

Amazon Digital Services, LLC, and Amazon Web Services, Inc.'s (collectively "the Amazon

Defendants" or "Amazon") failure to timely produce documents as required by this Court.

The Amazon Defendants violated this Court's orders governing the production of

documents by not substantially completing their document productions until months after the due

date and have refused to produce critical documents even after months of delay.  That conduct has

materially prejudiced Innovation's ability to prepare its case for trial.  Among other things, the

practice of delaying the production of its substantive documents, and then trickling them to

Innovation over months, denied Innovation the opportunity to review Amazon's document

production, to identify the witnesses it should depose, and to properly prepare for those depositions

as provided by the schedule this Court entered.  Instead, when it should have been preparing its

opening expert reports, Innovation was forced to take the depositions even as Amazon continued to

produce its documents.[1]  The prejudice caused by this tactic is manifest, and is exactly the conduct

Innovation feared when it brought this issue to the Court this past April.

The Amazon Defendants' discovery misconduct should be punished.  As explained below,

Innovation respectfully requests the following sanctions: (1) that neither Amazon nor its experts

may rely upon any document not produced by April 17, 2019;  (2) that Innovation be granted leave

to file supplemental opening expert reports once Amazon has fulfilled its discovery obligations; (3)

---

[1] The present motion is directed only to the Amazon Defendants, but the conduct complained of herein is also applicable to the other defendants.  All four defendants unreasonably delayed their document productions until August, months after the date this Court established for the defendants to have substantially completed their productions.  Innovation is in the process of determining whether a similar motion should be filed against the other defendants.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

entry of adverse inferences that (a) the unique identifiers for the accused products, user telephone, user WiFi network and smart home devices are each associated with a user's Amazon account in a mapping table as claimed in the asserted patents, and (b) Amazon's revenue associated with the sale of the accused products is all profit; and (4) any other appropriate relief.  Further, Amazon should be required to pay attorney's fees to Innovation for the work done to prepare this motion, any replies to this motion, and any hearing that may be held on this motion.  At least four particularly egregious discovery failures warrant the requested adverse inferences:  (1) Amazon's failure to produce documents and do so timely; (2) Amazon's refusal to produce its documents that show the actual cost of goods sold for the accused goods and refusal to produce its internal studies relating to the "downstream" economic impact of the sale of the accused products on the sales associated with other products and services; (3) Amazon's refusal to timely produce its technical documents, including its engineering schematics and software description documents that describe the process through which Alexa-enabled products (Echo/Fire TV/Tablet), users, and smart devices and services are associated and linked to Amazon user accounts in the Amazon ecosystem; and (4) Amazon's refusal to abide by the email portion of the Order Regarding E-Discovery of August 13, 2019 and supply "a specific listing of likely email custodians" and "a specific identification of the fifteen most significant listed email custodians in view of the pleaded claims and defenses" with "a short description of why the custodian is believed to be significant."

## II.   ARGUMENT

### A.  Failure to Produce Documents and Failure to Produce Documents Timely

The Court issued its Order Governing Proceedings on October 3, 2018.  *See* Dkt. 10; Declaration of Gregory A. Krauss ("Krauss Dec.") ¶ 2.[2]  That order defines the Mandatory

---

[2]   Substantively the same order was entered in the Resideo, HTC, and Vector Security cases at about the same time.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Disclosures as including "all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party relevant to the clams or defenses of any party." Krauss Dec. at ¶ 2.  This broad language encompasses traditional paper and electronic documents as well as email.  The January 4, 2019 Scheduling Order set the deadline for exchange of Mandatory Disclosures as April 11, 2019.  Krauss Dec. ¶ 3.  The parties agreed to extend that deadline to April 17, 2019, the same day Amazon's LR 3-4 disclosures were due.  In early April 2019, Innovation realized that the defendants did not intend to produce all documents and things by the April 17, 2019 deadline.  Instead, defendants argued that the deadline for completion of their production of documents and things was August 14, 2019.  Thus, Innovation scheduled a telephonic hearing on April 12, 2019 with the Court asking for clarification of the Order Governing Proceedings and the Scheduling Order.

At that hearing, Innovation's counsel explained that waiting to produce documents by August 14, 2019 would make it very difficult, if not impossible, to review the documents, prepare for and take the necessary depositions, and then fold that information and testimony into expert reports, which at the time were due on September 11, 2019.[3]  This Court's guidance at that hearing left no room for confusion - April 17, 2019 was the deadline for substantial completion of the parties' document production.  Krauss Dec. ¶ 7.  The August 14, 2019 deadline was a deadline only for supplementation.  *Id*.  The Court also made it clear that a party would be "sanctioned if you wait until August 14th.  That is not appropriate." *Id*.

By the end of the day April 17, 2019, Amazon had produced a total of 1229 documents.  142 of the documents were Amazon's identified prior art.  Krauss Dec. ¶ 8.  The vast majority of

---

[3] That deadline was subsequently moved to October 30, 2019 (Dkt. 182 at 3) and then to December 4, 2019 (Dkt 305 at 1-2).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

the remaining 1087 documents were individual webpages that are publicly available product "Help" and "Support" pages from the current Amazon.com website. *Id.* Virtually no internal company documents were provided in this production. *Id.* Many of the public webpage documents produced had already been identified by Innovation in its infringement contentions. *Id.* As shown by the number of documents produced in the table below, the Amazon Defendants did not heed the Court's admonition during that April 12th telephonic hearing and failed to comply with the Court's orders to produce all documents, electronically stored information, and tangible things by April 17, 2019.

| By April 30 | May 1 – July 31 | Aug. 1- Aug 30 | Sept. 1 – Nov. 15 | Nov. 16- Dec. 15 |
|---|---|---|---|---|
| 12,239 | 515 | 11,595 | 14,083 | 180 |

The above numbers do not include Amazon's production of tens of thousands of emails starting on September 16, 2019. Excluding email production, Amazon produced more than 67 percent of the documents after July 31 (over 3 months after the date established for the substantial completion of production), with 36.9% of them being produced after September 1, 2019. Moreover, Amazon's document production is not complete. Amazon has failed to produce critical documents, including documentation relating to reports of the actual prices of product costs of goods sold and

████████████████████████████████████████████. Amazon did not produce documents relating to how Alexa-enabled products (Echo/Fire TV/Tablet), users, and smart devices and services are associated and linked to Amazon user accounts in the Amazon ecosystem until October 30, 2019 despite repeated requests since at least June, a Court telephone hearing on September 6, 2019 during which Amazon's counsel claimed to know nothing about such documents and after depositions of Amazon software engineers. Krauss Dec. ¶¶ 23, 30-31.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

The table in Krauss Dec. ¶ 33 more specifically shows the timing of Amazon's document productions and demonstrates Amazon's practice of dribbling information to Innovation, document-by-document.  Everything produced after the end of April 17, 2019 was late and produced contrary to the Court's orders.  Much of the useful information was not produced until _after_ October 15, 2019 (more than a month after the original due date of expert reports), and in some instances produced after Innovation had deposed the relevant witness or not produced at all.

Innovation's plan was to complete document production from the defendants before taking depositions.  That is the conventional way of proceeding and it was the point Innovation's counsel made at the April 12 telephonic hearing.  The District's approach to discovery, if followed, would have provided Innovation with the documents it needed to review the documents, identify the witnesses it needed to depose, prepare for those depositions, take those depositions, and tie up loose ends identified in the depositions all with plenty of time to fold that testimony and information into opening expert reports.  Amazon utterly failed to substantially complete its document production by April 17, by May 17, by June 17, or even by July 17.  _See_, e.g., Krauss Dec. ¶¶ 20-26.  Rather, Innovation was forced to play Amazon's cat-and-mouse game of guessing the name by which particular documents are called at Amazon, including repeated emailing of requests, followed by meeting and conferring numerous times as to those documents, with Amazon trickling some, but not all, requested documents to Innovation over a period of a weeks and months.

At no time did Amazon advise that they had concluded their supplemental productions.  When the flow of documents came to a stop, Amazon required Innovation to begin the whole process anew.  _See_, e.g. Krauss Dec. ¶¶ 18, 25.  As a result, Innovation was forced to take depositions while Amazon documents were being produced, leaving little or no time for proper deposition preparations.  Worse, the process extended into the period for preparing opening expert

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

reports on infringement and damages – two issues directly tied to Amazon's disclosures.  Amazon's failure to timely produce the relevant materials created the situation where Innovation was reviewing incoming documents, taking depositions, following up on those depositions, and preparing opening expert reports, all at the same time.  To compound the injury, Amazon still refuses to produce information critical to at least the damages case.  The timeline provided in the Krauss Declaration, attached, demonstrates Innovation's diligence in its continuing effort to get Amazon's documents.  Massive efforts have been expended attempting to secure the documents that should have been produced eight months ago.

Though not required by this District's practice, Innovation sent Amazon a letter on February 22, 2019, months before Amazon's document production was due, providing clear guidance as to categories of documents Innovation needed from Amazon.  Krauss De. ¶ 4.  Innovation, of course, had no idea what titles Amazon used internally to describe the documents sought or where Amazon stored those documents.  But under this Court's practice, such guidance was not required – it is each party's affirmative duty to seek out and produce the relevant materials.  Though not an exhaustive treatment of the problem, two document categories exemplify the problem.

### B.  Failure to Produce Cost of Goods Sold and ███████████████████

The cost of goods sold is a key component of determining the incremental costs incurred by a party in making the next infringing product available for purchase.  Those costs are subtracted from the gross revenue derived from the sale to ascertain the incremental profit obtained from the sale.  In many cases, identifying the actual costs of goods sold is a complex computation, but here, Amazon purchases the accused products from third-party contract manufacturers.  Thus, Amazon can readily identify what it pays for those products.  This information was important enough that Innovation specifically identified in its February 22 letter Amazon's cost of goods sold and the invoices from the contract manufacturers as Amazon documents Innovation wanted to see.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Instead of producing either, Amazon belatedly produced a litigation-inspired spreadsheet that identified the COGS (coupled with undisclosed "Other' and "Variable" costs) in response to Innovation's interrogatory requesting sales, cost and profit disclosures.  That spreadsheet, however, does not substitute for Amazon's actual business records and Innovation intended to use Amazon's business records to test the accuracy of the numbers Amazon disclosed in its interrogatory response. During a telephone hearing with Judge Mitchell, Amazon's counsel represented to this Court that Amazon does not "track costs this way in the ordinary course of business" and "we don't have documents that have the costs at the level of granularity they want."  The statement was incredulous and was proved false during depositions.  Krauss Dec. ¶¶ 28-29.

Critically, Amazon never produced the financial reports it generated in the operation of its business – even though one of its witnesses (Mr. Matsumoto) later testified that he had generated reports (he called ▮▮▮▮▮▮▮) for each of the accused product lines that identified the revenues, costs of goods sold, and gross profits on a monthly basis.  Despite months of effort on the part of Innovation, Amazon has still not produced the requested ▮▮▮▮▮▮

In an effort to throw Innovation off, Amazon did produce a report (AMZ_VIS00050717-725) that appeared to be a financial report for Jan/Feb 2017.  As it turned out, however, that report did not report on actual sales or profits but represented a planning document.  Worse, whatever value the planning document might have had was limited.  That document reports Amazon planned sales, in units and dollars, but jumps directly to planned gross profit – failing to report Amazon's actual costs of goods sold or to itemize what those planned costs were.  *See* Krauss Dec. ¶ 35 and Exhibit 24.  On November 15, 2019, weeks after Mr. Matsumoto's deposition, Amazon produced additional ▮▮▮ documents, *see* Krauss Dec. ¶ 35 and Exhibit 25, in which planned costs of goods sold were inserted, but the formatting of that document strongly suggests that the costs section was

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

added to the report, perhaps for the purpose of this litigation.  In any event, these are still just *world-wide* ███ documents, they do not report actual numbers and they are world-wide (not U.S. only).  Their usefulness in this case is limited.  And yet, beyond the schedules created for this litigation, there are financial documents Amazon generated contemporaneously, during day-to-day operations, that Amazon refuses to produce.

The cost of goods sold information is also available from alternate sources.  The accused products are manufactured for Amazon by third-party contract manufacturers overseas.  The actual cost of the accused products would be reflected in the price Amazon pays those contract manufacturers to obtain those products.  To date, Amazon has refused to produce the pricing agreements it has with those contract manufacturers or the invoices associated with the procurement of those products.  That information, also identified in Innovation's February 22 letter to Amazon, should have been produced long ago without objection or delay.  Amazon has refused to produce these documents on the grounds that doing so would impose a burden disproportionate to the needs of this case.

Besides the cost of goods sold documentation and Amazon's contemporaneous financial reports, Amazon has failed to produce what it calls ████████████████████████  Innovation learned in late September that Amazon employs a team of economists that evaluate the follow on revenues generated through the sale of the accused Echo/FireTV/Fire Tablets.  Each of these devices are configured to deliver content such as music or video to a purchaser.  Some of that content, including music and/or video, is played through the accused devices and Amazon apportions some percentage of its Prime membership income to the provision of music and video, some portion of which is delivered by the accused devices.  Amazon witness, Mr. Laevsky, was the first witness to disclose the existence of the teams of economists on September 20, 2019, and that

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

testimony was confirmed by Mr. Matsumoto on September 25, 2019.  The analyses/reports of downstream income generated by these teams would likely reveal the significant income and profits that Amazon generates from the sale of the accused products.  To date, Amazon has advised that it cannot locate any such analyses or documentation but has produced some schedules associating a beneficial downstream impact with a number of the accused products.

### C.  Failure to Timely Produce Schematics and Software Description Documents

Unlike the cost of goods sold documentation discussed above, Innovation has been able to secure at least some of the engineering schematics and software description documents it needs. The costs and burden of obtaining those documents, however, is inexcusable.  Not only did Amazon's delay force Innovation to expend its effort securing this basic discovery, Innovation was unable to spend its time preparing its case for trial for months.  Instead, Innovation was required to focus its efforts on getting the documents it needed from Amazon.  Amazon's professed inability to identify and produce the necessary engineering schematics illustrates Amazon's discovery antics.

Innovation's February 22 letter asked Amazon to produce "Documents that describe the structure, function and operation of each version of the Accused Instrumentalities … including, but not limited to … schematic diagrams …"  *See*, Krauss Dec. ¶ 4.  On June 13, Innovation wrote to Amazon noting the absence of the engineering schematics.  Krauss Dec. ¶9 ("There are no schematic drawings of any of Amazon's Accused Echo, Fire, Tablet, Cloud, and Dash Instrumentalities.  Similarly, Amazon produced no engineering drawings or blue prints.")

Amazon responded on June 25 stating that Amazon had "provided schematics for the accused products, including, but not limited to, AMZ-VIS00000278-283, AMZ-VIS00006593, AMZ-VIS00006613, AMZ-VIS00012157, AMZ-VIS00012160, AMZ-VIS00012239, AMZ-VIS00012250-253, AMZ-VIS00012259."  *See*, Krauss Dec. ¶¶ 13-14.  As this Court is no doubt aware, schematics are used in patent cases at least to show the structure and function of

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

electronic components within a device, but the "schematics" identified by Amazon's letter were plainly not the kind of engineering schematics used in patent cases.  For example, the document AMZ-VIS00006593, one of the documents Amazon's counsel identified as a relevant engineering "schematic" is anything but:



Amazon and its counsel both know what an appropriate product schematic is.  After months of effort, and repeated meet and confers, Amazon finally produced engineering schematics for the accused products starting on July 3, 2019, producing more on August 7, 2019, and continuing to produce engineering schematics as late as October 18, 2019. Krauss Dec. ¶ 32.  Everything that transpired before that date was designed to delay Innovation, distract Innovation from it case preparation, and to compound Innovation's costs.  In that effort, Amazon was plainly successful.

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

The same scenario played out with respect to Amazon's software description documents. In particular, certain of Innovation's patent claims are directed to activities that occur within Amazon's computing "cloud," the distributed computer network that supports the operation of Amazon's devices and the Alexa program.  Claim 1 of the '798 patent (from which asserted claims 5, 6, and 52 depend), for example, recites "the centralized hub system being associated with a unique hub identifier stored in at least one mapping table."  An aspect of this claim is simply how devices of a particular user are linked, or mapped, such that a command by a user to his or her Echo, Fire TV, or Fire Tablet device to dim the living room light is received by the cloud and associated within that cloud to the appropriate user's account and to the specific light that user wants to dim.  Obviously, dimming a neighbor's light, or the light at a home in another country, would not be acceptable.  The documentation sought by Innovation relates to how Amazon associates or links users, accounts and smart device components in the Amazon cloud. The "…software or firmware description documents [and] functional description documents…" were among the documents Innovation identified in its February 22 letter to Amazon. █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████  Amazon did not produce the requested software or functional description documents relating to this service and mapping table functionality until October 30, 2019, after months of asking, taking the issue to Judge Mitchell, and after taking several depositions.

Amazon has plainly figured out a way to defeat this Court's approach to early, voluntary document production and short pre-trial schedules.  To defeat each, a defendant need only provide the documents it wants to produce by the court-ordered deadline and thereafter engage in a time

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

consuming game of cat and mouse – delaying the issue as long as possible and then expressing a willingness to produce documents if the other party can identify them with enough specificity.  To be effective, and Amazon appears to have perfected the approach, the party resisting disclosure must also insist upon repeated meet and confer conferences, expressing the claimed inability to comprehend the documents sought, claiming inability to locate the documents or information, demanding greater specificity from the party seeking the documents, followed by renewed agreement to search for the documents identified in the meet and confer.

If the party seeking documents gets thrown off track by guessing the wrong documents in an effort to be more specific, that is all the better for Amazon's approach.  For example, Innovation's June 13, 2019 letter states "[c]ertainly Amazon has in its possession schematic diagrams, manufacturing specifications, technical specifications, hardware description documents, software or firmware description documents (***including how Alexa-enabled devices, users, and services are all correlated in the Amazon ecosystem***) …".Krauss Dec. ¶ 9.  After months of Amazon's feigned ignorance about the topic, Innovation brought the issue to Judge Mitchell in a September 6, 2019 telephone conference.  Innovation mistakenly thought the sought documents were related to "Account Linking."  Amazon, knowing full well that ███████████████████ ████████████████████████████████████████████████████ ████████████████████████, allowed Innovation to continue on the "Account Linking" wild goose chase and did not produce the truly responsive documents until October 30, 2019 – 4 1/2 months after Innovation's June 13th letter and 7 weeks after the call with Judge Mitchell.  Krauss Dec. ¶ 30-31.

Amazon's evasive process culminates by a continuous dribbling of documents, with no certainty as to when the supplemental production is, or will be, complete.  That is exactly the

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

approach Amazon has taken in this case.  Even as late as December 20, 2019, Amazon continued to

evade production with empty promises that the documents were produced, will be produced, or do

not exist.  *See*, Krauss Dec. ¶ 36, Ex. 27 ("we intend to explain to Judge Mazzant, at least with

respect to the financial discovery, that Amazon has either provided the documents you have

requested, is in the process of collecting them or determining whether they exist, or has no such

documents to produce").  It may well be that Amazon has produced, or will soon produce, the

documents long sought by Innovation, but the timing of that production compromised Innovation's

ability to use those documents effectively.

The timing of Amazon's document production forced Innovation to review Amazon's

document production, conduct depositions of Amazon's witnesses, and prepare opening expert

reports *all at the same time*.  That is the exact opposite of what is supposed to happen, at least in this

District.  Under this District's approach, as clearly affirmed by this Court during the April 12

hearing, Amazon was obligated to collect the documents relevant to the claims and defenses

asserted and to produce them by April 17, 2019.  Because the requested engineering schematics and

the software description documents are central to understanding the structure, function and

operation of the accused products, Amazon was obligated to produce those documents as part of its

LR 3-4 disclosures due that same day, April 17, 2019.

As shown above, that did not happen.  That failure was no accident.  Amazon knows what

engineering schematics and software description documents are and it knew that those documents

were to be produced by April 17.  This Court clearly told the defendants to produce the relevant

documents (at least substantially complete that production) by April 17.  Amazon chose to ignore

this Court's clear guidance, the requirements of LR 3-4, and this Court's case schedule, forcing

Innovation to expend significant time and resources to chase these documents, with the key

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

productions occurring after July 31, when Innovation should have been in the final stages of

deposition discovery.  Amazon's steadfast refusal to live with this Court's schedule warrants

sanctions, both under Rule 16(f) and Rule 37.  *PerdiemCo, LLC v. IndusTrack LLC*, 2016 WL

8189021, *1 (E.D. Tex. October 25, 2016) (noting that a court has the inherent power to enforce its

scheduling orders and to impose sanctions for violations under Rule 16(f)); *see also, VirnetX Inc. v.*

*Cisco Systems, Inc.*, 2012 WL 7997962, at *5 (E.D. Tex. Aug. 8, 2012) (adverse inference

predicated on bad faith).  Sanctioning Amazon's conduct here will go a long way towards deterring

Amazon and others in the future, so that no defendant should enter this District thinking that they

can feign ignorance and only produce what they want to produce on the schedule they want.

### D.  Failure to Provide Lists of Email Custodians and Description of Why Significant

Details regarding email discovery was in dispute with Defendants with the issue being

briefed on August 2, 2019 and the Court entering its Order Regarding E-Discovery on August 13,

2019.  Paragraph 7 of the Order Regarding E-Discovery is clear that Amazon was required to

produce a complete listing of custodians and a short description of why the fifteen most relevant

custodians are believed to be significant.

> 7.  E-mail production requests shall be phased to occur timely after the parties have exchanged initial disclosures, a specific listing of likely e-mail custodians, a specific identification of the fifteen most significant listed e-mail custodians in view of the pleaded claims and defenses[1] infringement contentions and accompanying documents pursuant to P.R. 3-1 and 3-2, invalidity contentions and accompanying documents pursuant to P.R. 3-3 and 3-4, and preliminary information relevant to damages.
>
> 1.  A "specific identification" requires a short description of why the custodian is believed to be significant. identification of the fifteen most significant listed e-mail custodians in view of the pleaded claims.

Even at this late date in the case, Amazon has simply refused to comply after repeated requests in

letters, emails and multiple meet and confers.  *See*, Krauss Dec. ¶ 34.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## III.    CONCLUSION

For the foregoing reasons, Innovation respectfully requests that the Court find that defendants have failed to comply with the Court's orders, and issue appropriate sanctions. Innovation seeks the following sanctions:  (1) that neither Amazon nor its experts may rely upon any document not produced by April 17, 2019;  (2) that Innovation be granted leave to file supplemental opening expert reports once Amazon has fulfilled its discovery obligations; (3) entry of adverse inferences that (a) the unique identifiers for the accused products, user telephone, user WiFi network and smart home devices are each associated with a user's Amazon account in a mapping table as claimed in the asserted patents, and (b) Amazon's revenue associated with the sale of the accused products is all profit; and (4) any other appropriate relief.  Finally, Amazon should be required to pay attorney's fees to Innovation for the work done to prepare this motion, any replies to this motion, and any hearing that may be held on this motion.  Amazon should not be able to profit from its refusal to follow this Court's orders.

Innovation requests a hearing on this Motion.

Dated:  December 23, 2019                          Respectfully submitted,

*/s/ Donald L. Jackson*
Donald L. Jackson
James D. Berquist
Aldo Noto
Gregory A. Krauss
Peter W. Gowdey
Davidson Berquist Jackson & Gowdey LLP
8300 Greensboro Drive, Suite 500
McLean, Virginia 22102
Tel.: (571) 765-7700
Fax: (571) 765-7200
*Attorneys for Plaintiff Innovation Sciences, LLC*

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## CERTIFICATE OF CONFERENCE

I hereby certify that on December 23, 2019 Aldo Noto, counsel for Innovation Sciences, LLC, conferred with Dargaye Churnet, counsel of record for defendants Amazon.com, Inc., Amazon Digital Services, LLC, and Amazon Web Services, Inc. ("Amazon"), and Amazon's counsel represented that Amazon opposes this motion.

DATED: December 23, 2019                    */s/ Donald L. Jackson*
                                            Donald L. Jackson


## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

DATED: December 23, 2019                    */s/ Donald L. Jackson*
                                            Donald L. Jackson


## CERTIFICATE OF FILING MOTION TO SEAL

I hereby certify that a motion to seal this document has been filed on December 23, 2019 pursuant to Local Rule CV-5(a)(7).

DATED: December 23, 2019                    */s/ Donald L. Jackson*
                                            Donald L. Jackson