**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| INNOVATION SCIENCES, LLC, <br><br> Plaintiff, <br> v. <br><br> AMAZON.COM, INC., et al., <br><br> Defendants. | Civil Action No. 4:18-cv-00474-ALM <br> (LEAD CONSOLIDATED CASE) <br><br> JURY TRIAL DEMANDED |
| INNOVATION SCIENCES, LLC, <br><br> Plaintiff, <br> v. <br><br> RESIDEO TECHNOLOGIES, INC., <br><br> Defendant. | Civil Action No. 4:18-cv-00475-ALM |
| INNOVATION SCIENCES, LLC, <br><br> Plaintiff, <br> v. <br><br> HTC CORPORATION, <br><br> Defendant. | Civil Action No. 4:18-cv-00476-ALM |
| INNOVATION SCIENCES, LLC, <br><br> Plaintiff, <br> v. <br><br> VECTOR SECURITY, INC., <br><br> Defendant. | Civil Action No. 4:18-cv-00477-ALM |

**AMAZON'S MOTION FOR SUMMARY JUDGMENT
OF NO DIRECT INFRINGEMENT OF THE '443 PATENT**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. STATEMENT OF THE ISSUES ............................................................................................2

III. STATEMENT OF UNDISPUTED MATERIAL FACTS .....................................................2

IV. ASSERTED CLAIM 29 OF THE '443 PATENT ..................................................................3

V. OVERVIEW OF THE ACCUSED SYSTEMS .....................................................................4

VI. THE ACCUSED "DASH REPLENISHMENT SERVICE PRODUCTS" DO NOT DIRECTLY INFRINGE CLAIM 29 OF THE '443 PATENT ............................................6

    A. Amazon does not "make" the accused "Dash Replenishment Service Products" as a matter of law. ...........................................................................................................7

    B. Amazon does not "use" the accused "Dash Replenishment Service Products" as a matter of law. ...........................................................................................................7

VII. AS ACCUSED BY IS, THE DASH BUTTON LACKS KEY LIMITATIONS OF CLAIM 29 OF THE '443 PATENT AND CANNOT DIRECTLY INFRINGE THE CLAIM AS A MATTER OF LAW. ....................................................................................9

VIII. CONCLUSION ....................................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986)..................................................................................................2, 10

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
　631 F.3d 1279 (Fed. Cir. 2011).........................................................................................1

*Grecia v. McDonald's Corp.*,
　724 F. App'x 942 (Fed. Cir. 2018) ...................................................................................9

*Innovation Scis., LLC v. Amazon.com, Inc.*,
　778 F. App'x 859 (Fed. Cir. 2019) .................................................................................11

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
　870 F.3d 1320 (Fed. Cir. 2017).........................................................................................9

*Va. Innovation Scis., Inc. v. Amazon.com, Inc.*,
　1-16-cv-00861, Dkt. 275 (E.D. Va. Feb. 18, 2020) ........................................................12

**STATUTES**

35 U.S.C. § 271(a) ....................................................................................................................1, 7

## I. INTRODUCTION

IS accuses two Amazon[1] product lines of infringing claim 29 of the '443 patent. Amazon is entitled to summary judgment of non-infringement as to both of those product lines.

First, IS accuses what it calls "Amazon Dash Replenishment Products," products that use Amazon's Dash Replenishment Service. The sole asserted claim covers a "wireless device," yet Amazon's Dash Replenishment Service is a cloud-based back-end service, not a physical consumer device, let alone a wireless one. ('443 patent, claim 29; Declaration of Saina S. Shamilov ("Shamilov Decl.") Ex. 4 (Non-Infringement Expert Report of David D. Johnson ("Johnson Reb. R.") at ¶ 82).) IS identifies no specific device that constitutes an infringing Dash Replenishment Service Product, much less one made by Amazon. (*See* Shamilov Decl. Ex. 2 (Expert Report of Joseph C. McAlexander Regarding Infringement ("McAlexander Op. R.")).) Its expert does admit, however, that any wireless devices that may relate to the claim are manufactured by *third parties*, not Amazon. (McAlexander Op. R., Att. D-a2 (explaining that "the DRS devices are manufactured by third parties").) Amazon does not control these devices nor does Amazon combine them into any system, as required by the Federal Circuit. *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284-88 (Fed. Cir. 2011). As a result, Amazon cannot "make" or "use" the claimed system under 35 U.S.C. § 271(a) and thus cannot infringe.

Second, IS also accuses the discontinued Dash Button of infringement. IS cannot show that the Dash Button meets either of the following claim limitations: (i) "information related with the household inventory of the item being stored in a database," and (ii) "transmitting . . . an item status signal . . . based on an indication of an updated status of the item." ('443 patent, claim 29.)

---

[1] This motion is brought on behalf of all Amazon defendants. However, Amazon Digital Services, Inc., Amazon Digital Services, LLC, Amazon Web Services LLC, and Amazon Fulfillment Services, Inc., who have been named as defendants in this case, do not exist, are not proper defendants, and should be dismissed.

Because IS bears the burden of establishing infringement, Amazon need only point out that there is an absence of evidence supporting IS's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Because IS has not shown, and cannot show, that Amazon's Dash Button meets these required elements of the sole asserted claim, Amazon is entitled to judgment as a matter of law. *See id*. at 322.

## II. STATEMENT OF THE ISSUES

1. Whether IS has any evidence sufficient to raise a genuine dispute of material fact that Amazon directly infringes claim 29 of the '443 patent claim by offering the Dash Replenishment Service given that the claim requires a "device" that IS maps only to unidentified third-party products.

2. Whether IS has any evidence sufficient to raise a genuine dispute of material fact that the accused Dash Button directly infringes claim 29 of the '443 patent given that IS has no evidence that the accused Dash Button meets key limitations of the claim.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

3. IS asserts four patents: U.S. Patent Nos. 9,912,983 (the "'983 patent") (Dkt. 79-1), 9,942,798 (the "'798 patent") (Dkt. 79-3), 9,729,918 (the "'918 patent") (Dkt. 79-4), 9,723,443 (the "'443 patent") (Dkt. 79-4). (Dkt. 79 at ¶¶ 18, 95, 122, 147.)

4. The '443 patent is titled "System and Method for Providing Locally Applicable Internet Content with Secure Action Requests and Item Condition Alerts," and "relates generally to accessing content through a network." ('443 patent at 1:34-35.)

5. IS asserts that the Amazon Dash Button and products that use Dash Replenishment Service, which its expert calls "Dash Replenishment Service Products," infringe claim 29 of the '443 patent. (McAlexander Op. R., Att. D at ¶ 2.)

6. Claim 29 of the '443 patent is a system claim. (*Id*. at ¶ 37 ("It is my understanding

that none of the claims asserted in this case are method claims."); *id.* at Att. D at ¶ 1; Shamilov Decl. Ex. 3 (Transcript of Joseph McAlexander Deposition ("McAlexander Depo.") at 8:16-22.)

7. IS has not identified a single specific product that it alleges is a "Dash Replenishment Service Product." (*See* McAlexander Op. R.; *see also* Johnson Reb. R. at ¶¶ 82, 318, 327, 337-343.)

8. The unidentified Dash Replenishment Service Products accused by IS are all manufactured by third parties. (McAlexander Op. R., Att. D-a2 (explaining that "the DRS devices are manufactured by third parties"); *see also* Johnson Reb. R. at ¶¶ 82, 318, 327, 337-343.)

## IV. ASSERTED CLAIM 29 OF THE '443 PATENT

The sole asserted claim 29 is directed to a "wireless device" used for purchasing products to increase household inventory. The claimed system requires three components. First, a "wireless device" must transmit an "item status signal" and "unique identifier corresponding to the wireless device" through a "wireless transmission channel." ('443 patent, claim 29.) The Court construed "item status signal" as "a signal regarding the status of an item." (Dkt. No. 229 at 68.) This item status signal must be transmitted "in connection with an initiation of an increase of a household inventory of an item." ('443 patent, claim 29.) And the item status signal must be transmitted "based on an indication of an updated status of the item." (*Id.*) The Court construed "updated status [of the item]" as "a change in [item] status." (Dkt. No. 229 at 63.) The device's unique identifier must then be "recognized in connection with a successful transmission of the item status signal." ('443 patent, claim 29.) If the device's unique identifier is recognized, "a purchase request for the item is processed to replenish the household inventory based on recognition of the unique identifier." (*Id.*)

The claim also requires a second, separate communication channel named a "network communication channel." (*Id.*) This channel is used to transmit "information of the user account

3

comprising payment information for the purchase request . . . to accommodate a processing of the purchase request for the item." (*Id.*) Lastly, the claim requires a "database" that stores "information related with the household inventory of the item" including "a purchase requirement of the item." (*Id.*)

In sum, the wireless device of claim 29 must transmit an item status signal to increase the device user's household inventory, along with a unique identifier, over a first channel (*e.g.*, WiFi). Some other system (*i.e.*, not the "wireless device") must then recognize the device's unique identifier and process a purchase request to replenish the user's household inventory based on this identifier. A second channel (*i.e.*, not WiFi) must then be used to transmit user account and payment information to process this purchase request. Finally, a database must store the user's inventory of the household item.

## V. OVERVIEW OF THE ACCUSED SYSTEMS

The accused Dash Button was a device that allowed users to wirelessly order a pre-determined item with the press of a button. (Johnson Reb. R. at ¶ 80.) Due to diminishing use, Amazon discontinued the Dash Button in 2019. (*Id.*) Each Dash Button was branded with a consumer goods manufacturer such as Tide, Bounty, or Gatorade so that customers could purchase a branded Dash Button for a product they wanted to reorder quickly. (*Id.* at ¶¶ 80-81; *see also* Shamilov Decl. Ex. 14 (Deposition of Tim Clark ("Clark Depo.")) at 18:9-19:9.)

Before a Dash Button could be used to place an order, a customer must have used the www.amazon.com website or Amazon app to pick a desired product and quantity to order when the button was pressed. (Johnson Reb. R. at ¶ 80; *see also* Clark Depo. at 18:9-19:9.) For example, a user with a Tide Dash Button could have configured their Dash Button to order a particular Tide product from a list, such as Tide Pods with Spring Meadow scent or Tide Pods with Ocean Mist scent, or to order a different quantity of Tide Pods. (*See* Clark Depo. at 18:19-22 (customer can

4

select "Tide PODS or something different -- different package sizes or different scents of Tide PODS"); *see also id.* at 19:5-9.)

Amazon's Dash Replenishment Service is the cloud-based back-end service that was behind the discontinued Dash Button. (Johnson Reb. R. at ¶ 82.) Currently, Dash Replenishment Service supports third-party devices that are configured to use the service to automatically reorder products. (*Id.*; Shamilov Decl. Ex. 15 (Amazon page titled "Amazon Dash Replenishment").) For example, a Brother printer with built-in sensors can measure the amount of ink remaining in the printer's cartridges and automatically order more ink using Amazon's Dash Replenishment Service. (*Id.*; *see also* Clark Depo. at 36:13-37:11; Shamilov Decl. Ex. 16 (Deposition of Eugene Laevsky at 101:21-103:8).)

To offer this automatic ordering, third-party manufacturers must implement code in their devices or in their clouds to support and interact with the Dash Replenishment Service. (Johnson Reb. R. at ¶¶ 82, 338; Shamilov Decl. Ex. 17 (INNOV00000738).) Third-party manufacturers are responsible for deciding whether to monitor inventory levels or usage, monitoring those levels and usage, and determining when to place an automatic order. (Johnson Reb. R. at ¶ 82 ("Your device measures and tracks usage and when the supplies are running low your device places an order using DRS and we ship the product to the customer on your behalf."); Clark Depo. at 157:7-19; *see also* Johnson Reb. R. at ¶¶ 318, 327, 337-343.) Once the third-party product has used a predetermined level of inventory, if set, the device communicates this information to the third-party manufacturer's cloud. (Shamilov Decl. Ex. 15; Johnson Reb. R. at ¶ 82.) The third-party's cloud then sends this information to the Dash Replenishment Service, which resides in Amazon's cloud. (Shamilov Decl. Ex. 15 ("You measure either inventory levels or usage on your device, and send this to your device cloud to forward to" Amazon's cloud.); *see also* Johnson Reb. R. at ¶ 82.) The

Dash Replenishment Service then processes this signal and creates an order for the user's preselected product. (*Id.*)

## VI. THE ACCUSED "DASH REPLENISHMENT SERVICE PRODUCTS" DO NOT DIRECTLY INFRINGE CLAIM 29 OF THE '443 PATENT.

The sole asserted claim of the '443 patent is a system claim for a "wireless device configured to facilitate electronic communications." ('443 patent, claim 29.) IS alleges generally that Dash Replenishment Service Products infringe the claim, but it fails to identify *any specific device* that constitutes a "Dash Replenishment Service Product" that it accuses of infringement. (*See* McAlexander Op. R.) Without identifying a specific "device," IS cannot establish that anyone, much less Amazon, has infringed the asserted claim covering a "wireless device."

And even if some devices that IS has never identified *could* infringe, it is undisputed that such unnamed devices are made by *third parties*, not Amazon. (McAlexander Op. R., Att. D-a2; *see also* Johnson Reb. R. at ¶¶ 82, 318, 327, 337-343.) Mr. McAlexander acknowledges as much. (McAlexander Op. R., Att. D-a2.) The law is clear: Amazon can only directly infringe a system claim requiring third-party components if it "makes" or "uses" or "sells" the claimed invention. *See, e.g.*, *Centillion*, 631 F.3d at 1284, 1288. To "make" the claimed systems, Amazon must "combine all of the claim elements." *Id.* at 1288. To "use" the claimed systems, Amazon must "put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Id.* at 1284. IS has no evidence that Amazon does either. And IS does not even allege that Amazon sells *any* system that includes all elements of the asserted claim. IS cannot prove that any Dash Replenishment Service Product, whatever it is, can directly infringe the asserted claim of the '443 patent.[2]

---

[2] Like its direct infringement theories, IS's indirect infringement theories for the accused Dash Replenishment Service Products also fail. These theories are addressed in Amazon's contemporaneously filed summary judgment motion of no indirect infringement.

6

### A. Amazon does not "make" the accused "Dash Replenishment Service Products" as a matter of law.

The Federal Circuit requires that one entity "combine all of the claim elements" to "make" a claimed system under § 271(a). *Centillion*, 631 F.3d at 1288. IS does not even allege, much less provide any evidence, that Amazon "combines all of the claim elements" of the asserted claim 29 of the '443 patent. (Johnson Reb. R. at ¶ 318.) IS concedes that the Dash Replenishment Service Products are made by third parties. (McAlexander Op. R., Att. D-a2.) Amazon does not set them up or connect them in a manner required by the asserted claim, and IS does not claim otherwise. Indeed, it is the end-users of those third-party devices, not *Amazon*, who purchase, set up, and authorize the devices. (Johnson Reb. R. at ¶¶ 80-82, 338; Ex. 17.) Because Amazon does not combine all the claim elements, it cannot "make" the system under 35 U.S.C. § 271(a) as a matter of law.

### B. Amazon does not "use" the accused "Dash Replenishment Service Products" as a matter of law.

Nor can Amazon "use" the claimed system under 35 U.S.C. § 271(a). "[T]o 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." *Centillion*, 631 F.3d at 1284. This "requires a party to use each and every element of a claimed system." *Id.* (alteration omitted). In *Centillion*, the accused billing systems included two parts: "Qwest's back office systems and front-end client applications that a user may install on a personal computer." *Id.* at 1281. The Federal Circuit found that defendant Qwest did not "use" all the elements required by the claimed system because it did not use or control the front-end element of the system on the customer's personal computer. *Id.* at 1286. Even though Qwest supplied the front-end software to customers, it did not load the software or process data on the customer's personal computer, and therefore did not "use each and every element of a claimed system." *Id.* at 1284 (alteration omitted). The court was clear that "[i]t made

no difference that the back-end processing is physically possessed by Qwest." *Id.* at 1285.

As in *Centillion*, IS accuses a system with a front-end and a back-end. And like defendant Qwest, Amazon only offers a back-end service: the Dash Replenishment Service, a cloud-based backend service that "allows connected devices to leverage Amazon's retail capabilities to build automatic reordering experiences" for household product manufacturer. (Johnson Reb. R. at ¶ 82; McAlexander Op. R., Att. D-a2.) The front-end Dash Replenishment Service Products are devices created by third-party vendors and are purchased, set up, and maintained by their customers. (*Id.*; McAlexander Op. R., Att. D-a2.)

Indeed, Amazon does not "put the invention into service, *i.e.*, control the system as a whole" as required by *Centillion*. 631 F.3d at 1284. To show that Amazon controls the claimed system, IS would need to show that Amazon uses each and every element of that system. *Centillion*, 631 F.3d at 1284 (Infringement of a system claim "requires a party to use each and every element of a claimed system."). IS cannot show this. For example, Amazon does not use the claimed "item status signal in connection with an initiation of an increase of a household inventory of an item" ('443 patent, claim 29), and IS has no evidence to the contrary. It is undisputed that the third-party vendors control any communications between their devices (at their customers' homes) and their own clouds. (Johnson Reb. R. at ¶¶ 82, 338; Ex. 17.) For example, whether a Brother printer sends a claimed "item status signal in connection with an initiation of an increase of a household inventory of an item" is entirely up to Brother, not Amazon. (*Id.*) There is no evidence that it makes any difference to Amazon whether the transmission between a third-party product and the product manufacturer's cloud is an "item status signal in connection with an initiation of an increase of a household inventory of an item," as opposed to some other type of signal or any signal at all. (Johnson Reb. R. at ¶ 341.) Under *Centillion*, merely offering a back-end software—like the Dash Replenishment Service—is insufficient to show infringement by Amazon

8

of a claim directed to a system requiring third-party devices. *Centillion*, 631 F.3d at 1286 (finding that "[s]upplying the software for the customer to use is not the same as using the system").

Nor does Amazon "obtain benefit from" the claimed system as required by *Centillion*. *Id.* at 1284. To show otherwise, IS would need to establish that Amazon obtains a benefit from *every* element of the claimed system. *See Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017) (explaining that a single party "must control (even if indirectly) and benefit from each claimed component" to "use" a system). And that benefit must "be tangible, not speculative, and tethered to the claims." *Grecia v. McDonald's Corp.*, 724 F. App'x 942, 947 (Fed. Cir. 2018). IS cannot and does not identify any such benefits. Indeed, there is no evidence that Amazon derives *any* benefit because the transmission between a third-party Dash Replenishment Service Product and a third-party cloud is an "item status signal in connection with an initiation of an increase of a household inventory of an item" as required by the claim. *See id.* at 947 (To "use" a system, a party must "benefit[] from each and every element of the claimed system."). Amazon does not know, does not direct, and does not care how the third-party Dash Replenishment Service Products communicate with those third-parties' clouds. (Johnson Reb. R. at ¶ 341.)

Accordingly, IS has no evidence that Amazon "uses" the system of claim 29 of the '443 patent. The Court should enter summary judgment of no direct infringement.

**VII. AS ACCUSED BY IS, THE DASH BUTTON LACKS KEY LIMITATIONS OF CLAIM 29 OF THE '443 PATENT AND CANNOT DIRECTLY INFRINGE THE CLAIM AS A MATTER OF LAW.**

IS cannot show as a matter of law that the accused Dash Button meets either of the following limitations of the sole asserted claim 29 of the '443 patent: (i) "information related with the household inventory of the item being stored in a database," and (ii) "transmitting . . . an item status signal . . . based on an indication of an updated status of the item." Thus, the accused Dash Button does not directly infringe the '443 patent, and summary judgment of no direct infringement

is appropriate.³ *See Celotex Corp.*, 477 U.S. at 322-23.

Claim 29 of the '443 patent requires a database that stores "information related with the *household* inventory of the item." ('443 patent, claim 29 (emphasis added).) IS's expert, Mr. McAlexander, opines that "Amazon's servers store information in a database related to the household item [including] . . . its inventory and . . . the current inventory or usage of the item." (McAlexander Op. R., Att. D-a5.) But it is undisputed that Amazon's servers store *Amazon's* inventory, not the Dash Button customers' "household inventory," as required by the claim. (Johnson Reb. R. at ¶ 350.) Amazon does not track, nor does it have any way of knowing, how much product inventory a Dash Button user may have at home, and Mr. McAlexander identifies no evidence suggesting otherwise. (*Id.*; *see* McAlexander Op. R.) The accused Dash Button therefore cannot meet the claim element of "information related with the household inventory of the item being stored in a database" and thus does not infringe the '443 patent.

Claim 29 also requires that an item status signal is transmitted "based on an indication of an updated status of the item." ('443 patent, claim 29.) IS alleges that an item's "status" is its inventory level and the "updated status of the item" is low inventory. (McAlexander Op. R., Att. D-a4 ("[T]he updated status is the low inventory level for the item.").) As discussed above, it is undisputed that neither Amazon nor the Dash Button has information regarding a customer's "household inventory of an item," and therefore neither has information about an item's "status." (Johnson Reb. R. at ¶¶ 333-46.) Without providing any evidence, IS's expert states in conclusory fashion that a "Dash Button transmits a reorder request when the inventory of a household item has been determined to be below a desired level, and thus changed from its prior inventory level."

---

³ Like its direct infringement theories, IS's indirect infringement theories for the accused Dash Button also fail. These theories are addressed in Amazon's contemporaneously filed summary judgment motion of no indirect infringement.

(McAlexander Op. R., Att. D-a4.) He points to no such determination. (*See id.*) Indeed, that determination is made by the end user: a mom decides she needs to order more diapers for her child, a father decides he needs more Tide detergent, a grandma decides she needs more soap. (Johnson Reb. R. at ¶¶ 80-81.) A Dash Button sends an order request only when a user pushes the button on the device. (*Id.*) That user is not required to push the button only when he or she has "low inventory." (*Id.* at ¶ 336.) As such, that push has nothing to do with the updated status of any item.[4] (*Id.*)

The Federal Circuit has already noted this in a prior case between the parties, in which IS's predecessor (and the original plaintiff in this case) asserted a parent patent, U.S. Patent No. 9,369,844, against the very same Dash Button. *Innovation Scis., LLC v. Amazon.com, Inc.*, 778 F. App'x 859 (Fed. Cir. 2019). As Judge Chen noted, pushing the button has nothing to do with an updated status of an item:

> How is the pressing of the dash button providing information about a detected change in some condition of the merchandise? . . . But you know your case right? You know your patent. You know the accused product? It's pressing a button [] to order more detergent or something like that. OK. So, I mean, I'm just sitting here wondering what could you possibly say to Judge O'Grady to persist with an infringement theory? . . . All the pressing of the button conveys is the desire for more of the product, more detergent, for example. It doesn't convey any information that the customer has run out of detergent or has fallen below a certain threshold amount of detergent in the household. It just wants more. So I guess I'm at a loss why it's detecting a change in any condition.

(Shamilov Decl., Ex. 18 (Appeal Oral Argument Transcript) at 34:21-38:10.)[5] IS had no evidence

---

[4] Indeed, the Dash Button could have simply been pressed by mistake. (Johnson Reb. R. at ¶ 336.) Or worse, as noted in a review of the Dash Button from 2015, "anyone who sees one of these buttons—guests, uninformed spouses, and especially kids—will be pushing it all the time out of curiosity, with no idea what it does." (*Id.*; Shamilov Decl. Exhibit 19 ("The Amazon Dash Button Fiasco," PC Magazine, April 8, 2015, available at http://www.pcmag.com/article2/0,2817,2480496,00.asp).) Many presses of the Dash Button may have not been to order a product at all, let alone intended to indicate that any inventory is low.

[5] Relatedly, Judge O'Grady recently awarded Amazon $722,740.50 in attorneys' fees in IS's

that the accused Dash Button met the claim limitation of "transmitting . . . an item status signal . . . based on an indication of an updated status of the item" in the prior case, and it has no evidence still.  The Dash Button does not directly infringe claim 29 of the '443 patent as a matter of law.

## VIII.  CONCLUSION

For the reasons stated, Amazon respectfully requests that the Court grant its motion for summary judgment of no direct infringement of the '443 patent.

---

first case against Amazon for its "objectively unreasonable" litigation conduct.  *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, 1-16-cv-00861, Dkt. 275 (E.D. Va. Feb. 18, 2020).

February 25, 2020                                   Respectfully submitted,


                                                                                        By: */s/ TJ Fox*
                                                                              J. David Hadden
                                                                              CA Bar No. 176148 (Admitted E.D. Tex.)
                                                                              Email: dhadden@fenwick.com
                                                                              Saina S. Shamilov
                                                                              CA Bar No. 215636 (Admitted E.D. Tex.)
                                                                              Email: sshamilov@fenwick.com
                                                                              Ravi R. Ranganath
                                                                              CA Bar No. 272981 (Admitted E.D. Tex.)
                                                                              Email: rranganath@fenwick.com
                                                                              **FENWICK & WEST LLP**
                                                                              Silicon Valley Center
                                                                              801 California Street
                                                                              Mountain View, CA 94041
                                                                              Telephone: (650) 988-8500
                                                                              Facsimile: (650) 938-5200

                                                                              Todd R. Gregorian
                                                                              CA Bar No. 236096 (Admitted E.D. Tex.)
                                                                              Email: tgregorian@fenwick.com
                                                                              Dargaye Churnet
                                                                              CA Bar No. 303659 (Admitted E.D. Tex.)
                                                                              Email: dchurnet@fenwick.com
                                                                              TJ Fox
                                                                              CA Bar No. 322938 (Admitted E.D. Tex.)
                                                                              Email: tfox@fenwick.com
                                                                              **FENWICK & WEST LLP**
                                                                              555 California Street, 12th Floor
                                                                              San Francisco, CA 94104
                                                                              Telephone: 415.875.2300
                                                                              Facsimile:  415.281.1350

                                                                              Jeffrey Ware
                                                                              CA Bar No. 271603 (Admitted E.D. Tex.)
                                                                              Email: jware@fenwick.com
                                                                              **FENWICK & WEST LLP**
                                                                              1191 Second Avenue, 10th Floor
                                                                              Seattle, WA 98101
                                                                              Telephone: 206.389.4510
                                                                              Facsimile:  206.389.4511

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

*Counsel for Defendants*
AMAZON.COM, INC.,
AMAZON DIGITAL SERVICES LLC,
AND AMAZON WEB SERVICES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2020, a true and correct copy of the foregoing document was served on each party through their counsel of record via email.

Donald Lee Jackson
Email: djackson@davidsonberquist.com
Alan Arthur Wright
Email: awright@davidsonberquist.com
Gregory Albert Krauss
Email: gkrauss@davidsonberquist.com
James Daniel Berquist
Email: jay.berquist@davidsonberquist.com
Davidson Berquist Jackson & Gowdey LLP
8300 Greensboro Drive Suite 500
McLean, VA 22102

*Counsel for Plaintiff*
Innovation Sciences, LLC


    */s/ Ravi R. Ranganath*
    Ravi R. Ranganath