# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| INNOVATION SCIENCES, INC., | ) |
| Plaintiff, | ) CASE NO. 4:18-CV-00474-ALM |
| v. | ) |
| AMAZON.COM, INC., AMAZON DIGITAL SERVICES, LLC, and AMAZON WEB SERVICES, INC., | ) |
| Defendants. | ) |

**OPENING EXPERT REPORT OF DAVID B. JOHNSON, PH.D.**

December 4, 2019

_David B. Johnson_
David B. Johnson, Ph.D.

override the routine and conventional use of the computer. Merely implementing an abstract idea using well-known computer components or functions, or merely adding conventional computer components to well-known business practices, is insufficient to create an inventive concept.

### Willful Infringement

63. I understand willful infringement is reserved for only the most egregious behavior, such as where the infringement is malicious, deliberate, consciously wrongful, or done in bad faith. I further understand that willful infringement is a question of fact and that a patentee needs to show by a preponderance of the evidence the facts that support a finding of willful infringement. I further understand that an accused infringer's proper investigation and formation of a good faith belief, even if erroneous, that the asserted claims are invalid or unenforceable can negate a finding of willful infringement.

### Patentable Distinction

64. I have been informed and understand that a party who has unsuccessfully litigated an issue to a final decision is precluded from relitigating that same issue in future proceedings. I understand that a challenged claim is patentably distinct from a reference claim if the challenged claim is not anticipated by, or would not have been obvious over, the reference claim. I understand that if an asserted claim of a patent is not patentably distinct from the claims of a patent found to be directed toward ineligible subject matter, then the asserted claim is also directed toward ineligible subject matter.

65. I further understand that issue preclusion applies to claims from different patents as long as the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity.

## VI. DESCRIPTION OF THE ASSERTED PATENTS

### A. Overview of the Asserted Patents

66. The '983 patent is a continuation of the '918 patent, which is a continuation of the '798 patent, and the three share a common specification. The '983, '918, and '798 patents (collectively, "the '983 patent family") are all entitled "Method and System for Efficient Communication." The '983 patent was filed on June 19, 2017 and issued on March 6, 2018; the '918 patent was filed on January 26, 2017 and issued on August 8, 2017; and the '798 patent was filed on March 15, 2016 and issued on April 10, 2018.

67. The '443 patent is titled "System and Method for Providing Locally Applicable Internet Content with Secure Action Requests and Item Condition Alerts," and "relates generally to accessing content through a network." '443 patent at 1:34-35. The '443 patent was filed on May 17, 2016 and issued August 1, 2017. All four asserted patents claim priority to U.S. Patent No. 7,603,131, filed August 10, 2006. The specifications of the asserted patents describe several distinct ideas, including the four described below.

68. The first idea described in the specification of each of the asserted patents is to provide, in a kiosk or the home, secure payment using short range wireless communication to something referred to as a local wireless HUB (also referred to as a "WHUB"), which can then communicate with a remote server. *See* '443 patent at 2:52-3:4 ("Summary of the Invention"). Once the user's mobile device is authenticated by the wireless HUB using a short range near field identification tag, such as RFID or NFC, the wireless HUB sets up a higher bandwidth wireless connection with the mobile device through which the HUB securely receives payment information for the user. *See id*. The wireless HUB can then forward the payment information to a remote merchant server to complete the purchase. *See id*.; *id*. at Figures 3 and 4.

69. A second idea described in the specification of each of the asserted patents is a system for sensing the status of a diaper (i.e., whether it is wet or has been soiled) and sending a

corresponding "diaper status update" to alert the appropriate caregiver. *Id.* at 3:5-15; *see generally id.* at Figs. 5-7, 10:9-12:17. Where multiple diapers are being monitored, a unique identifier is associated with each diaper sensor and is included with each transmitted status update. *Id.* at 3:16-21, 11:29-35. The diaper management system also encompasses a diaper ordering system referencing various aspects mentioned in the first idea. *Id.* at 12:18-24; *see generally id.* at 12:18-13:39. As shown in Figure 8 (reproduced below), the system includes various pieces of equipment that carry out different parts of the diaper ordering process. The wireless HUB ("WHUB") is configured to receive wet diaper updates. *Id.* at 12:30-36. The WHUB can then compare diaper usage against the household inventory. *Id.* at 12:39-45. When the household diaper supply is running low, the user is alerted and may purchase diapers online from a local merchant using his or her mobile device. *Id.* at 12:47-52. Once the user's mobile device is authenticated by the WHUB, the mobile device sends the diaper purchase request through the WHUB to a local merchant. *Id.* Even in this combined scenario, the detection of the wet diaper condition does not itself initiate the purchase transaction. Instead, the purchase is made manually by the user using a separate wireless device. And the information used to authenticate the user's wireless device is clearly not the unique ID associated with the wireless diaper detector. *See id.*

19                                                                                          INVALIDITY REPORT