**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| INNOVATION SCIENCES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, INC., et al.,<br><br>Defendants. | Civil Action No. 4:18-cv-00474-ALM<br>(LEAD CONSOLIDATED CASE)<br><br>JURY TRIAL DEMANDED |
| INNOVATION SCIENCES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>RESIDEO TECHNOLOGIES, INC.,<br><br>Defendant. | Civil Action No. 4:18-cv-00475-ALM |
| INNOVATION SCIENCES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>HTC CORPORATION,<br><br>Defendant. | Civil Action No. 4:18-cv-00476-ALM |
| INNOVATION SCIENCES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VECTOR SECURITY, INC.,<br><br>Defendant. | Civil Action No. 4:18-cv-00477-ALM |

**AMAZON'S MOTION FOR SUMMARY JUDGMENT
OF NO INDIRECT INFRINGEMENT, NO INFRINGEMENT UNDER
THE DOCTRINE OF EQUIVALENTS, AND NO WILLFUL INFRINGEMENT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...............................................................................................................1

II.     STATEMENT OF THE ISSUES...........................................................................................2

III.    STATEMENT OF UNDISPUTED MATERIAL FACTS ....................................................3

IV.     IS CANNOT SHOW THAT AMAZON INDIRECTLY INFRINGED ANY OF THE
        ASSERTED PATENTS...........................................................................................................5

V.      IS FAILED TO CREATE A GENUINE DISPUTE OF MATERIAL FACT
        REGARDING INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS. ......9

VI.     IS CANNOT SHOW THAT AMAZON WILLFULLY INFRINGED ANY
        ASSERTED PATENT...........................................................................................................12

VII.    CONCLUSION...................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Sandoz, Inc.*,
566 F.3d 1282 (Fed. Cir. 2009)..................................................................9

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
811 F.3d 1334 (Fed. Cir. 2016).................................................................11

*E-Pass Techs. v. 3Com Corp.*,
473 F.3d 1213 (Fed. Cir. 2007)..................................................................6

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
946 F.3d 1367 (Fed. Cir. 2020).................................................................12

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
909 F.3d 398 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 480 (2019) ........................7

*Finjan, Inc. v. Cisco Sys. Inc.*,
No. 17-cv-72-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ..........................13

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010)..................................................................6

*Gemalto S.A. v. HTC Corp.*,
754 F.3d 1364 (Fed. Cir. 2014)..................................................................9

*Global-Tech Appliances v. SEB S.A.*,
563 U.S. 754 (2011)................................................................................7

*GTX Corp. v. Kofax Image Prods. Inc.*,
571 F. Supp. 2d 742 (E.D. Tex. 2008).........................................................9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016)........................................................................2, 12

*Innovation Scis., Inc. v. Amazon.com, Inc.*,
No. 1:16-cv-861, Dkt. 275 (E.D. Va. Feb. 19, 2020) ....................................12

*Intellectual Ventures I LLC v. Symantec Corp.*,
234 F. Supp. 3d 601 (D. Del. 2017), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018) .................12

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
572 U.S. 915 (2014)................................................................................6

# TABLE OF AUTHORITIES
## (CONTINUED)

Page(s)

*Plastic Omnium Advanced Innovation & Res. v. Donghee Am., Inc.*,
   387 F. Supp. 3d 404 (D. Del. 2018), *aff'd*, 943 F.3d 929 (Fed. Cir. 2019) ...........................13

*Ricoh Co. v. Quanta Comp. Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008)................................................................................7

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019), *cert. denied*, 2020 WL 871719 (U.S. Feb. 24,
   2020) ..............................................................................................................................12

*TecSec, Inc. v. Int'l Bus. Machines Corp.*,
   769 F. Supp. 2d 997 (E.D. Va. 2011), *aff'd in relevant part*, 466 F. App'x 882
   (Fed. Cir. 2012)................................................................................................................6

*UCB, Inc. v. Watson Labs. Inc.*,
   927 F.3d 1272 (Fed. Cir. 2019)................................................................................9

*Universal Elecs. Inc. v. Roku, Inc.*,
   No. SA-CV-181580-JVS-ADSX, 2019 WL 1877616 (C.D. Cal. Mar. 5, 2019) ...................12

*Vaporstream, Inc. v. Snap Inc.*,
   No. 2:17-cv-220, 2020 WL 136591 (C.D. Cal. Jan. 13, 2020)................................13

*Vita-Mix Corp. v. Basic Holding, Inc.*,
   581 F.3d 1317 (Fed. Cir. 2009)................................................................................8

*Warner-Lambert Co. v. Apotex Corp.*,
   316 F.3d 1348 (Fed. Cir. 2003)................................................................................7

*Wavetronix LLC v. EIS Elec. Integrated Sys.*,
   573 F.3d 1343 (Fed. Cir. 2009)................................................................................9

**STATUTES**

35 U.S.C. § 271(c) ............................................................................................................7

## I.     INTRODUCTION

IS has no evidence that Amazon[1] contributed to infringement by another or induced infringement, infringed under the doctrine of equivalents, or that Amazon's conduct was willful. Amazon is therefore entitled to summary judgment on these issues.

First, both inducement and contributory infringement require the plaintiff to prove an act of direct infringement by someone *other* than the defendant.  This is a necessary predicate for any indirect infringement claim, as a defendant cannot "contribute to" or "induce" its own infringement.  Here, IS failed to adduce any evidence about even a single act of direct infringement of any of the asserted patents by a party other than Amazon.[2]  Accordingly, IS cannot establish that Amazon either contributed to or induced any infringement for this reason alone.

And its indirect infringement claims fail for other reasons as well.  A claim of induced infringement requires evidence that the defendant *intended* the third party to infringe the patent.  The only evidence IS's technical expert has identified amounts to general *awareness of the patents* and offering support and instructions for the accused devices.  (Declaration of Saina S. Shamilov ("Shamilov Decl.") Ex. 3 (Transcript of Joseph McAlexander's Deposition ("McAlexander Depo.")) 17:19–18:8.)  No evidence shows that Amazon specifically intended any end users to infringe.

A claim of contributory infringement requires the plaintiff to show that the accused product has no substantial non-infringing uses.  For the '983 patent family, IS accuses a very specific use

---

[1] This motion is brought on behalf of all Amazon defendants.  However, Amazon Digital Services, Inc., Amazon Digital Services, LLC, Amazon Web Services LLC, and Amazon Fulfillment Services, Inc., who have been named as defendants in this case, do not exist, are not proper defendants, and should be dismissed.

[2] As explained in Amazon's concurrently-filed motions for summary judgment of non-infringement, Amazon does not and cannot directly infringe any of the asserted patents as a matter of law as well.

case:  controlling smart home devices via Alexa, a voice-controlled virtual assistant.  It is undisputed that the primary purpose of the accused Amazon Fire TVs is to stream video; the accused Amazon Fire Tablets have scores of uses that have nothing to do with controlling smart home devices; and the accused Amazon Echos offer virtually unlimited functionality from playing music to answering questions—none of which is accused in this case.  Accordingly, the Court should grant a summary judgment of no indirect infringement.

Second, IS failed to show, on a limitation-by-limitation basis, how the accused products perform substantially the same functions in substantially the same ways with substantially the same results recited in each asserted claim.  It therefore cannot prove infringement under the doctrine of equivalents, and Amazon is entitled to summary judgment of non-infringement on this basis too.

Finally, IS cannot show willfulness to support a claim for enhanced damages.  "Garden-variety" infringement, even with a general awareness of the patents, does not support a finding of willful infringement, and the award of enhanced damages in such cases is an abuse of discretion. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016).  Here, IS has no evidence that Amazon had any specific intent to infringe the patents or any other facts indicating its conduct was willful.

For these reasons, Amazon is entitled to summary judgment of no indirect infringement, no infringement under the doctrine of equivalents, and no willful infringement as a matter of law, and the Court should grant the motion.

## II.    STATEMENT OF THE ISSUES

1.    Whether IS has any evidence to raise a genuine dispute of material fact that Amazon induces infringement of any asserted claim of the asserted patents;

2.    Whether IS has any evidence to raise a genuine dispute of material fact that Amazon

contributorily infringes any asserted claims of the asserted patents;

      3.      Whether IS has any evidence to raise a genuine dispute of material fact regarding infringement under the doctrine of equivalents; and

      4.      Whether IS has any evidence to raise a genuine dispute of material fact that Amazon willfully infringes any asserted claim of the asserted patents.

## III.     STATEMENT OF UNDISPUTED MATERIAL FACTS

      1.      IS asserts four patents:  U.S. Patent Nos. 9,912,983 (Dkt. 79-1) (the "'983 patent"); 9,942,798 (Dkt. 79-3) (the "'798 patent"); 9,729,918 (Dkt. 79-2) (the "'918 patent" and collectively with the first two the "'983 patent family"); and 9,723,443 (Dkt. 79-4) (the "'443 patent"). (Dkt. 79, First Amended Complaint ("FAC") at ¶¶ 18, 95, 122, 147.)

      2.      IS accuses versions of Amazon's Echo, Fire TV, and Fire Tablet devices, as well as the Alexa Voice Service, of infringing certain systems claims of the '983, '918, and '798 patents.[3]  (Shamilov Decl. Ex. 2 (Joseph McAlexander Opening Report ("McAlexander Op. R.")), Att. A at ¶¶ 1–3, Att. B at ¶¶ 1–4, Att. C at ¶¶ 1–4.).  IS accuses these products because they provide access to Amazon's Alexa, which customers may use to control "smart home" devices like the Philips Hue Lightbulb.  (McAlexander Op. R. at ¶ 79 ("Specifically, Amazon's Echo products, Fire TV products and Fire Tablet products all incorporate what is known as the Alexa voice technology and the ability to manage smart home devices, supporting the operation of those devices through the Amazon cloud."); *id.*, Att. A-a10 ("You Can Now Voice Control Philips Hue Devices with the Alexa Voice Service.") (citing Amazon document).)

---

[3] IS asserts '918 patent claims 28, 112, and 113; '983 patent claims 22, 24, 39, 62, 64, 67, 80, 105, and 108; and '798 patent claims 5, 6, and 52.

3.      Amazon's Alexa is a virtual intelligent assistant.  (Shamilov Decl. Ex. 4 (Non-Infringement Expert Report of Dr. David Johnson ("Johnson Reb. R.")) at ¶¶ 29–43.)  It is a cloud-based voice service that allows customers to access a vast array of functions, including playing music, receiving answers to questions, making to-do lists, setting timers, streaming podcasts, playing audiobooks, and retrieving real-time information such as current weather, news, traffic, and sport scores.  (*Id.*)

4.      Fire TVs are media streaming devices that allow Amazon customers to stream movies, TV programs, and music on traditional TVs.  (*Id.* at ¶ 56; *see also, e.g.*, McAlexander Depo. at 28:3–9.)  Fire TVs come in several form factors and connect to a customer's traditional TV through HDMI and to the internet via the customer's Wi-Fi network.  (Johnson Reb. R. at ¶¶ 61–62.)

5.      Fire Tablets are tablet computers with color touchscreens that range from 7 inches to 10.1 inches in size.  (*Id.* at ¶ 65.)  Like Fire TVs, Fire Tablets allow customers to access millions of movies, TV episodes, games, apps, eBooks, and songs via the Amazon Appstore.  (*Id.* at ¶ 66.)

6.      Echos are a line of speakers that provide customers with access to Amazon's Alexa. While these devices come in various form factors, they all include a microphone and speaker to interact with Alexa.  (*Id.* at ¶ 69.)  Users can ask Alexa via an Echo to stream music, ask for information such as news, sports scores, and weather, and much more.  (*Id.* at ¶¶ 69–70.)

7.      IS accuses the Amazon Dash Button and Dash Replenishment Service Products of infringing claim 29 of the '443 patent.  (McAlexander Op. R., Att. D at ¶ 2.)

8.      The Amazon Dash Button was a device that allowed users to wirelessly order a pre-determined item with the press of a button.  (Johnson Reb. R. at ¶ 80.)  Each Dash Button was branded with a consumer goods manufacturer such as Tide, Bounty, or Gatorade so that customers

could purchase a branded Dash Button for a product they wanted to reorder quickly.  (*Id.* at ¶¶ 80–81; *see also* Shamilov Decl. Ex. 14 (Deposition of Tim Clark ("Clark Depo.")) at 18:9–19:9.)

9.      Amazon's Dash Replenishment Service is the cloud-based back-end service that was behind the discontinued Dash Button.  (Johnson Reb. R. at ¶ 82.)  Currently, Dash Replenishment Service supports third-party devices that are configured to use the service to automatically reorder products.  (Johnson Reb. R. at ¶ 82; Shamilov Decl. Ex. 15 (Amazon page titled "Amazon Dash Replenishment").)  For example, a Brother printer with built-in sensors can measure the amount of ink remaining in the printer's cartridges and automatically order more ink using Amazon's Dash Replenishment Service.  (*Id.*; *see also* Clark Depo. at 36:13–37:11; Shamilov Decl. Ex. 16 (Deposition of Eugene Laevsky) at 101:21–103:8.)

10.      During discovery, defendants served Common Interrogatory No. 8 on IS, which provides as follows:  "For each patent-in-suit, describe the bases for your contention that each Defendants' alleged infringement has been willful."  (Shamilov Decl. Ex. 20 at 16.)

11.      IS responded to Common Interrogatory No. 8 as follows:  "Each of the Defendants have had full knowledge of the asserted patents and has continued to make and sell the accused products in knowing violation Innovation's [sic] rights.  At least the HTC and Amazon Defendants have had actual knowledge of both the asserted patents and Innovation's belief that the products accused of infringement by virtue of the infringement allegations made by Innovation in the *Amazon II* and *HTC II* actions filed in the District Court for the Eastern District of Virginia."  (*Id.* at 16–17.)  IS has not supplemented this response during discovery or otherwise.

## IV.      IS CANNOT SHOW THAT AMAZON INDIRECTLY INFRINGED ANY OF THE ASSERTED PATENTS.

IS accuses Amazon of both inducing others to infringe and contributory infringement.  (FAC ¶¶ 82, 108, 135, 153 (inducement); *id.* ¶¶ 84, 110, 137, 155 (contribution).)  Both theories

fail.  Amazon is entitled to summary judgment of no indirect infringement on multiple grounds.

First, to succeed under either theory, IS must identify and prove an act of infringement *by another* that Amazon induced or to whose infringement Amazon contributed.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 922 (2014) (inducement); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (contributory infringement) (emphasis added).  That requires proof of a particular infringing act by a particular person; generalized assumptions about how customers *might* use a device in an infringing manner, for example, are insufficient:

> If, as [plaintiff] argues, it is 'unfathomable' that no user in possession of one of the accused devices . . . has practiced the accused method . . . [plaintiff] should have had no difficulty in meeting its burden of proof and in introducing testimony of even one such user.

*E-Pass Techs. v. 3Com Corp.*, 473 F.3d 1213, 1222–23 (Fed. Cir. 2007); *see also TecSec, Inc. v. Int'l Bus. Machines Corp.*, 769 F. Supp. 2d 997, 1013–16 (E.D. Va. 2011), *aff'd in relevant part*, 466 F. App'x 882 (Fed. Cir. 2012) ("[plaintiff's] failure to uncover evidence of even a single third-party direct infringer is fatal").

Here, IS has not secured any testimony from any end user of any of the accused products, nor does it have any evidence of any particular user using the accused products to control smart home devices via Alexa.  Indeed, IS has taken more than ten depositions of Amazon business and technical witnesses and received thousands of documents in response to IS's many requests.  (*See* Shamilov Decl. ¶ 22.)  Yet IS's expert Mr. McAlexander produced an infringement report that failed to identify evidence of even a single third-party act of direct infringement of the '983 patent family.  (*See generally* McAlexander Op. R.; *see also* Johnson Reb. R. ¶¶ 366–67; McAlexander Depo. at 28:14–30:12.)

Nor did Mr. McAlexander identify a single "Dash Replenishment Service Product" that purportedly directly infringes the '443 patent.  (*See generally* McAlexander Op. R.)  In fact, he

conceded that these devices "are manufactured by third parties."  (McAlexander Op. R., Att. D-a2.)  Without identifying a single third-party manufacturer or end user that allegedly directly in-fringes, IS's indirect theories for the accused "Dash Replenishment Service Products" fail.  And as discussed in Amazon's contemporaneously filed summary judgment motion of no direct in-fringement of the '443 patent, IS cannot show that the accused Dash Button meets key limitations of the asserted claim.  Accordingly, no reasonable jury could find that Amazon indirectly infringed the asserted patents, and the Court should grant summary judgment of no indirect infringement on this ground alone.

Second, to succeed on its inducement theory, IS must show that Amazon possessed a "spe-cific intent" for others to infringe the asserted patents.  *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407–08 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 480 (2019).  Indeed, under the law, "mere knowledge of infringement is insufficient" to prove a claim of in-duced infringement.  *Id.*; *see also Global-Tech Appliances v. SEB S.A.*, 563 U.S. 754, 760 (2011) ("Although the text of § 271(b) makes no mention of intent, we infer that at least some intent is required."); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003) ("[Mere] knowledge of possible infringement by others does not amount to inducement; *specific intent and action to induce infringement must be proven*.") (emphasis added); *see also Ricoh Co. v. Quanta Comp. Inc.*, 550 F.3d 1325, 1341 (Fed. Cir. 2008).  IS has no evidence that Amazon has any intent to induce others to infringe the asserted patents.  IS's only evidence relates to Amazon providing the devices, support, and instructions to users and manufacturers.  (McAlexander Op. R. ¶¶ 71–72.)  This is insufficient as a matter of law.

Finally, as to contributory infringement, IS must prove that the accused products are not capable of a substantial non-infringing use.  35 U.S.C. § 271(c).  A non-infringing use is deemed

"substantial" when it is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009).  IS cannot meet this standard for the asserted '983 patent family as each of the accused devices have numerous common functions that have nothing to do with the accused control of smart home functions.

The accused Fire TVs allow users to play music, use voice commands to search streaming services, browse the internet, watch live sports, and purchase and download over 7,000 third-party apps and games, and are capable of countless other non-smart home functions.  (Johnson Reb. R. ¶¶ 56–60.)  Mr. McAlexander himself confirmed at his deposition that a Fire TV's primary use is to stream video, not to control any smart home devices:

> Q: Now, what's your understanding of the—how a customer would use a Fire TV product?
>
> A: They would use it to try to avoid the cost of DirecTV.  I'm looking for solutions to lower cost.  They would use that in terms of being able to download and be able to view programs, videos, that type of thing.

(McAlexander Depo. at 28:3–9.)

Like Fire TVs, the accused Fire Tablets have innumerable uses unrelated to operating smart home devices:  they offer access to "millions of movies, TV episodes, games, apps, eBooks, and songs."  (Johnson Reb. R. ¶ 66.)  Users can "'[s]tream or download thousands of videos from Prime Video, Netflix, STARZ, Disney+, and SHOWTIME,' and access 'over 570,000 apps and games, 475,000 Audible titles, and millions of songs.'"  (*Id.*)  Using Alexa, "users may ask the Fire Tablet to 'play video and music, open apps, shop online, check the weather, call or message almost anyone' with their voice."  (*Id.* ¶ 67.)

Using the accused Echos, end users can ask Alexa "to play music, make calls, send and receive [voice, text, and email] messages, provide information, news, sport scores, weather, and

more." (*Id.* ¶¶ 69, 76.)  They can listen to audiobooks from Audible and get information on local businesses.  (*Id.* ¶ 71.)  Indeed, any Alexa-enabled devices can "play music, answer questions, make to-do lists, set timers, stream podcasts, play audiobooks, retrieve real-time information such as current weather, news, traffic, and sport scores, and other tasks." (*Id.* ¶ 29.)  As IS cannot refute that the accused products have these non-infringing capabilities, its contributory infringement claims must fail.

For all the reasons above, the Court should grant Amazon's motion for summary judgment of no indirect infringement.

## V. IS FAILED TO CREATE A GENUINE DISPUTE OF MATERIAL FACT RE-GARDING INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS.

To prove infringement under the DOE, IS must show how the accused products meet the "function, way, result" test or the "insubstantial differences" test.  *Gemalto S.A. v. HTC Corp.*, 754 F.3d 1364, 1374 (Fed. Cir. 2014).  To meet the "function, way, result" test, IS must show "on a limitation-by-limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the pa-tented product."  *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1360 (Fed. Cir. 2009).  Analysis on an element-by-element basis is necessary:  "a generalized showing of equiva-lency between the claim as a whole and the allegedly infringing product or process is not suffi-cient."  *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1296 (Fed. Cir. 2009).  To meet the "insub-stantial differences" test, IS must show that the differences between the accused devices and claim elements are "insubstantial."  *UCB, Inc. v. Watson Labs. Inc.*, 927 F.3d 1272, 1284–85 (Fed. Cir. 2019).  Specifically, IS must "provide 'particularized testimony and linking argument to show the equivalents' are insubstantially different."  *Gemalto*, 754 F.3d at 1374 (quoting *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007)); *GTX Corp. v. Kofax Image*

*Prods. Inc.*, 571 F. Supp. 2d 742, 751 (E.D. Tex. 2008).

IS's DOE theories, as advanced by its expert Mr. McAlexander, fall into two categories. For the first category of claims, Mr. McAlexander merely reproduced the claim language and stated that it met the requirements for infringement under the DOE: that the claim is "insubstantially different" from the accused products or that it meets the "function-way-result" test.[4] For example, he opined: "In the event that this claim element is found not to be literally met by the accused Fire TV Products, it is met under the doctrine of equivalents, because the configured *high definition digital output interface* identified in the accused Fire TV Products is insubstantially different than the claimed configured *high definition digital output interface*." (McAlexander Op. R. at A-a7 (emphases added).) Mr. McAlexander's DOE opinions merely conclude, *with no analysis or supporting facts*, that the accused product meets the function-way-result test and is "insubstantially different" from the claim. During his deposition on February 4, Mr. McAlexander *admitted* that these "opinions" are not about the DOE at all, but advance literal infringement theories only. (McAlexander Depo. at 65:1–3 ("Q. So you're just providing a literal infringement opinion? A. It's literal infringement, yes."), 59:11–62:8; 63:10–64:12.) Accordingly, the Court should grant summary judgment on these claims.

For the second category of claims, Mr. McAlexander inserted a brief parenthetical for each step of the "function, way, result" test that again simply states bare conclusions that the claim is insubstantially different from the accused product.[5] For example, Mr. McAlexander opined: "In

---

[4] (*See* McAlexander Op. R. at Aa7, Aa9, Aa9, Aa11, Aa12, Aa13, Aa14, Aa16, Aa17, Aa20, Aa23, Aa24, Aa25, Aa26, Aa27, Aa27; Ab3, Ab5, Ab5–6, Ab6–7, Ab7, Ab8, Ab8, Ab9–10, Ab10, Ab11–12, Ab13, Ab14, Ab14, Ab15, Ab16, Ab16; Ba8–9, Ba10, Ba12, Ba13, Ba14, Ba15, Ba15, Ba22, Ba23, Ba25, Ba27, Ba28, Ba29–30, Ba32; Bb3–4, Bb4, Bb5, Bb6, Bb7, Bb8, Bb11, Bb12, Bb13, Bb14, Bb15, Bb15–16; Bc19; Ca3, Ca3, Ca5, Ca8–9, Ca10, Ca11, Ca12, Cb2, Cb2, Cb3–4, Cb5, Cb6–7, Cb7, Cb9; Ba7, Bb11, Bc5, Bc9, Bc12, Bc14, Bc18, Bc21, Bc22, Bc24, Bd4–5, Cc2, Cc3–4, Cc4–5, Cc6, Cc7.)

[5] (McAlexander Op. R. at Aa3, Aa4, Aa5, Aa21–22, Ab2, Ab3–4, Ab12, Ba2–3, Ba4, Ba5,

the event that this claim element is found not to be literally met by any one or more of the Fire TV

Products, it is met under the doctrine of equivalents, because each Fire TV Product performs sub-

stantially the same function (pick a radio signal out of the air and convert to voltage) in substan-

tially the same way (through a wireless communication network via an antenna) to obtain substan-

tially the same result (receive a wireless signal); and the Fire TV Product input interface is also

insubstantially different from the claimed input interface." (McAlexander Op. R. at A-a3.)  The

Federal Circuit has found an identical use of parentheticals to opine on DOE insufficient to raise

a triable issue of fact because "[b]road conclusory statements offered by [an] expert are not evi-

dence."  *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016)

(quoting *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001)).

In *Akzo*, plaintiff submitted an expert declaration supporting its opposition to defendant's

motion for summary judgment of noninfringement.  811 F.3d at 1343.  In the declaration, plain-

tiff's expert stated that the accused "piping and heat exchangers perform the same function (main-

tain the pressure) and achieve the same result (maintaining sufficient pressure to prevent boiling

of the aqueous medium) in substantially the same way (by collecting the dispersed material in a

contained volume) as the vessel used by the inventors in Examples 2 and 3 of the patent." *Id.*  The

Federal Circuit held that the declaration failed to articulate *how* the accused process operates in

substantially the same way as the claimed process, "much less articulate how the differences be-

tween the two processes are insubstantial."   *Id.*   Accordingly, summary judgment was

proper.  Here, Mr. McAlexander's opinions follow the same format as the *Akzo* declaration and

fail to articulate what the differences are between the claim elements and the accused products or

---

Ba17, Ba18, Ba21; Bb1, Bb2, Bb3, Bb3, Bb8–9, Bb9, Bb10; Bc2, Bc3, Bc3; Bd3, Bd3–4, Bd5, Bd6, Bd7, Bd7, Bd9,Bd10, Bd10, Bd12, Bd13, Bd14, Bd15; Cc3, Cc8, Cc10; Da4, Da4–5, Da5, Da6, Da8, Da9.)

why those differences are insubstantial.  The Court should therefore also grant summary judgment on these claims.

## VI.    IS CANNOT SHOW THAT AMAZON WILLFULLY INFRINGED ANY AS-SERTED PATENT.

IS also cannot show a triable issue as to the alleged willful infringement by Amazon.  Under the Supreme Court's decision in *Halo*, the concept of "willfulness" requires a finding of "deliberate or intentional infringement."  *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020).  It requires the "subjective willfulness of a patent infringer."  *Id.* (citing *Halo*, 136 S. Ct. at 1933 (2016)).  Indeed, it is well established that a garden variety in-fringement, without more, does not support a finding of willful infringement.  *See, e.g.*, *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019) (finding that "proof that [the defend-ant] directly infringed and induced others to infringe the patents-in-suit" could not support a jury's finding of willful infringement), *cert. denied*, 2020 WL 871719 (U.S. Feb. 24, 2020); *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F. Supp. 3d 601, 612 (D. Del. 2017) (granting summary judgment of no willfulness where the evidence only showed that the defendant continued to update, produce, and sell the accused products following the filing of the lawsuit), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018); *see also Universal Elecs. Inc. v. Roku, Inc.*, No. SA-CV-181580-JVS-ADSX, 2019 WL 1877616, at *14 (C.D. Cal. Mar. 5, 2019).

Here, IS merely alleges that Amazon infringed in a garden-variety way and had knowledge of the patents because IS's predecessor and the original plaintiff in this case, VIS, sued Amazon in the Eastern District of Virginia before it filed this suit.[6]  (Shamilov Decl. Ex. 20 at 16–17) ("At

---

[6] VIS voluntarily dismissed that case two days after the Virginia court heard cross-motions for summary judgment in yet another case VIS filed against Amazon in that district.  Judge O'Grady granted summary judgment for Amazon and the Federal Circuit affirmed.  After appeals, the case finally resulted in a judgment for Amazon and an award of over $720,000 in attorneys' fees.  *See Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 1:16-cv-861, Dkt. 275 at 3–4 (E.D. Va. Feb. 19, 2020) (finding "Innovation's lawsuit was substantively weak before claim construction" and its

least the HTC and Amazon Defendants have had actual knowledge of both the asserted patents and Innovation's belief that the products accused of infringement by virtue of the infringement allegations made by Innovation in the *Amazon II* and *HTC II* actions filed in the District Court for the Eastern District of Virginia.").)  That is not evidence of any intentional or deliberate infringement by Amazon as a matter of law, and the Court thus should enter summary judgment of no willful infringement.  *See Plastic Omnium Advanced Innovation & Res. v. Donghee Am., Inc.*, 387 F. Supp. 3d 404, 421 (D. Del. 2018) (granting summary judgment of no willful infringement for lack of egregious conduct even where alleged infringer knew about the asserted patents), *aff'd*, 943 F.3d 929 (Fed. Cir. 2019); *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-220, 2020 WL 136591, at \*21 (C.D. Cal. Jan. 13, 2020) (granting summary judgment of no willful infringement where defendant had post-filing knowledge of the patent); *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-cv-72-BLF, 2017 WL 2462423, at \*5 (N.D. Cal. June 7, 2017) (even if defendant had pre-suit knowledge of patents, dismissal of willful infringement claim appropriate where conduct not egregious).

## VII.   CONCLUSION

For the reasons stated, Amazon requests that the Court grant its motion for summary judgment of: (1) no induced infringement of all asserted claims; (2) no contributory infringement of all asserted claims; (3) no infringement under doctrine of equivalent theories; and (4) no willful infringement of all asserted claims.

---

claims "were baseless after claim construction," and because "Innovation continued to litigate these exceptionally weak claims" its case stood "out from others as a result" and was thus exceptional).

February 25, 2020                                 Respectfully submitted,


By: */s/ Saina S. Shamilov*
    J. David Hadden
    CA Bar No. 176148 (Admitted E.D. Tex.)
    Email: dhadden@fenwick.com
    Saina S. Shamilov
    CA Bar No. 215636 (Admitted E.D. Tex.)
    Email: sshamilov@fenwick.com
    Ravi R. Ranganath
    CA Bar No. 272981 (Admitted E.D. Tex.)
    Email: rranganath@fenwick.com
    **FENWICK & WEST LLP**
    Silicon Valley Center
    801 California Street
    Mountain View, CA 94041
    Telephone: (650) 988-8500
    Facsimile: (650) 938-5200

    Todd R. Gregorian
    CA Bar No. 236096 (Admitted E.D. Tex.)
    Email: tgregorian@fenwick.com
    Dargaye Churnet
    CA Bar No. 303659 (Admitted E.D. Tex.)
    Email: dchurnet@fenwick.com
    TJ Fox
    CA Bar No. 322938 (Admitted E.D. Tex.)
    Email: tfox@fenwick.com
    **FENWICK & WEST LLP**
    555 California Street, 12th Floor
    San Francisco, CA 94104
    Telephone: 415.875.2300
    Facsimile:  415.281.1350

    Jeffrey Ware
    CA Bar No. 271603 (Admitted E.D. Tex.)
    Email: jware@fenwick.com
    **FENWICK & WEST LLP**
    1191 Second Avenue, 10th Floor
    Seattle, WA 98101
    Telephone: 206.389.4510
    Facsimile:  206.389.4511

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

*Counsel for Defendants*
AMAZON.COM, INC.,
AMAZON DIGITAL SERVICES LLC,
AND AMAZON WEB SERVICES, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 25, 2020.

*/s/ Saina S. Shamilov*
Saina S. Shamilov