**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| INNOVATION SCIENCES, LLC,<br><br>Plaintiff,<br>v.<br><br>AMAZON.COM, INC., et al.,<br><br>Defendants. | Civil Action No. 4:18-cv-00474-ALM<br>(LEAD CONSOLIDATED CASE)<br><br>JURY TRIAL DEMANDED |
| INNOVATION SCIENCES, LLC,<br><br>Plaintiff,<br>v.<br><br>RESIDEO TECHNOLOGIES, INC.,<br><br>Defendant. | Civil Action No. 4:18-cv-00475-ALM |
| INNOVATION SCIENCES, LLC,<br><br>Plaintiff,<br>v.<br><br>HTC CORPORATION,<br><br>Defendant. | Civil Action No. 4:18-cv-00476-ALM |

**DEFENDANT HTC CORPORATION'S AND RESIDEO TECHNOLOGIES, INC.'S RULE 56(A) MOTION FOR SUMMARY JUDGMENT THAT PLAINTIFF LACKS THE RIGHT TO BRING SUIT UNDER 35 U.S.C. § 262**

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUE ..... 2

III. STATEMENT OF UNDISPUTED FACTS ..... 2

A. The Formation of SellerBid, Inc. and Plaintiff Innovation Sciences, Inc. ..... 2

B. Ronald’s Employment at RFMD and Concurrent Patent Applications ..... 2

C. Purported Assignments and Current Litigation ..... 6

IV. LEGAL STANDARD ..... 7

V. QORVO IS AT LEAST A CO-OWNER OF THE ASSERTED PATENTS AND THUS MUST BE JOINED FOR PLAINTIFF TO PROCEED. ..... 8

A. Ronald’s Rights Were “Automatically” Assigned to RFMD ..... 8

B. Ronald Assigned His Rights Under The Inventions Agreement ..... 8

C. The Asserted Patents are Not Exempted under California Labor Code § 2870 ..... 13

VI. PLAINTIFF WAS NOT A BONA FIDE PURCHASER FOR VALUE OF RONALD’S RIGHTS TO THE ASSERTED PATENTS ..... 14

A. Ronald had No Rights to Assign to SellerBid ..... 15

B. Plaintiff was not a Purchaser for Valuable Consideration ..... 15

C. Plaintiff Had Notice of Ronald’s Inventions Agreement ..... 16

VII. CONCLUSION ..... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Advanced Video Techs. LLC v. HTC Corp.*,
879 F.3d 1314 (Fed. Cir. 2018)....................7

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
434 F.3d 1336 (Fed. Cir. 2006)....................8

*Barry v. Medtronic, Inc.*,
230 F. Supp. 3d 630 (E.D. Tex. 2017)....................9

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys, Inc.*,
583 F.3d 832 (Fed. Cir. 2009)....................8, 15, 16, 17

*Cadence Design Sys., Inc. v. Bhandari*,
No. C 07-00823 MHP, 2007 WL 3343085 (N.D. Cal. Nov. 8, 2007)....................13

*FilmTec Corp. v. Allied-Signal Inc.*,
939 F.2d 1568 (Fed. Cir. 1991)....................8, 15, 16, 17

*Iconix, Inc. v. Tokuda*,
457 F. Supp. 2d 969 (N.D. Call. 2006)....................14

*Innovation Sciences, LLC v. HTC Corp.*,
Case No. 4:18-cv-00476-ALM (E.D. Tex. July 5, 2018)....................1

*Innovation Sciences, LLC v. Resideo Technologies, Inc.*,
Case No. 4:18-cv-00475 (E.D. Tex. July 5, 2018)....................1

*Luminia Worldwide, LLC v. Liown Elecs. Co. Ltd.*,
814 F.3d 1343 (Fed. Cir. 2016)....................17

*Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*,
284 F.3d 1323 (Fed. Cir. 2002)....................15

*Speedplay, Inc. v. Bebop, Inc.*,
211 F.3d 1245 (Fed. Cir. 2000)....................8

*STC.UNM v. Intel Corp.*,
754 F.3d 940 (Fed. Cir. 2014)....................7

*STC.UNM v. Intel Corp.*,
767 F.3d 1351 (Fed. Cir. 2014)....................1

*Teets v. Chromalloy Gas Turbine Corp.*,
83 F.3d 403 (Fed. Cir. 1996)....................8

*TM Patents, L.P. v. Int'l Bus. Machines Corp.*,
121 F. Supp. 2d 349 (S.D.N.Y. 2000)....................15

*Univ. of Pitt. V. Varian Med. Sys., Inc.*,
569 F.3d 1328 (Fed. Cir. 2009)....................17

**Statutes**

35 U.S.C. §261....................15, 16, 17

35 U.S.C. § 262....................8

Cal. Labor Code § 1638....................8

Cal. Labor Code § 2870....................3, 8, 13, 14

Cal. Labor Code § 2872....................13

California Labor Code § 2870 (a)....................13, 14

Patent Act....................7

[redacted]

## I. INTRODUCTION

Innovation Sciences, LLC ("Plaintiff") does not wholly own the Asserted Patents.

Plaintiff—then Virginia Innovation Sciences, Inc.—filed lawsuits alleging that HTC Corporation ("HTC") infringes U.S. Patent Nos. 9,912,983 ("the '983 patent), 9,942,798 ("the '798 patent"), and 9,729,918 ("the '918 patent"), and that Resideo Technologies, Inc. ("Resideo") infringes the '983 patent (collectively, "the Asserted Patents"). *Innovation Sciences, LLC v. HTC Corp.*, Case No. 4:18-cv-00476-ALM (E.D. Tex. July 5, 2018); *Innovation Sciences, LLC v. Resideo Technologies, Inc.,* Case No. 4:18-cv-00475 (E.D. Tex. July 5, 2018). But Plaintiff cannot obtain relief because it does not hold ***all*** ownership interests in the Asserted Patents.

Named inventor Tiejun ("Ronald") Wang assigned his rights in the claimed inventions to his former employer RFMD [redacted]. [redacted] Ronald's purported later assignment to SellerBid, Inc. ("SellerBid"), a predecessor entity to Plaintiff, was therefore null and void because Ronald had no rights to assign.

Federal Circuit precedent is clear that Plaintiff cannot obtain relief under the patent statute without joining all other co-owners of asserted patents. *See STC.UNM v. Intel Corp.*, 767 F.3d 1351, 1353 (Fed. Cir. 2014) (denying en banc). Fully aware of this longstanding principle, Plaintiff attempted to cure its ownership defect by seeking to acquire an agreement from Qorvo (RFMD's successor) that Qorvo had no ownership interest in the patents. Qorvo did not agree.

Vector Security, Inc. ("Vector") and Resideo previously raised the ownership issue on a motion to dismiss for lack of standing. This Court denied the motion, leaving open the option to raise the ownership issue at a later time. Since this Court's Order, further discovery has further proved that Plaintiff is not the sole owner of the Asserted Patents and thus may not seek relief without joining the other necessary parties. And still today, Plaintiff has not sought to join Qorvo.

[redacted]

Defendants file this summary judgment motion, requesting the Court find that Plaintiff is not the sole owner of the Asserted Patents and dismiss the cases for failure to join all co-owners.

## II. STATEMENT OF ISSUE

Whether Plaintiff is the sole owner of the Asserted Patents.

## III. STATEMENT OF UNDISPUTED FACTS

### A. <u>The Formation of SellerBid, Inc. and Plaintiff Innovation Sciences, Inc.</u>

Tiehong ("Anne") Wong and her brother Ronald are named inventors on all the Asserted Patents. Exs. 1-3 (Patents-in-Suit). The siblings co-founded SellerBid in 2005. *See* Ex. 4 at ¶ 10 (A. Wong ITC Declaration). Anne has been the sole principal and CEO of SellerBid. *Id.*, at ¶ 1.

### B. <u>Ronald's Employment at RFMD and Concurrent Patent Applications</u>

[redacted] Ex. 5 (RFMD Employment Record). [redacted] Ex. 6 ("Inventions Agreement"), providing:

[redacted]

*Id.* at 2. The referenced provision of the California Labor Code states that assignment provisions like the above are unenforceable for inventions "developed entirely on [the employee's] own time without using the employer's equipment, supplies, facilities, or trade secret information," ***unless*** the inventions either (1) "[r]elate at the time of conception or reduction to practice of the invention

[redacted]

to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) [r]esult from any work performed by the employee for the employer." Cal. Labor Code § 2870; *see also* Ex. 6 at 3 ([redacted]).

During Ronald's employment at RFMD, the firm was positioned as "a global leader in the design and manufacture of high-performance radio frequency ("RF") components and system solutions for mobile communications." Ex. 7 (2006 RFMD 10-K). RFMD supplied wireless communication components, including components specifically related to "security systems." *Id.* For example, RFMD's 10-K report for the fiscal year ending April 1, 2006, stated:

> In the wireless market, we supply components for *wireless local loop systems*, . . . *security systems*, . . . *monitoring devices*, . . . *keyless entry* and handled devices used for point-of-sale, bar coding and other applications.

*Id.* (emphasis added). Further, at the time of Ronald's employment, RFMD had recently acquired Silicon Wave, Inc., "a leading supplier of integrated circuits for Wireless Personal Area Networks [WPANs]." Ex. 8 at 1. Industry commentators at the time of this acquisition noted that RFMD was "the company that may be most commonly associated with RFICs," that the "wirelessly connected home will be huge for at least the next decade," and that "[i]t seems that the industry may be coming to a consensus. A convergence of IT, entertainment, and communications will pave the way for future RFICs." Ex. 9.

According to Dr. David Lyon, [redacted] Ex. 10 at ¶ 14 (Lyon Declaration). [redacted] *Id.*, at ¶ 15. In 2014, RFMD merged with

[redacted]

TriQuint Semiconductor, Inc. to form Qorvo. Ex. 11. Qorvo currently works to "bring core technologies and RF solutions to mobile . . . and Internet of Things (IoT) markets." *See About Us*, QORVO, https://www.qorvo.com/about-us (last visited Feb. 24, 2020).

Ronald worked for RFMD until [redacted]. Ex. 5. [redacted] *See, e.g.*, Ex. 12 at 1 (April 11, 2007 E-mail [redacted]); *id.*, at 2 (February 27, 2008 E-mail [redacted]); *see also* Ex. 13 ([redacted]).

Plaintiff submits that each of the claims of the Asserted Patents were reduced to practice during Ronald's employment at RFMD. Specifically, Plaintiff alleges that the claims were reduced to practice on August 10, 2006, when SellerBid filed U.S. Application No. 11,501,747 ("the '747 Application"). Ex. 14 at 4 (Plaintiff's Priority Disclosures). In the alternative, Plaintiff alleges a February 2, 2007 priority date based on U.S. Provisional Application No. 60/899,037 ("the '037 Application"). *Id.* The '747 Application lists, among others, Anne and Ronald as inventors. Ex. 15 at 3. The '037 application does not list Ronald as an inventor, but lists Anne and Ning Wang ("Ning") as inventors. Ex. 16 at 1, 3. Ning is Ronald's wife.

SellerBid filed U.S. Application No. 11/802,418 on May 22, 2007 ("the '418 Application"), listing, among others, Anne and Ronald as inventors. Ex. 17 at 6. The '418 Application was a continuation-in-part of the '747 Application, adding subject-matter relating to bidirectional conversion and routing of content between a mobile terminal and external display

[redacted]

("signal conversion technology"). *See* Ex. 17 at pp. 4-9. On September 24, 2007, SellerBid filed a preliminary amendment to the '418 Application, claiming "the benefit" of the '037 Application. *Id.* at pp. 12-13; *see also id.* at pp. 15-16 & 19-20 (requesting corrected filing receipt). The PTO issue a Corrected Filing Receipt on October 22, 2009. *Id.* at pp. 21-22.

[redacted] Ex. 12 at 1; Ex. 18.

[redacted] Ex. 6 at 2. Plaintiff's counsel previously suggested during the November 4, 2019 hearing that Ronald may have told his supervisor about the '747, '037, and '418 Applications. Ex. 19 at 36:5-10 (Tr. of Nov. 4, 2019 hearing). Ronald, Qorvo, and Ronald's supervisor at the time – Dr. David Lyon – have each been asked to search for and provide any documents that would evidence such reporting by Ronald during his employment. No evidence has been uncovered or provided. [redacted] Ex. 20 at 144:3-21 (Tr., Ronald Wang May 2, 2019 deposition), at 144:3-21 [redacted] In a deposition eight months later, [redacted] Ex. 21 at 35:16 – 36:19 (Jan. 31, 2020 deposition).

[redacted]

There is no evidence that Ronald ever told his employer about the multiple patent applications he filed during his employment at RFMD, which contain different subject-matter than that in applications existing at the time he applied for his job. The later applications are the ones that Plaintiff alleges support the claims asserted in the present lawsuit.

### C. Purported Assignments and Current Litigation

Ronald purportedly assigned his rights in the '747 Application to SellerBid in August 2009. In October 2010, Ronald purportedly assigned his rights in the '418 Application to SellerBid. Ex. 22 at 1-2, 5-6. [redacted][1] The assignments purported to transfer "good and valuable consideration" from SellerBid to Ronald in exchange for his rights in each patent application. *Id.* There is no evidence of any consideration paid by SellerBid for such assignments.

[redacted] Ex. 23 (Articles of Amendment). [redacted]. Ex. 24 at 1-2, 5-6 (Certificate of Formation & Articles of Merger).

Vector filed a motion to dismiss on July 16, 2019, arguing that Plaintiff lacked standing. Dkt. No. 163. Resideo joined Vector's motion on July 25, 2019. Dkt. No. 174. While the motion was pending, [redacted] Ex. 25,at 6-7 (Resp. to Vector's Rog. No. 5).[2] After briefing and arguments by the parties, this Court held that the required joinder of co-owners does not implicate a federal court's subject-matter jurisdiction. Dkt. 314, at 4 ("Thus,

---

[1] The agreements do not to constitute a valid assignment of Ronald's rights to SellerBid. *See infra* Section IV.A (discussing infirmity of assignment agreement for lack of consideration).

[2] At the November 4, 2019 hearing, counsel for Plaintiff submitted that Plaintiff sought to purchase Qorvo's rights in the Asserted Patents. *See* Ex. 19 at 76:23 – 77:13.

[redacted]

the Court finds whether all owners are joined as plaintiffs in the present lawsuit does not affect the constitutional standing analysis."). Notwithstanding its denial of the motion, this Court did not decide the underlying merits of the ownership and joinder dispute, and it left open the opportunity for defendants to raise the ownership and joinder issue in another motion. *Id.* at 3 n. 1 and 8 n.9.

## IV. LEGAL STANDARD

A patent co-owner seeking to maintain an infringement suit must—under the Patent Act—join all other co-owners. *STC.UNM v. Intel Corp.*, 754 F.3d 940, 944-46 (Fed. Cir. 2014). The question of whether a plaintiff may bring suit under a statute has been referred as "prudential standing" or "statutory standing"—labels that courts more recently observe may be "misleading," because this requirement may not "implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *See, e.g.,* Dkt. 314 at 5-6, *citing LoneStar Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235 (Fed. Cir. 2019) (emphasis in original) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 112, 128 n.4 (2014)). Regardless of the label, however, the Federal Circuit holds that to maintain a patent action, co-owners are necessary parties who must be joined. *See, e.g., STC.UNM.*, 754 F.3d at 946. Where a co-owner does not consent to a suit and cannot be involuntarily joined, the suit must be dismissed. *Id.* (noting generally "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit."); *see also Advanced Video Techs. LLC v. HTC Corp.*, 879 F.3d 1314, 1319 (Fed. Cir. 2018). This Court previously denied a motion to dismiss it viewed as challenging constitutional standing, holding only that the Court had subject-matter jurisdiction to proceed. Dkt. 314 at 8 n.9. The Court did not decide the merits of the RFMD assignment or whether all appropriate parties were joined, leaving open the possibility of a future motion. *Id.* at 3 n.1, 8 n.9. Defendants now bring that motion.

[redacted]

## V. QORVO IS AT LEAST A CO-OWNER OF THE ASSERTED PATENTS AND THUS MUST BE JOINED FOR PLAINTIFF TO PROCEED.

The "essential issue" regarding the right to sue on a patent is "*who owns the patent*." *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1341-42 (Fed. Cir. 2006) (emphasis added). When a patent has multiple named inventors, each inventor is deemed to be a co-owner. *Israel Bio-Eng'g Project*, 475 F.3d 1256, 1263 (Fed. Cir. 2007). Each co-owner holds an undivided interest in the patent, 35 U.S.C. § 262, and may assign this interest to their employers. *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996). Ronald assigned his undivided interest in the Asserted Patents to RFMD upon executing the Inventions Agreement.

### A. Ronald's Rights Were "Automatically" Assigned to RFMD

[redacted] Ex. 6 at 2 (emphasis added). The Federal Circuit has repeatedly found that, in similar types of agreements, the phrase [redacted] effectuates an automatic assignment of the employee's patent rights to an invention. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000); *FilmTec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991). The Inventions Agreement automatically conveyed any and all of Ronald's rights in inventions that he "reduced to practice" while working for RFMD. *See also Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys, Inc.*, 583 F.3d 832, 842 (Fed. Cir. 2009) (contractual language of "hereby [assigns]" effects a present assignment of the employee's future inventions to employer).

### B. Ronald Assigned His Rights Under The Inventions Agreement

Under California law,[3] the language of a contract governs its interpretation if the language is clear and explicit. *Id.* at Cal. Labor Code § 1638. Here, the Inventions Agreement

---

[3] [redacted] *See Huawei Techs. Co., Ltd. v. Yiren* Huang, No. 4:17-CV-00893, 2019 WL 1978339, at *6-9 (E.D. Tex. May 5, 2019).

[redacted]

unambiguously assigned Ronald's right to all "Inventions" that he reduced to practice during his employment. The Asserted Patents were reduced to practice during Ronald's employment upon the filing of the '747, '037 or '418 Applications. *See Barry v. Medtronic, Inc.*, 230 F. Supp. 3d 630, 658 (E.D. Tex. 2017) ("Reduction to practice can be constructive, marked by the filing of a patent application"). Regardless of which date Plaintiff is entitled to, by its own admission, the claims asserted in these cases were reduced to practice during Ronald's RFMD employment.

The Inventions Agreement applied to [redacted] Ex 6 at 2 (emphasis added). Plaintiff has contended that the Asserted Patents do not relate to RFMD's business, citing to declarations from Ronald and a former RFMD colleague residing in China and outside the reach of HTC and Resideo to cross-examine, Haigang Fang. *See* Dkt. No. 203 (citing to Haigang Fang declaration). But these litigation-created declarations cannot withstand scrutiny, in particular when considered in the face of contemporaneous records and testimony that demonstrate the "relatedness" between the Asserted Patents at RFMD's business. The assertion that the Asserted Patents are not related to RFMD's business is simply not credible.

To begin, the Asserted Patents are each titled "Method and System for Efficient Communication," and state in its entirety under "Field of the Invention: "This invention relates generally to providing systems and methods for efficient communication." *See, e.g.*, Ex. 1 at col. 1:54-55. More specifically, the Asserted Patents describe embodiments that interface between two different communications protocols. *Id.* at Abstract, col. 3:38-47, col. 3:60-4:4. The Asserted Patents describe "a systematical solution for mobile payment (or the communication of other information), as well as the receipt of information such as alerts", and that "[p]referably, this aspect of the present invention implements a cellular network, a wireless personal area network (WPAN)

[redacted]

and wireless identification technology." *Id.* at col. 10:17-23. "Various technologies may be used for these components, including but not limited to 3G technology for the cellular network; Zigbee, Bluetooth, or UWB technologies or the WPAN; and RFID (*e.g.,* NFC) for the wireless identification technology." *Id.* at col. 10:23-27. In sum, the Asserted Patents broadly disclose using various wireless communication technologies, including WPAN, Zigbee, Bluetooth and UWB technologies, for "providing systems and methods for efficient communication."

This was the nature of RFMD's business during Ronald's employment. At the time, RFMD was a leading company in the development and manufacture of electronic wireless communications technologies, developing and selling products using a variety of wireless communications technologies including cellular communications, WiFi, Bluetooth, GPS, and other protocols. *See, e.g.*, Ex. 26 at 6 (2008 RFMD 10-K) ("We compete in both the WiFi and WiMAX wireless networking technology markets. WiFi is used primarily for short-range in home or office network applications in personal computers, gaming platforms and smartphones, as well as wireless home routers and access points, such as those used in wireless hotspots."); *Id.* ("In the wireless market we supply components for . . .security systems . . .monitoring devices… and handheld devices..."). *See also* Ex. 7 (2006 RFMD 10-K).

Plaintiff has sought to draw a distinction between the Asserted Patents and RFMD's business by arguing that the Asserted Patents are directed to wireless communication systems, whereas RFMD was just a "chip maker." That is not how Ronald, Dr. Lyon or RFMD saw their business, though. For example, a capture of RFMD's website on July 18, 2006 states: "RFMD is your complete RF component supplier, providing solutions for cellular, wireless LAN, Bluetooth technology, GPS and infrastructure products." Ex. 27 at 1 (July 18, 2006 RFMD Product Guide). The product descriptions on that page describes additional applications including CDMA, PCS,

[redacted]

DCS, UMTS, EDGE, 3G, GPS, and more. *Id.* at 2-3. Further, RFMD was active in research and development, seeking patents on innovations in a wide range of communications applications. *See, e.g.*, U.S. Patent No. 8,103,224 (relating to method apparatus for an integrated wireless transceiver); U.S. Patent No. 7,095,353 (relating to frequency-to-digital signal converter); and U.S. Patent No. 6,064,709 (relating to methods and systems for performing GPS navigation). RFMD sought "[t]o be the premier supplier of high-performance radio systems and solutions – enabling wireless connectivity." Ex. 28 (July 18, 2006 RFMD Company Info). As RFMD's website explained: "Essentially, we help the world's communications devices communicate." *Id.*

RFMD's business records are consistent with Ronald's own description of his work at RFMD. [redacted] Ex. 29 at 2-3 (2015 resume). This is consistent with sworn statements from his supervisor and Vice President of RFMD at the time, Dr. David Lyon, whose "work at RFMD included technical and marketing management of business units engaged in various RF related products including Wi-Fi, Bluetooth and GPS solutions." Ex. 10 at ¶ 15.

Plaintiff's technical expert, Joe McAlexander, has also confirmed the relatedness of the Asserted Patents and the aspects of the RFMD's business set forth in the above-mentioned records:

| Joe McAlexander's Testimony | Statements Regarding RFMD's Business |
|---|---|
| [redacted] | <u>RFMD 10K (2008):</u> |

[redacted]

| Joe McAlexander's Testimony | Statements Regarding RFMD's Business |
|---|---|
| [redacted] Ex. 30 at 17:19 – 18:5 (Tr., Feb. 6, 2020) | "WiFi is used primarily for short-range in home or office network applications" Ex. 26 at 6. |
| [redacted] *Id.* at 19:10-21. | <u>Ronald's 2015 Resume:</u> [redacted] Ex. 29 at 3. |
| [redacted] *Id.* at 19:22 – 20:5. | <u>David Lyon's Declaration:</u> "My work at RFMD included technical and marketing management of business units engaged in various RF related products including Wi-Fi, Bluetooth and GPS solutions." Ex. 10 at ¶ 15. |
| [redacted] *Id.* at 21:15-23. | <u>Ronald's 2015 Resume:</u> [redacted] Ex. 29 at 2. |

Dr. Feng provided testimony that RFMD was in the business of designing and selling radio frequency ("RF") integrated circuits as chipsets. Ex. 31 at 4. These products were sold to cellphone manufacturers such as Sony and Nokia. *Id.* Notably, McAlexander acknowledged that [redacted]

[redacted]

[redacted] Ex. 30 at 26:13-27:11. While the litigation-created declarations may state otherwise, altogether, it strains credulity to suggest that these inventions did not relate to RFMD's business.

### C. The Asserted Patents are Not Exempted under California Labor Code § 2870

California Labor Code § 2870 limits the types of inventions employers can require employees to assign by excluding inventions that were developed by the employee "entirely" on his or her own time and without using the employer's "equipment, supplies, facilities, or trade secret information." [Cal. Lab. Code §2870(a).] This exception does not apply however to inventions that (1) "relate[s] at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or (2) [r]esult[s] from any work performed by the employee for the employer." Cal. Lab. Code §2870(a). Under California law, the employee bears the burden of showing that the invention falls within the statutory protections of Section 2870(a) to be excluded from an assignment. *See* Cal. Labor Code § 2872. Courts interpreting assignment agreements in the context of Section 2872 construe the "related to" phrase broadly. *See, e.g.*, *Cadence Design Sys., Inc. v. Bhandari*, No. C 07-00823 MHP, 2007 WL 3343085, *5 (N.D. Cal. Nov. 8, 2007).

As explained above, Plaintiff cannot show the exemption applies because the invention "relate[s] to [RFMD's] business or actual or demonstrably anticipated research or development." *See supra*. Where, as here, the patent at issue describes technology in the same field as the employer's business, the claimed invention is "related to" the employer's business. *See Cadence Design Sys., Inc. v. Bhandari*, No. C 07-00823 MHP, 2007 WL 3343085, *4-7 (N.D. Cal. Nov. 8, 2007). In *Cadence*, the court granted summary judgment that a patent related to employer's business under California Labor Code § 2870 when the patent at issue described a type of tool used in the employer's business, the design and manufacture of integrated circuits. *See id.* Similarly, the Asserted Patents describe methods and systems used for RFMD's business,

[redacted]

electronic wireless communications technologies. *See supra.* Because the Asserted Patents are "related to" RFMD's business, the inventions disclosed therein are not exempted.

Even if the Court were to find that the inventions did not relate to RFMD's business, the Asserted Patents would still not be exempt under § 2870 because Ronald did not reduce the invention to practice "entirely" on his own time without using his employer's "equipment, supplies, [or] facilities." [redacted] *See* Ex. 12 at 1. [redacted] *See* Ex. 18. [redacted] Plaintiff's improper withholding of thousands of e-mails it was ordered to produce (Dkt. Nos. 350, 375) suggests that additional evidence of using company equipment for their portfolio's purposes may exist. *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 992 (N.D. Call. 2006) (even if employee's use of company equipment was acceptable, "Section 2870 applies to an invention that the employee developed *entirely* on his or her own time").

Accordingly, even if the Asserted Patents were found not to relate to RFMD's business, because Ronald did not reduce the inventions to practice "entirely" on his own time, and used company equipment and supplies to do so, the Asserted Patents are not exempted under Section 2870(a). RFMD (now Qorvo) is at least a co-owner of an undivided share of the Asserted Patents.

## VI. PLAINTIFF WAS NOT A BONA FIDE PURCHASER FOR VALUE OF RONALD'S RIGHTS TO THE ASSERTED PATENTS

To overcome its defective chain of title, Plaintiff has previously argued that SellerBid was a bona fide purchaser, which voids an assignment against a subsequent purchaser for "valuable

[redacted]

consideration, without notice." 35 U.S.C. §261. However, Ronald had no rights to assign to Plaintiff, Plaintiff was not a bona fide purchaser for valuable consideration, and SellerBid had at least inquiry notice of RFMD's rights—each defeat Plaintiff's bona fide purchase argument.

**A. Ronald had No Rights to Assign to SellerBid**

An inventor's purported assignment of patent rights is ineffective if legal title has already vested in a past employer. *See Bd. of Trustees*, 583 F.3d at 842. The Federal Circuit reiterated this longstanding rule in *Bd. of Trustees*, holding that a person cannot convey property in which he or she has no ownership right. *Id.* ("[B]ecause Cetus's legal title vested first, Holodniy no longer retained his rights, negating his subsequent assignment"). *See also Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1329 (Fed. Cir. 2002) ("The bona fide purchaser concept applies only to purchasers *of legal title*); *TM Patents, L.P. v. Int'l Bus. Machines Corp.*, 121 F. Supp. 2d 349, 365, 367 (S.D.N.Y. 2000) ("If [Plaintiff's] argument [that they obtained title merely by recording an assignment from an assignor who lacked ownership] were correct, any charlatan could fraudulently convey the patents of another to any assignee, who could subsequently gain good title by simply recording the fraudulent assignment."). These cases pose an insurmountable challenge for Plaintiff, which executed an assignment from Ronald only after his legal title to the Asserted Patents vested in RFMD. *See Filmtec Corp.*, 939 F.2d at 1572 (holding that once an application for patent is filed, legal title to the rights accruing thereunder are in the assignee, and "the assignor-inventor has nothing remaining to assign"). It follows that Plaintiff may not claim protections under the bona fide purchaser doctrine.

**B. Plaintiff was not a Purchaser for Valuable Consideration**

The requirement of "valuable consideration" in Section 261 is more than a formality, and requires that the subsequent purchaser be "more than a donee or other gratuitous transferee."

[redacted]

*FilmTec Corp.*, 939 F.2d, at 1574. Here, Plaintiff cannot show that it received any more than "the proverbial peppercorn" for its assignment of Ronald's rights in the Asserted Patents. *Id.* at 1574.

The purported assignments of the '341, '637, '747, and '418 applications all provide that Ronald transferred his rights to Plaintiff "for good and valuable consideration, the receipt of which is hereby acknowledged." Ex. 22. And the assignment of the '328 Application lists "One Dollar." Ex. 32. Such consideration is "the proverbial peppercorn" in light of the damages being sought in the present litigation. Plaintiff cannot point to anywhere in the record evidencing its payment of "valuable consideration" to Ronald for any assignment. [redacted] Ex. 33 at 21:12-20; *see also* Ex. 20 at 136:16-19. Anne also testified that [redacted] Ex. 34 at 305:15-306:4. The assignment agreements contemplated the transfer of consideration, and expressly provided that "receipt" of the consideration was "hereby acknowledged." The agreements did not contemplate promises for future payments, and any arguments that a promise of consideration supports these assignments strains credulity. In short, there is an "absence of evidence" that Plaintiff was a purchaser for valuable consideration.

### C. <u>Plaintiff Had Notice of Ronald's Inventions Agreement</u>

"Notice" under Section 261 includes actual, constructive, and inquiry notice. *Bd. of Trustees*, 583 F.3d at 843. Plaintiff had actual and inquiry notice of Ronald's Inventions Agreement because Ronald was a founder of SellerBid and instrumental in the organization's research and development from its inception. For example, in *FilmTec Corp. v. Allied-Signal Inc.*, John Cadotte ("Cadotte") was a founder of FilmTec Corp. ("FilmTec"), and a named inventor on the '344 patent. *Id.* at 1569. FilmTec sued Allied-Signal, Inc. and UOP Inc. ("Allied") for infringment. *Id.* Allied argued that Cadotte had assigned his rights via an employment agreement

[redacted]

with Midwest Research Institute ("MRI"). *Id.* FilmTec argued that, notwithstanding Cadotte's assignment to MRI, it was protected under § 261 as a bona fide purchaser. *Id.* at 1571. The court rejected this argument, holding that FilmTec had notice of the prior assignment agreement. *Id.* at 1574 ("Given the key roles that Cadotte and the others played both at MRI and later at FilmTec, at a minimum FilmTec might be said to be on inquiry notice of any possible rights in MRI").

Here, like in *FilmTec*, there is little doubt that Plaintiff had at least inquiry notice of "possible rights" held by RFMD. Like in *FilmTec*, Ronald "would clearly be on notice of the provisions of his own contract." *Id.* at 1574. The *FilmTec* court even found that FilmTec "may well be deemed to have had *actual* notice of an assignment" because Cadotte was a founder of the corporation. *Id.* (emphasis added). Similarly here, when Ronald – one of Plaintiff's founders – signed the Inventions Agreement, Plaintiff "may well be deemed to have had actual notice" of the assignment to Qorvo. *See also Bd. of Trustees*, 583 F.3d at 843.

Before Ronald worked at RFMD, he and his sister were already filing patents for SellerBid. Upon signing at RFMD in 2005, SellerBid began filing for, and receiving rights to, patent applications centering around near-field communication and wireless secure communications between devices. They continued filing for the nearly three-years Ronald worked at RFMD. In light of the "key role" Ronald played in Plaintiff's founding and development, Plaintiff was on notice of the Inventions Agreement and thus not protected under Section 261.

## VII. CONCLUSION

Plaintiff is, at best, a co-owner of the Asserted Patents. Therefore, it may not continue in this lawsuit absent joinder. This Court should dismiss the present lawsuit and Plaintiff may correct the party defect. *See Univ. of Pitt. V. Varian Med. Sys., Inc.*, 569 F.3d 1328, 1332 (Fed. Cir. 2009). Otherwise, Defendants are exposed to multiple suits for the same alleged infringement. *Luminia Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1350 (Fed. Cir. 2016).

[redacted]

DATED: February 25, 2020 PAUL HASTINGS LLP

*Yar R. Chaikovsky*
Yar R. Chaikovsky
yarchaikovsky@paulhastings.com
Philip Ou
philipou@paulhastings.com
Bruce Yen
bruceyen@paulhastings.com

1117 S. California Avenue
Palo Alto, California 94304-1106
Telephone: 1(650) 320-1800
Facsimile: 1(650) 320-1900

Harry L. Gillam, Jr.
TX Bar No. 07921800
GILLAM & SMITH LLP
303 S. Washington Ave.
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
gil@gillamsmithlaw.com

Attorneys for Defendant,
HTC CORPORATION

By: */s/ Melody Drummond Hansen*

J. Thad Heartfield
Texas Bar No. 09346800
thad@heartfieldlawfirm.co
Steven L. Townsend
Texas Bar No. 24071539
stephen@heartfieldlawfirm.com
**THE HEARTFIELD LAW FIRM**
2195 Dowlen Road
Beaumont, Texas 77706
Telephone: 409-866-3318
Facsimile: 409-866-5789

Brett Williamson *(Pro Hac Vice)*
bwilliamson@omm.com
Cameron Westin *(Pro Hac Vice)*
cwestin@omm.com
Bradley M. Berg *(Pro Hac Vice)*
bmberg@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor

[redacted]

Newport Beach, CA 92660
Telephone: 949-823-6900
Facsimile: 949-923-6994

Brian Berliner *(Pro Hac Vice)*
bberliner@omm.com
Boris Mindzak *(Pro Hac Vice)*
bmindzak@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Melody Drummond Hansen *(Pro Hac Vice)*
mdrummondhansen@omm.com
**O'MELVENY & MYERS LLP**
2765 Sand Hill Road
Menlo Park, CA 94025
Telephone: 650-473-2600
Facsimile: 650-473-2601

*Attorneys for Defendant*
**RESIDEO TECHNOLOGIES, INC.**

[redacted]

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on February 25, 2020.

*/s/ Yar R. Chaikovsky*
Yar R. Chaikovsky