**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| INNOVATION SCENCES, LLC,<br><br>        Plaintiff,<br>v.<br><br>AMAZON.COM, INC., et al.<br><br>        Defendants. | Civil Action No. 4:18-cv-00474-ALM<br>(LEAD CONSOLIDATED CASE)<br><br>JURY TRIAL DEMANDED |
| INNOVATION SCIENCES, LLC,<br><br>        Plaintiff,<br>v.<br><br>RESIDEO TECHNOLOGIES, INC.,<br><br>        Defendant. | Civil Action No. 4:18-cv-00475-ALM |
| INNOVATION SCIENCES, LLC,<br><br>        Plaintiff,<br>v.<br><br>HTC CORPORATION,<br><br>        Defendant. | Civil Action No. 4:18-cv-00476-ALM |

**AMAZON'S OPPOSITION TO *DAUBERT* CHALLENGE OF
INNOVATION SCIENCES, LLC TO EXPERT REPORT
OF DR. DAVID B. JOHNSON REGARDING HAL PRIOR ART**

**TABLE OF CONTENTS**

**Page**

I. IS'S MOTION GOES TO THE WEIGHT OF THE EVIDENCE AND RAISES FACTUAL DISPUTES THAT A JURY MUST DECIDE ---------------------------------- 1

II. HOME AUTOMATED LIVING AND ITS TECHNOLOGY PREDATES IS'S PATENTS AND IS INDEED PRIOR ART ---------------------------------------------- 2

    A. Dr. Johnson tested HAL2000 using the instructions in Home Automated Living's documents produced in response to defendants' subpoena. ------------------------- 4

    B. IS's criticisms of Mr. Shriver's testimony, which has been properly corroborated, go to its weight and his credibility. --------------------------------------------------- 10

III. CONCLUSION ----------------------------------------------------------------------------------- 10

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Adenta GmbH v. OrthoArm, Inc.*,
  501 F.3d 1364 (Fed. Cir. 2007) .................................................................................. *passim*

*CardioNet, LLC v. ScottCare Corp.*,
  No. CV 12-2516, 2017 WL 4742476 (E.D. Pa. Oct. 19, 2017) ------------------------------ 1

*CEATS, Inc. v. Cont'l Airlines, Inc.*,
  526 F. App'x 966 (Fed. Cir. 2013) -----------------------------------------------------------*passim*

*Elbit Sys. Land and C4i Ltd. v. Hughes Network Sys., LLC*,
  No. 2:15-CV-00037-RWS, 2017 WL 4571526 (E.D. Tex. Aug. 8, 2017) ------------------ 1

*Good Tech. Corp. v. Mobileiron, Inc.*,
  No. 5:12-CV-05826-PSG, 2015 WL 4197554 (N.D. Cal. July 10, 2015) ------------------- 1

*IP Innovation L.L.C. v. Red Hat, Inc.*,
  No. 2:07-cv-447-RRR, 2010 WL 9501469 (E.D. Tex. Oct. 13, 2010)-----------------*passim*

*Meyer Intellectual Properties Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012) ---------------------------------------------------------------- 10

**Index of Exhibits to the Declaration of Saina S. Shamilov, filed herewith**

1. Jay Romano, "YOUR HOME; Computers that Tend the Home," The New York Times, March 1998 ("1998 NYT Article")

2. Excerpts from the HAL2000 Online Help Guide ("HAL2000 Online Help Guide")

3. Document Subpoena to Home Automated Living, Inc., dated August 22, 2019, and marked as Shriver Deposition Exhibit No. 1

4. Deposition Subpoena to Home Automated Living, Inc., dated October 17, 2019, and marked as Shriver Deposition Exhibit No. 2

5. Home Automated Living Invoice, dated August 29, 2019, and marked as Shriver Deposition Exhibit No. 33

6. Home Automated Living Invoice, dated October 11, 2019, and marked as Shriver Deposition Exhibit No. 34

7. Excerpts from the Transcript of the October 28, 2019 Deposition of Timothy C. Shriver ("Shriver Depo.")

8. Declaration of Tim Shriver, dated October 24, 2019, and marked as Shriver Deposition Exhibit No. 4

9. Declaration of Tim Shriver, dated December 3, 2019

10. Screen capture of FileZilla terminal logged into HAL's Web server, bearing bates number HAL_00000612

11. SourceOffSite screen capture, marked as Shriver Deposition Exhibit No. 5 ("Shriver Dep. Ex. 5")

12. Excerpts from the Opening Expert Report of David B. Johnson, Ph.D. ("Johnson R."), served December 4, 2019

13. Excerpts from the HAL2000 Operating Manual ("HAL2000 Operating Manual")

14. March 20, 2006 capture of Home Automated Living webpage, "HAL Digital Video Center" ("HAL DVC webpage")

15. Excerpts from the Transcript of the February 5, 2020 Deposition of Joseph C. McAlexander III ("McAlexander Depo.")

16. Excerpts from the Transcript of the February 14, 2020 Deposition of David B. Johnson, Ph.D. ("Johnson Depo.")

17. Photo of Dell Computer with 2004 manufacture date, bearing bates number HAL_00000058

18. December 4, 2005 capture of Home Automated Living Support Webpage, marked as Shriver Deposition Exhibit No. 32

19. Phillip Kingery, "Home Control Fundamentals: Defining X-10," August 1, 2001, captured on Home Automated Living webpage

20. CCITT Recommendation T.81 (09/92) ("1992 JPEG Spec.")

21. Rob Koenen, "Overview of the MPEG-4 Standard," ISO/IEC JTC1/SC29/WG11 N3156, December 1999, Maui ("1999 MPEG-4 Spec. Overview")

22. Photo of Dell monitor with 2004 manufacture date, bearing bates number HAL_00000049

## I. IS'S MOTION GOES TO THE WEIGHT OF THE EVIDENCE AND RAISES FACTUAL DISPUTES THAT A JURY MUST DECIDE

While IS calls the HAL prior art not "itself reliable" and not "a reliable foundation" for Dr. Johnson's opinions, its arguments make clear that the basis for the motion is not any lack of reliability of Dr. Johnson's opinions, but IS's belief that the HAL prior art Dr. Johnson tested does not predate the asserted patents. This is a question of fact to be decided *by the jury* on a full factual record. *See, e.g., CEATS, Inc. v. Cont'l Airlines, Inc.*, 526 F. App'x 966, 970–71 (Fed. Cir. 2013) (affirming jury verdict of invalidity over prior art system, finding substantial evidence supported finding that prior art system "as publicly released" practiced claimed "mouse over" feature); *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1370–73 (Fed. Cir. 2007) (affirming denial of JMOL, where jury found patent invalid based on public use of system before critical date); *IP Innovation L.L.C. v. Red Hat, Inc.*, No. 2:07-cv-447-RRR, 2010 WL 9501469, at *4 (E.D. Tex. Oct. 13, 2010) (affirming jury verdict of invalidity over prior art system where expert "recreate[d]" system using collection of documents).[1] This is not a proper *Daubert* challenge.

Indeed, courts routinely deny *Daubert* motions that challenge the sufficiency of evidence of whether a reference predated the patents, because such motions are directed to questions of fact and not the reliability of an expert's analysis. *See CardioNet, LLC v. ScottCare Corp.*, No. CV 12-2516, 2017 WL 4742476, at *6 (E.D. Pa. Oct. 19, 2017) (denying motion to exclude prior art system because plaintiff "essentially challenges the sufficiency of [] evidence in establishing the invalidity of the patent-at-issue"); *Good Tech. Corp. v. Mobileiron, Inc.*, No. 5:12-CV-05826-PSG, 2015 WL 4197554, at *5 (N.D. Cal. July 10, 2015) (denying motion to exclude opinion regarding prior art system because it raised "a fact question for the jury, not a *Daubert* issue for

---

[1] *See also* Final Jury Instructions, *Elbit Sys. Land and C4i Ltd. v. Hughes Network Sys., LLC*, No. 2:15-CV-00037-RWS, 2017 WL 4571526, at Instruction 8.3(6) (E.D. Tex. Aug. 8, 2017) ("To understand how the prior art system operates, you may rely on multiple pieces of evidence that describe the same prior art system for the purpose of finding anticipation or obviousness. In other words, if you find that a single prior art system existed that meets every element of the claim, then that is enough to find the claim invalid as anticipated or obvious.").

the court"). Thus, unsurprisingly, IS does not cite a *single case* excluding expert testimony on invalidity under *Daubert*. IS's motion must be denied as it raises only fact issues to be decided by the jury. *Adenta*, 501 F.3d at 1370–73.

II.  **HOME AUTOMATED LIVING AND ITS TECHNOLOGY PREDATES IS'S PATENTS AND IS INDEED PRIOR ART**

HAL2000 was designed, developed, and offered for sale by Home Automated Living, a company founded by Tim Shriver in the 1990's. (*See* Ex. 1 (1998 NYT Article) (*New York Times* article from 1998 discussing Home Automated Living, HAL2000, and Tim Shriver).)[2] It was a home automation software system designed to run on standard personal computers to control a vast array of smart devices—security systems, lights, phones, thermostats, home theater systems, and the like. (Ex. 2 (HAL2000 Online Help Guide) at About HAL2000.) To obtain information about HAL and its prior art technology, defendants served a subpoena on the company and Mr. Shriver seeking "[a] HAL2000 system with the HAL Digital Video Center and/or HAL Digital Music Center add-ons as it would have existed on or before August 9, 2006 [the priority date of IS's patents]," and requested a deposition. (Exs. 3 and 4.) In response, HAL produced an operational version of the HAL2000 software running on a Dell personal computer. (Exs. 5 and 6.) HAL also produced dozens of documents describing the system, and Mr. Shriver ███████████████████████████████████████████████████. (*See, e.g.*, Ex. 7 (Shriver Depo.) at 34:14–35:19, 35:23–42:23, 117:13–118:14, 167:7-24; Exs. 8 and 9 (Shriver Decls.) at ¶¶ 4–183.)

Mr. Shriver testified that ███████████████████████████████████████████████. (Ex. 7 (Shriver Depo.) at 27:13-24.) In March 1998, Home Automated Living publicly launched HAL2000, which customers purchased through Home Automated Living's ████████████████████████████████████████. (*See* Ex. 1 (1998 NYT article); Ex. 7 (Shriver Depo.) at 195:3-8.) Mr. Shriver and his company ██████████████████

---

[2] Unless indicated otherwise, all cited exhibits are attached to the Declaration of Saina S. Shamilov, submitted herewith.

██████████████████████████████████████████████████████████. (Ex. 7 (Shriver Depo.) at 39:3–41:13.) On May 9, 2006—before the earliest priority date of the asserted patents—Home Automated Living released version 3.6.9 of its HAL2000 software. (Ex. 9 at ¶ 183; Ex. 10; Ex. 7 (Shriver Depo.) at 36:5–37:8, 39:24–41:19, 42:16–43:11, 104:1-23; Ex. 11 (Shriver Dep. Ex. 5).) This is the version Dr. Johnson tested in preparing his invalidity report. (Ex. 12 (Johnson R.) at ¶¶ 792, 800; Ex. 7 (Shriver Depo.) at 36:5–37:8.)

Version 3.6.9, like other versions, was designed to ████████████████████ ██████████████████████████████████████████████████████. (Ex. 7 (Shriver Depo.) at 31:24–32:13, 193:7–14; *see, e.g.*, Ex. 13 (HAL2000 Operating Manual) at 12 ("Automatic configuration of devices: Select the type and model number of the device you want to use and HAL will set the properties for that device automatically.").) HAL2000 customers ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████. (Ex. 7 (Shriver Depo.) at 164:20–165:6.) Although Home Automated Living ██████████████████████████████████████████████████ ████████████████████████ (*Id.* at 31:24–32:13.)

At the time version 3.6.9 of the software was sold, Home Automated Living also offered software add-ons, such as the HAL Digital Music Center and HAL Digital Video Center. (*See id.* at 19:4-25, 104:9-23; Ex. 13 (HAL2000 Operating Manual) at 209; Ex. 12 (Johnson R.) at ¶ 801.) The HAL Digital Video Center was an add-on program that allowed HAL2000 to receive, view, and store videos from a camera and was sold by Home Automated Living through the same channels as the HAL2000 program. (*See* Ex. 2 (HAL2000 Online Help Guide) at DVC Settings Screen; *see also* Ex. 7 (Shriver Depo.) at 103:12–104:18; Ex. 14 (HAL DVC webpage).) Using this add-on and a smart home camera, HAL2000 customers could "[v]iew events going on at [their] home from anywhere, be notified when there is movement by the pool when [they are] not home or look

3

in on the nursery at night." (Ex. 14 (HAL DVC webpage); *see also* Ex. 7 (Shriver Depo) at 31:24–32:13.) Customers could capture video "from many sources including, IP cameras, USB cameras, CCTV Cameras, TV tuners and more." (Ex. 14 (HAL DVC webpage).) They could also view their "video[s] or still image[s] from any computer in the world through the HAL HomeNet." (Ex. 2 (HAL2000 Online Help Guide) at About the Digital Video Center (DVC).)[3]

### A. Dr. Johnson tested HAL2000 using the instructions in Home Automated Living's documents produced in response to defendants' subpoena.

IS does not dispute that version 3.6.9 of the HAL2000 software is prior art to its patents. (*See generally* Mot.) Instead, it argues that Dr. Johnson's tests of that software were "cobbled together in hindsight using the asserted claims as a roadmap." (Mot. at 1.) This goes to Dr. Johnson's credibility, the weight of evidence he considered, and the fact issue of whether the system Dr. Johnson tested existed as of the critical date—questions left for the jury, not the Court upon a *Daubert* motion. *CEATS*, 526 F. App'x at 971; *Adenta*, 501 F.3d at 1370-73; *IP Innovation*, 2010 WL 9501469, at *4–5.

In any event, IS's contention is incorrect. Dr. Johnson tested version 3.6.9 of the software by following the system requirements specified in the prior art documentation that Home Automated Living produced in response to the subpoena. (*See* Ex. 12 (Johnson R.) at ¶¶ 790–894.) Indeed, every issue IS raises in its motion as purportedly an improper configuration of the HAL2000 prior art software is specified by Home Automated Living's documents, such as the HAL2000 Operating Manual and HAL2000 Online Help Guide. (*Id.*; *see also* Exs. 2 and 13 (HAL2000 Online Help Guide and HAL2000 Operating Manual.) In addition to documents and version 3.6.9 of the software, Home Automated Living produced a Dell computer and other hardware components that Dr. Johnson tested as described in his report. (Ex. 12 (Johnson R). at ¶¶ 790–894; Exs. 5 and 6.) During his deposition, Mr. Shriver explained how he ██████████ ██████████

---

[3] All HAL documents cited herein predate the asserted patents.

4

██████████. (*See* Ex. 7 (Shriver Depo.) at 170:4–176:17.)

IS argues that the configuration used to test the HAL2000 software was "undefined" and argues that Dr. Johnson cannot rely on multiple documents to describe a single prior art system. (*See* Mot. at 1.) Both arguments fail. Dr. Johnson's report lays out the *exact components* he used when testing the HAL2000 software and describes their configuration. (*See* Ex. 12 (Johnson R.) at ¶¶ 790–894.) And Federal Circuit law is clear that parties can rely on multiple documents to establish the existence of a prior art system. *See CEATS, Inc.*, 526 F. App'x at 971 (finding "videos, the test specification, and the testing checklist" together established anticipation by prior art system). Indeed, a court in this district held similarly in *IP Innovation, LLC v. Red Hat, Inc.*, 2010 WL 9501469, at *4. There, the defendant's expert opined that the "Chan" prior art system anticipated the asserted claims. *Id.* The expert "recreate[d]" the system using information from a master's thesis and a separate paper written by the thesis readers. *Id.* The expert "did not rely on the articles as separate anticipatory references," but instead properly "used the articles to understand how the [prior art] system functioned." *Id.* The court found no error in the expert's "us[e] [of] multiple references to describe a single prior art system." *Id.* Dr. Johnson's analysis is no different than that approved in *IP Innovation*. He tested the HAL2000 software using the exact prior art hardware components specified in the HAL2000 documentation. Contrary to IS's suggestion, Dr. Johnson did not select and arrange components specifically to arrive at a desired outcome; he followed the exact configuration requirements set forth in documentation predating IS's patents. (*See* Ex. 12 (Johnson R.) at ¶¶ 790–894); *see IP Innovation*, 2010 WL 9501469, at *5 (finding a 1984 thesis describing the use of a prior art system and a 1993 paper about the same prior art system "indicate that the [prior art] system existed and was in public use at least by 1984").

IS criticizes Dr. Johnson for running the software on a standard personal computer with basic components like a keyboard and mouse. (*See* Mot. at 7.) But like all software, HAL2000 necessarily required basic computing hardware to run. Indeed, IS's own expert conceded that to

5

████████████████████████████████████████. (Ex. 15 (McAlexander Depo.) at 440:15-19.) That is why the HAL2000 Operating Manual makes clear that Home Automated Living designed the HAL2000 software to run on off-the-shelf Windows PCs with standard configurations. (Ex. 13 (HAL2000 Operating Manual) at 21.) And Mr. Shriver testified that HAL2000 customers ████████████████████████████████████████ ████████████████████ (Ex. 7 (Shriver Depo.) at 164:17-19.)

The Dell computer shipped by Mr. Shriver and tested by Dr. Johnson complies *exactly* with the HAL2000 version 3.6.9 system requirements. The HAL2000 Operating Manual lays out the following minimum system requirements required as of August 10, 2006 for the HAL2000 prior art software to run: (1) a multimedia PC; (2) running Windows 98/Me/XP/2000 operating system; (3) a 266MHz or faster processor; (4) 64MB or more of RAM; and (5) a connection to the internet. (Ex. 13 (HAL2000 Operating Manual) at 21.) Dr. Johnson ran the software on a 2004 Dell Dimension 3000 PC with the original mouse, keyboard, and monitor (the required "Multimedia PC") running Windows XP from the same time frame (the "recommended" operating system) with a 3 GHz Pentium 4 processor (the required "266MHz or faster processor") and 2 GB of RAM (the required "64MB or more of RAM") that was "Connected to the Internet" by WiFi using a D-Link WiFi 802.11g/2.4 GHz router from the same prior art time frame. (Ex. 12 (Johnson R.) at ¶ 790.)

Indeed, each component used in Dr. Johnson's test was public before the patents and was specifically required by the documents produced in response to the subpoena. As Dr. Johnson explains, the Dell Dimension 3000 was popular, widely used, and easily available at that time. (Ex. 16 (Johnson Depo.) at 49:5–50:6; Ex. 7 (Shriver Depo.) at 19:17–20:8; *see also* Ex. 17 (photo showing 2004 manufacture date of Dell computer).) The mouse, monitor, and keyboard were original parts included with the Dell Dimension 3000 computer and are components that IS's expert admits were commonly used. (Ex. 12 (Johnson R.) at ¶ 790; Ex. 22 (photo showing 2004 manufacture date of Dell monitor); Ex. 15 (McAlexander Depo.) at 440:20-25, 442:15-24, 443:2-

7.) The D-Link WiFi router that Dr. Johnson used predates IS's patents and ▮▮▮▮▮▮▮▮▮▮—namely, provides wireless access to the internet through the WiFi protocol, something that IS's expert again admitted existed before August 10, 2006. (Ex. 16 (Johnson Depo.) at 71:7-18; Ex. 15 (McAlexander Depo.) at 331:21-22.) And Dr. Johnson testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. 16 (Johnson Depo.) at 71:7-18.) To the extent IS disputes Dr. Johnson's opinions and testimony, its arguments go to the weight of evidence and Dr. Johnson's credibility—issues to be resolved by *the jury*. *CEATS*, 526 F. App'x at 971; *Adenta*, 501 F.3d at 1370–73; *IP Innovation*, 2010 WL 9501469, at *4–5.

Further following the instructions in the HAL2000 Online Help Guide, which according to Mr. Shriver was provided to every customer of version 3.6.9, Dr. Johnson tested the software with the HAL Digital Video Center add-on for that version, which Home Automated Living also produced in response to the subpoena. (*See* Ex. 2 (HAL2000 Online Help Guide) at DVC Settings Screen; Ex. 18 ("Each HAL software product includes an Online Help Guide with information on all of HAL's features."); *see also* Ex. 7 (Shriver Depo.) at 120:8-18.) The guide, which was publicly available prior to August 10, 2006, provided the instructions to set up the HAL2000 software and HAL Digital Video Center add-on with two wireless video cameras. (*See* Ex. 2 (HAL2000 Online Help Guide) at DVC Settings Screen: Camera Type - IP ("This [DVC Settings] screen is where you specify which camera device you're using and the technology HAL is to use to communicate with and control that device. . . . The possible choices are USB, X10, Multi-Channel, IP-Internet Protocol (see below), and TV Tuner.").) Following those instructions, Dr. Johnson tested both the HAL2000 software and the HAL Digital Video Center add-on with the D-Link DCS-2100+ WiFi IP and the X10 RF wireless video cameras. (Ex. 12 (Johnson R.) at ¶¶ 801, 813.) As shown below, the D-Link camera was connected to the HAL2000 software as an "IP Camera"

(shown below-left) using exactly the same "DVC Settings" menu shown in the HAL2000 Online Help Guide from before August 10, 2006 (shown below-right):

 

(Johnson R. at ¶ 798 (screenshot from Dr. Johnson's test computer running HAL2000).)

(HAL2000 Online Help Guide, DVC Settings Screen: Camera Type – IP.)

The X10 RF camera was likewise set up using the same "DVC Settings" menu described in the HAL2000 Online Help Guide. (Ex. 12 (Johnson R.) at ¶¶ 813, 819; *see also* Ex. 2 (HAL2000 Online Help Guide) at DVC Settings Screen: Camera Type X-10; Ex. 19 (Home Automated Living webpage titled "Home Control Fundamentals: Defining X-10").) Both the X10 and D-Link cameras were interoperable with HAL2000 version 3.6.9 prior to August 10, 2006 and publicly available before that date. (Ex. 2 (HAL2000 Online Help Guide); *see also* Ex. 7 (Shriver Depo.) at 19:22–20:8, 20:25–21:3, 32:8–34:11, 65:16-23.) Again, any issues IS has with these aspects of Dr. Johnson's test and his related opinions go to the weight of evidence and credibility of the opinions—issues to be resolved by *the jury*. *Adenta*, 501 F.3d at 1370–73; *CEATS*, 526 F. App'x at 971; *IP Innovation*, 2010 WL 9501469, at *4.

Next, IS attacks Dr. Johnson's knowledge about the drivers on the Dell computer used for testing, alleging that he "does not know who located the drivers" and "cannot identify the drivers used on the computer associated with the 2019 HAL System." (*See* Mot. at 5.) But this has nothing to do with the reliability of Dr. Johnson's testimony. A driver is a low-level piece of software that

8

comes with either a computer's operating system or with a device. For example, a standard printer comes with drivers that allow a computer to use it. To interface with devices like cameras and modems, the HAL2000 software used standard device drivers provided by the device manufacturers and the Windows operating system. (*See, e.g.*, Ex. 13 (HAL2000 Operating Manual) at 612–13 (If the "HAL Setup Wizard didn't detect my modem," users must "[i]nstall the correct modem driver" and "[c]onsult the modem manufacturer's documentation or website for the correct driver."); *see also* Ex. 7 (Shriver Depo.) at 32:14–33:23, 33:24–34:10, 164:20–165:6.)

IS seeks to distract the Court with arguments about the location of decoders and encoders within the computer that Dr. Johnson used for his tests. (*See, e.g.*, Mot. at 5 (alleging that Dr. Johnson "did not know where an encoder . . . was located" and "that his answer relative to the location of decoders . . . 'would be the same answer'").) This is irrelevant, as HAL2000 uses a standard JPEG decoder and MPEG-4 encoder. As shown in the "DVC Settings" menu screenshots (*supra*, page 8), HAL2000 received images from the D-Link camera as a stream of JPEG images. (Ex. 12 (Johnson R.) at ¶ 798; *id.* at ¶ 801 ("As shown by the DVC Settings, the video is provided as a stream of JPEG images, which is a compressed digital video format.").) The JPEG compression format has been public since 1992, over a decade before IS's priority date. (Ex. 20 (1992 JPEG Spec.).) Because JPEG files exist in a compressed format, HAL2000 necessarily includes a JPEG decoder to display images, as Dr. Johnson shows in his report. (Johnson R. at ¶¶ 798, 801, 804.) Where the specific code for the decoder is located does not change the fact that it exists. Again, IS's issue goes to the sufficiency of evidence, not any reliability.

Likewise for encoders, the HAL2000 Online Help Guide specifies that it uses MPEG-4 compression for encoding. (Ex. 2 (HAL2000 Online Help Guide) at DVC Settings Screen: Compression (listing "MPEG-4 Compression" as the "recommended" video compression method).) The MPEG-4 standard was made public in 1999, a full seven years before IS's priority date. (Ex. 21 (1999 MPEG-4 Spec. Overview).) Again, IS's argument about where the encoder exists ignores

9

the simple fact that the HAL2000 software was encoding videos using the MPEG-4 standard before the asserted patents were filed. Thus, IS's argument that decades-old JPEG and MPEG-4 encoding and decoding software were somehow missing lacks merit, and in any event are factual issues to be resolved by the jury.

### B. IS's criticisms of Mr. Shriver's testimony, which has been properly corroborated, go to its weight and his credibility.

IS argues that Mr. Shriver is an interested party whose testimony cannot be trusted. (Mot. at 3–4, 7.) This argument is irrelevant because *Mr. Shriver's* credibility has *nothing to do* with Dr. Johnson's testimony and is outside the scope of a *Daubert* motion. And, under *Adenta*, IS's arguments regarding Mr. Shriver's impartiality and reliability raise, at most, a factual dispute that the jury must decide, not one that should be decided on a *Daubert* motion with an incomplete record. *Adenta*, 501 F.3d at 1370–73.

Moreover, Mr. Shriver's testimony is entitled to full weight because it has been properly corroborated by hundreds of pages of documents. *See Adenta*, 501 F.3d at 1373. ("Assessing the sufficiency of evidence which corroborates a witness's testimony concerning invalidating activities . . . is a jury question."). Mr. Shriver's deposition testimony merely ████████████ ████████████████████████████████████████████. (*See, e.g.*, Ex. 7 (Shriver Depo.) at 34:14–35:19, 35:23–42:23, 117:13–118:14; *see also* Exs. 8 and 9 (Shriver Decls.) at ¶¶ 4–183.)[4] IS's motion should be denied.

### III. CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court deny IS's motion to exclude Dr. Johnson's testimony.

---

[4] Excluding this testimony is reversible error. *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1377–78 (Fed. Cir. 2012) (reversing district court's decision to exclude evidence of prior art system and corroborating documents and testimony).

March 10, 2020                                              Respectfully submitted,


                                                                               By: */s/ Saina S. Shamilov*
          J. David Hadden
          CA Bar No. 176148 (Admitted E.D. Tex.)
          Email: dhadden@fenwick.com
          Saina S. Shamilov
          CA Bar No. 215636 (Admitted E.D. Tex.)
          Email: sshamilov@fenwick.com
          Ravi R. Ranganath
          CA Bar No. 272981 (Admitted E.D. Tex.)
          Email: rranganath@fenwick.com
          **FENWICK & WEST LLP**
          Silicon Valley Center
          801 California Street
          Mountain View, CA 94041
          Telephone: (650) 988-8500
          Facsimile: (650) 938-5200

          Todd R. Gregorian
          CA Bar No. 236096 (Admitted E.D. Tex.)
          Email: tgregorian@fenwick.com
          Dargaye Churnet
          CA Bar No. 303659 (Admitted E.D. Tex.)
          Email: dchurnet@fenwick.com
          TJ Fox
          CA Bar No. 322938 (Admitted E.D. Tex)
          Email:  tfox@fenwick.com
          **FENWICK & WEST LLP**
          555 California Street, 12th Floor
          San Francisco, CA 94104
          Telephone: 415.875.2300
          Facsimile:  415.281.1350

          Jeffrey Ware
          CA Bar No. 271603 (Admitted E.D. Tex.)
          Email: jware@fenwick.com
          **FENWICK & WEST LLP**
          1191 Second Avenue, 10h Floor
          Seattle, WA 98101
          Telephone: 206.389.4510
          Facsimile:  206.389.4511

        Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

*Counsel for Defendants*
AMAZON.COM, INC.,
AMAZON DIGITAL SERVICES LLC,
AND AMAZON WEB SERVICES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2020, a true and correct copy of the foregoing document was served on each party through their counsel of record via email.

Donald Lee Jackson
Email: djackson@davidsonberquist.com
Alan Arthur Wright
Email: awright@davidsonberquist.com
Gregory Albert Krauss
Email: gkrauss@davidsonberquist.com
James Daniel Berquist
Email: jay.berquist@davidsonberquist.com
Aldo Noto
Email: anoto@davidsonberquist.com
Pete Gowdey
Email: pgowdey@davidsonberquist.com
Walter D. Davis
Email: wdavis@davidsonberquist.com
Ethan Song
Email: esong@davidsonberquist.com

Davidson Berquist Jackson & Gowdey LLP
8300 Greensboro Drive Suite 500
McLean, VA 22102

*Counsel for Plaintiff*
**Innovation Sciences, LLC**

*/s/ Saina S. Shamilov*
Saina S. Shamilov