**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| INNOVATION SCIENCES, LLC,<br><br>Plaintiff,<br>  v.<br><br>AMAZON.COM, INC., et al.<br><br>             Defendants. | Civil Action No. 4:18-cv-00474-ALM<br>(LEAD CONSOLIDATED CASE)<br><br>JURY TRIAL DEMANDED |
| INNOVATION SCIENCES, LLC,<br><br>           Plaintiff,<br>  v.<br><br>RESIDEO TECHNOLOGIES, INC.,<br><br>           Defendant. | Civil Action No. 4:18-cv-00475-ALM |
| INNOVATION SCIENCES, LLC,<br><br>           Plaintiff,<br>  v.<br><br>HTC CORPORATION,<br><br>           Defendant. | Civil Action No. 4:18-cv-00476-ALM |

**AMAZON'S OPPOSITION TO *DAUBERT* CHALLENGE OF
INNOVATION SCIENCES, LLC TO EXPERT REPORT
OF DR. KEITH UGONE ON DAMAGES**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ---------------------------------------------------------------------------- 1

II. FACTUAL BACKGROUND --------------------------------------------------------------- 2

III. ARGUMENT --------------------------------------------------------------------------------- 4

    A. Dr. Ugone properly relied on the ▮▮▮▮ licenses ------------------------ 4

    B. Dr. Ugone used a reliable method to adjust the ▮▮▮▮ license payments ------------------------------------------------------------------------------ 8

    C. Dr. Ugone properly declined to consider "▮▮▮▮" data --------------- 9

IV. CONCLUSION ------------------------------------------------------------------------------ 10

## TABLE OF AUTHORITIES

**CASES**                                         **PAGE(S)**

*Acqua Shield v. Inter Pool Cover Team*
    774 F.3d 766 (Fed. Cir. 2014) ........................................................................... 10

*Advanced Tech. Incubator, Inc. v. Sharp Corp.*,
    No. 2:07-CV-468, 2009 WL 4723733 (E.D. Tex. Sept. 8, 2009) ..................... 8–9

*Am. Seating Co. v. USSC Grp., Inc.*,
    514 F.3d 1262 (Fed. Cir. 2008) ........................................................................ 10

*Core Wireless Licensing S.a.r.l. v. LG Elecs., Inc.*,
    No. 14-cv-911-JRG-RSP, 2016 WL 1090351 (E.D. Tex. Mar. 19, 2016) ........ 1, 7–8

*Fr. Telecom S.A. v. Marvell Semiconductor Inc.*,
    No. 12-cv-04967-WHO, 2014 WL 4272771 (N.D. Cal. Aug. 28, 2014) ........... 6

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970) ............................................................... 1, 4–5

*Gilead Scis., Inc. v. Natco Pharma Ltd.*,
    753 F.3d 1208 (Fed. Cir. 2014) ......................................................................... 5

*Lucent Techs, Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ......................................................................... 4

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
    853 F.3d 1370 (Fed. Cir. 2017) ......................................................................... 5

*SimpleAir, Inc. v. Google LLC*,
    884 F.3d 1160 (Fed. Cir. 2018) ......................................................................... 5

*Tektronix, Inc. v. United States*,
    552 F.2d 343 (Ct. Cl. 1977) ............................................................................... 8

*Trell v. Marlee Elecs. Corp.*,
    912 F.2d 1443 (Fed. Cir. 1990) ......................................................................... 8

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ......................................................................... 4

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ......................................................................... 5

**Index of Exhibits to the Declaration of Ravi R. Ranganath, filed herewith**

1. Rebuttal Expert Report of Keith R. Ugone. Ph.D. ("Ugone Rep."), including exhibits 7 & 8, served January 15, 2020

2. Excerpts from the Expert Report of Professor Stephen P. Magee and D. Devrim Ikizler ("Magee Rep."), including excerpts of Exhibit 12e, served December 4, 2019

3. Excerpts from the U.S. Patent No. 9,729,918 File History

4. Excerpts from the U.S. patent No. 9,912,983 File History

5. Excerpts from the Non-Infringement Expert Report of David B. Johnson, Ph.D. ("Johnson Reb. R."), served January 15, 2020

6. Excerpts from the Opening Expert Report of David B. Johnson, Ph.D. ("Johnson Op. R."), served December 4, 2019

7. Excerpts from the Transcript of the January 25, 2020 Deposition of Keith R. Ugone, Ph.D. ("Ugone Depo Tr.")

8. Jessica Dolcourt, "Even More Proof that Your iPhone and Android Are More Expensive in 2019," CNET.com (Apr. 2, 2019)

9. Excerpt from the Transcript of the November 14, 2019 Deposition of Nedim Fresko

10. Excerpts from the Transcript of the January 25, 2020 Deposition of Stephen P. Magee, Ph.D.

**I.     INTRODUCTION**

IS seeks to exclude the testimony of Amazon's damages expert Dr. Keith Ugone, but IS cannot establish that Dr. Ugone's analysis is unreliable—*i.e.*, that it amounts to "unsupported speculation or subjective belief." *Core Wireless Licensing S.a.r.l. v. LG Elecs., Inc.*, No. 14-cv-911-JRG-RSP, 2016 WL 1090351, at *1 (E.D. Tex. Mar. 19, 2016) (citation omitted). IS requests the Court exclude Dr. Ugone's testimony because purportedly (1) the ▮▮▮▮▮▮▮▮ licenses he relied on are not comparable to the hypothetical license; (2) he improperly applied the "book of wisdom" by considering ▮▮▮▮▮▮▮▮ sales after the negotiation of those agreements; and (3) he did not consider Amazon's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in estimating a reasonable royalty. Each of IS's arguments fails.

- The ▮▮▮▮▮▮▮▮ license agreements grant rights to the specific patents IS has asserted in this case. They are therefore *directly* comparable to the hypothetical license in this case under *Georgia Pacific* and related Federal Circuit case law. Further, the other patents covered by the ▮▮▮▮▮▮▮▮ licenses—the '492 patent and its progeny—are no different than the patents-in-suit. The patentee itself filed a terminal disclaimer acknowledging that the patents in this case are patentably indistinct from the '492 patent family. And Amazon's technical expert Dr. Johnson performed an extensive analysis comparing the claims of the '492 patent family with those asserted here and confirmed they cover the same technology. Moreover, Dr. Ugone also accounted for differences between the ▮▮▮▮▮▮▮▮ negotiations and the hypothetical negotiation and adjusted the royalties to account for them.

- Dr. Ugone appropriately adjusted the ▮▮▮▮▮▮▮▮ license payments to account for differences between ▮▮▮▮▮▮▮▮ sales of licensed products and Amazon's sales. He did so using public sales information, some of which would have been available to the parties at the time of the hypothetical negotiation, and the remainder of which serves as a proxy for the parties' projection of those sales.

1

- Dr. Ugone also properly declined to consider Amazon's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. He reviewed that data and associated documents, and confirmed that the data is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. He also concluded that it would be improper to include Amazon's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ that have nothing to do with the patents-in-suit. Not only is Dr. Ugone's conclusion appropriate and supported by evidence, but IS's experts' decision to use the ▇▇▇▇▇▇ to attribute these other profits to the patents was itself an error that requires the Court to exclude their testimony.

IS's criticisms of Dr. Ugone either fail entirely or, at most, go to the weight rather than the admissibility of his anticipated testimony. The Court should deny the motion in its entirety.

## II. FACTUAL BACKGROUND

On January 15, 2020, Amazon submitted the rebuttal expert report of Dr. Keith Ugone on damages. (Ex. 1[1] ("Ugone Rep.").) Dr. Ugone provided an opinion regarding the outcome of a hypothetical negotiation between Amazon and IS's predecessor, Virginia Innovation Sciences, Inc. ("VIS") as of August 2017 and March 2018. (*See id.* at ¶¶ 5-12, 57.) He based his analysis of the parties' negotiating positions on several relevant factors, including: (i) the parties' views about the benefits of the claimed inventions (*id.* at ¶¶ 59-62); (ii) Amazon's contribution to the success of the accused Echo, Fire TV, and Fire Tablet devices (*id.* ¶¶ 69-86); (iii) the numerous key features of those products that have nothing to do with the patented inventions (*id.* at ¶¶ 87-96); (iv) the limited use of and demand for the accused "smart home" features among users (*id.* at ¶¶ 97-105); and the wide availability of acceptable non-infringing alternatives (*id.* at ¶¶ 104-105).

As part of his analysis, Dr. Ugone reviewed seven license agreements that IS produced. He identified two—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[1] All exhibits references are to the Declaration of Ravi R. Ranganath in Support of Amazon's Opposition to *Daubert* Challenge of Innovation Sciences, LLC to Expert Report of Dr. Keith Ugone on Damages.

██████—as probative of a likely royalty payment for a license to the patents in suit. (*Id.* at ¶¶ 110-112.) The ████████████████████████████████████████████████████████ ████████████████████████████. (*Id.* at ¶ 111.a.) Under the agreements, ████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████. (*Id.*) In exchange, ████████████ ████████████████████████████████████████████████████. (*Id.* at ¶ 112.a-b.) Dr. Ugone noted that, according to IS's own damages experts, the ████████████████████████████████████████ ████████████████████████████████████████████████████. (Id. at ¶ 111.a) The licenses also covered ████████████████████████████████████████ alleged to infringe any patent in the portfolio. (Id. at ¶ 112.a-b.) To confirm the relevance of the licenses, Dr. Ugone also spoke to Amazon's technical expert, Dr. David Johnson, who told him that the ████████████ ████████████████████████████████████████. (Id. at ¶¶ 111a, 113.)

Dr. Ugone also cautioned that because the ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████. (*Id.* at ¶ 113.) To do so, Dr. Ugone performed a "██████" analysis. (*See id.* at ¶¶ 111-114, Tables 12-15, Exs. 7-8.) His calculation is, effectively, as follows:



Dr. Ugone noted that Amazon and VIS would have used the same method, "████████ ████████████████████████████████████████████████████████████████████████████████." (Id. at ¶ 113a n.284.) Using this method, he calculated an "████████████████████████████████ ████████████████████████████████████████████████████, which reflect the upper

3

and lower bound of the reasonable royalty. (Id. at ¶¶ 114, 118.) Dr. Ugone's calculation was conservative because the licensed sales he used to adjust the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (See id. at ¶ 12 nn.22, 23, ¶ 113.) This reduced the first percentage above, and thus increased estimated damages.

Dr. Ugone also considered other ways to measure profitability of the accused devices. These include Amazon's "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Id. at ¶ 131.) Dr. Ugone concluded that these ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—and therefore



are not a reliable measure of value of the patented inventions. (Id. at ¶¶ 132-35, 140-42.)

### III. ARGUMENT

#### A. Dr. Ugone properly relied on the ▮▮▮▮▮▮▮▮▮▮ licenses.

The second *Georgia-Pacific* factor is "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit." *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). "This factor examines whether the licenses relied upon . . . in proving damages are sufficiently comparable to the hypothetical license at issue in suit." *Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). A comparable license is one for which there is some "basis in fact" to associate its royalty rate to the hypothetical negotiation between plaintiff and defendant. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011). A license that is "radically different from the hypothetical agreement under consideration" is not comparable and should not be considered. *Id*. at 1316. Here, IS argues that the ▮▮▮▮▮▮▮▮▮▮ licenses are not comparable because (1) they involved patents and products related specifically to video signal conversion technology rather than smart home technology; and (2) the details of the ▮▮▮▮▮▮▮▮▮▮ *negotiations* that led to the licenses are different. (Mot. at

4

5-6.) Both arguments lack merit, as these licenses are clearly comparable.

First, the ▇▇▇▇▇▇ licenses include rights *to the same patents asserted here*. (Ex. 2 ("Magee Rep.") at ¶¶ 71 & 79 ("According to the licensed patents definition under both ▇▇▇▇ ▇▇▇▇▇▇▇▇ the licensed patents include the current Patents-in-suit . . . .").) They are therefore paradigm examples of comparable licenses: they reflect the value of the same patented invention and thus bear on the reasonable royalty.[2] *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1381 (Fed. Cir. 2017) ("The BlackBerry settlement agreement was relevant here because it contained a license of the very patents Samsung was found to infringe."); *Georgia-Pacific*, 318 F. Supp. at 1120 (listing as a relevant factor in setting a reasonable royalty "[t]he royalties received by the patentee for the licensing of the patent in suit"); *see also VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014) (proper to consider license that predated the patents because they "related to technology leading to the claimed invention").

Not only do the ▇▇▇▇▇▇ licenses cover the patents-in-suit, but they also cover a portfolio of patents—the '492 patent family—that is patentably indistinct from the patents-in-suit, based on the representations of the common inventor. Indeed, during prosecution of the applications that led to the '918 and '983 patents, the inventor filed a terminal disclaimer over the '492 patent to overcome obviousness double-patenting rejections. (Exs. 3-4; Ex. 5 ("Johnson Reb. R.") at ¶¶ 100, 113, 123, 155, 168, 187, 206, 245.) In doing so, she acknowledged that the '918 and '983 patents "lacked a patentable distinction over the parent" '492 patent. *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168 (Fed. Cir. 2018); *see also Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1216 (Fed. Cir. 2014) (terminal disclaimer "create[s] one expiration date for their term of exclusivity over their inventions and obvious variants, 'which is tantamount for all practical purposes to having all the claims in one patent'" (quoting *Application of Braithwaite*, 379 F.2d 594, 601 (C.C.P.A. 1967))). Thus, according to the patents' inventor and the prosecution

---

[2] IS's experts opine that Amazon would have agreed to pay ▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Magee Rep. at ¶ 160.)

5

history, the '492 patent portfolio licensed by ▮▮▮▮▮▮▮▮▮▮ was technologically comparable.

And the analysis of Amazon's technical expert Dr. Johnson confirmed this. He opined that the claims of the asserted '983 patent family (the '983, '918, and '709 patents) "recite substantially similar limitations as the claims of the '492 patent family directed to the MTSCM embodiment of '(1) receiving data; (2) processing data; and (3) providing or displaying data.'" (Ex. 6 ("Johnson Op. R.") at ¶¶ 247-256.) Claim 9 of the '918 patent makes this clear. (*See* '918 patent, cl. 9.) It requires an apparatus that receives a multimedia signal through a wireless network, decompresses the signal, encodes the signal, and transmits the signal to a high definition display. (*See, e.g.*, *id.*; Johnson Op. R. at ¶ 255; Johnson Reb. R. at ¶ 100.) It is no different than the "signal conversion" claims covered by the ▮▮▮▮▮▮▮▮ licenses, and has nothing to do with "smart home" technology. And asserted claim 28 of the '918 patent, which depends on claim 27 and claim 9, must be *narrower* in scope than claim 9. Thus, to the extent the ▮▮▮▮▮▮▮▮ royalties reflected the value of the signal conversion inventions to which claim 9 of the '918 patent and other similar claims are directed, Dr. Ugone's reliance on those agreements in valuing the narrower claims asserted here was, if anything, *conservative*.

IS criticizes Dr. Ugone for relying on Dr. Johnson's opinion regarding the technical comparability of the '492 patent family and the patents-in-suit. But damages experts may properly rely on analysis provided by a technical expert. *See, e.g.*, *Fr. Telecom S.A. v. Marvell Semiconductor Inc.*, No. 12-cv-04967-WHO, 2014 WL 4272771, at *2 (N.D. Cal. Aug. 28, 2014) (denying motion to exclude testimony of damages expert based on reliance on technical expert opinion). Here, Dr. Johnson supported his opinion with a thorough analysis in his own reports. (*See* Johnson Op. R. at ¶¶ 241-256, Johnson Reb. R. at ¶¶ 100, 113, 123, 155, 168, 187, 206, 245).) IS has not sought to exclude Dr. Johnson's opinion.

Moreover, IS wrong that the Court rejected Dr. Johnson's opinion regarding the comparability of the patents in its order *on a motion to transfer venue*. (*See* Mot. at 5.) The Court

observed that transfer would not be judicially efficient because the Virginia district court had not analyzed "smart home" technology during IS's earlier case against Amazon. (Dkt. 161 at 59-60.) But the Court acknowledged that "there may be some overlap in the technology" at issue in this and the Virginia case. (*Id.* at 60.) Indeed, *even IS's own experts* noted that the technology covered in the ▮▮▮▮▮▮▮▮ licenses "may be similar to the current Patents-in-Suit in a sense that it makes different devices to talk to each other." (Magee Rep. at ¶ 78.) Dr. Ugone thus properly concluded that the licenses were comparable to the hypothetical license.

Second, IS wrong that Dr. Ugone failed to consider the differences between the ▮▮▮▮ ▮▮▮▮ negotiations and the hypothetical negotiation. IS claims that the parties to the hypothetical negotiation "would be required to address the expected growth in the area of smart home technology in August 2017 and the importance of that technology to their product offering." (Mot. at 6.) But as IS acknowledges, Dr. Ugone ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See id.*; Ugone Rep. at ¶¶ 113-114.) To the extent ▮▮▮▮▮▮▮▮ had different sales *expectations* than Amazon, such differences are captured in this comparison. (*See, e.g.*, Ex. 7 ("Ugone Depo Tr.") at 42:22-25.) Moreover, IS's suggestion that "smart home" products are more profitable than the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Ex. 8; Ugone Rep. at ¶¶ 40-44 (describing accused products).) And even if IS can show at trial that the accused Amazon products are more profitable, IS cannot show that this difference is attributable to the patents.

"An expert may rely on comparable licenses that differ in some respects from the hypothetical agreement [so long as] he 'account[s] for the technological and economic differences between them.'" *Core Wireless Licensing S.a.r.l.*, 2016 WL 1090351, at *5 (quoting *Wordtech Sys. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010)). Dr. Ugone's

7

analysis easily clears this bar, as he expressly accounted for the differences between the ██████ ███████ licenses and the hypothetical license. (*See, e.g.*, Ugone Depo Tr. at 154:2-8.) And even if IS's criticisms of Dr. Ugone had any merit, they would go the weight of the testimony, not its admissibility. *Core Wireless Licensing S.a.r.l.*, 2016 WL 1090351, at *5 (criticism of analysis of licenses "fundamentally attacks the weight of the evidence rather than [its] sufficiency").

**B.    Dr. Ugone used a reliable method to adjust the ███████████ license payments.**

Dr. Ugone opined that at the hypothetical negotiation VIS and Amazon would consider the already-executed ██████████ licenses as reflecting the value of the patents, and because those licenses used ██████████, the parties would look to "██████████ ████████████████████████████████████████████████████████████████. (Ugone Rep. at ¶ 113 n.284.) Dr. Ugone used public information to derive ████████████████████ ███, the period for which Amazon has provided ████████. IS contends that Dr. Ugone improperly considered ██████████'s licensed sales in adjusting those payments because *some* of those sales occurred after the negotiation. (*See* Mot. at 7.) IS is wrong, and Dr. Ugone's analysis complied with Federal Circuit law and opinions of this district.

First, some of the sales data that Dr. Ugone relied on *would have been available* at the time of the March 2018 negotiation; the remainder serves as a reasonable proxy for future sales. *See, e.g.*, *Tektronix, Inc. v. United States*, 552 F.2d 343, 349 & n.10 (Ct. Cl. 1977) (using accused infringer's actual profits in hypothetical negotiation in absence of projected data); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446 (Fed. Cir. 1990) ("the district court may consider the infringer's anticipated profits, as indicated by evidence of actual profits"). Second, using ████████ licensed sales data over the same period for which Amazon sales were available ensures an apples-to-apples comparison, making Dr. Ugone's calculation *more* reliable. Third, even under the "book of wisdom," an expert may consider facts and information from after the hypothetical negotiation. *See Advanced Tech. Incubator, Inc. v. Sharp Corp.*, No. 2:07-CV-468, 2009 WL 4723733, at *3-

8

5 (E.D. Tex. Sept. 8, 2009). That doctrine does not preclude Dr. Ugone's testimony: relying on post-negotiation data does not provide a basis to exclude, so long as the expert primarily relies on facts known the parties as of the date of the hypothetical negotiation, as Dr. Ugone did here.[3] *See id.* And IS's criticisms go to the weight of the evidence Dr. Ugone considered, not the admissibility of his testimony. *Id.* at *5. Finally, as Dr. Ugone testified, using projections as of the date of the ▌ agreements—assuming such data existed—would not materially change the outcome of the hypothetical negotiation because ▌. (*See* Ugone Depo Tr. at 49:22-51:7.)[4]

### C. Dr. Ugone properly declined to consider "▌" data.

IS argues that "the law" required Dr. Ugone to consider Amazon's ▌. (Mot. at 9.) IS is wrong. These calculations are ▌. Aside from the fact that they are ▌. Selecting a royalty rate based on this data—▌. (*See* Dkt. 422.)

IS mischaracterizes ▌. (*Id.* at 8.) ▌. (*See, e.g.*, Ugone Report at ¶ 131.a.) But ▌." (Ex. 9 (Fresko Depo Tr.) at 80:16-22; *see also* Ugone Rep. at ¶ 131.a.) It is difficult to determine, for example, ▌

---

[3] IS's experts also consider evidence from after the date of the hypothetical negotiation, including customer reviews from as recently as November 2019. (Magee Rep. at Ex. 12e.)

[4] Dr. Ugone considered ▌. (Ugone Rep. at ¶ 113.a.ii, ¶ 113.b.ii; *see also* Ugone Depo Tr. at 25:18-24.) This *increased* his damages estimate.



. (*See* Ugone Rep. at ¶ 133.b; *see also* Ugone Depo Tr. at 113:18-25.) For example, ▮

Second, ▮

▮ . ▮

▮

▮ . ▮

▮

▮

▮ (Ex. 10 (Magee Depo Tr.) at 188:24-189:3, 191:11-17.) In *Aqua Shield v. Inter Pool Cover Team*, which IS cites, the Federal Circuit made clear that the relevant consideration in the hypothetical negotiation is the "the profit-making potential of use of the patented technology," not the profitability of the accused devices and certainly not the profitability of other unrelated products and services. 774 F.3d 766, 770 (Fed. Cir. 2014); *cf. Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008) (to recover lost profits for unpatented items patentee must show they are part of the same "functional unit" as the patented product). Because there is no evidence that ▮

▮

▮ .

## IV. CONCLUSION

The Court should therefore deny IS's motion to exclude the testimony of Dr. Ugone.

March 10, 2020

Respectfully submitted,

By: */s/ Ravi R. Ranganath*

J. David Hadden
CA Bar No. 176148 (Admitted E.D. Tex.)
Email: dhadden@fenwick.com
Saina S. Shamilov
CA Bar No. 215636 (Admitted E.D. Tex.)
Email: sshamilov@fenwick.com
Ravi R. Ranganath
CA Bar No. 272981 (Admitted E.D. Tex.)
Email: rranganath@fenwick.com
**FENWICK & WEST LLP**
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200

Todd R. Gregorian
CA Bar No. 236096 (Admitted E.D. Tex.)
Email: tgregorian@fenwick.com
Dargaye Churnet
CA Bar No. 303659 (Admitted E.D. Tex.)
Email: dchurnet@fenwick.com
TJ Fox
CA Bar No. 322938 (Admitted E.D. Tex)
Email:  tfox@fenwick.com
**FENWICK & WEST LLP**
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile:  415.281.1350

Jeffrey Ware
CA Bar No. 271603 (Admitted E.D. Tex.)
Email: jware@fenwick.com
**FENWICK & WEST LLP**
1191 Second Avenue, 10h Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile:  206.389.4511

Melissa R. Smith
State Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

*Counsel for Defendants*
AMAZON.COM, INC.,
AMAZON DIGITAL SERVICES LLC,
AND AMAZON WEB SERVICES, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 10, 2010.

*/s/ Ravi R. Ranganath*
Ravi R. Ranganath

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2020, a true and correct copy of the foregoing document was served on each party through their counsel of record via email.

Donald Lee Jackson
Email: djackson@davidsonberquist.com
Alan Arthur Wright
Email: awright@davidsonberquist.com
Gregory Albert Krauss
Email: gkrauss@davidsonberquist.com
James Daniel Berquist
Email: jay.berquist@davidsonberquist.com
Aldo Noto
Email: anoto@davidsonberquist.com
Pete Gowdey
Email: pgowdey@davidsonberquist.com
Walter D. Davis
Email: wdavis@davidsonberquist.com
Ethan Song
Email: esong@davidsonberquist.com

Davidson Berquist Jackson & Gowdey LLP
8300 Greensboro Drive Suite 500
McLean, VA 22102

*Counsel for Plaintiff*
**Innovation Sciences, LLC**

                                          */s/ Ravi R. Ranganath*
                                          Ravi R. Ranganath