# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| INNOVATION SCIENCES, LLC<br><br>v.<br><br>AMAZON.COM, INC., et al | Civil Action No. 4:18-cv-474<br>Judge Mazzant<br><br>***CONSOLIDATED LEAD CASE*** |
| INNOVATION SCIENCES, LLC<br><br>v.<br><br>RESIDEO TECHNOLOGIES, INC. | Civil Action No. 4:18-cv-475<br>Judge Mazzant<br><br>***Member case*** |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Amazon's Motion to Exclude Testimony of Plaintiff's Damages Expert (Dkt. #422). Having reviewed the motion and the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

This is a patent infringement suit brought by Plaintiff Innovation Sciences, LLC against Defendants Amazon.com, Inc., Amazon Digital Services, Inc., Amazon Digital Services, LLC, Amazon Web Services, LLC, Amazon Web Services, Inc., and Amazon Fulfillment Services, Inc. (collectively, "Defendants") (Dkt. #79 at p. 1). The patent infringement allegations include U.S. Patent No. 9,723,443 ("the '443 Patent") and the '798 Patent Family, including U.S. Patent Nos. 9,942,798 ("the '798 Patent"), 9,912,983 ("the '983 Patent"), and U.S. Patent No. 9,729,918 ("the '918 Patent") (Dkt. #79).

On February 25, 2020, Defendants filed their Motion to Exclude Testimony of Plaintiff's Damages Expert (Dkt. #422). Plaintiff responded on March 11, 2020 (Dkt. #496). Defendants filed their reply on March 18, 2020; Plaintiff filed its sur-reply on April 2, 2020 (Dkt. #526; Dkt. #589).

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following,

non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

**ANALYSIS**

Defendants first argue that Plaintiff's damages expert, Dr. Magee,[1] should not be allowed to testify on damages related to the Dash Button and Dash Replenishment Service because his opinions are unsupported (Dkt. #422 at p. 6). Specifically, Defendants claim that although Dr. Magee estimates a reasonable royalty of 2% for Dash, he provides no support for this claimed royalty rate, relying only on a conclusory statement from his expert report and deposition

[1] Defendants acknowledge that while Dr. Magee co-authored his damages report with Dr. Devrim Ikizler, the report states that Dr. Magee is both in charge of the damages theory and bears the responsibility of any Court-ordered exclusions (Dkt. #422 at p. 4 n.1). Thus, Defendants refer in their motion only to Dr. Magee, despite clarifying that the relief sought applies to Plaintiff's damages report in its entirety including the opinions of both Dr. Magee and Dr. Ikizler. The Court recognizes this, and it also will refer only to Dr. Magee since he bears responsibility for any exclusions.

testimony that a member of his staff did this analysis to support his calculated royalty (Dkt. #422 at pp. 6–7).

Defendants next argue that Dr. Magee's damages analysis for the accused Fire TV, Fire Tablet, and Echo Products must be excluded. Defendants assert that—because Defendants actually lose money on most of the accused products, Dr. Magee does not use the actual profit margins (Dkt. #422 at p. 8). Instead, Defendants say he makes them up by adding to the actual profit per unit an estimate of downstream impact, or DSI, as calculated by Defendant Amazon themselves; Dr. Magee then calculates a "lifetime value," or "LTV" (Dkt. #422 at p. 8). Dr. Magee finally calculates an "LTV Margin" by dividing the LTV by the average selling price of the accused Amazon device (Dkt. #422 at p. 8).

Dr. Magee's methodology leads to two problems according to Defendants. First, despite acknowledging that "calculating a profit margin requires dividing profit per unit by selling price of that unit, Dr. Magee uses in the numerator of his calculation a sum of the profit-per-unit for the accused device and its DSI, but includes in the denominator only the price of the device . . ." (Dkt. #422 at p. 9). Allegedly, this leads Dr. Magee to inflate the profit margin (Dkt. #422 at p. 9). And second, Defendants claim that "Dr. Magee's reliance on DSI data itself renders his opinion both unreliable and contrary to law" (Dkt. #422 at p. 9).

Finally, Defendants argue that Dr. Magee's attempt to apportion damages is also flawed an unreliable (Dkt. #422 at p. 10). Defendants argue that "had Dr. Magee correctly calculated the profit margin in his first step, that profit margin would be substantially less than Amazon's corporate incremental profit margin because, as Dr. Magee acknowledges, Amazon earns minimal—and in some cases significantly negative—profit per unit for most of the accused devices" (Dkt. #422 at p. 10). So, Defendants argue, Dr. Magee's testimony on this form of

apportionment must be excluded (Dkt. #422 at p. 10). Defendants also argue that Dr. Magee's testimony is unreliable since it is based on assumptions that Plaintiff's own technical expert deemed overinclusive and on improperly applied search terms, which inflated the claimed royalty (Dkt. #422 at pp. 12–13).

Plaintiff counters that Dr. Magee's apportionment studies relied on data supplied by Defendant Amazon—Defendants just disagree with Dr. Magee's conclusions in light of that data (Dkt. #496 at p. 6). As Plaintiff argues: "Defendants can criticize the assumptions made, the search terms used, and the errors identified in the analyses, but these are issues that can be brought out in cross-examination and they do not render the opinions unreliable" (Dkt. #496 at p. 7).

Plaintiff then turns to Defendants' arguments regarding the "LTV margin." Plaintiff retorts that it is "Amazon's own documentation that downstream impact revenues are causally tied to the sales of accused products," which is the documentation Dr. Magee relied on for his calculations (Dkt. #496 at p. 9). Plaintiff also disclaims any mathematical error in Dr. Magee's calculation of the "LTV margin," arguing that "it is the sales revenue of the accused product, not the entire bundle of downstream products, that matter when measuring how profitable the accused products are" (Dkt. #496 at p. 10). In essence, Plaintiff argues that all of Defendants' criticisms go to the weight of Dr. Magee's testimony rather than its admissibility (Dkt. #496 at p. 2).

The Court agrees on the whole with Plaintiff—Defendants can address their problems with Dr. Magee's testimony on cross examination because their challenges go to the weight of Dr. Magee's testimony, not the admissibility of Dr. Magee's testimony. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *United States v. 14.38 Acres of Land, More or Less Situated in Leflore County*, 80 F.3d 1074, 1077 (5th Cir. 1996)

(quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Indeed, cross examination is preferred because "[i]t is the role of the adversarial system, not the court, to highlight weak evidence . . . ." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *see also Mobility Workx, LLC v. Cellco P'ship*, 4:17-CV-00872, 2019 WL 5721814, at *6 (E.D. Tex. Nov. 5, 2019). And "[i]t is not proper to use Rule 702 as a vehicle to usurp the fact-finding role of the jury . . . ." *Core Wireless Licensing S.a.r.l. v. LG Elecs., Inc.*, No. 14-cv911-JRG-RSP, 2016 WL 1090351, at *1.

Despite Defendants' claim that they are challenging Dr. Magee's methodology rather than the data and assumptions he used (Dkt. #526 at p. 9 n.2), that is not the substance of their arguments. Indeed, Defendants' argue that "Dr. Magee has *no support* for his opinions regarding the Dash Button and Dash Replenishment Service," and that "Dr. Magee's *use of and reliance on DSI data* renders his opinions unreliable and speculative." (Dkt. #526 at p. 5) (emphasis added). And though Defendants frame the argument that Dr. Magee's testimony is unreliable since it is based on assumptions that Plaintiff's own technical expert deemed overinclusive as a methodology-based argument, this once again goes to the data and assumptions Dr. Magee relied on. Contrary to their claim, Defendants do "not focus on attacking the reliability of the *Georgia-Pacific* factors or the analytical approaches utilized. The issue that [Defendants have], rather, is with what [they deem] are arbitrary inputs." *See Mobility Workx, LLC*, 2019 WL 5721814, at *17. That is an issue for trial.

If the underlying reasoning for Dr. Magee's "methodology is flawed, absurd, or even irrational" as Defendants claim it is, "then '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' will serve as the proper antidote for attacking these potentially 'shaky' arguments." *Id.* at *15 (alteration in original) (quoting *Daubert*,

509 U.S. at 596). "Put simply, a court 'is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the opinion is reliable.'" *Id.* at *6 (quoting *Wallis v. Hornbeck Offshore Operators*, CIV.A. 12-536, 2014 WL 3809743, at *1 (E.D. La. Aug. 1, 2014)). And "[i]f Dr. [Magee's] claims are as unsupported or conclusory as [Defendants] claim[], then 'vigorous cross examination' will reveal that." *Id.* (citing *Daubert*, 509 U.S. at 596).

## CONCLUSION

It is therefore **ORDERED** that Amazon's Motion to Exclude Testimony of Plaintiff's Damages Expert (Dkt. #422) is hereby **DENIED**.

**SIGNED this 22nd day of July, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE