**FILED UNDER SEAL**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| INNOVATION SCIENCES, LLC,<br><br>              Plaintiff,<br><br>    v.<br><br>AMAZON.COM, INC., et al.<br><br>              Defendants. | Civil Action No. 4:18-cv-00474-ALM<br>(LEAD CONSOLIDATED CASE) |

**MOTION OF DEFENDANTS AMAZON.COM, INC. AND
AMAZON WEB SERVICES, INC. FOR REASONABLE
ATTORNEY FEES AND COSTS UNDER 35 U.S.C. § 285**

**FILED UNDER SEAL**

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................1

II.  BACKGROUND .................................................................................................2

    A.   IS brought this case to trial despite fatal flaws. ......................................2

        1.   IS accused Amazon of direct infringement based on the actions of non-party users and products. ........................................2

        2.   IS misstated the claim language to the jury. ................................3

        3.   IS changed its claimed priority date in the middle of trial after two years of litigation. ................................................4

    B.   IS's claims included a rehash of failed claims brought in Virginia. ......................5

        1.   IS tried but failed to assert the same patent-ineligible concept that failed in Virginia: converting a signal between multiple protocols. ................................................6

        2.   IS brought claims targeting Amazon's use of the Miracast Standard, just as it did in Virginia, only to abandon them at trial. ..............7

        3.   IS also brought claims against Amazon Dash Button, like those that failed in Virginia, and abandoned them at the pretrial conference. ................................................8

III. ARGUMENT ......................................................................................................9

    A.   This is an exceptional case. ......................................................................9

    B.   The Court should find this case exceptional because IS knew or should have known its case was fatally flawed. ................................9

    C.   IS also litigated the case unreasonably. .................................................11

    D.   The Court should award Amazon the attorney fees and non-taxable costs it reasonably incurred in this case. ................................13

        1.   This Court should determine that this case is exceptional in its totality, warranting an award of full fees and costs. ................13

        2.   Amazon's attorneys' rates were reasonable. .............................14

        3.   The fees and costs incurred were reasonable. ...........................14

IV.  CONCLUSION ..................................................................................................15

**FILED UNDER SEAL**

## TABLE OF AUTHORITIES

*Cases:*                                                                                                          *Page(s):*

*AdjustaCam LLC v. Amazon.com, Inc.*,
    No. 6:10-cv-00329-JRG, 2018 WL 1335308 (E.D. Tex. Mar. 15, 2018)..........................15

*Andersen Mfg. Inc. v. Wyers Prods. Grp., Inc.*,
    No. 18-cv-0235-WJM-STV, 2019 WL 4007772 (D. Colo. Aug. 23, 2019),
    *appeal docketed*, No. 2020-1355 (Fed. Cir. Jan. 15, 2020) ...............................................12

*Blum v. Stenson*,
    465 U.S. 886 (1984)................................................................................................................14

*Brighton Collectibles, LLC v. Believe Prod., Inc.*,
    No. 2:15-CV-00579-CAS(ASx), 2018 WL 1381894 (C.D. Cal. Mar. 15,
    2018) ......................................................................................................................................11

*Bywaters v. United States*,
    670 F.3d 1221 (Fed. Cir. 2012)..............................................................................................14

*Cent. Soya, Inc. v. Geo. Hormel & Co.*,
    723 F.2d 1573 (Fed. Cir. 1983)..............................................................................................15

*Designing Health, Inc. v. Erasmus*,
    No. CV 98-4758 LGB (CWX), 2003 WL 25902463 (C.D. Cal. May 1,
    2003) ......................................................................................................................................12

*Edekka LLC v. 3balls.com, Inc.*,
    No. 2:15-CV-541 JRG, 2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) ...........................10

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
    946 F.3d 1367 (Fed. Cir. 2020)..............................................................................................11

*Harvatek Corp. v. Cree, Inc.*,
    No. C 14-05353 WHA, 2015 WL 4396379 (N.D. Cal. July 17, 2015) ...........................13

*Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*,
    581 F. App'x 877 (Fed. Cir. 2014) ........................................................................................14

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
    No. 4:14-CV-371, 2017 WL 4038883 (E.D. Tex. Sept. 13, 2017), *rev'd on
    other grounds*, 749 F. App'x 989 (Fed. Cir. 2019)........................................................9, 15

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*,
    No. 4:14-CV-371, 2018 WL 1602460 ...................................................................................14

*Implicit, LLC v. Huawei Techs. USA, Inc.*,
    No. 6:17-cv-00182, 2018 WL 11182156 (E.D. Tex. July 2, 2018)..................................13

FILED UNDER SEAL

*Innovation Scis., LLC v. Amazon.com, Inc.*,
  778 F. App'x 859 (Fed. Cir. 2019) ................................................................8

*Kilopass Tech., Inc. v. Sidense Corp*,
  82 F. Supp. 3d 1154 (N.D. Cal. 2015) ........................................................14

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
  745 F. App'x 153 (Fed. Cir. 2018) ..............................................................14

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
  811 F.3d 479 (Fed. Cir. 2016)...............................................................11, 14

*Nazomi Commc'ns, Inc. v. Nokia Corp.*,
  739 F.3d 1339 (Fed. Cir. 2014)...............................................................3, 10

*Nike, Inc. v. Adidas Am. Inc.*,
  479 F. Supp. 2d 664 (E.D. Tex. 2007) ........................................................13

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)...........................................................................2, 9, 11

*Plymouth Rubber Co. v. Minn. Mining & Mfg. Co.*,
  203 F. Supp. 595 (D. Mass. 1962), *aff'd and modified*, 321 F.2d 151 (1st
  Cir. 1963) ...................................................................................................12

*Rambus Inc. v. Infineon Techs. AG*,
  318 F.3d 1081 (Fed. Cir. 2003)...................................................................14

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
  No. CV 19-6359-GW-JCx, 2020 WL 7889048 (C.D. Cal. Nov. 23, 2020) .....................13

*ReedHycalog UK, Ltd. v. Diamond Innovations Inc.*,
  No. 6:08-cv-325, Dkt. 370 (E.D. Tex. Aug. 12, 2010) ....................................14

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*,
  858 F.3d 1383 (Fed. Cir. 2017).....................................................................11

*Sazerac Co., v. Fetzer Vineyards, Inc.*,
  No. 3:15-CV-04618-WHO, 2017 WL 6059271 (N.D. Cal. Dec. 7, 2017),
  *aff'd*, 786 F. App'x 662 (9th Cir. 2019)..........................................................11

*Softvault Sys., Inc. v. Microsoft Corp.*,
  No. 2:06-cv-16, 2007 WL 1342554 (May 4, 2007)..........................................13

*TechRadium, Inc., v. FirstCall Network, Inc.*,
  No. CIV.A. 13-2641, 2015 WL 862326 (S.D. Tex. Feb. 27, 2015) ..................10

**FILED UNDER SEAL**

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
    659 F.3d 1376 (Fed. Cir. 2011)..............................................................................3, 10

*Va. Innovation Scis., Inc. v. Amazon.com, Inc.*,
    227 F. Supp. 3d 582 (E.D. Va. 2017), *aff'd sub nom., Va. Innovation Scis.,*
    *Inc. v. HTC Corp.*, 718 F. App'x 988 (Fed. Cir. 2018) .......................................6

*Va. Innovation Scis., Inc. v. Amazon.com, Inc.*,
    No. 1-16-cv-00861, Dkt. 275 (E.D. Va. Feb. 18, 2020) ...................................6, 8

*WPEM, LLC v. SOTI Inc.*,
    No. 2:18-cv-JRG, 2020 WL 555545 (E.D. Tex. Feb. 4, 2020).........................15

**Statutes and Rules:**

35 U.S.C. § 101................................................................................................1, 2, 6

35 U.S.C. § 285...........................................................................................1, 2, 9, 13

Fed. R. Civ. P. 54.............................................................................................1, 15

FILED UNDER SEAL

Defendants Amazon.com, Inc., and Amazon Web Services, Inc. (collectively, "Amazon") move the Court under 35 U.S.C. § 285, Fed. R. Civ. P. 54, and Local Rule 54, for an order granting their reasonable attorney fees and non-taxable costs.

## I.    INTRODUCTION

After losing one lawsuit in Virginia and abandoning another, Innovation Sciences, LLC ("IS") sued Amazon here in Texas asserting an overlapping set of patents and products.  After an eight-day trial, the jury found that IS failed to show that Amazon infringed the asserted patents; that those patents were invalid; and that they were ineligible for patenting under Section 101 given that they claimed only routine and conventional technology.

But IS did not just bring weak claims that failed in three independent ways.  Its trial presentation reflected its awareness of the flaws in its case and its corresponding disregard for the resources of the Court as it sought a windfall of more than $100 million from Amazon.  IS's infringement theory at trial accused a system its expert put together using Amazon's Alexa devices combined with non-party Phillips' smart lightbulbs, and that required the expert to configure them to work together himself.  In other words, IS had no direct infringement case against Amazon but tried that issue to the jury anyway.  Even then, to provide an opinion that Amazon's products infringed, IS's expert still needed to reverse claim language, thereby misrepresenting a key claim limitation to the jury.  IS also changed the claimed priority date of its patents during trial, acknowledging that the position it had taken during years of litigation meant that its patents were invalid for failure to meet the written description requirement.

IS's conduct throughout the case was similar.  It originally asserted more than 200 patent claims against six different product categories, including theories that IS had asserted in its past

1

FILED UNDER SEAL

lawsuits and that the Virginia district court had rejected.  After pursuing these duplicative claims for years, IS abandoned them on the eve of trial—including dropping an entire patent.

IS therefore did not just lose a contested case.  It brought a bloated complaint that created a burdensome and expensive proceeding.  It also knew the flaws in its claims and pursued them anyway, taking unreasonable positions and changing them at trial in order to prolong the case and reach a verdict.  These facts demonstrate that this case "stands out from others," making it exceptional because the claims were weak and because IS litigated it unreasonably.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  The Court should use its authority under § 285 to deter this abuse.  *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377-78 (Fed. Cir. 2017) ("an award of attorneys' fees in this case is necessary to deter wasteful litigation in the future").

## II.    BACKGROUND

IS filed this case against Amazon on July 5, 2018, eventually asserting over 200 claims against 16 different Amazon products.  (Dkt. 821-1 (2/7/2019 Local P.R. 3-1 and 3-2 Disclosures).)  On September 2, 2020, the jury found that IS's claims failed in three separate ways:  there was no infringement; the patents were invalid; and the asserted claims were conventional and thus ineligible for patenting at step two of the *Alice* test.  (Dkt. 853 (Verdict).)[1]  On February 26, 2021, the district court entered judgment for Amazon.  (Dkt. 897.)[2]

### A.    IS brought this case to trial despite fatal flaws.

#### 1.    IS accused Amazon of direct infringement based on the actions of non-party users and products.

---

[1] Previously, Amazon moved for summary judgment of no direct infringement (Dkts. 429 & 430), and no indirect infringement, willful infringement, or infringement under the doctrine of equivalents (Dkt. 433).  The Court denied these motions.  (Dkt. 727.)

[2] The district court "decline[d] to determine patent eligibility under [35 U.S.C.] § 101" finding it unnecessary given the rest of the verdict.  (Dkt. 896.)

FILED UNDER SEAL

Every asserted claim of the '983 patent family requires a device configured (1) to transmit information for managing a status of an item (2) based on a signal regarding an updated status of the item.  IS argued that the accused Amazon devices infringe these limitations "out of the box," (*see, e.g.*, Dkt. 874 at 42:6-8; Dkt. 883 at 117:16-24), but it never actually mapped them to the Amazon devices.  ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████  (*See* Dkt. 429-3 ("McAlexander Op. R.") at Tab VV; *see also* Dkt. 429-10 (table mapping third-party devices).)  ██████████████████████

███████████████████████████████████████████████████████████████████████████

██████  (*See, e.g.*, Dkt. 429-3 at B-b5, B-c6.)  And IS argued this was permissible because Amazon's devices are "configured" to work in this combined system.  (Dkt. 883 (Trial T., McAlexander) at 117:16-24.)  ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████  (Dkt. 429-5 ("Johnson Reb. R.") at ¶¶ 30-31, 92.) (Dkt. 429 at 19.)  IS tried this theory to the jury (*see, e.g.*, Dkt. 885 (Trial Tr., Amazon Closing) at 122:5-21), even though it violated controlling Federal Circuit precedent on this very point.[3]

## 2.    IS misstated the claim language to the jury.

To maintain its infringement theory, IS also elicited testimony from its expert misrepresenting claim language to the jury.  The patents require a system "configured to communicate . . .

---

[3] *Nazomi Commc'ns, Inc. v. Nokia Corp.*, 739 F.3d 1339, 1345-46 (Fed. Cir. 2014) (rejecting argument that the accused devices can infringe if they have only the *capability* of being configured or programmed to perform the stated function where they were "not structured to perform that stated function as sold"); *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1380-82 (Fed. Cir. 2011) (to infringe, a device "*as provided* must be 'capable' of performing the recited function, *not that it might later be modified* to perform that function") (emphases added).

**FILED UNDER SEAL**

information for managing an item status of an item in connection with a short-range wireless communication regarding an updated status of the item." (*E.g.*, Dkt. 840-12 ('983 patent), claim 105.) In the diaper monitor invention disclosed in the specification, for example, a sensing module detects an updated status (*i.e.*, that the diaper is wet) and sends a short-range wireless communication regarding that status, and a user receives information for managing the wet diaper. (*Id.* at 14:3-12.)  In the accused system, by contrast, a user asks Alexa to turn on a Philips Hue Lightbulb. There is no "updated status," nor is there "information for managing" the item that pertains to an updated status.  Alexa transmits a recording of the *user's request* to *change* the status of the light.

At trial, IS attempted to cover over this problem by having its expert repeatedly change the claim language to make the "updated status" the *result* of a user command:

- "My theory is that there's a – information to manage the item status, which is turn the light bulb on.  And that's regarding a change in the status of that item.  It's regarding a change of the status of that item, and it's in connection with a short-range wireless communication." (Dkt. 870 (Trial Tr., McAlexander) at 76:13-17.)

- "You're communicating through that WiFi network information *about* an updated status. And *regarding* that updated status, it's – it's – the path includes, and that's why *it's in conjunction* with a short-range wireless communication."  (Dkt. 869 (Trial Tr., McAlexander) at 119:25-120:5) (emphasis added).)

Again, IS's expert reversed the claim to obscure the fact that there has been no change in the status of the light and thus no short range communication about an "updated status."

### 3.   IS changed its claimed priority date in the middle of trial after two years of litigation.

IS also changed its asserted priority date midway through trial.  In its infringement contentions served February 7, 2019, IS identified August 10, 2006 as its claimed priority date.  (Dkt. 821-1, (IS Preliminary Infringement Contentions) at 6 ("[e]ach of the asserted claims of the [patents-in-suit] are entitled to a priority date not later than August 10, 2006").)  Amazon pointed out just over two months later that the August 10, 2006 application did not support the written

**FILED UNDER SEAL**

description of the asserted patents, and they were therefore invalid under § 112 if IS continued to assert that date.  (*See* Gregorian Decl., Ex. L at 21-22, 24.)  Yet IS maintained this position for the next 18 months.  On January 16, 2020, IS's expert McAlexander claimed the August 10, 2006 priority date in his report (Dkt. 832 at 2), and six months later, on July 24, 2020, IS agreed to a jury instruction that included it as a stipulated fact that would not be disputed at trial.  (Dkt. 787 at 13, stipulated fact 18.)

Indeed, IS began trial by eliciting fact testimony from its owner in support of this position: "These three patents benefits [sic] the priority date of 2006 because the specification, the application disclosure that we filed in 2006 fully disclosed and support what we claimed as our invention in the patents-in-suit."  (Dkt. 871 (Trial Tr., A. Wong) at 157:2-5.)  But after Amazon showed that Figure 16, which disclosed the proposed invention, had not been submitted to the Patent Office until May 2007, IS changed its position, eliciting testimony that the correct priority date was in fact May 22, 2007.  (Dkt. 878 (Trial Tr., Torok) at 112:8-113:8); Dkt. 883 (Trial Tr., McAlexander) at 161:15-169:12.)  And at closing, IS changed its position again, claiming a different date:

> Please remember February 2, 2007, because when you're asked to determine whether the claims that are asserted here comply with the written description requirement, you're going to be given two dates in that jury instruction. One is the August -- I think it's 10 – 2006 date that Amazon has focused on. The other is the February 2, 2007 date.  This application that Mr. McAlexander testified fully disclosed those invention claims benefit back to that February 2, 2007 date.

(Dkt. 886 (Trial Tr., IS Opening) at 90:20-91:4.)  The February date IS argued was based on the disclosures in a provisional application that was not in evidence.

### B.    IS's claims included a rehash of failed claims brought in Virginia.

IS's predecessor sued Amazon for patent infringement in the Eastern District of Virginia in 2016 asserting eleven patents.[4]  The Virginia court ultimately granted Amazon $722,740.50 in

---

[4]  U.S.  Patent Nos.  7,899,492;  8,050,711;  8,903,451;  8,948,814;  9,118,794;  8,712,471;

FILED UNDER SEAL

attorney fees, finding that IS's claims were "weak" at their inception and "baseless" after the claim construction order.  (Dkt. 840-25 at 14; Gregorian Decl., Ex. M (*Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 1-16-cv-00861, Dkt. 275 (E.D. Va. Feb. 18, 2020)).)  IS sought here to relitigate issues—or variations thereof—that it lost in Virginia.

### 1.    IS tried but failed to assert the same patent-ineligible concept that failed in Virginia: converting a signal between multiple protocols.

In Virginia, the district court held that eight patents in the '492 patent family claimed ineligible subject matter under § 101.  *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, 227 F. Supp. 3d 582, 604-05 (E.D. Va. 2017), *aff'd sub nom., Va. Innovation Scis., Inc. v. HTC Corp.*, 718 F. App'x 988 (Fed. Cir. 2018).  The patents claimed the idea of reproducing on a separate display a video received from a network at a mobile phone.  IS argued that the inventive concept was the "novel architecture" for converting a signal between different protocols.  (Gregorian Decl. Ex. N (VIS Opp. to MTD), at 29-30.)  But the court ruled that this was "described in purely functional terms, without any algorithm or code for achieving those results,"—*i.e.*, the novel architecture was no more than a black box, and thus not patent-eligible.  *Va. Innovation Scis.*, 227 F. Supp. 3d at 604.

The patents in this case are continuations of the '492 patent family and share the same specification as the '398 patent.  (*Compare* Dkt. 840-16 ('398 patent) *with* Dkt. 840-12 ('983 patent).)  They recite the same signal conversion idea and add nothing patentably distinct to it.  (*See* Dkt. 840-6 (Johnson Op. Rep.) ¶¶ 247-267; Dkt. 840 at 2-3 (claim chart); Gregorian Decl. ¶ 37.) At trial, IS relied on the same argument that the Virginia court had rejected.  It claimed again that the inventive concept was a novel architecture (a "communications backbone," (*see* Dkt. 866 (Trial Tr., IS Jury Selection Opening) at 14:21-15:1; 84:16-85:2; Dkt. 868 (Trial Tr., IS Opening) at

---

9,286,853; and 9,355,611 (collectively, "the '492 patent family"); 8,135,398 ("'398 patent"); 9,369,844 ("'844 patent"); and U.S. Reissue Patent No. RE46,140.  (*See* Dkt. 840-1 ¶¶ 2-7.)

**FILED UNDER SEAL**

32:13-23; 45:21-25; 48:10-21) for converting between protocols:

> You've got cellular technology, which is long range. You've got HDMI, which is cable.  You know, a number of different protocols.  And what this patent does is put those together in a combined fashion that significantly improves what you can do with this art.

(Dkt. 871 (Trial Tr., McAlexander) at 28:2-22.)  Even without the benefit of the Virginia court's earlier ruling, the jury rejected this argument.

### 2.   IS brought claims targeting Amazon's use of the Miracast Standard, just as it did in Virginia, only to abandon them at trial.

In Virginia, IS asserted the '398 patent, which requires a cell phone ("wireless terminal device") receive a video (a "multimedia content item") that is "destined" for—and converted for display on—a different device.  (Dkt. 840-8 at 4.) █████████████████████████

████████████████████████████████████████████

██████████████████████████ (*See* Dkt. 429-5 at 64.) ████████████████

██████████████████████████████████████████████

████████████████████████████. (Dkt. 429-5 (Johnson Report) at ¶¶ 129-138.)  For this reason, the district court held that Miracast could not infringe.  (Dkt. 840-8 at 4, 7.)  In this case, IS re-raised the same theory it had lost in Virginia.  It alleged infringement of the '983 patent, which also required converting a signal for a different display.[5] ████████████████████

██████████████████████████████████████████████

████████████████████ (Dkt. 429-5 (Johnson Report) at ¶¶ 129-138.)  After forcing Amazon to relitigate this theory for two years, IS dropped it, never even mentioning Miracast at trial.

_____

[5] (*See* Dkt. 841 at B-b14 (McAlexander Expert Report – Infringement, Appendix b to Attachment B ('983)) ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

FILED UNDER SEAL

### 3.   IS also brought claims against Amazon Dash Button, like those that failed in Virginia, and abandoned them at the pretrial conference.

In Virginia, IS asserted the '844 and '443 patents against the Amazon Dash Button in sep-arate lawsuits.  *See Innovation Scis., LLC v. Amazon.com, Inc.*, 778 F. App'x 859, 864 (Fed. Cir. 2019); (Dkt. 840-26 at ¶¶ 24-27, 72-84.).  The patents require transmission of an "item status sig-nal" based on an "an updated condition" of an item or merchandise.  *See Innovation Scis.*, 779 F. App'x at 864-65.  The district court construed "updated condition" to require "a detected change in the condition of an item."  *Id.* at 868.  But the accused Dash Button is a device that allows a user to order a product by pushing a button.  It does not detect changes in the condition of an item.  At the district court, IS therefore stipulated to non-infringement of the '844 patent, and dismissed the complaint asserting the '443 patent.  *Id.* at 865; (Dkt. 840-7 (dismissal).).  In the appeal of the claim construction, Judge Chen noted that IS had no viable infringement theory:

> All the pressing of the button conveys is the desire for more of the product, more detergent, for example.  It doesn't convey any information that the customer has run out of detergent or has fallen below a certain threshold amount of detergent in the household.  It just wants more.  So I guess I'm at a loss why it's detecting a change in any condition.

(Dkt. 430 at 11.)  On remand, IS dismissed this claim with prejudice.  (Gregorian Decl., Ex. O.)

Here, IS reasserted the same claim that the Dash Button infringed the '443 patent (Dkt. 79 (First Amended Complaint) ¶¶ 147-155) even though nothing had changed: the patent still required an item status signal transmitted "based on an indication of an updated status of the item" (Dkt. 1-4 ('443 patent), claim 29), and the Dash Button has no information about a customer's household inventory or any other updated item status—it still merely sends an order when a user pushes the button on the device.  Again, after forcing years of re-litigation of this issue, IS dropped the '443 patent during the pre-trial conference.  (*See* Dkt. 806 (Pre-Trial Hearing Tr.) at 143:12-15.)

FILED UNDER SEAL

III.    **ARGUMENT**

A.      **This is an exceptional case.**

The Patent Act provides that the court in exceptional cases may award reasonable attorney

fees to the prevailing party.  35 U.S.C. § 285.  An exceptional case is simply one that "stands out

from others with respect to the substantive strength of a party's litigating position (considering

both the governing law and the facts of the case) or the unreasonable manner in which the case

was litigated." *Octane*, 572 U.S. at 554.  Factors relevant to this inquiry include "frivolousness,

motivation, objective unreasonableness . . . and the need in particular circumstances to advance

considerations of compensation and deterrence." *Id.* n.6; *Imperium IP Holdings (Cayman), Ltd.*

*v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2017 WL 4038883, at *1 (E.D. Tex. Sept. 13, 2017)

(Mazzant, J.), *rev'd on other grounds*, 749 F. App'x 989 (Fed. Cir. 2019).  Here, Amazon is a

prevailing party eligible for fees, and the case is exceptional for the reasons that follow.

B.      **The Court should find this case exceptional because IS knew or should have**
        **known its case was fatally flawed.**

The jury rejected IS's entire case, finding non-infringement, invalidity, and step 2 patent-

ineligibility.  Not only did IS's claims fail on *at least* three independent grounds (Amazon pre-

sented multiple grounds for invalidity and non-infringement of all asserted patents), the flaws were

plain from IS's own conduct.  As discussed above, to maintain an infringement theory for trial, IS

accused a "configuration case" that consisted of other products that its expert combined with Am-

azon products.  IS presented no evidence that anyone other than its expert had used his "configu-

ration case," and even so, the fact that the expert himself had to configure the devices to work

together in the allegedly infringing manner meant there could be no direct infringement as a matter

of law. *See Nazomi*, 739 F.3d at 1345-46; *Typhoon Touch.*, 659 F.3d at 1380-82.  Even using its

own "configuration case," IS had no viable theory; it still had to induce its expert to misstate the

FILED UNDER SEAL

claim language to the jury.  In the accused system, there is no "information for managing" an item sent in connection with a short-range communication about an "updated status" of the item.  Instead, there is a singular command to turn on a light bulb for which no "updated status" has been detected or communicated.  All of this supports an exceptional case finding, as "proffer[ing] completely untenable arguments to the Court" is a classic basis for such a finding.  *Edekka LLC v. 3balls.com, Inc.*, No. 2:15-CV-541 JRG, 2015 WL 9225038, at *2 (E.D. Tex. Dec. 17, 2015).

IS's invalidity and ineligibility positions were no better.  IS all but conceded that the priority date it claimed throughout the case, August 10, 2006, meant that its patents were invalid for lack of written description, because its application as of that date did not disclose what it later claimed.  The date it argued ultimately to the jury, February 2007, was based on a patent application that IS had not even introduced in evidence at trial.  IS had no basis to put its claims to the jury but did so anyway.  IS argued its patents were eligible because they disclosed the combination of different communications protocols using signal conversion.  But this was the same argument the Virginia court had already rejected; *i.e.*, the "signal conversion" that allows for use of different protocols was a "black box" that IS had "described in purely functional terms, without any algorithm or code for achieving those results."  *Va. Innovation Scis.*, 227 F. Supp. 3d at 604; *see also TechRadium, Inc., v. FirstCall Network, Inc.*, No. CIV.A. 13-2641, 2015 WL 862326, at *6-8 (S.D. Tex. Feb. 27, 2015) (granting fees and noting that losing party had "relitigate[d] prior, clearly rejected, positions").

An exceptional case finding is especially warranted after a trial in which the jury rejects the meritless arguments of a plaintiff who had dragged a defendant through each stage of litigation toward a certain outcome.  *See Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1375-76 (Fed. Cir. 2020); *see also Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (affirming district court's finding that the case was exceptional

**FILED UNDER SEAL**

because the "allegations of infringement were ill-supported . . . and thus the lawsuit appears to have been baseless"). Here, IS's claims did not bear just a single flaw, they were all deficient in multiple respects, as was obvious to the parties and as the jury ultimately found. IS had no viable claim and this "suit never should have been filed." *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1391 (Fed. Cir. 2017) (Mayer, J., concurring).[6]

### C.     IS also litigated the case unreasonably.

Litigating unreasonably is an independent ground for an exceptional case finding, *see Octane*, 572 U.S at 554, and IS here took unreasonable positions throughout. It brought an overbroad and burdensome case that asserted hundreds of claims and accused scores of accused products. IS multiplied the proceedings by including failed claims and issues from the lawsuits it had already lost in Virginia, including (1) accusing the Miracast standard of infringing claims that involve signal conversion, (2) accusing the Amazon Dash Button based on a non-viable infringement theory that both the Virginia district court and the Federal Circuit had already explained did not work, and (3) asserting patents that claimed the same "invention" of a black box that performed signal conversion that the Virginia court and the Federal Circuit had held patent-ineligible.

This conduct was exceptional. Courts have found that a party that abandons its litigation

---

[6] To the extent IS argues that Amazon's failure to secure a win at summary judgment makes this case non-exceptional, the Court should look to *Eko*, which holds that the denial of summary judgment should not have "decisive weight." *Eko*, 946 F.3d at 1375-76. Indeed, courts regularly find a case exceptional after trial, as surviving a summary judgment motion is not a carte blanche to keep pursuing a meritless case. *See, e.g.*, *Sazerac Co., v. Fetzer Vineyards, Inc.*, No. 3:15-CV-04618-WHO, 2017 WL 6059271, at *8 (N.D. Cal. Dec. 7, 2017), *aff'd*, 786 F. App'x 662 (9th Cir. 2019) ("Once Sazerac survived Fetzer's motion for summary judgment . . . it was contingent upon Sazerac to present evidence to succeed at trial. Instead, it essentially relied on the meager disputed facts that enabled it to survive summary judgment. . . . ."); *see also Brighton Collectibles, LLC v. Believe Prod., Inc.*, No. 2:15-CV-00579-CAS(ASx), 2018 WL 1381894, at *2 (C.D. Cal. Mar. 15, 2018) (finding exceptionality post-trial based on "the substantive strength" of the prevailing party's litigating position and noting that the jury verdict was "unsurprising"). The fact that this case required a trial to resolve it should weigh in favor, not against, an exceptional case finding.

**FILED UNDER SEAL**

positions at the last minute to suit the challenge of the day engages in conduct supporting an exceptional case finding.  *See, e.g.*, *Designing Health, Inc. v. Erasmus*, No. CV 98-4758 LGB (CWX), 2003 WL 25902463, at *19 (C.D. Cal. May 1, 2003) (maintaining then abandoning baseless grounds supported an exceptional case finding in a Lanham Act case); *see also Andersen Mfg. Inc. v. Wyers Prods. Grp., Inc.*, No. 18-cv-0235-WJM-STV, 2019 WL 4007772, at *6-12 (D. Colo. Aug. 23, 2019) (finding case exceptional when the plaintiff's "convenient position-shifting" was "evidence [of] its willingness to say whatever is needed to obtain the outcome it seeks"), *appeal docketed*, No. 2020-1355 (Fed. Cir. Jan. 15, 2020).

Here, IS forced Amazon to relitigate the Miracast and Dash Button theories throughout the case, only to then abandon them right before trial.  IS decided just days before trial to no longer pursue claims against the Dash Button.  (Dkt. 806 (Pre-Trial Hearing Tr.) at 143:12-15.)  And IS gave no indication that it had abandoned its theory about Miracast, it simply elicited no evidence on that theory at trial.  IS pushed these theories aggressively, forcing Amazon to incur massive costs.  Then, without any real impetus, such as, for example, losing a contested pre-trial motion, it dropped them on the eve of trial or, worse still, during trial itself.  That was unreasonable.[7]

Moreover, as also detailed above, IS also changed its litigating position regarding the patents' priority date and Amazon's written description defense mid-trial.  Throughout the case, IS

---

[7] This conduct was also impermissible forum-shopping: after losing one lawsuit and abandoning another on similar claims against Amazon in Virginia, IS brought the same failed theories to Texas in search of a better result.  This is yet another basis for an exceptional case finding.  *See Plymouth Rubber Co. v. Minn. Mining & Mfg. Co.*, 203 F. Supp. 595, 601 (D. Mass. 1962), *aff'd and modified*, 321 F.2d 151 (1st Cir. 1963) (awarding fees under Section 285, noting that defendant was "forum shopping with a vengeance"); *see also Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. CV 19-6359-GW-JCx, 2020 WL 7889048, at *7 (C.D. Cal. Nov. 23, 2020) (awarding fees under Section 285: "Realtime's decision to voluntarily dismiss the Delaware action and then bring these two actions in California was exceptional and improper" and that "[t]hese circumstances strongly support the conclusion that Realtime was impermissibly forum-shopping").

FILED UNDER SEAL

had asserted that the patents claimed priority to—and had written description support by—an August 10, 2006 patent application, only to try to change its priority claim to a May 22, 2007 during trial, and ultimately change course again to argue the unsupported February 2007 date to the jury. (Dkt. 880 (Trial Tr., Johnson) at 168:8-169:1; Dkt. 883 (Trial Tr., McAlexander) at 161:15-169:12; Dkt. 885 (Trial Tr., IS Closing) 90:7-91:4.)  In doing so, IS flouted the patent rules, which serve to "provide all parties with adequate notice and information with which to litigate their cases . . . [and prevent] litigation by ambush." *Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667-68 (E.D. Tex. 2007).  Indeed, courts often disallow parties from changing their priority date contentions *during discovery*, *i.e.*, months or years earlier in the case than IS changed course here.[8]  IS's unreasonable and changing positions also merit an exceptional case finding.

> **D.    The Court should award Amazon the attorney fees and non-taxable costs it reasonably incurred in this case.**
>
> > **1.    This Court should determine that this case is exceptional in its totality, warranting an award of full fees and costs.**

Once a court finds exceptional case, it must determine the amount of any award.  When a bases its finding on specific litigation misconduct, the amount must relate to the misconduct.  *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003).  But when it finds the case exceptional based on the totality of the circumstances, the court may award full fees.  *See Homeland Housewares, LLC v. Sorensen Research & Dev. Trust*, 581 F. App'x 877, 881 (Fed. Cir.

---

[8] *See Softvault Sys., Inc. v. Microsoft Corp.*, No. 2:06-cv-16, 2007 WL 1342554, at *2 (May 4, 2007) (denying motion to amend infringement contentions to assert earlier priority date); *see also, e.g.*, *Harvatek Corp. v. Cree, Inc.*, No. C 14-05353 WHA, 2015 WL 4396379, at *2 (N.D. Cal. July 17, 2015) (striking interrogatory response claiming an earlier conception date than disclosed in infringement contentions); *Implicit, LLC v. Huawei Techs. USA, Inc.*, No. 6:17-cv-00182, 2018 WL 11182156, at *4 (E.D. Tex. July 2, 2018) (striking supplemental infringement contentions because the "Court has a vested interest, as demonstrated by the Patent Rules which govern such cases, in ensuring full and early disclosure of necessary information to facilitate an efficient resolution of cases").

FILED UNDER SEAL

2014); *see also Large Audience Display Sys., LLC v. Tennman Prods., LLC*, 745 F. App'x 153, 157 (Fed. Cir. 2018).  Indeed, "there is nothing in the legislative history or applicable case law to suggest that . . . courts should balk at awarding full fees."  *Kilopass Tech., Inc. v. Sidense Corp*, 82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015).  Here, the Court should award full defense costs.

### 2. Amazon's attorneys' rates were reasonable.

Courts calculating an attorney fee award apply the lodestar method, multiplying a reasonable hourly rate by a reasonable number of hours for the case.  *See Lumen*, 811 F.3d at 483.  Reasonable hourly rates are the "prevailing market rates in the relevant community."  *Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Bywaters v. United States*, 670 F.3d 1221, 1233 (Fed. Cir. 2012).  Amazon's attorneys' rates are in line with the prevailing rates in the Eastern District of Texas for similar work.  (Gregorian Decl. ¶¶ 5-10, Dacus Decl. ¶¶ 10-12.)  Federal courts around the country, including several in Texas, have approved rates comparable to Fenwick & West's.  (*See* Gregorian Decl. ¶¶ 9-11.)  Fenwick's rates are also in line with the AIPLA survey commonly relied on to determine reasonable rates.  (*See id.* ¶ 11); *see also ReedHycalog UK, Ltd. v. Diamond Innovations Inc.*, No. 6:08-cv-325, Dkt. 370 (E.D. Tex. Aug. 12, 2010).  The hourly rates of local counsel are also within the range approved in *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2018 WL 1602460, at *2 (E.D. Tex. Apr. 3, 2018); *AdjustaCam LLC v. Amazon.com, Inc.*, No. 6:10-cv-00329-JRG, 2018 WL 1335308, at *5 (E.D. Tex. Mar. 15, 2018); and *WPEM, LLC v. SOTI Inc.*, No. 2:18-cv-JRG, 2020 WL 555545, at *7 (E.D. Tex. Feb. 4, 2020).

### 3. The fees and costs incurred were reasonable.

Amazon requests $6,868,245.67, consisting of ███████ in fees for Fenwick's work between July 2018, when the case began, through September 2020 (Gregorian Decl. ¶¶ 22, 25), ███████ in fees from the Dacus Firm, ███████ in fees from Gillam & Smith LLP (Dacus Decl. ¶ 17), and an estimated ███████ in fees for post-trial work (Gregorian Decl. ¶ 24), which

FILED UNDER SEAL

Amazon will further substantiate upon request.  *See* Fed. R. Civ. P. 54(d)(2)(b)(iii).  This amount is reasonable.  (*See* Gregorian Decl. ¶¶ 15-27.)  IS asserted four patents and more than 200 claims against six categories of Amazon products and services.  IS sought over $100 million at trial.  (*See id.* ¶ 14.)  The skill required to defend—including a sophisticated understanding of the different technologies at issue—was also high.  (*Id.*)  At every stage, the broad scope and high stakes meant significantly more work than for the average patent case.  (*Id.*)  Fenwick attorneys have represented Amazon in dozens of cases, including those brought by the same plaintiff and leveraged this knowledge to lower expenses.  (*Id.* ¶¶ 14, 17.)  And Amazon achieved complete victory—winning a verdict of noninfringement, invalidity, and subject matter ineligibility on all asserted patents.[9]

## IV.     CONCLUSION

For these reasons, Amazon requests that the Court grant the motion and award it the full amount of attorney fees and non-taxable costs that it incurred defending this exceptional case.

March 30, 2021                                  Respectfully submitted,

                                               By: */s/ Todd R. Gregorian*
                                                   J. David Hadden
                                                   CA Bar No. 176148 (Admitted E.D. Tex.)
                                                   Email: dhadden@fenwick.com
                                                   Saina S. Shamilov
                                                   CA Bar No. 215636 (Admitted E.D. Tex.)
                                                   Email: sshamilov@fenwick.com
                                                   Ravi R. Ranganath
                                                   CA Bar No. 272981 (Admitted E.D. Tex.)
                                                   Email: rranganath@fenwick.com
                                                   FENWICK & WEST LLP
                                                   801 California Street
                                                   Mountain View, CA 94041
                                                   Telephone: (650) 988-8500

---

[9] The Federal Circuit interprets § 285 to "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit."  *Cent. Soya, Inc. v. Geo. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983); *see also Imperium*, 2017 WL 4038883, at *5.  The Court should therefore award Amazon its requested non-taxable costs under the accompanying declaration.  (Gregorian Decl. ¶ 23.)

**FILED UNDER SEAL**

Facsimile: (650) 938-5200

Todd R. Gregorian
CA Bar No. 236096 (Admitted E.D. Tex.)
Email: tgregorian@fenwick.com
Dargaye Churnet
CA Bar No. 303659 (Admitted E.D. Tex.)
Email: dchurnet@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile:  415.281.1350

Jeffrey Ware
CA Bar No. 271603 (Admitted E.D. Tex.)
Email: jware@fenwick.com
FENWICK & WEST LLP
1191 Second Avenue, 10h Floor
Seattle, WA 98101
Telephone: 206.389.4510
Facsimile:  206.389.4511

*Counsel for Defendants*
AMAZON.COM, INC.,
AND AMAZON WEB SERVICES, INC.

**FILED UNDER SEAL**

## CERTIFICATE OF CONFERENCE

I certify that counsel for Amazon conferred with counsel for Plaintiff regarding this motion on November 17, 2020, and Plaintiff stated that it opposes this motion.

*/s/ Todd R. Gregorian*
Todd R. Gregorian

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 30, 2021.

*/s/ Todd R. Gregorian*
Todd R. Gregorian