**FILED UNDER SEAL**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| INNOVATION SCIENCES, LLC,<br><br>     Plaintiff,<br>  v.<br><br>AMAZON.COM, INC., et al.<br><br>     Defendants. | Civil Action No. 4:18-cv-00474-ALM<br>(LEAD CONSOLIDATED CASE) |

**DECLARATION OF TODD R. GREGORIAN IN SUPPORT OF MOTION OF
DEFENDANTS AMAZON.COM, INC. AND AMAZON WEB SERVICES, INC.
<u>FOR REASONABLE ATTORNEY FEES AND COSTS UNDER 35 U.S.C. § 285</u>**

FILED UNDER SEAL

I, Todd R. Gregorian, hereby state and declare as follows:

1.      I am an attorney duly admitted to practice in California.  I am a partner at the law firm of Fenwick & West LLP ("Fenwick") in San Francisco, California, and counsel for Defendants Amazon.com, Inc. and Amazon Web Services, Inc. (collectively "Amazon") in this matter.  I have personal knowledge of the facts stated in this declaration.

## AMAZON'S LEGAL TEAM AND HOURLY RATES

2.      A number of Fenwick attorneys and paralegal staff performed significant work on this matter over the years it has been pending.  The labor of these individuals contributed to the final work product billed to the client.  The hourly rates charged by the attorneys who worked on this matter are consistent with the prevailing market rates for attorneys with comparable skill, qualifications, experience, and reputations.  The hourly rates charged by the paralegals are also consistent with the prevailing market rates for paralegals with comparable skill, qualifications, and experience.

3.      The attorneys and paralegals who worked more than a nominal amount on this matter are each identified below, along with a summary of their experience and qualifications.  Additionally, copies of the attorneys' biographies as they appear on the Fenwick website and in Fenwick's marketing materials, including lists of representative engagements, are attached as **Exhibit A**.

a.      I am a partner at Fenwick, specializing in intellectual property litigation.  I am a member in good standing with the California State Bar and have practiced law in the State of California since 2005.  I was recognized as a "Rising Star" by Northern California Super Lawyers for 2013-2019.  I was honored for excellence in IP litigation on *The Best Lawyers in America*'s Ones to Watch list in 2020.  My rate on this matter was $680 per hour for all work

**FILED UNDER SEAL**

performed in 2018, $795 per hour for all work performed in 2019, and $920 for all work performed in 2020.  My responsibilities on this case included devising litigation strategy, coordinating and reviewing associate work, managing fact discovery, motion practice, and trial.

      b.    **J. David Hadden** is a partner at Fenwick and lead counsel for Amazon in this matter.  His practice focuses on intellectual property litigation and counseling.  He has practiced law in the State of California since 1995 and is a member in good standing with the California State Bar.  He has repeatedly been ranked as a "Super Lawyer" by Northern California Super Lawyers and was recognized as one of the top IP lawyers in California for the third consecutive year by the Daily Journal in 2020.  He has been highlighted among the nation's leading patent litigators by *The Legal 500* and was also honored among California's top patent litigators by *IAM Patent 1000* in 2020.  He is ranked by *IAM Patent 1000* and described as "a hugely experienced litigator and trial attorney who leads teams to excellent results on time and within budget," "well prepared and appropriately focused," and able to "keep[] a global perspective on the merits and impact of a dispute."  He is also admitted to practice before the U.S. Patent & Trademark Office.  His rate on this matter was $1,050 per hour for all work performed in 2018, $1,120 per hour for all work performed in 2019, and $1,195 per hour for all work performed in 2020.  Mr. Hadden's responsibilities on this case included directing litigation strategy, motion practice, directing fact and expert discovery, and trial.

      c.    **Saina S. Shamilov**: Ms. Shamilov is a partner at Fenwick, specializing in intellectual property litigation and counseling.  She is a member in good standing with the California State Bar and has practiced law in the State of California since 2001.  She has a B.S. degree in computer science from the University of California, Davis, and is admitted to practice before the U.S. Patent & Trademark Office.  She has been highlighted among the nation's leading

FILED UNDER SEAL

patent litigators by *The Legal 500* and was also honored among California's top patent litigators by *IAM Patent 1000* in 2020.  She has repeatedly been recognized by Northern California Super Lawyers and is ranked by *IAM Patent 1000*.  Her rate on this matter was $730 per hour for all work performed in 2018, $950 per hour for all work performed in 2019, and $1,085 per hour for all work performed in 2020.  Ms. Shamilov's responsibilities on this case included directing litigation strategy, managing client relationships, coordinating and reviewing associate work, managing expert discovery, and trial.

d.      **Ravi Ranganath**: Mr. Ranganath is a partner at Fenwick, specializing in intellectual property litigation and counseling.  He is a member in good standing with the California State Bar and has practiced intellectual property litigation in the State of California since 2010.  Mr. Ranganath has been ranked as a Rising Star by *Northern California Super Lawyers* for the past two years.  Mr. Ranganath's rate on this matter was $630 per hour for all work performed in 2018, $795 per hour for all work performed in 2019, and $860 for all work performed in 2020.  Mr. Ranganath's responsibilities on this case included case management, reviewing associate work, motion practice, claim construction, fact discovery, expert discovery, trial preparation, trial, and appeal.

e.      **Jeffrey Ware**: Mr. Ware, a litigation associate at Fenwick, is a member in good standing with the California State Bar and the Washington State Bar and has practiced intellectual property litigation since 2010.  Mr. Ware's rate on this matter was $630 per hour for all work performed in 2018, $790 per hour for all work performed in 2019, and $860 per hour for all work performed in 2020. Mr. Ware's responsibilities on this case included case management (including facilitating the joint defense group), pleadings, motion practice, invalidity analysis and

FILED UNDER SEAL

contentions, claim construction, fact discovery, expert discovery, trial preparation, trial, and appeal.

f.      **Eric Krause**:  Mr. Krause, a former litigation associate at Fenwick, is a member in good standing with the California State Bar and has 12 years of experience in intellectual property litigation.  Mr. Krause's rate on this matter was $805 per hour for all work performed in 2019 and $850 per hour for all work performed in 2020.  Mr. Krause's responsibilities on this case included case management, invalidity analysis and contentions, fact discovery, and expert discovery.

g.      **Dargaye Churnet**:  Mr. Churnet, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has eight years of experience in intellectual property litigation.  He is also admitted to practice before the U.S. Patent & Trademark Office.  Mr. Churnet's rate on this matter was $605 per hour for all work performed in 2018, $775 per hour for all work performed in 2019, and $850 for all work performed in 2020.  Mr. Churnet's responsibilities on this case included case management, invalidity analysis and contentions, infringement analysis and contentions, claim construction, and expert discovery.

h.      **Sapna Mehta**:  Ms. Mehta, a litigation associate at Fenwick, is a member in good standing with the State Bar of California and the District of Columbia Bar and has over six years of experience in intellectual property litigation.  Ms. Mehta's rate on this matter was $705 per hour for all work performed in 2018, and $775 per hour for all work performed in 2019, and $850 for all work performed in 2020.  Ms. Mehta's responsibilities on this case included case management, invalidity analysis and contentions, fact discovery, motion practice, and infringement analysis and contentions.

FILED UNDER SEAL

    i.  **Earl Mah**:  Mr. Mah, a former litigation associate at Fenwick, is a member in good standing with the California State Bar and has seven years of experience in intellectual property litigation.  Mr. Mah's rate on this matter was $535 per hour for all work performed in 2018 and $775 per hour for all work performed in 2019.  Mr. Mah's responsibilities on this case included invalidity analysis and contentions, fact discovery, and expert discovery.

    j.  **Rebecca Fewkes**:  Ms. Fewkes, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has six years of experience in intellectual property litigation.  Ms. Fewkes's rate on this matter was $725 per hour for all work performed in 2020.  Ms. Fewkes's responsibilities on this case included case management, motion practice, fact discovery, trial preparation, and post-trial motions.

    k.  **Shreyas Kale**:  Mr. Kale, a litigation associate at Fenwick, is a member in good standing with the District of Columbia Bar and has three years of experience in intellectual property litigation.  Mr. Kale's rate on this matter was $655 per hour for all work performed in 2020.  Mr. Kale's responsibilities on this case included motion practice and trial preparation.

    l.  **Eric Young**:  Mr. Young, a litigation associate at Fenwick, is a member in good standing with the California State Bar and has three years of experience in intellectual property litigation.  Mr. Young's rate on this matter was $425 per hour for all work performed in 2018, $550 per hour for all work performed in 2019, and $655 per hour for all work performed in 2020.  Mr. Young's responsibilities on this case included case management, pleadings, motion practice, invalidity analysis and contentions, infringement analysis and contentions, claim construction, fact discovery, trial preparation, trial, and appeal (petition for writ of mandamus).

    m.  **Thomas J. Fox**:  Mr. Fox, a former litigation associate at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property

FILED UNDER SEAL

litigation in the State of California since 2018.  Mr. Fox's rate on this matter was $450 per hour for all work performed in 2019 and $590 for all work performed in 2020. Mr. Fox's responsibilities on this case included case management, motion practice, fact discovery, expert discovery, trial preparation, and trial.

n.     **Mary Griffin**:  Ms. Griffin, a litigation associate at Fenwick, is a member in good standing with the State Bar of California and has two years of experience in intellectual property litigation.  Ms. Griffin's rate on this matter was $450 per hour for all work performed in 2019.  Ms. Griffin's responsibilities on this case included case management, pleadings, motion practice, claim construction, and fact discovery.

o.     **Kwan Chan**:  Mr. Chan, a patent litigation attorney at Fenwick, is a member in good standing with the California State Bar and has practiced intellectual property litigation since 2007.  Mr. Chan's rate on this matter was $340 per hour for all work performed in 2019 and $475 per hour for all work performed in 2020.  Mr. Chan's responsibilities on this case included case management, invalidity analysis and contentions, claim construction, expert discovery, and trial preparation.

p.     **Robert Winant**:  Mr. Winant is a litigation paralegal at Fenwick with over 29 years of legal experience.  His rate on this matter was $350 per hour for all work performed in 2018, $420 per hour for all work performed in 2019, and $440 for all work performed in 2020. Mr. Winant assisted with review and coding of documents in discovery, document production, deposition preparation, motion practice, trial preparation, and trial.

q.     **Lawrence Gallwas**:  Mr. Gallwas is a litigation paralegal at Fenwick with 15 years of legal experience.  His rate on this matter was $350 per hour for all work performed in 2018, $420 per hour for all work performed in 2019, and $440 for all work performed in 2020.

**FILED UNDER SEAL**

Mr. Gallwas assisted with review and coding of documents in discovery, document production, deposition preparation, motion practice, trial preparation, and trial.

        r.    **Marlon Munoz**:  Mr. Munoz is a litigation paralegal at Fenwick with 25 years of legal experience.  His rate on this matter was $355 per hour for all work performed in 2018, $420 per hour for all work performed in 2019, and $440 for all work performed in 2020. Mr. Munoz assisted with review and coding of documents in discovery, document production, deposition preparation, motion practice, trial preparation, and post-trial motions.

        4.    **Effective rates and explanation of discounts**:  The standard hourly rates discussed above are higher than the effective rates Fenwick charged for this matter.  Due to a fee arrangement between Amazon and Fenwick, fees billed to Amazon are progressively discounted when certain conditions are met.  Amazon is only requesting fees that it incurred after applying this discount. Accordingly, the combined average effective rate, and effective average hourly rate after final discount charged by Fenwick to Amazon in this matter, tabulated from the data included in **Exhibit B**, are as follows:

| Billing Attorney / Paralegal | Hours Billed on Matter | Average Effective Rate | | | 2018-2020 Combined Average Effective Rate | 2018-2020 Combined Average Effective Rate After Final Discount | Years Experience (2020) |
|---|---|---|---|---|---|---|---|
| | | **2018** | **2019** | **2020** | | | |
| J. David Hadden, Partner | ■ | ■ | ■ | ■ | ■ | ■ | 26 |
| Saina Shamilov, Partner | ■ | ■ | ■ | ■ | ■ | ■ | 19 |
| Todd Gregorian, Partner | ■ | ■ | ■ | ■ | ■ | ■ | 16 |

**FILED UNDER SEAL**

| Billing Attorney / Paralegal | Hours Billed on Matter | Average Effective Rate | | | 2018-2020 Combined Average Effective Rate | 2018-2020 Combined Average Effective Rate After Final Discount | Years Experience (2020) |
| | | 2018 | 2019 | 2020 | | | |
|---|---|---|---|---|---|---|---|
| Ravi Ranganath, Partner | ■ | ■ | ■ | ■ | ■ | ■ | 10 |
| Jeffrey Ware, Associate | ■ | ■ | ■ | ■ | ■ | ■ | 10 |
| Eric Krause, Associate | ■ | ■ | ■ | ■ | ■ | ■ | 12 |
| Dargaye Churnet, Associate | ■ | ■ | ■ | ■ | ■ | ■ | 8 |
| Sapna Mehta, Associate | ■ | ■ | ■ | ■ | ■ | ■ | 7 |
| Earl Mah, Associate | ■ | ■ | ■ | ■ | ■ | ■ | 7 |
| Rebecca Fewkes, Associate | ■ | ■ | ■ | ■ | ■ | ■ | 6 |
| Shreyas Kale, Associate | ■ | ■ | ■ | ■ | ■ | ■ | 3 |
| Eric Young, Associate | ■ | ■ | ■ | ■ | ■ | ■ | 3 |
| Thomas J. Fox, Associate | ■ | ■ | ■ | ■ | ■ | ■ | 2 |
| Mary Griffin, Associate | ■ | ■ | ■ | ■ | ■ | ■ | 2 |
| Kwan Chan, Attorney | ■ | ■ | ■ | ■ | ■ | ■ | 13 |

**FILED UNDER SEAL**

| Billing Attorney / Paralegal | Hours Billed on Matter | Average Effective Rate | | | 2018-2020 Combined Average Effective Rate | 2018-2020 Combined Average Effective Rate After Final Discount | Years Experience (2020) |
|---|---|---|---|---|---|---|---|
| | | 2018 | 2019 | 2020 | | | |
| Robert Winant, Paralegal | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | 29 |
| Lawrence Gallwas, Paralegal | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | 16 |
| Marlon Munoz, Paralegal | ▮ | ▮ | ▮ | ▮ | ▮ | ▮ | 25 |

## REASONABLENESS OF FENWICK'S HOURLY RATES

5.      In my role, I am familiar with Fenwick's business and billing practices, and I am generally familiar with the rates comparable firms charge for patent litigation in the Eastern District of Texas.  Fenwick sets its hourly billing rates to be competitive with rates generally charged by other full-service law firms for attorneys of similar experience.  Fenwick attorneys routinely appear in patent litigation matters in the Eastern District of Texas, including high-stakes patent litigations like this one.  Printouts from Docket Navigator showing appearances by Fenwick in patent litigation matters in the Eastern District of Texas since 2015 are attached as **Exhibit C**. In my opinion, the billable rates charged by the specific attorneys and paralegals on this case are reasonable for their respective levels of expertise and as compared to other national law firms with similar experience that often appear in the Eastern District of Texas.

6.      Fenwick provides comprehensive legal services to national and international technology and life sciences companies.  Fenwick has over 350 attorneys practicing in offices in Mountain View, San Francisco, and Santa Monica, California; in Seattle, Washington; in Boise,

FILED UNDER SEAL

Idaho; and in New York, New York.  Fenwick is nationally-recognized for its handling of, among other things, intellectual property litigation.  For example, this year Fenwick was:

- Recommended among the top patent litigation shops in California, New York and Washington in *IAM Patent 1000: The World's Leading Patent Practitioners* (2020);

- Selected as one of the top firms in California for intellectual property work, including IP litigation, by Chambers USA.;

- Named one of the top firms in California for patent litigation; and in New York for patent litigation by *Managing Intellectual Property* (2020);

- Recognized by *The Legal 500* as a national leader for patent litigation; and

- Named one of the top firms in California and New York for patent litigation by Managing Intellectual Property (2020).

7.      I understand that the Court will calculate a "lodestar" by "multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work."  *Imperium IP Holdings (Cayman) Ltd. v. Samsung Elecs. Co.*, No. 4:14-cv-00371, 2018 WL 1602460, at *2 (E.D. Tex. Apr. 3, 2018) (J. Mazzant) (citations omitted), *rev'd on other grounds*, 749 F. App'x 989 (Fed. Cir. 2019).  I also understand that "[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Id.* (citations omitted).  Finally, "[t]he relevant legal community is the community where the district court sits." *Id*. (citing *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)).  In addition, I understand that "[g]enerally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."  *Tollett*, 285 F.3d at 368.  However, "the district

FILED UNDER SEAL

court is itself an expert in assessing these matters." *Davis v. Bd. of Sch. Comm'rs of Mobile Cty*., 526 F.2d 865, 868 (5th Cir. 1976) (citing *Weeks v. S. Bell Tel. & Tel. Co*., 467 F.2d 95, 98 (5th Cir. 1972)).

8.      I am familiar with the national law firms that practice in the Eastern District of Texas and handle matters of similar complexity.  Fenwick's rates are comparable to the rates charged by these national firms.

9.      Deron Dacus, a partner at The Dacus Firm, Amazon's local counsel in this case, has reviewed the hourly rates charged by Fenwick's attorneys and paralegals in this matter. According to Mr. Dacus, whose declaration is attached to Amazon's motion for fees, based on his experience, Fenwick's rates are consistent with those charged by other comparable firms for specialized patent litigation within the Sherman Division of Eastern District of Texas.

10.      I understand that federal courts in Texas have found reasonable hourly rates that are comparable to those charged by Fenwick.  For example, in a 2020 patent case litigated in the Northern District of Texas, a legal team from Weil, Gotshal, & Manges LLP billed standard hourly rates of $1,165.00-$1,210.00 for senior partners, $600.00-$725.00 for junior associates, and $225.00-$375.00 for paralegals based on experience level; the standard, and confidential discounted rates, and paralegal rates of $225 per hour, were all found reasonable by the magistrate. *Indus. Print Techs., LLC v. Cenveo, Inc*., No. 3:15-md-02614-M, 2020 U.S. Dist. LEXIS 156538, at *18 (N.D. Tex. June 12, 2020).  In 2018 in the Eastern District of Texas, Judge Gilstrap found that hourly rates for attorneys in the range of $805.50-$910 were "higher than average," "but not so high as to fall outside of the realm of reason."  *AdjustaCam LLC v. Amazon.com, Inc.*, No. 6:10-cv-00329-JRG, 2018 WL 1335308, at *6 (E.D. Tex. Mar. 15, 2018).  And in 2020, Judge Gilstrap found discounted partner hourly rates ranging from $610 to $900 reasonable. *See WPEM, LLC v.*

FILED UNDER SEAL

*SOTI Inc.*, No. 2:18-cv-00156-JRG, 2020 WL 555545, at *7 (E.D. Tex. Feb. 4, 2020).  In another example, in 2017 this Court awarded counsel hourly rates that ranged from $525-$1,100, and a legal assistant hourly rate of $220.  *Imperium IP Holdings*, 2018 WL 1602460, at *13.  These examples illustrate that the standard hourly rates and effective discounted rates charged by Fenwick are compatible with rates charged in the home district of the Court.

11.    Other types of evidence routinely considered by the federal courts in assessing the reasonableness of fees support the conclusion that Fenwick's fees in this matter were reasonable:

a.    Multiple federal courts have found Fenwick's rates to be reasonable for patent and other IP cases of similar or lesser complexity than this proceeding.  *See, e.g.*, *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. 2:19-cv-06359-GW-JC, 2020 WL 7889048 (C.D. Cal. Nov. 23, 2020); *Amazon.Com, Inc. v. PersonalWeb Techs.*, No.: 5:18-cv-00767-BLF, Dkt. 220 (N.D. Cal. Mar. 2, 2021); *IPVX Patent Holdings, Inc. v. Voxernet LLC*, No. 5:13-cv-01708 HRL, 2014 WL 5795545, at *7 (N.D. Cal. Nov. 6, 2014) (plaintiff conceded Fenwick's rates "were reasonable"); *Netbula, LLC v. Chordiant Software, Inc.*, No. C08-00019 JW (HRL), 2010 WL 11575580, at *5 (N.D. Cal. Dec. 17, 2010) ("[Fenwick's] rates are comparable to other full service firms in the Bay Area and are reasonable."); *Yue v. Storage Tech. Corp.*, No. C-07-05850 JW (EDL), 2008 WL 11256331, at *4 (N.D. Cal. Aug. 6, 2008) (report and recommendation) (same), *adopted by* 2008 WL 4185835 (N.D. Cal. Sept. 5, 2008); *Perfect 10, Inc. v. Giganews, Inc*., No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *16-21 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (Fenwick's rates were "reasonable and w[ere] comparable to prevailing market rates for attorneys of similar experience, skill, and reputation in similarly complex litigation"); *Jones v. Corbis Corp.*, No. CV 10-8668-SVW (CWx), 2011 WL 4526084, at *1-2 (C.D. Cal. Aug. 24, 2011).

FILED UNDER SEAL

b.      Fenwick's fees are also in line with the economic survey conducted by AIPLA, which provides data that are commonly relied upon by the Eastern District of Texas and other federal courts to define average billing rates for partners and associates in private law firms. *See, e.g.*, *ReedHycalog UK, Ltd. v. Diamond Innovations Inc*., No. 6:08-cv-325, Dkt. 370 (E.D. Tex. Aug. 12, 2010) (using AIPLA economic survey to hold hourly rate reasonable); *see also Phigenix, Inc. v. Genentech Inc.*, No. 15-cv-01238-BLF, 2019 WL 2579260, at *11 (N.D. Cal. June 24, 2019) ("In intellectual property cases, federal courts routinely rely on [AIPLA] economic survey results published every other year.") (citations omitted).   AIPLA conducts a biennial economic survey that includes a survey of individual billing rates for representative IP law services and total costs of patent infringement litigation inclusive of discovery, motions, and claim construction.   Excerpts of the 2019 survey are attached hereto as **Exhibit D** [Tables I-29; I-41; I-42; F-22].

i.      Data from the 2019 survey, analyzing 2018 rates, shows that Fenwick's rates charged in this action are consistent with the range of average hourly billing rates for private law firms in Texas.   In 2018, the average hourly billing rate in Texas for partners was $534, the median rate was $460, the rate for the third quartile was $650, and the rate for the 90th percentile was $800.  *Id*., Table I-29.

ii.     Fenwick's billing rates charged for associates also fall within the range of general private firm associate ranges in Texas.   In 2018, the average hourly billing rate in Texas for associates was $448, the median rate was $345, the rate for the third quartile was $688 (rate for 90th percentile was not reported).  *See id.*, Table I-42.

13

**FILED UNDER SEAL**

iii. Fenwick's fees also fall within the range of overall rates charged for intellectual property work.  In 2018 the average minimum billing rate for IP work in Texas was $295, the median rate was $318, and the rate for the third quartile was $363; the average maximum billing rate for IP work in Texas was $536, the median rate was $550, and the rate for the third quartile was $696.  *Id.*, Table F-22.

12.     An article published by the National Law Journal before this case began, attached hereto as **Exhibit E**, entitled "$1,000 Per Hour Isn't Rare Anymore," demonstrates that the rates charged by Fenwick partners are comparable or even lower than the rates charged by partners at other firms for patent litigation.  Explaining that "[b]et-the-company patent litigation and white collar litigation" are the practice areas that have remained at "premium prices," the article goes on to explain that it is no longer unusual for partners practicing in these fields to charge $1,000 or more per hour.  A similar article published by The Texas Law Book in 2017, attached hereto as **Exhibit F** ["$1,000 an hour for a lawyer"], reported on a number of Texas attorneys, including trial attorneys, billing hourly rates around $1,000, further illustrating that similar rates are charged by Texas attorneys, and making the rates charged by Fenwick partners and associates compatible with the rates charged in Texas.

13.     I am familiar with the factors recited in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), that this Court has used to determine the reasonableness of a rate in the context of a fees award or to enhance or decrease a lodestar rate once calculated.  These factors are:

(1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and

14

FILED UNDER SEAL

ability; (10) case undesirability; (11) nature and length of relationship with the client; and (12) awards in similar cases.

14.     In this case, these factors either tend to support the reasonableness of the rates charged or have no effect.  IS asserted four patents in this case against six different Amazon products and services.  IS originally asserted more than 200 patent claims against Amazon.  At every stage of the case, this broad scope necessitated more attorney hours than would be required for a simple one-patent, one-product case.  Accordingly, the time and labor expended were considerable and necessary, and the skill required to defend against these claims—including a deep and sophisticated understanding of the technology at issue—was high.  The amount in controversy was very high—IS sought over $100 million at trial.  The customary fee for like work is similar, and the experience, reputation, and ability of Amazon's attorneys are very high.  Fenwick attorneys have represented Amazon in dozens of patent infringement cases, and in multiple related cases brought by the same plaintiff on the same patent family, and were able to leverage their extensive knowledge of Amazon, its business, and technology to lower expenses.  And Amazon's counsel achieved complete victory—winning a jury verdict of noninfringement, invalidity, and patent subject matter ineligibility on all asserted patents.

## REASONABLENESS OF FEES INCURRED

15.     In the regular course of business, Fenwick's attorneys, paralegals, and staff keep detailed, contemporaneous time records for all time billed to client matters handled by the firm.  Attorneys and paralegals record their time to the nearest tenth of an hour in an electronic time record system.  Each timekeeper also identifies the general category of work performed from a pre-set list of task-based categories (e.g., "Dispositive Motions," "Claim Construction," "Fact Discovery," etc.), and then adds a more detailed explanation of the work performed.  Fenwick's electronic time record system, common among comparable law firms, enables Fenwick to track

FILED UNDER SEAL

all fees incurred by the firm on behalf of its clients and further allows for generation of monthly invoices detailing the hours worked on a particular matter, the nature of the work performed and the fees incurred for that work.

16.     On a monthly basis, a preliminary invoice is generated from the computerized records described above.  Mr. Hadden personally reviews these preliminary invoices and provides discounts where appropriate.  **Exhibit B** is a copy of all final monthly invoices reflecting fees incurred for this matter from July 2018 through September 2020.  Certain descriptions of the work billed reflect attorney-client communications and/or work product; these have been redacted.  Also, bank account information required for payment of fees has also been redacted from these invoices.  Privileged and confidential redactions are in black.

17.     The work done by Fenwick attorneys and paralegals as reflected in the invoices and time records was reasonably necessary to the defense of the case.  Fenwick attorneys have represented Amazon in dozens of patent infringement cases and were able to leverage their extensive knowledge of Amazon, its business, and technology to be more efficient and to lower expenses.  Moreover, work on this case was assigned to team members of appropriate seniority. The number of hours partner attorneys billed on this case made up just 19% of all timekeeper hours billed.

18.     IS filed this action in the Eastern District of Texas, which required Amazon to retain local counsel.  Support for the fees for local Texas counsel, attorneys from the firm of Gillam & Smith, and Deron R. Dacus of the firm The Dacus Firm is provided by the separate declaration of Mr. Dacus.

19.     Because of the complex nature of this case, detailed below in paragraphs 26-39, there were times that Fenwick needed to recruit additional attorneys and staff to accommodate the

**FILED UNDER SEAL**

workload.  This work was necessary to the defense of the case.  However, to ensure that Amazon is not requesting reimbursement for any "ramp up" time or other inefficiencies, it is excluding these timekeepers from its request.  There are ▮ total timekeepers, with work totaling ▮ hours and ▮▮▮▮▮, that Amazon has excluded from the request.

20.     Amazon is also excluding certain non-taxable costs, including Covid-19-related expenses, mock trial expenses, product research, mediation expenses, and other miscellaneous costs totaling ▮▮▮▮▮.

21.     The existence of the Covid-19 pandemic substantially raised the costs of the litigation, requiring additional supplies (masks, gloves, sanitizing equipment) (totaling ▮▮▮▮▮) and travel and lodging precautions.  However, Amazon is not requesting its Covid-19-related expenses and has absorbed them as part of the cost of doing business during the global pandemic.  Further, Amazon has reduced by 50% its highest expense of travel—airfare to trial—to account for the higher cost of travel due to the pandemic (costs reduced by ▮▮▮▮▮).  This reduction normalizes non-taxable costs to the basic expenses that Amazon would have borne regardless of the existence of the pandemic.

22.     As a result of IS's aggressive pursuit of this case, Amazon incurred ▮▮▮▮▮ in fees for Fenwick's work between July 2018, when the case began, through September 2020, based on time billed by the attorneys and paralegals identified above and after applying the write-offs and discounts discussed.  These fees were incurred by the client and were necessary to the case and therefore are fully recoverable.  However, Amazon received additional final discounts related to this matter.  Amazon is therefore reducing this portion of the request to ▮▮▮▮▮, to account for all of the discounts that they received.  I believe that this substantial reduction further supports the reasonableness of the request.

**FILED UNDER SEAL**

23.      Amazon also incurred $636,560.21 in non-taxable costs, which it is seeking separately from the bill of costs.  These costs are related to litigating this case, such as travel and lodging expenses; deposition costs; data hosting fees; prior art searches, purchases, and authentication; fees for reporter's transcripts of hearings; certified copies and assignment records for the asserted patents; courier services; trial expenses; and information research charges.  Airfare costs have been reduced by half because these costs were higher due to the COVID-19 pandemic. The specific charges appear in Fenwick's monthly invoices identified above and submitted with this declaration.  A summary of the non-taxable costs requested is also included as **Exhibit G**.

24.      Federal Rule of Civil Procedure 54(d)(2)(B)(iii) requires that a movant for fees substantiate or provide a fair estimate of the amount it will seek.  I understand that the Fifth Circuit reads this rule to require the movant to estimate its future district court fees at the time of filing. Based on current time records and pending discounts and credits, Amazon expects to incur fees in the amount of ▮▮▮▮▮ from October 1, 2020 through the resolution of post-trial motions. Amazon requests the Court award these fees as well, and, if the Court so requests, they will supplement this declaration after the hearing on this motion to substantiate the actual amounts incurred.

25.      Amazon's total fee request in this motion is $6,868,245.67.  The table below lists the amounts encompassed by this total:

| | |
|---|---|
| Local counsel attorney fees (described in Declaration of Deron Dacus filed herewith) | ▮▮▮▮▮ |
| Fenwick & West attorney fees | ▮▮▮▮▮ |
| Anticipated post-trial fees | ▮▮▮▮▮ |
| **Total Fee Request** | **$6,868,245.67** |

**FILED UNDER SEAL**

26.     A chart of each attorney's time for each category of tasks performed in this case is attached as **Exhibit H**.  A summary of each category is provided below.

a.      **Case Management** includes all case management tasks for Amazon.  These tasks were more involved for this multidefendant litigation than in a single defendant patent litigation.  They include reviewing local rules and docket management (*i.e.*, calendar management and drafting requests for extensions of time); initial court filings (*i.e.*, notice of appearances, *pro hac vice* applications, and corporate disclosures/certificates of interest); drafting case management statements and attending case management conferences; and providing status updates to Amazon and the joint defense group.  Case management also includes weekly interoffice conferences for the team of Fenwick attorneys and paralegals to assign pending tasks and discuss case strategy.

b.      **Pleadings** includes reviewing the complaint and preparing the answer.

c.      **Motions on the Pleadings** include dispositive and non-dispositive motions for judgment on the pleadings, including motion to transfer, motions for summary judgment, preparation of omnibus declarations and exhibits in support of such motions, and response to IS's motion for leave to file a motion for summary judgment.

d.      **Invalidity Analysis and Contentions** includes all work performed to support Amazon's invalidity contentions.  Such work includes drafting invalidity contentions, analyzing prior art, authenticating prior art, and opposing IS's motion to strike invalidity contentions.

e.      **Infringement Analysis and Contentions** includes all work performed to review and respond to IS's infringement contentions and prepare noninfringement contentions.

FILED UNDER SEAL

        f.      **Claim Construction** includes all work to construe the claims of the patents-in-suit, including analysis of intrinsic and extrinsic evidence, exchanging proposed terms, joint claim construction and prehearing, claim construction discovery, claim construction briefs and the Markman hearing.  In this case, claim construction also required coordinating joint defense group claim construction, preparing indefiniteness of claims arguments, and work on the technology tutorial.

        g.      **Fact Discovery** includes all work performed to support fact discovery, including initial disclosures, written discovery, reviewing and producing documents in response to written discovery, privilege log review, and taking and defending depositions.

        h.      **Motions to Compel** include all work performed to resolve discovery disputes, including meeting and conferring with opposing counsel, corresponding with opposing counsel, opposing IS's motions for protective orders and sanctions, and preparing motions to compel.

        i.      **Expert Discovery** includes all work performed to support expert discovery, including interviewing and retaining experts, reviewing expert reports, and drafting *Daubert* motions.

        j.      **Motions for Summary Judgment** includes all work performed to support Amazon's motions for summary judgment and to defend against IS's motions for summary judgment.

        k.      **Trial Preparation** includes all work performed to create the proposed pretrial order, preparations for trial, motions in limine, and evidentiary objections and designation. Trial preparation also included preparation of mock trial.

FILED UNDER SEAL

l.      **Trial** includes all work performed from the start of trial until the close of trial.

m.      **Post Trial** includes all post-trial motions, preparation of the proposed judgment, and preparation of this fees motion.

n.      **Appeal** includes all work performed to support the Federal Circuit appeals in this case, including the petition for writ of mandamus.

27.     The hours billed, amount billed, and effective rate for work in each category above is as follows:

| Category | Hours Billed | Amount Billed After Final Discount | Final Effective Discounted Rate |
|---|---|---|---|
| Case Management | ███ | ███ | ███ |
| Pleadings | ██ | ███ | ██ |
| Motions on the Pleadings | ██ | ███ | ██ |
| Invalidity Analysis & Contentions | ██ | ███ | ██ |
| Infringement Analysis & Contentions | ██ | ███ | ██ |
| Claim Construction | ███ | ███ | ███ |
| Fact Discovery | ███ | ███ | ███ |
| Motions to Compel | ███ | ███ | ██ |
| Expert Discovery | ███ | ███ | ███ |
| Motions for Summary Judgment | ███ | ███ | ███ |
| Trial Preparation | ███ | ████ | ███ |
| Trial | ███ | ███ | ███ |

FILED UNDER SEAL

| | | | |
|---|---|---|---|
| Post Trial | ██ | ████ | ███ |
| Appeals | ██ | ████ | ███ |

The table illustrates that the Fenwick's work in the lawsuit was performed at effective billing rates comparable to or less than Texas rates in each category, and also shows that during the more time-intensive stages, such as fact discovery, expert discovery, and trial preparation, time was billed at lower effective rates (below ███ hourly).

## INNOVATION SCIENCES'S MERITLESS LAWSUIT

28.     Innovation Sciences is a serial litigant with a long history of speculative patent litigation that precedes this case.  **Exhibit I** is a list compiled from Lex Machina of the twenty lawsuits filed by IS and its predecessor companies Sellerbid, Inc. and Virginia Innovation Sciences, and affiliate Virginia E-Commerce Solutions, LLC.  The four companies are related corporate entities created to hold the patent portfolio which stems from a single diaper patent application.  IS also sued Amazon in this Court on October 18, 2019 (**Exhibit J** is a true and correct copy of the Complaint filed in *Innovation Sciences, LLC v. Amazon.com, Inc.*, No. 4:19-cv-769 (E.D. Tex. Oct. 18, 2019), asserting U.S. Patent No. 10,368,125 ("Method and System for Efficient Communication") against the Amazon Echo, Echo Plus, Echo Show, Echo Dot, and Echo Spot of all versions and generations, and Amazon Cloud Cam devices, along with Amazon's Alexa voice service and associated back-end servers; the Amazon Fire TV/Stick family of devices including Fire TV Cube and associated back-end servers; and Amazon Fire tablets of all versions and generations) and less than two months later, on December 2, 2019, voluntarily dismissed the case. (*See* Exhibit I at 14.)  IS's litigation has been based on the same related patent families; **Exhibit K** is a PatBase list showing the three patent families involved in all litigations.

FILED UNDER SEAL

29.     The claims IS asserted in this suit overlapped with or were based on the same claims

or theories that had already been held invalid or not infringed by Amazon in the Eastern District

of Virginia.  In July 2016, IS, acting under its previous name "Virginia Innovation Sciences," filed

its first complaint against Amazon, in Eastern District of Virginia ("VIS I") asserting ten patents

against multiple Amazon products, and alleging that:  Amazon Fire TV and Fire Tablet devices

infringed eight patents from the same patent family: U.S. Patent Nos. 7,899,492, 8,050,711,

8,903,451, 8,948,814, 9,118,794, 8,712,471, 9,286,853, and 9,355,611 (collectively, "the '492

patent family"); Amazon Fire TV infringed U.S. Patent No. 8,135,398 (the "'398 patent"); and

Amazon Dash Button infringed U.S. Patent No. 9,369,844 (the "'844 patent").  Amazon moved to

dismiss the claims under the '492 patent family under 35 U.S.C. § 101 and the Virginia court

granted the motion.  *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, 227 F. Supp. 3d 582, 604-605

(E.D. Va. 2017).  One week later, IS filed an amended complaint alleging that an additional

Amazon service infringed U.S. Reissue Patent No. RE46,140 (the "'140 patent").

30.     In August 2017, with VIS I still pending, IS filed another lawsuit against Amazon

in the same district (*Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 2:17-cv-00422-MSD-LRL

(E.D. Va.) ("VIS II").  In the second action, IS accused additional products of infringing the same

patents asserted in the first case, and alleged infringement of two additional patents, U.S. Patent

Nos. 9,729,918 (the "'918 patent") and 9,723,443 (the "'443 patent"), by six other Amazon

products.

31.     On August 18, 2017, Judge O'Grady issued a Markman order in VIS I, construing

11 claim terms and making it clear that IS had no reasonable expectation of success on any of its

claims.  *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 1:16-cv-00861, 2017 WL 3599642

(E.D. Va. Aug. 18, 2017).  IS then stipulated to noninfringement of one patent but refused to

FILED UNDER SEAL

withdraw its other infringement claims.   After the parties filed cross-motions for summary judgment and were heard on the motions, IS voluntarily dismissed the second action.  In December 2017, the court granted summary judgment of non-infringement of the '398 patent and invalidity of the '140 patent under § 101, disposing of all VIS's remaining claims.  *Id*.  IS appealed all of Judge O'Grady's orders.  The Federal Circuit affirmed the order invalidating the '492 patent family.  *See Va. Innovation Scis., Inc. v. HTC Corp.*, 718 F. App'x 988 (Fed. Cir. 2018).

32.     Still under its former name, Virginia Innovation Sciences, IS initiated this lawsuit, its third lawsuit against Amazon, on July 5, 2018 and asserted two patents that had already been asserted against Amazon in Virginia, and two additional patents closely related to the patents at issue in Virginia, against 10 different product lines and 20 different models of Amazon devices. (Dkt. 1, Complaint para. 29.)  IS would eventually assert over 200 claims against 16 different Amazon products.  (Dkt. 821, Ex. A (VIS's 2/7/2019 Disclosures Pursuant to Local P.R. 3-1 and 3-2).)

33.     The patents-in-suit here included the '798, '983, and '918 patents, which list Tiejung Wang and Tiehong "Ann" Wang as the inventors, share nearly identical specifications, and issued from or are continuations of the same application, No. 15/070,439.  The fourth patent-in-suit is also a continuation of the '844 patent that IS asserted against Amazon in both Virginia cases, and shares the same title, inventors and specification.

34.     In this lawsuit, IS also accused the same product lines as those accused in the Virginia actions, with the addition of Echo devices.  The table below identifies each of the products IS accused in this action, with products identified in bold that were also accused in the Virginia actions.

FILED UNDER SEAL

| Asserted Patent | Accused Products |
|---|---|
| 9,723,443 | **Dash Button**<br>**Dash Services** |
| 9,942,798 | **Fire TV**<br>**Fire Tablets**<br>Echo |
| 9,729,918 | **Fire TV**<br>Echo |
| 9,912,983 | **Fire TV**<br>**Dash Button**<br>**Dash Services**<br>Echo |

35.     When IS first filed this action, its business and its principal Ann Wang were located in Virginia, and the company's name was Virginia Innovation Sciences.  Four months after filing suit, and five weeks after Amazon moved to transfer venue (motion filed October 1, 2018), IS relocated to Texas and merged into a new Texas entity, "Innovation Sciences," before then filing its opposition to Amazon's motion to transfer.  VIS took multiple extensions of its deadline to respond to the transfer motion in order to effectuate this move before the parties completed briefing.

36.     As detailed in the table below using the Fire TV Stick as an example, IS's infringement theory against Amazon relied on products and acts of non-parties whom Amazon does not control.



FILED UNDER SEAL



| | ALM, McAlexander Expert Report – Infringement, Appendix a to Attachment A ('918)] at A-a27. |
| | 4:18-cv-00474-ALM, McAlexander Expert Report – Infringement, Appendix a to Attachment B ('983) B-a12. |
| | 4:18-cv-00474-ALM, McAlexander Expert Report – Infringement, Appendix a to Attachment B ('983) B-a13.[1] |

37.     The patents in this case, continuations of the '492 patent family sharing the same

---

[1]   *See also* Dkt. 360-3 (Fire tablet infringement report: 4:18-cv-00474-ALM, McAlexander Expert Report – Infringement, Appendix b to Attachment A ('918) A-b6; 4:18-cv-00474-ALM, McAlexander Expert Report – Infringement, Appendix b to Attachment A ('918) A-b15; 4:18-cv-00474-ALM, McAlexander Expert Report – Infringement, Appendix b to Attachment B ('983) B-b5; 4:18-cv-00474-A;, McAlexander Expert Report – Infringement, Appendix b to Attachment B ('983) B-b8).

FILED UNDER SEAL

specification as the '398 patent, recite the same signal conversion idea and add nothing patentably

distinct to it, as shown in the table below.

| '492 Patent, claim 23 | '983 Patent, claim 22 |
|---|---|
| 23. An apparatus for processing signals to accommodate reproduction by an alternative display terminal, the apparatus comprising:<br><br>**an interface module**, *which receives a video signal* appropriate for displaying video content on a mobile terminal, *the video signal being received from a cellular network communication* that is sent to the mobile terminal and then **received by the interface module**;<br><br>a signal conversion module, in operative communication with the interface module which *processes the video signal to produce a converted signal* for use by the alternative display terminal, *wherein processing by the signal conversion module includes converting the video signal from a compression format* appropriate for the mobile terminal to a display format for the alternative display terminal that is different from the compression format, such that the converted video signal comprises a display format and a power level appropriate for driving the alternative display terminal; and<br><br>a device interface module, in operative communication with the signal conversion module, which provides the converted video signal to the alternative display terminal to accommodate displaying the video content by the alternative display terminal. | 22. A wireless HUB system for managing information communications comprising:<br><br>**an input interface** *configured to receive a wireless signal through a wireless communication network*;<br><br>a decoder; and<br><br>a network interface configured to provide a communication through a network communication channel,<br><br>wherein the wireless HUB system is *configured to perform a conversion of the wireless signal* to accommodate production of a corresponding information content, *the wireless signal comprising a compressed signal, the conversion comprising decompressing the compressed signal*;<br><br>wherein the decoder *is configured to decompress the compressed signal*;<br><br>wherein the wireless HUB system is further configured to communicate, through the network communication channel, information for managing an item status of an item in connection with a short range wireless communication regarding an updated status of the item; and<br><br>wherein the network communication channel is separate from a wireless channel for the short range wireless communication. |

38.     Attached as **Exhibit L** is a true and correct copy of excerpts of Defendant's P.R. 3-

3 Invalidity Contentions, served April 17, 2019.

FILED UNDER SEAL

39.     Attached as **Exhibit M** is a true and correct copy of the Memorandum Opinion & Order re Motion for Attorneys' Fees, *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 1-16-cv-00861, Dkt. 275 (E.D. Va. Feb. 18, 2020).

40.     Attached as **Exhibit N** is a true and correct copy of Plaintiff Virginia Innovation Scis. Response to Amazon's Motion to Dismiss, *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 1-16-cv-00861, Dkt. 36 (E.D. Va. Sept. 29, 2016).

41.     Attached as **Exhibit O** is a true and correct copy of Order of Dismissal with Prejudice, *Va. Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 1-16-cv-00861, Dkt. 249 (E.D. Va. Nov. 21, 2016).


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed in San Francisco, California, on March 30, 2021.


*/s/ Todd R. Gregorian*
            Todd R. Gregorian

**FILED UNDER SEAL**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 30, 2021.

/s/ *Todd R. Gregorian*

Todd R. Gregorian