REDACTED PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| INNOVATION SCIENCES, LLC, | |
| Plaintiff, | Civil Action No.4:18-cv-00474-ALM |
| v. | |
| AMAZON.COM, INC., ET AL., | JURY TRIAL DEMANDED |
| Defendants. | |

**INNOVATION'S OPPOSITION TO AMAZON'S MOTION FOR ATTORNEY FEES**

## **TABLE OF CONTENTS**

I.     Introduction and Pertinent Legal Standards ........................................................ 1

II.    Amazon is Not Entitled to Any Attorney Fees .................................................... 3

    A.     Innovation Presented Evidence of Amazon's Direct Infringement ...................... 3

    B.     Innovation Did Not Misstate the Claim Language to the Jury .............................. 5

    C.     Innovation Did Not Change Its Claimed Priority Date ......................................... 7

    D.     Innovation Did Not "Rehash" Issues from the Earlier Virginia Action ............... 9

        1.     Innovation Did Not Assert Claims Directed to Inventions Found Patent
               Ineligible in the Virginia Action ....................................................................... 9

        2.     Innovation Did Not Relitigate the Same Issues Relating to Miracast ............. 9

        3.     Innovation Did Not Improperly "Abandon" Claims Against the
               Amazon Dash Button ...................................................................................... 10

    E.     Amazon's Misconduct Justifies Denial of Attorney Fee Request ....................... 12

        1.     Amazon Created the HAL System Used as Prior Art ..................................... 12

        2.     Amazon Failed To Timely Produce Key Evidence And Created Survey
               Evidence To Rebut That Evidence Before Turning It Over ........................... 13

        3.     Amazon Mischaracterized the Law on the Priority Date ............................... 14

        4.     Amazon Made No Attempt to Show All Claim Elements Were In the
               Prior Art ......................................................................................................... 15

    F.     Amazon Did Not Segregate Fees for Dismissed Entities Which Did Not
           Seek an Award of Attorney Fees ........................................................................ 15

    G.     The Court Should Exercise Its Discretion and Not Award Attorneys' Fees
           Because of Innovation's Inability to Pay ............................................................ 16

    H.     Amazon's Fees Are Excessive and/or Inappropriate .......................................... 17

    I.     Amazon is Not Entitled to an Award of Any Non-Taxable Costs ....................... 17

    J.     Amazon's Calculation of its "Effective" Billing Rates is Indecipherable ........... 19

III.   Conclusion .......................................................................................................... 20

REDACTED PUBLIC VERSION

## **<u>TABLE OF AUTHORITIES</u>**

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
    421 U.S. 240 (1975).................................................................................................. 1

*Central Soya Co., Inc. v. Geo. A. Hormel & Co.*,
    723 F.2d 1573 (Fed. Cir. 1983)............................................................................... 18

*Clearvalue, Inc. v. Pearl River Polymers, Inc.*,
    560 F.3d 1291 (Fed. Cir. 2009)............................................................................... 16

*Continental Paper Bag Co. v. Eastern Paper Bag Co.*,
    210 U.S. 405 (1908).................................................................................................. 2

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
    2016 WL 1105364 (E.D. Tex. Feb. 4, 2016) ......................................................... 11

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
    2016 WL 1106442 (E.D. Tex. Mar. 20, 2016) ....................................................... 11

*Data Scape Limited v. Spotify USA Inc.*,
    CV 19-4367 PSG (C.D. Cal. December 3, 2019) ..................................................... 2

*Dietoal Innv., LLC v. Wegmans Food Markets, Inc.*,
    126 F. Supp.3d 680 (E.D. Va. 2015) ........................................................................ 1

*EON Corp. IP Holdings, LLC v. Cisco Sys., Inc.*,
    2014 WL 3726170 (N.D. Cal. Jul. 25, 2014).......................................................... 1

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010)................................................................................. 5

*Fox v. Vice*,
    131 S. Ct. 2205 (2011).............................................................................................. 3

*Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*,
    790 F.3d 1369 (Fed. Cir. 2015)............................................................................... 12

*Highmark, Inc. v. Allcare Health Management Systems*,
    687 F.3d 1300 (Fed. Cir. 2012)................................................................................. 3

*Homeland Housewares, LLC v. Sorensen Research*,
    581 Fed.Appx. 877 (Fed. Cir. 2014) ...................................................................... 18

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Electronics Co., Ltd.*,
    2017 WL 4038883 (E. D. Tex. 2017) ..................................................................... 18

*Intellectual Ventures I LLC, v. Trend Micro Inc.*,
    944 F.3d 1380 (Fed. Cir. 2019)........................................................................... 2, 3

*Kilopass Technology, Inc. v. Sidense Corporation*,
    82 F.Supp.3d 1154 (N.D. Cal. 2015) ..................................................................... 18

*Large Audience Display Systems, LLC v. Tennman Productions, LLC*,
745 Fed.Appx. 153 (Fed. Cir. 2018) ............................................................... 18

*Nazomi Communications, Inc v. Nokia Corp.*,
739 F.3d 1339 (Fed. Cir. 2014) ..................................................................... 4

*NetTalk.com, Inc. v. Magicjack Vocaltec Ltd.*,
No. 12-CV-81022 (S.D. Fla. Nov. 20, 2015) .................................................. 2

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) .................................................................................. 1, 2

*Otonomy, Inc. v. Auris Medical, AG*,
743 Fed.Appx. 430 (Fed. Cir. 2018) ............................................................... 8

*Pacheco v. Mineta*,
448 F.3d 783 (5th Cir. 2006) ...................................................................... 16

*Reiffin v. Microsoft Corp.*,
214 F.3d 1342 (Fed. Cir. 2000) ................................................................ 7, 8

*Rimini Street, Inc. v. Oracle USA, Inc.*,
139 S. Ct. 873 (U.S. 2019) ........................................................................ 17

*Romag Fasteners Inv. v. Fossil Inc.*,
866 F.3d 1330 (Fed. Cir. 2017) ................................................................... 12

*Silicon Graphics, Inc. v. ATI Technologies, Inc.*,
607 F.3d 784 (Fed. Cir. 2010) ...................................................................... 5

*Small v. Implant Direct Mfg., LLC*,
2014 WL 5463621 (S.D.N.Y. Oct. 23, 2014) .............................................. 1, 2

*Stone Basket Innovations, LLC v. Cook Medical LLC*,
892 F.3d 1175 (Fed. Cir. 2018) ..................................................................... 1

*Synthon IP Inc. v. Pfizer Inc.*,
484 F.Supp.2d 437 (E.D. Va. 2007), *aff'd*, 281 Fed.App'x. 995 (Fed. Cir. 2008) ............. 2

*Therasense, Inc. v. Becton, Dickinson and Co.*,
745 F.3d 513 (Fed. Cir. 2014) ...................................................................... 2

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
659 F.3d 1376 (Fed. Cir. 2011) ..................................................................... 4

*Uniloc USA, Inc. v. Electronic Arts, Inc.*,
2015 WL 11089477 (E.D. Tex. Apr. 23, 2015) ............................................... 11

*VirnetX Inc. v. Apple Inc.*,
925 F. Supp. 2d 816 (E.D. Tex. 2013) ........................................................ 11

*Zenon Environmental, Inc. v. U.S. Filter Corp.*,
506 F.3d 1370 (Fed. Cir. 2007) ..................................................................... 8

**Statutes**

REDACTED PUBLIC VERSION

28 U.S.C. §§ 1821 and 1920 ................................................................................................. 17, 18

35 U.S.C. § 101 ...................................................................................................................... 9

35 U.S.C. § 112 ...................................................................................................................... 7

35 U.S.C. § 285 ...................................................................................................................... 1

Plaintiff Innovation Sciences, LLC ("Innovation") opposes Defendants Amazon.com, Inc. and Amazon Web Services, Inc.'s (collectively, "Amazon") Motion for Attorney Fees.

## I.   INTRODUCTION AND PERTINENT LEGAL STANDARDS

Under the so-called "American Rule," the prevailing party is ordinarily not entitled to collect attorneys' fees from the loser – each side bears its own fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247 (1975).  Section 285 of the Patent Act creates an exception to that rule, allowing an award of "reasonable attorneys fees" but only in "exceptional cases."  35 U.S.C. § 285.  An exceptional case is one "that stands out from others with respect to the substantive strength of a party's position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Stone Basket Innovations, LLC v. Cook Medical LLC*, 892 F.3d 1175, 1178 (Fed. Cir. 2018) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)).  As the Supreme Court noted, the word "exceptional" means "uncommon," "rare" "not ordinary" and "out of the ordinary."  *Octane Fitness*, 572 U.S. 554.  The question of exceptionality is to be determined in light of the totality of the circumstances.  *Id.*

The basis for awarding fees remains a high one even after *Octane Fitness.  See Small v. Implant Direct Mfg., LLC,*  2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014).  The pre-dominant factors to be considered, though not exclusive, are "bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, litigation misconduct, and (in the case of an accused infringer) willful infringement."  *Dietoal Innv., LLC v. Wegmans Food Markets, Inc.,* 126 F. Supp.3d 680, 684 (E.D. Va. 2015); *see also EON Corp. IP Holdings, LLC v. Cisco Sys., Inc.,* 12-CV-01011-JST, 2014 WL 3726170 (N.D. Cal. Jul. 25, 2014) (denying fees request even where the plaintiff's argument was "quite stretched" and its conduct "difficult to explain").  An award of fees is <u>not</u> to be treated as "a penalty for failure to win a patent infringement suit," *NetTalk.com, Inc. v. Magicjack Vocaltec Ltd.*, No. 12-CV-81022 (S.D. Fla.

1

Nov. 20, 2015) (citing *Octane Fitness*, 572 U.S. at 548).[1]

Amazon anchors its entire fees request on the allegation that aspects of Innovation's infringement allegations were objectively baseless.  As demonstrated below, however, none of the positions taken by Innovation were objectively baseless.  Indeed, the most exceptional aspect of this case is Amazon's decision to request attorneys' fees and to manufacture a basis for that request, re-litigating issues that it previously lost.  By doing so, Amazon is imposing additional costs, burdens and risks on Innovation.[2]  But § 285 of the Patent Act was not created to chill the right to petition the government for redress but to deter the abuse of the litigation process.  *Data Scape Limited v. Spotify USA Inc*., CV 19-4367 PSG, at p. 7 (C.D. Cal. December 3, 2019) (noting the importance of allowing attorneys the latitude necessary to challenge evolving aspects of the law without the chill of economic sanctions).  Contrary to Amazon's suggestion, non-practicing entities have the right to enforce their patents.  *Continental Paper Bag Co. v. Eastern Paper Bag Co*., 210 U.S. 405, 424 (1908).

A district court may exercise its broad discretion to determine whether an action was exceptional, to award fees, and in setting the amount of fees awarded.  *Therasense, Inc. v. Becton, Dickinson and Co*., 745 F.3d 513, 518 (Fed. Cir. 2014).  However, "a court must award fees in an amount that 'bear[s] some relation to the extent of the misconduct.'"  *Intellectual Ventures I LLC, v. Trend Micro Inc*., 944 F.3d 1380, 1384 (Fed. Cir. 2019).  Fees associated with unsuccessful claims are to be subtracted.  *Synthon IP Inc. v. Pfizer Inc*., 484 F.Supp.2d 437, 444 (E.D. Va. 2007), *aff'd*, 281 Fed.App'x. 995 (Fed. Cir. 2008).  Moreover, fee awards are ordinarily limited to the fees that would not have been occurred "but for" the exceptional

---

[1] "[M]ost cases awarding fees continue to involve substantial litigation misconduct." *Small*, 2014 WL 5463621, at *3.  Innovation has not engaged in any such misconduct and Amazon does not allege misconduct as a basis for its fees motion.

[2] Through its motion, Amazon is seeking fees for a case that was not tried.  Contrary to even the very first paragraph of Amazon's motion, the jury in this case did not find Innovation's patents invalid as being directed to unpatentable subject matter.  Such a finding was not the jury's job and the jury made no such finding.  Amazon also ignores the fact that this Court refused Amazon's request to extend the judgment to include patent ineligibility.  *See* Dkt. 897.  Amazon's representation to this Court is simple misdirection.  *See also* Berquist Decl., ¶ 30.

conduct.  *Fox v. Vice*, 131 S. Ct. 2205, 2215 (2011); *see also Highmark, Inc. v. Allcare Health Management Systems*, 687 F.3d 1300, 1316 (Fed. Cir. 2012).

In addition, it is not sufficient to determine that one or more *discrete portions* of a case are exceptional.  Instead, a court must determine that the case as a whole was exceptional before considering whether to award attorneys' fees.  *See Intellectual Ventures I LLC, v. Trend Micro Inc.*, 944 F.3d 1380, 1383 (Fed. Cir. 2019) (reversing district court because it focuses on whether one discrete portion of the case was exceptional and holding that "[t]his is not the appropriate analysis.").  As demonstrated below, Amazon's allegations as to even the discrete portions it relies upon are incorrect and Amazon's motion should be denied.

## II.    AMAZON IS NOT ENTITLED TO ANY ATTORNEY FEES

Amazon identifies only three discrete portions of the case that it alleges gives rise to an exceptional case finding.  First, Amazon argues that Innovation had no evidence that Amazon directly infringed.  *See* Dkt. 910 at 2-3.  Second, Amazon argues that Innovation's witnesses misstated the claim language to the jury.  *See id*. at 3-4.  Finally, Amazon argues that Innovation changed its priority date.  *See id*. at 4-5.  None of these arguments hold water.

### A.    Innovation Presented Evidence of Amazon's Direct Infringement

As the premise to its first argument, Amazon falsely states that "[e]very asserted claim of the '983 patent family requires a device configured (1) to transmit information for managing a status of an item (2) based on a signal regarding an updated status of the item."  Dkt. 910 at 3. First, none of the asserted claims require a device configured to "transmit" information for managing a status of an item.  Instead, every asserted claim recites that the device is **configured** to "communicate" information for managing a status of an item.  *See* Ex. 10 ['983 patent] at 44:32-35, 48:9-12, 52:16-19 (*i.e.*, claims 22, 62, 103); Ex. 11 ['918 patent] at 44:36-38 (*i.e.*, claim 27); and Ex. 12 ['798 patent] at 42:46-49 (*i.e.*, claim 1).  Moreover, only claims 62 and 103 of the '983 patent state that the claimed "communication" is "based on" a wireless signal regarding an updated status of the item.  *See* Ex. 10 ['983 patent] at 48:10-13 (*i.e.*, claim 62) and 52:16-19 (*i.e.*, claim 103).

3

REDACTED PUBLIC VERSION

The premise of Amazon's lead argument is <u>not</u> based on the actual claim language.  None of the asserted claims recite a device described in Amazon's motion.  To make Amazon's argument, Amazon had to first mischaracterize the claims.

But aside from Amazon's mischaracterization of the claim language itself, Amazon also mischaracterizes the overall relationship between the device recited in the claims and the environment in which that claimed device is configured to operate.  The claims only require a device that communicates certain information "in connection with," "based on," or "in conjunction with" another signal "regarding" an updated status of the item.  *See* Ex. 10 ['983 patent] at 44:32-35, 48:9-12, 52:16-19 (*i.e.*, claims 22, 62, 103); Ex. 11 ['918 patent] at 44:36-38 (*i.e.*, claim 27); and Ex. 12 ['798 patent] at 42:46-49 (*i.e.*, claim 1).  The claimed "wireless HUB system," "management center system," or the like does not include the "item" whose status is updated nor does the "wireless HUB system," "management center system," etc. have to include the device in "communication" with the "wireless HUB system," "management center system," etc.  Those functional limitations describe the *environment* in which the claimed device is configured to operate.  Thus, the fact that the accused Amazon products interface with third party devices such as the Philips Hue Lightbulb and/or Philips Hue Bridge does not mean the accused Amazon devices do not infringe.  Those Philips products provide the environment in which the Amazon devices operate under normal situations.

Amazon argues that Innovation tried this theory to the jury in violation of controlling Federal Circuit precedent.  But that is wrong.  First and foremost, Amazon's motion for summary judgment on this issue was denied.  Dkt. 727.  In addition, the cases upon which Amazon relies are directed to a different situation.  In *Nazomi Communications, Inc v. Nokia Corp*., 739 F.3d 1339 (Fed. Cir. 2014), the court held that the accused products did not infringe because, in order to infringe, the user had to download and install a particular piece of software (*i.e.*, the "JTEK software").  *Id*. at 1345.  The court held that this was a modification of the accused products such that they did not infringe when made and/or sold by the accused infringer.  *Id; see also Typhoon Touch Techs., Inc. v. Dell, Inc*., 659 F.3d 1376, 1381 (Fed. Cir. 2011) (accused structures must

4

be capable of performing their claimed functions without having to modify those devices).

In *Finjan, Inc. v. Secure Computing Corp*., 626 F.3d 1197 (Fed. Cir. 2010), the court held that the accused devices infringed because the infringing software was installed on the device and could be unlocked by purchasing a product key.  *Id*. at 1205.  Similarly, in *Silicon Graphics, Inc. v. ATI Technologies, Inc*., 607 F.3d 784, 794-95 (Fed. Cir. 2010), the claims were directed to a "computer system, comprising: a processor for performing …; a rasterization circuit coupled to the processor that rasterizes …; a frame buffer coupled to the rasterization circuit for storing …; and a display screen coupled to the frame buffer for displaying …."  *Id*. at 788.  The accused infringer argued that the accused products did not infringe because they were covered by a license to Microsoft.  *Id*. at 794-95.  The Federal Circuit noted that while a Microsoft operating system may be required to use the accused computer, infringement can be based on making and selling the accused computer too.  *Id*. at 794.  The court stated that "[w]here, as here, a product includes the structural means for performing a claimed function, it can still infringe 'separate and apart' from the operating system that is needed to use the product."  *Id*.  Thus, the additional structural components necessary to use the computer (*i.e*., the operating system) were not necessary for infringement if the computer (without the operating system) had the components for performing the claimed functions.

That is the situation here.  It was not necessary for Amazon to make or sell the connected smart home device for the accused Amazon products to infringe.  The functional limitations of the claims include the requirements that the claimed "wireless HUB system," "management center system," etc. "communicate" information "in connection with," "based on," or "in conjunction with" another signal "regarding" an updated status of the item.  Innovation's technical expert, Mr. McAlexander, testified that the accused Amazon products directly infringed under this correct understanding of the claims.  *See* Dkt. 883 at 117-121 [9/1/ PM Trial Transcript]; Dkt. 870 at 32-34, 51-58, 68-71, 112-113 [8/26 AM Trial Transcript].

### B.    Innovation Did Not Misstate the Claim Language to the Jury

Innovation applied the Court's construction of the term "updated status of the item" in its

infringement case.  The Court defined the term "updated status [of the item]" to mean "a change in [item] status."  Dkt. 845 at 11.  The parties were required to follow and apply this construction in presenting their evidence at trial, and the jury was required to apply this construction during their deliberations.  Importantly, the construction does *not* require that the "change in item status" be a change that has occurred *in the past*, as Amazon argued at trial and as it argues in its motion for attorneys' fees.  *See* Dkt. 910 at 3-4.  The construction covers past, present, and future changes in the item status, consistent with the specifications of the patents-in-suit.  Amazon was free to challenge the Court's claim construction, but it is not free to now argue that its proposed construction had been adopted.  That issue provides Amazon with no basis to seek fees.

Mr. McAlexander testified 100% consistent with this Court's definition of "updated status [of the item]."  He testified that the Amazon accused products infringed the asserted claims as construed by the Court.  *See* Dkt. 869 at 7-11 [8/25 PM Trial Transcript].  But Mr. McAlexander was also asked to assume that Amazon's read of the claims was correct and that the status of the item had to change before the claimed device communicated information for managing a status of an item.  Even under Amazon's reading of the claim language, Mr. McAlexander explained how the accused products satisfied the claims.  *See* Dkt. 871 at 17-21 [8/26 PM Trial Transcript].  Mr. McAlexander gave two examples of uses that satisfied Amazon's reading of the claim language.  He described managing a Ring doorbell (Ring is owned by Amazon) and a smart door lock.  *Id*.  The Ring doorbell has a motion-activated camera that transmits video back to another device.  In that regard, the Ring doorbell is virtually identical to the X10 motion-activated camera that Dr. Johnson used with the HAL system to allegedly show invalidity of the asserted patents.  If an X10 camera satisfies the claims for purposes of proving invalidity, a Ring doorbell satisfies the claims for proving infringement.

Amazon's criticisms of Mr. McAlexander's infringement analyses on this point (and Dr. Johnson's contrary testimony) are not well founded.  Amazon expressly asked the Court to construe the term "updated status [of the item]" to mean "a detected change in the [item] status." Dkt. 229 at 59.  In other words, Amazon sought a construction that required a change to have

occurred *in the past* by using the past tense verb "detected."  The Court applied controlling claim construction principles including looking at the language of other claims to assist in its construction analysis.  Dkt. 229 at 61.  Based on this, the Court concluded that "Defendants argue that this 'updated status' must reflect a detected change in the status.  *No such limitation is evident based on the language of this claim*."  Dkt. 229 at 61 (emphasis added).  As further evidence of bad faith, Amazon's criticisms of Mr. McAlexander were in contempt of the Court's Joint Final Pretrial Order in which one of the agreed motions *in limine* was that "[a]rgument or evidence contrary to the Court's claim construction" would not be presented to the jury.  *See* Dkt. 803 at 15.  It is Amazon – not Innovation – that misstated the claim language to the jury.

### C.     Innovation Did Not Change Its Claimed Priority Date

Contrary to Amazon's argument, Innovation did not change its priority date in the middle of trial.  In the pretrial order, the parties stipulated that the priority date for the asserted claims was August 10, 2006.  *See* Dkt. 845 at 7 ("The priority date of the '983 patent, '798 patent, and '918 patent is August 10, 2006.").  While the parties disputed the effect of that stipulation, it remained in place through trial and into the final jury instructions.  *See* Dkt. 868 at 14-18 [8/25 AM Trial Transcript], Dkt. 880 at 169-177 [8/31 PM Trial Transcript].[3]  As explained in more detail in Innovation's Rule 50(b) Motion, Amazon's stipulation to the August 10, 2006 priority date necessarily meant that Amazon agreed that the claims of the three patents-in-suit were supported by the August 10, 2006 application.  *See* Dkt. 908 at 4-6.

To satisfy the written description requirement of 35 U.S.C. § 112, first paragraph, the asserted claims need only be supported by the specifications of the patents-in-suit themselves. *See Reiffin v. Microsoft Corp.*, 214 F.3d 1342, 1345 (Fed. Cir. 2000) ("that is all that is required for compliance with the written description requirement of § 112 ¶ 1").  If a patent owner wants to obtain the benefit of an earlier filing date to eliminate prior art, for example, the patent owner

---

[3]   The dispute over the effect of the priority date was based on another (and successful) attempt by Amazon to mislead the Court on the law and demonstrates Amazon's bad faith litigating and trying this case.

can show that the asserted claims are supported by the earlier patent application if the earlier

patent application also provides written description support for the asserted claims.  *Id.* at 1346.

The Federal Circuit in *Rieffin* held the following:

> Although § 120 incorporates the requirements of § 112 ¶ 1, these requirements and the statutory mechanism allowing the benefit of an earlier filing date are separate provisions with distinct consequences. ***In accordance with § 120, claims to subject matter in a later-filed application not supported by an ancestor application in terms of § 112 ¶ 1 are not invalidated; they simply do not receive the benefit of the earlier application's filing date***.

*Rieffin*, 214 F.3d at 1346 (emphasis added); *see also Otonomy, Inc. v. Auris Medical, AG*, 743

Fed.Appx. 430, 437–38 (Fed. Cir. 2018) (Auris "not entitled to an effective filing date prior to

June 27, 2014, the date on which it filed the preliminary amendment" where June 2014

preliminary amendment was first application "introducing a claim with no express

arylcycloalkylamine limitation"); *Zenon Environmental, Inc. v. U.S. Filter Corp.*, 506 F.3d 1370,

1378 (Fed. Cir. 2007) ("In order to gain the benefit of the filing date of an earlier application

under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must

comply with the written description requirement of 35 U.S.C. § 112").

Amazon chose not to assert any prior art dated after the August 10, 2006 date.  Thus,

there was no prior art for Innovation to attempt to eliminate by virtue of the priority date statute.

Whether Innovation's asserted claims were entitled to the August 10, 2006 date or not was

utterly irrelevant to this case.  The only issue was whether the asserted claims had § 112, ¶ 1,

support in the specifications of the patents-in-suit themselves.  *See Rieffin*, 214 F.3d at 1345.[4]

Amazon complains that Innovation referred to the February 2, 2007 priority date in its

closing argument.  Dkt. 910 at 5.  But at that point, the Court had already advised the parties that

the "written description" jury instruction was going to include both the August 10, 2006 and the

February 2, 2007 priority dates.  *See* Dkt. 845 at 23.  The Court included the February 2, 2007

date in addition to the August 10, 2006 date because both dates were included in Innovation's

---

[4]   This analysis is provided in more detail in Innovation's Rule 50(b) Motion, which is hereby incorporated by reference.  *See* Dkt. 908 at 4-6.

infringement contentions as required by Local Rule P.R. 3-1(e).  It was entirely appropriate for Innovation's counsel to refer to that date in the closing argument.

### D.    Innovation Did Not "Rehash" Issues from the Earlier Virginia Action

#### 1.    Innovation Did Not Assert Claims Directed to Inventions Found Patent Ineligible in the Virginia Action

Amazon argues that Innovation asserted the same patent-ineligible concept that it unsuccessfully asserted in the earlier Virginia action where some of the patents in that case were declared ineligible under 35 U.S.C. § 101.  *See* Dkt. 910 at 6-7.  This Court already considered and rejected this argument when it rendered its opinion regarding Amazon's motion to transfer venue.  In its motion to transfer, Amazon chose one exemplary claim from the Virginia case (*i.e.*, claim 47 of the 451 patent) to compare to one claim from the present case (*i.e.*, claim 1 of the '798 patent).  *See* Dkt. 161 at 57-58.  The Court ruled the two claims were not identical as claim 1 of the '798 patent had "undergone modification since the '451 Patent."  *Id*. at 58.  As to the '443 patent asserted in the present case, the Court ruled that Amazon ignored "vast differences" between the claims of that patent and the '844 patent asserted in the Virginia action.  *Id*.  In the present motion, Amazon makes no attempt to demonstrate any other similarity between the claims asserted in the Virginia action and those asserted here.  *See* Dkt. 910 at 6-7.

Contrary to Amazon's assertion, it has consistently been Amazon – not Innovation – that has attempted to relitigate issues from the Virginia case in this case.  In its motion to transfer, Amazon argued that the claims asserted here were essentially the same as those at issue in Virginia.  In the present motion for attorneys' fees, Amazon dredges that argument up again despite the fact that the Court has already rejected it.

#### 2.    Innovation Did Not Relitigate the Same Issues Relating to Miracast

Amazon argues that this case is exceptional because Innovation's infringement contentions mention Miracast in passing, but Miracast never came up at trial.  Amazon's argument is wholly contrived.  The issue in the Virginia case was how the Miracast feature worked and whether it comported with the claim asserted in that case.  In the present case, how

9

Miracast works was never an issue.  The only evidence Amazon cites as support for its argument that Miracast was litigated here is one page out of Mr. McAlexander's expert report.  *See* Dkt. 910 at 7 n.5 (citing Dkt. 841 at B-b14).  But that portion of Mr. McAlexander's report has nothing to do with how Miracast works or how Miracast aligns with the asserted claims.  Mr. McAlexander's report reads "*In Fire Tablet Products that support Miracast 'display mirroring'* the encoder is configured to encode the decompressed signal to an encoded signal, …."  Dkt. 841 at B-b14 (emphasis added).  The reference to Miracast simply defined the set of Fire Tablet products that applied to claim 67 of the '983 patent.  There is no discussion of how Miracast works.  The claim element reads "wherein the wireless HUB system further comprises *an encoder* …."  *Id.* (emphasis added).  Mr. McAlexander stated that "[t]he encoder is at least the encoder on the 'System on a Chip' ('SoC') of each of the various Fire Tablets."  *Id.*  Mr. McAlexander goes on to list each of the various MediaTek SoC devices for each of the Fire Tablet products.  The infringement analysis had nothing to do with Miracast itself.

Amazon was not forced to "relitigate" a Miracast infringement theory for two years, only to have Innovation drop it at trial.  Amazon's argument to the contrary is simply wrong.[5]

### 3. Innovation Did Not Improperly "Abandon" Claims Against the Amazon Dash Button

Amazon argues that Innovation relitigated the same infringement issues for Amazon's Dash Button products in this case and the earlier Virginia action.  Amazon's argument is based on a deceptive slight of hand, and is wrong.

During claim construction, Amazon asked the Court to construe the term "updated status [of the item]" to have the same construction as Judge O'Grady gave to the term "an updated condition of a merchandise" in U.S. Patent No. 9,369,844 ("the '844 patent").  *See* Dkt. 131 at 41-42.  Judge O'Grady construed "an updated condition of a merchandise" to mean "a detected

---

[5] Amazon also argues that Innovation improperly engaged in forum shopping.  Dkt. 910 at 12 n.7.  Amazon made this argument in its motion to transfer venue to the Eastern District of Virginia.  *See* Dkt. 9 at 1, 14.  The Court denied that motion and never found that Innovation engaged in forum shopping.  *See* Dkt. 161.

change in the condition of an item." *See* Dkt. 229 at 63.  This Court acknowledged Judge

O'Grady's construction of the different term from the '844 patent and declined to adopt that

construction for "updated status [of the item]" in the present case.  *See* Dkt. 229 at 63.  The Court

noted that "Defendants argue that this 'updated status' must reflect a '*detected* change in the

status.'  *No such limitation is evident based on the language of this claim*."  Dkt. 229 at 61

(emphasis added).  The Court also looked to claim 27 of the '983 patent which expressly

required a "detection of the updated status" to conclude that "updated status" alone did not

require a detection of a change.  Yet, Amazon's entire argument with respect to the Dash Button

is premised on a construction of "updated condition" that requires a "detected change."  That

premise is false.  It is Amazon – not Innovation – that is relitigating issues it lost.

Additionally, Amazon knows that the '443 patent was dropped from the case because

discovery revealed that there were so little in expected damages for infringement of that patent,

that it did not make sense to continue pursuing that patent and the Dash Button products.[6]

Dropping the '443 patent was a show of good faith by Innovation that saved the parties' and the

Court's resources.

In any event, this court encourages parties to narrow issues for trial and does not penalize

parties for doing so.  *See VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 849 (E.D. Tex. 2013)

("The Court encourages and requires the parties to narrow their case for trial.  Accordingly, the

Court will not penalize such attempts to narrow issues by entering judgment on issues not

presented at trial."); *Uniloc USA, Inc. v. Electronic Arts, Inc*., 2015 WL 11089477, *3 (E.D. Tex.

Apr. 23, 2015); *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc*., 2016 WL 1105364, *2

(E.D. Tex. Feb. 4, 2016) (*affirmed by Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc*.,

2016 WL 1106442, *1 (E.D. Tex. Mar. 20, 2016)).  In fact, this court's General Order 13-20

---

[6]  Innovation also accused the Dash Replenishment Service ("DRS") of infringing the
'443 patent.  DRS involves devices (like printers) that automatically detect the level of a product
(such as toner) and reorder the product when the inventory is low.  DRS clearly involved a
"detected change" and yet Innovation dropped that product too because low damages made it not
worthwhile.  *See* Dkt. 806 at 90 [Final Pretrial Hearing Transcript].

forces parties to limit claims and prior art as the case progresses.

Withdrawing the '443 patent does not provide a basis to find this case exceptional.

### E.   Amazon's Misconduct Justifies Denial of Attorney Fee Request

"In determining whether a case is exceptional for 35 U.S.C. § 285 fees, a district court must 'consider[ ] the totality of the circumstances.'  This includes the conduct of the prevailing party that is seeking attorney's fees." *Romag Fasteners Inv. v. Fossil Inc.*, 866 F.3d 1330, 1340 (Fed. Cir. 2017) (citation omitted).  The relevant conduct of the movant includes its litigation misconduct.  *See id*. at 1340 ("The district court therefore erred in declining to consider, in connection with its totality of circumstances analysis, Romag's earlier litigation misconduct."); *see also Gaymar Industries, Inc. v. Cincinnati Sub-Zero Products, Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) ("To be sure, the conduct of the parties is a relevant factor under *Octane* 's totality-of-the-circumstances inquiry, including the conduct of the movant.").  Several aspects of Amazon's conduct justifies denial of attorneys fees.

### 1.   Amazon Created the HAL System Used as Prior Art

Amazon's expert, Dr. Johnson, testified that Mr. Shriver was the one who created the HAL System Amazon used as prior art at trial.  *See* Dkt. 879 at 94 [8/31 AM Trial Transcript]; Dkt. 880 at 67-70, 74-75, 110-111, 129-130 [8/31 PM Trial Transcript].  But the time records from Fenwick reveal that ███████████████████████████████████████ ████████████████████████ what was needed to make the system run.  *See* Dkt. 910-7.  On September 30, 2019, Mr. Krause ███████████████████████████████ ██████████████████████████ That same day, Mr. Gallwas researched and analyzed ██████████████████████████████████████████ On October 1, 2019, Mr. Krause worked to ███████████████████████████ ██████ On October 8, 2019, Mr. Krause ███████████████████████████ ██████ and █████████████████████████████ On October 9, 2019, Mr. Krause worked to ████████████ ██████████████████████████████████ Fenwick did all of this

work without , the person that allegedly put the system together

according to Dr. Johnson's testimony, because it was not until October 11, 2019 that Mr. Krause

████████████████████████████████████████████████████████

███████████████████████████████████ *Id.*

Working with an expert to analyze evidence and prepare an expert report regarding the

evidence is one thing.  But what Amazon's counsel did was *create the actual evidence*.  Lawyers

should never create evidence.  It was bad faith litigation for Amazon's counsel to create evidence

and then portray it to the Court and the jury as if it was an existing prior art system.

### 2.  Amazon Failed To Timely Produce Key Evidence And Created Survey Evidence To Rebut That Evidence Before Turning It Over

Amazon has disregarded this Court's orders throughout this proceeding, beginning as

early as the Court's initial mandatory disclosures and continuing in its post-trial motions.  As this

Court may recall, contrary to the timing imposed by the Court's January 4, 2019 Scheduling

Order (Dkt. 38), Amazon took the position that its initial document production did not need to be

complete until August 14, 2019.  Berquist Declaration ("Berquist Decl.") at ¶¶ 2-4.  This Court

disabused Amazon of that notion during a hearing on April 12, 2019 advised that the parties

were to *complete document production by April 17, 2019*, and warned that a party would be

"sanctioned if you wait until August 14." *Id.* at ¶ 5.  Amazon did not meet either deadline,

prompting Innovation to file a motion for sanctions.  Dkt. 335; *see also* Berquist Decl. ¶¶ 6-7,

20.  That motion was denied on the grounds that Innovation could not establish that Amazon's

failures were the result of bad faith.  Dkt. 790, p. 4.

The billing records Amazon produced in support of its fee request supplies the evidence

this Court previously found lacking and demonstrates Amazon's practice of producing only what

it wants to produce when it wants to produce it.

Amazon's damages expert, Dr. Ugone, took the position that the patented smart home

functionality was not important to Amazon's customers.  Berquist Decl. ¶ 8.  As support, Dr.

Ugone relied ████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████. *Id.* at ¶¶ 9-11.  For the accused Echo products, Dr. Ugone relied ████

█████████████████████████, a Dr. Simonson.  Berquist Decl. ¶ 12.  Critically, the

Amazon usage report on which Dr. Ugone relied included ███████████████████

███████, Berquist Decl. ¶¶ 8, 10-11, but that report, and other June 2019 Amazon

documents, ████████████████████████████████████████████.

Indeed, Amazon knew no later than mid-June 2019 that approximately ████████████

████ of Echo purchasers connected that device to one or more smart home products and that

██████████████████████████████████ *Id.* at ¶ 14.

Amazon's billing records establish that trial counsel became aware of this problem no

later than ████████, the date Amazon's counsel began work on the ████████████ Dr.

Simonson would later use to assert that smart home functionality was not important to Echo

users.  Berquist Decl., ¶¶ 16-19.  The creation of that survey would ultimately involve the

expenditure of more than ██████████████ attorneys.  *Id.*  While Amazon and its counsel

understood that Amazon's ███████████████████████████████████████

for its trial story, thus necessitating an "independent" customer survey, Amazon did not produce

those documents to Innovation until mid-January 2020, more than a month <u>after</u> Innovation's

opening expert reports were served and just days before Amazon served the opening reports of

Drs. Ugone and Simonson.  *Id.* at ¶¶ 13, 15.  Coupled with these belated disclosures, the timing

of Amazon's decision to undertake a ████████████████████████, not the accused Fire

products, just weeks after Amazon's ████████████████████████ of that

technology to its Echo product line, demonstrates bad faith.  Contrary to this Court's mandatory

disclosure rules, Amazon produced what it wanted to produce and only when it wanted to make

that production.

### 3.    Amazon Mischaracterized the Law on the Priority Date

As explained above, Amazon mischaracterized the law regarding priority dates and the

relationship to invalidity, and convinced the Court to issue erroneous instructions to the jury.

This conduct justifies a denial of attorneys' fees.  *See* Section II.C, *supra*.

### 4. Amazon Made No Attempt to Show All Claim Elements Were In the Prior Art

The only prior art references Amazon relied upon to allegedly show the asserted claims were invalid under 35 U.S.C. §§ 102 and 103 were the so-called HAL System and the Zigbee technical specification.  The Zigbee specification was only used for those claim elements that explicitly recited Zigbee.

Amazon failed to establish that the HAL System actually existed prior to August 10, 2006 to qualify as prior art.   Mr. Shriver testified that his company did not sell entire systems in the prior art time period, that each customer's system was unique as a snowflake, and that he did not know of any customer who had a system like the HAL System during the prior art period. *See* Dkt. 879 at 53-56 [8/31 AM Trial Transcript].  Amazon knew that it lacked evidence to prove that the HAL System was prior art, but presented that to the jury anyway.

Even if it was prior art (it was not), Amazon and its technical expert, Dr. Johnson, failed to make any attempt to show that multiple elements from the asserted claims were found in the so-called HAL system or the Zigbee technical specification.  These omitted claim elements are detailed in Innovation's Rule 50(b) Motion and, for brevity, that discussion is incorporated by reference here.  *See* Dkt. 908 at 12-17.  Amazon knew that the HAL System constructed in 2019 did not disclose multiple claim elements from the asserted claims, and yet, Amazon presented the HAL System as disclosing those elements without even having its technical expert address those elements.

### F. Amazon Did Not Segregate Fees for Dismissed Entities Which Did Not Seek an Award of Attorney Fees

Innovation's Amended Complaint identified six Amazon entities as defendants.  *See* Dkt. 79.  All Amazon defendants were represented by the same counsel at Fenwick & West.  When the Court entered judgment, it did so with respect to only two of the six Amazon entities – *i.e.*, Amazon.com, Inc. and Amazon Web Services, Inc.  *See* Dkt. 897 at 1.  The only Amazon entities that filed the present motion for attorneys' fees were the same two entities named in the Final

15

Judgment – namely, Amazon.com, Inc. and Amazon Web Services, Inc.  Notwithstanding the fact that Fenwick defended six Amazon entities during this case, Amazon did not segregate the fees it incurred defending the two movants from the four non-movants.  Innovation and the Court are in no position to determine which fees were incurred for the movants as compared to the other Amazon entities.  Thus, the Court should deny Amazon's motion for attorneys' fees.

### G.    The Court Should Exercise Its Discretion and Not Award Attorneys' Fees Because of Innovation's Inability to Pay

Whether to impose a fee award, and the amount of that award, are both within the district court's discretion.  In exercising that discretion, it is appropriate to consider the question of fairness and the party's ability to pay the fees requested.  *See Clearvalue, Inc. v. Pearl River Polymers, Inc.,* 560 F.3d 1291, 1305 (Fed. Cir. 2009) (finding district court abused its discretion by failing to consider the ability of the individual being sanctioned in determining the amount); *see also Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006).

Here, one of the world's largest and most successful companies, Amazon, seeks fees from a struggling, small company.  Amazon's billing records – reflecting fees generated by ███ ████████████████████████████████ – reflect Amazon's scorched earth, no-expense-spared, approach to litigation against Innovation.  Having vastly out-spent Innovation, Amazon now asks this Court to force Innovation to foot Amazon's bill.  In the earlier litigation between Innovation's predecessor and Amazon, Judge O'Grady of the Eastern District of Virginia already awarded Amazon $722,740.50 in attorneys' fees, and Innovation has paid that amount to Amazon in part ████████████████ .  *See* Dkt. 915, ¶¶ 2-5.  ██████████████████ ████████████████████ .

Section 285 of the Patent Act was not created to chill the right to petition the government for redress but to deter the abuse of the litigation process.  Amazon appears to have filed this fee motion to destroy Innovation and to serve as a warning to anyone contemplating suit against Amazon.  That, however, is not the purpose of Section 285 and such as result would be fundamentally unfair given the parties' respective financial resources.

### H.      Amazon's Fees Are Excessive and/or Inappropriate

Amazon's legal fees are excessive and are directed to inappropriate activities.  For example, Fenwick's billing records reveal that at least ▮▮▮▮▮ lawyers drafting Amazon's claim construction briefs.  *See* Berquist Decl., ¶¶ 22-23.  Amazon's own tabulation of its fees reveals the excessive nature of those fees.  Amazon incurred over ▮▮▮▮▮ in fees for claim construction.  *See* Dkt. 910-5 at ¶ 27.  Amazon incurred over ▮▮▮▮▮ in "case management" fees for what are described as routine activities.  *Id.* at ¶¶ 26a, 27.  Amazon incurred nearly ▮ ▮▮▮▮ in fees for trial preparation and trial.  *Id*. at ¶ 27.  Fenwick billed over ▮▮▮▮ for "expert discovery" which is described as retaining experts, drafting *Daubert* motions, and "reviewing expert reports."  *Id*. at ¶ 26i.  But we know from the Fenwick time records that Fenwick also spent a substantial amount of time ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ relied upon by Amazon's experts.  Berquist Decl., ¶¶ 18, 21.  Amazon also included fees for work done on other cases.  Berquist Decl., ¶ 26.  Amazon unnecessarily employed two local counsel firms for the period of December 2019 thorough July 2020.  Berquist Decl., ¶ 27.  Many of the fees reflected in Amazon's request are for issues Amazon lost including the motion to transfer, the petition for writ of mandamus, and the vast majority of the disputed claim construction issues.  Berquist Decl., ¶ 29.  Amazon's motion makes no effort to parse out fees for motions/issues for which it was successful from those in which Amazon was unsuccessful.

### I.      Amazon is Not Entitled to an Award of Any Non-Taxable Costs

Amazon's Motion cites no authority for its assertion that it should be awarded "non-taxable costs."  Instead, Amazon cites cases in which attorney's fees ("full fees") were awarded.  Amazon then disingenuously shifts its terminology to conflate "fees" and "costs," arguing that "the Court should award full defense costs."  Dkt. 910 at 13-14.  Not only does Amazon conflate the concepts of "fees" and "costs," Amazon ignores Supreme Court precedent that strictly constrains recoverable costs to those codified "in the general 'costs' statute," 28 U.S.C. §§ 1821 and 1920.  *Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 877 (U.S. 2019) ("Sections 1821 and 1920 in essence define what the term 'costs' encompasses in the subject-specific

17

federal statutes that provide for an award of costs;" "absent such express [Congressional] authority, courts may not award litigation expenses that are not specified in §§ 1821 and 1920"). Congress could have included an award of costs in § 285, but did not.

The cases cited by Amazon (Dkt. 910 at 13-14, 15 n.9) are fees cases and provide no support for an award of costs outside those circumscribed by 28 U.S.C. §§ 1821 and 1920.  In *Homeland Housewares, LLC v. Sorensen Research*, 581 Fed.Appx. 877, 880 (Fed. Cir. 2014), the Federal Circuit merely affirmed the reasonableness of the district court's calculation and award of attorney fees while noting that the district court had denied Homeland's request for its discovery costs and denied Homeland's request to award the cost of its experts.  *Large Audience Display Systems, LLC v. Tennman Productions, LLC*, 745 Fed.Appx. 153, 158 (Fed. Cir. 2018) does not delineate the $22,511.52 of awarded costs, but nowhere does it support the proposition that the "non-taxable costs" or "full defense costs" sought by Amazon are awardable.  *Kilopass Technology, Inc. v. Sidense Corporation*, 82 F.Supp.3d 1154, 1166 (N.D. Cal. 2015) is similarly unavailing given it is a fees case.  *Id.* ("Sidense is therefore entitled to all reasonable attorneys' fees arising out of the patent-related litigation") (emphasis added).  In *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir. 1983) the court "found this case to be 'exceptional' and awarded Central Soya $100,000 in attorney fees and $29,000 in expenses" but there is no delineation of the "expenses" nor any discussion as to whether the expenses were inside or outside the costs awardable under 28 U.S.C. §§ 1821 and 1920.  Nor does *Central Soya*'s assertion that "[w]e interpret attorney fees to include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit" (*id*. at 1578) provide any authority to award litigation expenses that are not specified in §§ 1821 and 1920. While in *Imperium IP Holdings (Cayman), Ltd. v. Samsung Electronics Co., Ltd.*, 2017 WL 4038883, at *5 (E. D. Tex. 2017), this Court found "Imperium is entitled to its non-taxable costs or expenses" in light of the Federal Circuit interpretation of § 285 to "include those sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit," it was before the Supreme Court's 2019 *Rimini Street* decision that "courts may not award

18

litigation expenses that are not specified in §§ 1821 and 1920." Section 285 makes no provision for the award of "non-taxable costs."

Even if the non-taxable costs were awardable, which they are not, Amazon's request is unreasonable. Amazon's Summary of Non-Taxable Costs (Dkt. No. 910-12; Exhibit G to the Gregorian Declaration) is packed with unnecessary costs ranging from the extravagant (Hotel Charges for trial alone of ████████; Chartered jet fees totaling ████████ despite ████████ in additional post-trial flights for two attorneys) to the frivolous (Sam's Club membership; Snickers Candy Bars, post-trial California travel to a "Team Lunch"). *See* Berquist Decl., ¶¶ 31-33.

Innovation had a contract to stay at the same hotel as Amazon's counsel – *i.e.*, the Hilton Garden Inn in Dennison. Under that contract, Innovation's guest room rate was $99 per day and the workroom was being provided for a flat fee of $250. *See* Ex. 13. The maximum amount Innovation would have paid the Hilton Garden Inn was $20,386.60 for an 18-day stay for 10 people plus the meeting room and tax. The trial did not last that long, and thus, Innovation's hotel bill would have been less than this amount. Innovation's anticipated bill of about $20,400 demonstrates that Amazon's ████████ hotel cost was plainly unreasonable. *See* Berquist Decl., ¶ 33.

### J.   Amazon's Calculation of its "Effective" Billing Rates is Indecipherable

Amazon argues that its lawyer billing rates are reasonable, and thus, the amounts billed to Amazon are reasonable and should be awarded to it. But Amazon never explains how it calculated those "effective" billing rates, and Innovation has been unable to reconstruct the calculations that yield those rates. *See* Berquist Decl., ¶ 28. Amazon's table of effective average hourly rates appears disconnected from the invoices submitted to support its attorneys' fees request. Amazon never fully explains how it calculated those hourly rates. *See* Dkt. 910-5, ¶ 4. Innovation has been unsuccessful in tying the nominal, top-line hourly rates to the discounted amounts reflected in Fenwick's invoices. Thus, it is unclear whether the hourly rates in Amazon's table are correct, or whether the amount of Fenwick attorneys' fees sought by this motion are correct. Because of the indecipherable nature of Amazon alleged rates and fees, it is

19

impossible to conclude that the fees are "reasonable" and Amazon's motion should be denied.

## III.     CONCLUSION

Amazon's motion for attorneys' fees should be denied.

Dated:  April 21, 2021                         Respectfully submitted,

*/s/ Donald L. Jackson*
Donald L. Jackson
VA Bar No. 42,882 (Admitted E.D. Tex.)
James D. Berquist
VA Bar No. 42,150 (Admitted E.D. Tex.)
Gregory A. Krauss,
VA Bar No. 84839 (Admitted E.D. Tex.)
Alan A. Wright,
VA Bar No. 46506 (Admitted E.D. Tex.)
Walter D. Davis, Jr.
VA Bar No. 48127 (Admitted E.D. Tex.)
**DAVIDSON BERQUIST JACKSON &
GOWDEY LLP**
8300 Greensboro Dr., Suite 500
McLean, Virginia 22102
Tel.: (571) 765-7700
Fax: (571) 765-7200
djackson@davidsonberquist.com
jay.berquist@davidsonberquist.com
gkrauss@davidsonberquist.com
awright@davidsonberquist.com
wdavis@davidsonberquist.com

Roger D. Sanders
J. Michael Young
**SANDERS, MOTLEY, YOUNG, AND
GALLARDO, PLLC**
111 S. Travis Street
Sherman, Texas 75090
Tel.: (903) 892-9133
Fax: (903) 892-4302
rsanders@somlaw.net
myoung@somlaw.net

Lisa B. Blue
**BARON & BLUE**
3300 Oak Lawn Ave., 3rd Floor
Dallas, TX 75219

Tel. 214-532-3102
lblue@baronandblue.com

*Attorneys for Plaintiff Innovation Sciences, LLC*

REDACTED PUBLIC VERSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).


DATED: April 21, 2021                    */s/ Donald L. Jackson*
                                         Donald L. Jackson