**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| INNOVATION SCIENCES, LLC, | |
| Plaintiff, | Civil Action No.4:18-cv-00474-ALM |
| v. | |
| AMAZON.COM, INC., ET AL., | JURY TRIAL DEMANDED |
| Defendants. | |

**INNOVATION'S REPLY IN SUPPORT OF ITS RULE 50(B) MOTION FOR
JUDGMENT AS A MATTER OF LAW, OR ALTERNATIVELY, RULE 59(A)
MOTION FOR A NEW TRIAL**

## <u>TABLE OF CONTENTS</u>

I.    Amazon Failed to Prove That Any of the Asserted Claims Were Invalid......................... 1

    A.    There Was Insufficient Evidence For the Written Description Defense ................ 1

    B.    Amazon Failed to Present Substantial Evidence That the Asserted Claims
    were Invalid Based on the HAL System ...................................................................... 3

        1.    No Reasonable Jury Could Have Concluded that the HAL System
        Existed in the Prior Art ................................................................................ 3

        2.    Amazon Did Not Present Evidence that Each of the Elements of the
        Asserted Claims were Taught or Disclosed by the HAL System ..................... 4

        3.    Amazon Did Not Present Evidence that the Asserted Claims Were
        Obvious in Light of the HAL System ............................................................. 6

II.   THE JURY'S NON-INFRINGEMENT FINDINGS WERE NOT SUPPORTED BY
SUBSTANTIAL EVIDENCE ........................................................................................... 7

    A.    Innovation Established that the Accused Products Were "Hubs" as
    Claimed .......................................................................................................................... 8

    B.    The Accused Products Include the Two Claimed "Interfaces" ............................. 8

    C.    Amazon's "Updated Status" Non-Infringement Argument Was Contrary
    to the Court's Construction and Satisfied by the Accused Products in Any
    Event .............................................................................................................................. 9

    D.    Amazon's "Configured To" Non-Infringement Argument Is Absurd ................ 10

    E.    Amazon's Reliance on *Centillion* is Misplaced .................................................... 12

III.  Amazon Offered Insufficient Evidence That the Asserted Claims are Patent Ineligible
Under 35 U.S.C. § 101 ...................................................................................................... 13

    A.    Amazon Presented Insufficient Evidence that the Ordered Combination of
    <u>Claim Limitations</u> was Well Known, Routine, and Conventional......................... 14

    B.    The Court Erred by Submitting to the Jury the *Alice* Step 2 Fact Questions........ 15

IV.   The Motion for A New Trial Should be Granted .............................................................. 17

    A.    The Written Description Instruction Was Wrong .................................................. 17

    B.    The Testimony of Tim Shriver was Inadmissible .................................................. 18

1.    Shriver Lacked Personal Knowledge of the Existence of any Pre-August 2006 HAL System Configured Like the 2019 Litigation-Constructed HAL System ................................................................ 18

2.    Mr. Shriver's Testimony that the 2019 HAL System "Could Have and Would Have" Operated a Certain Way was Inadmissible Lay Opinion......... 19

C.    The Videos Purporting to Show the HAL System In Operation Should Not Have Been Presented to the Jury Even as a Demonstrative................................. 20

V.    Conclusion .................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Allen Eng'g Corp. v. Bartell Indus.*,
  299 F.3d 1336 (Fed. Cir. 2002)......................................................................... 8

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*,
  776 F.2d 281 (Fed. Cir. 1985)........................................................................... 5

*Augustine Medical, Inc. v. Gaymar Industries, Inc.*,
  181 F.3d 1291 (Fed. Cir. 1999)......................................................................... 2

*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)....................................................................... 14

*Cassidian Comms., Inc. v. Microdata GIS, Inc.*,
  2014 WL 3924255 (E.D. Tex. Aug. 8, 2014) ................................................... 5

*Cassidian Comms., Inc. v. Microdata GIS, Inc.*,
  2015 WL 1848533 (E.D. Tex. Apr. 20, 2015) ................................................. 5

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
  289 F.3d 801 (Fed. Cir. 2002)........................................................................... 8

*Centillion Data Systems, LLC v. Qwest Comms. Int'l, Inc.*,
  631 F.3d 1279 (Fed. Cir. 2011)....................................................................... 12

*Cephalon, Inc. v. Watson Pharm., Inc.*,
  707 F.3d 1330 (Fed. Cir. 2013).................................................................. 5, 13

*Columbia Sportwear North America, Inc. v. Seirus Innovative Accessories, Inc.*,
  942 F.3d 1119 (Fed. Cir. 2019)......................................................................... 6

*Deere & Co. v. Bush Hog, LLC*,
  703 F.3d 1349 (Fed. Cir. 2012)......................................................................... 8

*Endo Pharm. Inc. v. Mylan Pharm. Inc.*,
  2014 WL 2532179 (D. Del. Jun. 2, 2014) ....................................................... 3

*Endo Pharm., Inc. v. Mylan Pharm. Inc.*,
  2014 WL 334178 (D. Del. Jan. 28, 2014)......................................................... 3

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010)....................................................................... 11

*General Mills, Inc. v. Hunt-Wesson, Inc.*,
  103 F.3d 978 (Fed. Cir. 1997)......................................................................... 12

*Gibbs v. Triumph Trap Co.*,
  26 F.2d 312 (2nd Cir. 1928)............................................................................. 9

*Google LLC v. Personal Audio, LLC*,
  743 Fed. Appx. 978 (Fed. Cir. 2018)............................................................... 9

*IMS Tech., Inc. v. Haas Automation, Inc.*,
  206 F.3d 1422 (Fed. Cir. 2000)................................................................................. 8

*InTouch Techs., Inc. v. VGO Comms., Inc.*,
  751 F.3d 1327 (Fed. Cir. 2014)................................................................................. 7

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)................................................................................................ 7

*Laryngeal Mask Co. Ltd. v. Ambu*,
  618 F.3d 1367 (Fed. Cir. 2010)................................................................................ 2

*Linear Tech. Corp. v. ITC*,
  566 F.3d 1049 (Fed. Cir. 2009)................................................................................ 9

*Maxell, Ltd. v. ZTE Corp.*
  No. 16-cv-00179, Dkt. 181 (E.D. Tex. June 8, 2018).................................................. 16

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012)................................................................................ 20

*Mobile Telecommunications Techs. LLC v. Google Inc.*,
  2016 WL 7338398 (E.D. Tex. Dec. 12, 2016)............................................................. 9

*Move, Inc. v. Real Estate Alliance Ltd.*,
  221 F.Supp.3d 1149 (C.D. Cal. 2016) ....................................................................... 2

*Nazomi Communications, Inc v. Nokia Corp.*,
  739 F.3d 1339 (Fed. Cir. 2014)................................................................................. 10

*Orbcomm Inc. v. Calamp Corp.*,
  215 F. Supp. 3d 499 (E.D. Va. 2016) ....................................................................... 16

*Peloton Interactive, Inc. v. Echelon Fitness, LLC*,
  2020 WL 3640064 (D. Del. July 6, 2020) ................................................................. 16

*Powell v. Home Depot U.S.A., Inc.*,
  663 F.3d 1221 (Fed. Cir. 2012)................................................................................. 9

*Proto Labs, Inc. v. Ico Prods.*
  2016 WL 4974951 (D. Minn. Sept. 16, 2016) ........................................................... 16

*Read Corp. v. Portec, Inc.*,
  970 F.2d 816 (Fed. Cir. 1992).................................................................................. 12

*Reiffin v. Microsoft Corp.*,
  214 F.3d 1342 (Fed. Cir. 2000)............................................................................. 1, 17

*S.I.SV.EL. Societa Italiana per lo Sviluppo Dell'Elettronica S.p.A v. Rhapsody Int'l Inc.*
  2019 WL 2298795 (D. Del. May 30, 2019)................................................................ 16

*Schumer v. Laboratory Computer Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002)................................................................................ 5

*Silicon Graphics, Inc. v. ATI Technologies, Inc.*,
  607 F.3d 784 (Fed. Cir. 2010).................................................................................. 11

*Skedco, Inc. v. Strategic Operations, Inc.*,
   685 Fed. Appx. 956 (Fed. Cir. 2017)................................................................. 9

*TRUSTID, Inc. v. Next Caller, Inc.*
   2019 WL 917995 (D. Del. Feb. 25, 2019)...................................................... 16

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
   659 F.3d 1376 (Fed. Cir. 2011)..................................................................... 10

*Wang Laboratories, Inc. v. Toshiba Corp.*,
   993 F.2d 858 (Fed. Cir. 1993)........................................................................ 2

## Statutes

35 U.S.C. § 112 ............................................................................................... 2

35 U.S.C. § 120 ............................................................................................... 2

35 U.S.C. 271(a) ............................................................................................ 12

## I.   AMAZON FAILED TO PROVE THAT ANY OF THE ASSERTED CLAIMS WERE INVALID

### A.  There Was Insufficient Evidence For the Written Description Defense

Amazon successfully urged the Court to give the jury an erroneous instruction that the asserted patent claims were invalid for failure to comply with the written description requirement if they were not properly supported by the priority date applications.  Now, without admitting that Amazon's position was contrary to law, Amazon begins its analysis of the written description defense by using the correct law – namely, that the claims must be supported by the specification of which they are part.  *See Reiffin v. Microsoft Corp.*, 214 F.3d 1342 (Fed. Cir. 2000).  But while Amazon uses the correct legal framework for the first time, the evidence Amazon cites does not support its conclusion that it presented evidence from which the jury could have concluded that the claims were not supported by the patents in suit.[1]

In the testimony cited by Amazon, its expert, Dr. Johnson, never says the claims are not supported by the specification of the patents in suit.  *See* Dkt. 879 at 66:10-71:20.  In fact, he says the two "ideas" that make up the claims *were disclosed in the specification*.  *See* Dkt. 879 at 66:15-18 ("[T]here's two separate ideas that are relevant to the case here *that are disclosed in the specification for these three patents*.") (emphasis added).  Moreover, Dr. Johnson never testified that the specification failed to describe a "combined" device.  He only said that the specification does not disclose *why* someone would want such a combined device.  *See* Dkt. 879 at 71:18-20.

Amazon's argument about whether the claims were supported by the specifications of the patents-in-suit is wholly irrelevant.  The jury was asked to determine compliance with the written description requirement based on the August 10, 2006 patent application or the February 2, 2007 patent application.  The jury was never asked to determine if the specification of the patents-in-suit properly support the claims.  Even if Dr. Johnson testified the way Amazon says he did, that

---

[1]   Amazon argues that Innovation waived the written description issue because Innovation allegedly did not make the argument in a Rule 50(a) motion or object to the written description jury instruction.  *See* Dkt. 939 at n.3.  But Innovation raised the written description issue in the two documents that Amazon cites.  There was no waiver.

testimony was not relevant to any questions the jury was asked to answer because the jury was incorrectly instructed over Innovation's objections *and at Amazon's insistence*.

Amazon incorrectly argues that Innovation's own expert, Mr. McAlexander, testified that the claims were not supported until the May 22, 2007 application was filed.  Mr. McAlexander testified that the "appropriate conservative date" was May 22, 2007.  *See* Dkt. 883 at 165:2-9. Mr. McAlexander never disclaimed either the August 2006 or February 2007 dates.

Amazon criticizes Innovation for failing to put the February 2, 2007 application into evidence.  *See* Dkt. 939 at 4.  But Amazon bears the burden of proving invalidity by clear and convincing evidence.  *See Laryngeal Mask Co. Ltd. v. Ambu*, 618 F.3d 1367, 1374 (Fed. Cir. 2010).  Amazon's failure to put the February 2007 application into evidence should have been fatal to Amazon's written description defense as a matter of law.  If Amazon wanted to establish that the February 2, 2007 application did not support the asserted claims, Amazon was required to introduce that evidence at trial.  Because the February 2007 application was not admitted, no reasonable jury could have concluded that the claims were not supported by that application.

Finally, contrary to Amazon's argument, it waived its written description defense when it stipulated to the August 10, 2006 priority date.  *See* Dkt. 845 at 7 But Amazon's own stipulation to that date should have ended the written description dispute then and there as a matter of law.  Title 35 U.S.C. § 120 allows a patent owner to claim an earlier priority date if the earlier application being relied upon includes a description of the claimed invention in accordance with 35 U.S.C. § 112, first paragraph.  *See* 35 U.S.C. § 120.  One of the requirements of § 112, ¶ 1, is the written description requirement.  By stipulating to the priority date, Amazon necessarily stipulated that the asserted claims were supported by the August 10, 2006 application in accordance with the written description requirement of § 112, ¶ 1.  *See Move, Inc. v. Real Estate Alliance Ltd.*, 221 F.Supp.3d 1149, 1167 (C.D. Cal. 2016) (determination of priority date is a question of fact); *Augustine Medical, Inc. v. Gaymar Industries, Inc.*, 181 F.3d 1291, 1302-03 (Fed. Cir. 1999); *Wang Laboratories, Inc. v. Toshiba Corp.*, 993 F.2d 858, 865 (Fed. Cir. 1993).

Amazon reliance on *Endo Pharm., Inc. v. Mylan Pharm. Inc.*, 2014 WL 334178 at *26

(D. Del. Jan. 28, 2014) is misplaced.  The portion of that opinion on which Amazon relies is dicta – the *Endo* court concluded that accused infringer Mylan had failed to prove that the claims were not supported by either the patent-in-suit (*i.e.*, the '864 patent) or the earlier filed U.K. application.  Moreover, the Endo court later vacated that opinion.  *See Endo Pharm. Inc. v. Mylan Pharm. Inc.*, 2014 WL 2532179, *12 (D. Del. Jun. 2, 2014).

### B.  Amazon Failed to Present Substantial Evidence That the Asserted Claims were Invalid Based on the HAL System

#### 1.  No Reasonable Jury Could Have Concluded that the HAL System Existed in the Prior Art

Although Amazon spends five pages of its Opposition purportedly identifying the evidence that the 2019 HAL System was prior art, its Opposition never identifies any such evidence.  At the bottom of page 7, Amazon leads the Court to believe such evidence is coming when it states that "Mr. Shriver … confirmed these [screen shots and videos] accurately depicted the operation of HAL2000 in configurations that in fact *actually existed* and were used by customers prior to 2006.  For example, he testified as follows."  Dkt. 939 at 7.  But the cited testimony that follows has nothing to do with whether the 2019 HAL System existed in the prior art.  Each piece of testimony was about *how* the 2019 HAL System worked.  *See id.* at 7-9.

In a couple of instances, Amazon's counsel asked Mr. Shriver if the 2019 HAL System "could have and would have" worked in a particular way during the prior art period.  *See* Dkt. 879 at 38:16; 43:11.  But "could have and would have" means the system "could have" worked that way if it actually existed, and "would have" worked that way if the user configured and used it in the described manner.  But "could have and would have" does *not* mean the system actually existed as described during the prior art period.

The best testimony from Mr. Shriver that Amazon can identify is Mr. Shriver's statement that "it's probably happened" when asked if the 2019 HAL System was in the prior art.  But "probably" is by definition a guess and speculation at most.  Amazon had the burden of proving invalidity by clear and convincing evidence.  No reasonable jury would conclude that the 2019 HAL System was in the prior art based on testimony that it "probably" was.  The overwhelming

weight of Mr. Shriver's testimony was that he did not know if the 2019 HAL System was in the prior art.  Mr. Shriver testified that every customer's system was unique like a "snowflake," every system was different, the HAL company did not sell complete systems at the time, the customers configured their systems, the HAL company did not sell the components in the 2019 HAL System, and Mr. Shriver did not know of a single instance of a system configured like the 2019 HAL System in existence as of August 9, 2006.  *See* Dkt. 879 at 53:23-56:1.

Amazon tries to downplay the fact that Dr. Johnson altered the HAL System when he inspected it in 2019.  Dr. Johnson edited a "rule" to allow the system to send a notification to him when a camera detected motion.  That was an essential part of Amazon's analysis of the 2019 HAL System.  Dr. Johnson would not have received a notification from the HAL System until he altered it in 2019.  There was no evidence that anyone had ever configured a system using the HAL software to send an email notification during the prior art time period.

Amazon argues that it did not have to show that a customer had a HAL system configured in the exact way the 2019 HAL System was configured.  That is obviously wrong.  Amazon defined the prior art system it was relying on in its invalidity contentions.  As part of its burden of proving invalidity, Amazon was required to prove by clear and convincing evidence that the system was in fact prior art.  As Amazon admits, to show invalidity, the claims require the HAL System to be configured to perform various functions.  To prove that the system was configured that way, Amazon was required to prove that a user had a system that included all components of the 2019 HAL System, and that it was configured to operate according to the claims (*e.g.*, to use Dr. Johnson's example, sending an email when an event is detected).

Amazon's argument that the 2019 HAL System existed in the prior art is belied by the fact that Innovation and the Court have Amazon's counsels' time records which reveal that Amazon's counsel determined which components to acquire to create the HAL System in a way that most closely aligned with the asserted claims.  *See* Dkt. 930 at 12-13.

### 2.  Amazon Did Not Present Evidence that Each of the Elements of the Asserted Claims were Taught or Disclosed by the HAL System

Dr. Johnson was the only Amazon witness qualified to render opinions about invalidity at trial.  But conclusory and unsupported testimony from an expert witness does not constitute clear and convincing evidence of invalidity.  *See Cephalon, Inc. v. Watson Pharm., Inc*., 707 F.3d 1330, 1338 (Fed. Cir. 2013) ("Dr. Mumper's *ipse dixit* statements that co-administration would be 'difficult' and 'complicated,' however, cannot be enough to constitute clear and convincing evidence."); *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc*., 776 F.2d 281, 295 (Fed. Cir. 1985) (obviousness finding reversed because "there was no factual support for [the expert's] opinion testimony with respect to the [prior art] patent"); *Cassidian Comms., Inc. v. Microdata GIS, Inc*., 2014 WL 3924255, *10 (E.D. Tex. Aug. 8, 2014), *vacated on other grounds by* 2015 WL 1848533 (E.D. Tex. Apr. 20, 2015) (judgment as a matter of law that the patents were not invalid for failure to satisfy the written description and enablement requirements where the expert failed to explain how the evidence supported his conclusions and only offered "*ipse dixit* statements" of invalidity); *Schumer v. Laboratory Computer Sys., Inc*., 308 F.3d 1304, 1315-16 (Fed. Cir. 2002) ("testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference. The testimony is insufficient if it is merely conclusory.").

Dr. Johnson's failure to provide evidence that each element of the asserted claims was disclosed or taught by the 2019 HAL System is fatal to Amazon's case.  Innovation provided multiple claim elements for which Dr. Johnson failed to provide sufficient evidence from which a reasonable jury could have found invalidity based on the HAL System under the clear and convincing evidence standard.  *See* Dkt. 908 at 12-16.  Amazon's response to that detailed analysis consists largely of misdirection in which Amazon cites testimony that does not directly contradict the point made by Innovation.

Critically, Dr. Johnson's testimony omitted meaningful discussion of the encoder and decoder required by various claims of the '983 and '918 patents, the requirement that the system of claim 64 of that patent requires the transmission of an updated status "to a cellular phone,"

and entirely skipped the last four elements of claim 9 of the '918 patent as well as the "unique hub identifier" of claim 1 of the '798 patent.  Similarly, as to the claimed "information for managing an item status of an item" of claims 22 and 62 of the '983 patent, the testimony to which Amazon directs this Court relates only to an email – the mechanism by which information can be conveyed – but fails to identify the transmission of information "for managing an item status."  Moreover, key aspects of Dr. Johnson's trial testimony relied exclusively on features he improperly imputed to the HAL system based on the videos this Court presented to the jury *as demonstratives*.  Those unauthenticated, hearsay videos, however, do not qualify as prior art.[2]

In short, no reasonable jury could have concluded that the 2019 HAL System disclosed all elements of the asserted claims based on Dr. Johnson's testimony.

### 3. Amazon Did Not Present Evidence that the Asserted Claims Were Obvious in Light of the HAL System

Instead of identifying evidence as to what those of skill in the art would have found obvious, Amazon argues that expert testimony is not needed.  But as even the cases cited by Amazon make clear, that is only true in appropriate cases such as those where the technology is simple and easily understandable to a jury.  *See Columbia Sportwear North America, Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119, 1127 (Fed. Cir. 2019) ("The technology here—coated materials for cold weather and outdoor products—is "easily understandable without the need for expert explanatory testimony.").  But as Amazon has argued to this court in its motion for attorneys' fees, "[t]he skill required to defend – including a sophisticated understanding of the different technologies at issue – was also high."  Dkt. 910 at 15.  This case involved multiple technologies related to electronics, wireless communication, computer processing, internet communications, and smart home products.  This case was not one in which expert testimony on obviousness was optional and Amazon in fact presented a technical expert, but he did not testify on this issue.

---

[2] Detailed analysis of Amazon's mistreatment of the record are addressed in the Jackson Declaration at paragraphs 2 through 11.

Even in Amazon's opposition, the only motivation to combine the various parts of the HAL System that Amazon identifies is that such a system would be "useful." Dkt. 939 at 18. Obviously, "useful" is not a motivation to combine components into a specific system recited in a patent claim, much less the complex devices and systems recited in Innovation's asserted claims. The question is whether there was clear and convincing evidence of a "reason to combine the known elements in the fashion claimed by the patent at issue." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). The only evidence Amazon cites to support its assertion that a motivation to combine existed is Dr. Johnson's testimony. The very testimony that Amazon argued was not necessary. But in the cited testimony, Dr. Johnson provides no motivation to combine elements to create the 2019 HAL System. Instead, Dr. Johnson testified that it would have been obvious to combine "different aspects of home automation with video compression/decompression." *See* Dkt. 939 at 18 (citing Dkt. 879 at 105:9-114:12). Innovation's asserted claims are not simply some general combination of home automation with video compression/decompression. Those claims have specific structural components that must be configured to function in specifically claimed ways.

Finally, Dr. Johnson testified that Mr. Shriver used the claims as a roadmap to create a system matching those claims. *See* Dkt. 881 at 22:10-23:18. When asked, "Mr. Shriver didn't use the claims to select those components, did he, Dr. Johnson?", Dr. Johnson testified "I believe he did, yes." Dkt. 881 at 23:13-17. Using the claims as a roadmap is the improper use of hindsight which cannot form the basis of an obviousness conclusion. *See InTouch Techs., Inc. v. VGO Comms., Inc.*, 751 F.3d 1327, 1351-52 (Fed. Cir. 2014).

## II.   THE JURY'S NON-INFRINGEMENT FINDINGS WERE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

All of the non-infringement issues raised by Amazon are really claim construction issues, and thus, legal questions. Amazon waived these claim construction issues by not presenting them during the claim construction phase of the case. Amazon's constructions are also wrong.

**A.   Innovation Established that the Accused Products Were "Hubs" as Claimed**

Amazon disputes Innovation's claim that the Echo Plus, Echo Plus 2, and Echo Show 2 products undisputedly constitute the claimed "hubs."  *See* Dkt. 939 at 19-20.  Amazon's position is directly contradicted by its expert's trial testimony.

> Q   This is a summary. And you don't dispute that the Echo Plus 1, Echo Plus 2, and Echo Show 2 are hubs under your definition; is that right?
>
> A   Each contain a ZigBee hub, yes.

Dkt. 881 at 8:15-18 [9/1 AM Trial Transcript].  Dr. Johnson's testimony was unequivocal.  The Echo Plus 1, Echo Plus 2, and Echo Show 2 were hubs using his own definition.  *See also* PTX585 at 3 (describing Echo Plus as having built-in hub).  The trial testimony cites Amazon relies upon were all directed to different products – namely, the Fire TV and Fire Tablet products.  Thus, those citations do not support Amazon's position.  Nor do they contradict Innovation's and Dr. Johnson's assertion that those three Echo products were "hubs."  Moreover, Innovation established that, under Dr. Johnson's definition, the other accused products were "hubs."  *See* Dkt. 883 at 90:19-91:17.  Each of those products had at least two connections, a WiFi and a Bluetooth connection making them hubs under even Dr. Johnson's definition.  *Id.*

Finally, the Court never construed the preambles of the claims which include the term "hub" to be limitations of the claims.  See Dkt. 229 at 84.  "Generally, the preamble does not limit the claims." *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002).  Instead, the "hub" preamble language is merely "descriptive."  *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1434 (Fed. Cir. 2000) ("The phrase 'control apparatus' in the preamble merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention."); *see Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358 (Fed. Cir. 2012) (quoting *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 809 (Fed. Cir. 2002)).  The "hub" claim language could not serve as a basis for non-infringement.

**B.   The Accused Products Include the Two Claimed "Interfaces"**

Amazon continues to argue that the claimed "input interface" and the claimed "network

interface" must be separate structures.  This is a claim construction argument.  But this Court has never ruled that the two "interfaces" must be separate structures.  Amazon expressly withdrew its request to have these terms construed by the Court.  *See* Dkt. 229 at 83.  Amazon cannot base a non-infringement finding on a non-existent claim requirement.

Amazon's "two interfaces" argument is wrong as a matter of law.  One device can satisfy more than one claim limitation unless the claims have been construed to require more than one device.  *See Skedco, Inc. v. Strategic Operations, Inc*., 685 Fed. Appx. 956, 959 (Fed. Cir. 2017) (In this case, nothing in the claims requires the pump and valve to be physically separated.");  *Gibbs v. Triumph Trap Co*., 26 F.2d 312, 314 (2nd Cir. 1928) ("It is settled law, and it is good sense, that one does not escape infringement by combining into one element what a claim specifies as two, provided that the single element performs the function of both in the same way.") (Learned Hand, J.); *Google LLC v. Personal Audio, LLC*, 743 Fed. Appx. 978, 985 (Fed. Cir. 2018) (*citing Powell v. Home Depot U.S.A., Inc*., 663 F.3d 1221, 1230-31 (Fed. Cir. 2012); *Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1055 (Fed. Cir. 2009); *see also Mobile Telecommunications Techs. LLC v. Google Inc*., 2016 WL 7338398 at *9 (E.D. Tex. Dec. 12, 2016).  Without a construction that requires the two interfaces to be separate and distinct, Amazon's accused products infringe even if the two "interfaces" share some common circuitry.

## C.  Amazon's "Updated Status" Non-Infringement Argument Was Contrary to the Court's Construction and Satisfied by the Accused Products in Any Event

Amazon argues that the "updated status" claim element required the communication of information based on an event that occurred in the past.  *See* Dkt. 939 at 21.  But Amazon raised this very issue during claim construction and the Court rejected that argument.  Amazon expressly asked the Court to construe the term "updated status [of the item]" to mean "a detected change in the [item] status."  Dkt. 229 at 59.  In other words, Amazon sought a construction that required a change to have occurred *in the past* by using the past tense verb "detected."  The Court applied controlling claim construction principles including looking at the language of other claims to assist in its construction analysis.  Dkt. 229 at 61.  Based on this, the Court concluded

9

that "Defendants argue that this 'updated status' must reflect a detected change in the status.  *No such limitation is evident based on the language of this claim*."  Dkt. 229 at 61 (emphasis added).

Amazon's non-infringement argument on this point was in contempt of the Court's Joint Final Pretrial Order in which one of the agreed motions *in limine* was that "[a]rgument or evidence contrary to the Court's claim construction" would not be presented to the jury.  Dkt. 803 at 15.

Even if Amazon's contention is correct that "updated status" must be based on an event occurring in the past, Innovation established that the accused products satisfied that requirement. Mr. McAlexander explained that when the accused products are used to manage a motion-activated camera, like a Ring doorbell, the accused products receive a video signal from the doorbell after the doorbell has changed its status from not detecting motion to detecting motion. *See* Dkt. 871 at 20:22-21:18 [8/26 PM Transcript].  That testimony was unrebutted.[3]

### D.  Amazon's "Configured To" Non-Infringement Argument Is Absurd

Amazon argues that its accused products were not "configured to" perform the various functions recited in the asserted patent claims *without modification*.  *See* Dkt. 939 at 22.  The cases upon which Amazon relies are directed to a different situation.  In *Nazomi Communications, Inc v. Nokia Corp.*, 739 F.3d 1339 (Fed. Cir. 2014), the court held that the accused products did not infringe because, in order to infringe, the user had to download and install a particular piece of software (*i.e.*, the "JTEK software").  *Id*. at 1345.  The court held that this was a modification of the accused products such that they did not infringe when made and/or sold by the accused infringer.  *Id*.  In *Typhoon Touch Techs., Inc. v. Dell, Inc*., 659 F.3d 1376, 1381 (Fed. Cir. 2011), the claim required a computer having a "memory for storing at least one data collection application."  *Id*. at 1379.  The court found no infringement because the accused computers had to be programmed (or "configured") after sale in order to perform the claimed functions.  As sold, they lacked the ability to perform the functions.  *Id*. at 1381.  The claims

---

[3]  Amazon tries to deflect from this testimony by arguing that the Ring doorbell was not accused of infringement.  *See* Dkt. 939 at 21 n.9.  The point was not whether the doorbell was accused or not.  The point was that the accused products were configured to manage a Ring doorbell even under Amazon's reading of the claims, and thus infringed.

were narrowed during prosecution to require executing data collection applications that work with functional libraries.  *Id*.  Thus, the computers had to have that capability to infringe.  *Id*.

On the other hand, in *Finjan, Inc. v. Secure Computing Corp*., 626 F.3d 1197 (Fed. Cir. 2010), the court held that the accused devices infringed because the infringing software was installed on the device and could be unlocked by purchasing a product key.  *Id*. at 1205. Similarly, in *Silicon Graphics, Inc. v. ATI Technologies, Inc*., 607 F.3d 784, 794-95 (Fed. Cir. 2010), the claims were directed to a "computer system, comprising: a processor for performing …; a rasterization circuit coupled to the processor that rasterizes …; a frame buffer coupled to the rasterization circuit for storing …; and a display screen coupled to the frame buffer for displaying …."  *Id*. at 788.  The accused infringer argued that the accused products did not infringe because the operating system on the computers was covered by a license to Microsoft. *Id*. at 794-95.  The Federal Circuit noted that while a Microsoft operating system may be required to use the accused computer, infringement can be based on making and selling the accused computer alone.  *Id*. at 794.  The court stated that "[w]here, as here, a product includes the structural means for performing a claimed function, it can still infringe 'separate and apart' from the operating system that is needed to use the product."  *Id*.  Thus, the additional structural components necessary to use the computer were not necessary for infringement if the computer (without the operating system) had the components for performing the claimed functions.

That is the situation here.  It was not necessary for Amazon to make or sell the connected smart home device for the accused Amazon products to infringe.  The functional limitations of the claims include the requirements that the claimed "wireless HUB system," "management center system," etc. "communicate" information "in connection with," "based on," or "in conjunction with" another signal "regarding" an updated status of the item.  Innovation's technical expert, Mr. McAlexander, testified that the accused Amazon products directly infringed under this correct understanding of the claims.  *See* Dkt. 883 at 117-121 [9/1/ PM Trial Transcript]; Dkt. 870 at 32-34, 51-58, 68-71, 112-113 [8/26 AM Trial Transcript].

Amazon argues that its accused devices are dumb and only "record and transmit sounds." *See* Dkt. 939 at 22.  That is factually wrong.  The accused devices convert audible commands into digital signals carrying those commands and electronically communicate with Amazon's cloud, which was also accused of infringement.  *See* Dkt. 878 at 65:3-66:6 [8/28 PM Transcript (Corrected)].  But nevertheless, infringement does not turn on the simplicity of the accused device.  The only relevant question is whether the asserted claims read on the accused device. *See General Mills, Inc. v. Hunt-Wesson, Inc*., 103 F.3d 978, 981 (Fed. Cir. 1997) (literal infringement is based on "whether properly construed claims read onto an accused product or method."); *see also Read Corp. v. Portec, Inc*., 970 F.2d 816, 821 (Fed. Cir. 1992).  Innovation established infringement and no reasonable jury could have concluded otherwise.

### E.  Amazon's Reliance on *Centillion* is Misplaced

Amazon begins its discussion of *Centillion Data Systems, LLC v. Qwest Comms. Int'l, Inc*., 631 F.3d 1279 (Fed. Cir. 2011), by claiming "make" and "use" are the only two ways to directly infringe.  *See* Dkt. 939 at 23.  That is false.  A party also directly infringes by importing, selling, and offering for sale a patented invention without permission.  *See* 35 U.S.C. 271(a). *Centillion* "turn[ed] on what constitutes 'use' of a system or apparatus claim under § 271(a)." *Centillion*, 631 F.3d at 1283.  That is not true in this case.  Here, Innovation accused Amazon of direct infringement by "making, using, offering to sell, selling, and/or importing" the accused products.  *See* Dkt. 803 at 3.  At trial, the focus was whether the accused products *sold* by Amazon infringed.  *See e.g.,* Dkt. 870 at 32:16-18.  Thus, whether Amazon "uses" the patented invention under *Centillion* is not determinative of the infringement question.

Amazon argues that the claims require more than just the accused devices to infringe. That is incorrect.  For example, claim 22 of the '983 patent is directed to a "wireless HUB system" that has certain structural components configured to perform various functions.  *See* Ex. 1 at 44:17-39 (also marked PTX001).  While the claimed functions include communicating certain information through a network communication channel the item status of an "item," the "item" is not recited as part of the claimed system.  *See id*.  It is a device whose status is

managed by the "wireless HUB system."  The premise of the *Centillion* argument is wrong.

In a footnote, Amazon says that it presented other non-infringement arguments.  *See* Dkt. 939 at 24 n.10.  But the evidentiary citations do not support its contentions.  The testimony at Dkt. 880 at 19:25-21:18 only related to whether the Fire TV device had an internal "mapping table."  But claim 1 of the '798 patent requires only a unique identifier associated with the device.  Amazon cannot dispute that the unique identifier associated with each of the accused products is stored in a "mapping table" in the Amazon cloud.  Dr. Johnson did not discuss the claim element in context and his testimony was both conclusory and unsupported.  *See Cephalon*, 707 F.3d at 1338 (rejecting conclusory, unsupported testimony).

The testimony at Dkt. 880 at 49:9-51:2 only related to the Fire TV and Fire Tablet accused products and claim 1 of the '798 patent.  Dr. Johnson's testimony related to whether a unique identifier is stored in a mapping table and is used to download content to the accused Fire TV and Tablet products.  *See id.*  Claim 1 of the '798 patent only requires that the unique identifier be recognized – not that the unique identifier is used to download content.  *See* Ex. 3 at 42:30-35 (also marked as PTX003).  Thus, Dr. Johnson's testimony was not about any actual claim language, did not even purportedly cover claims other than claim 1 of the '798 patent, and was limited to the Fire TV and Tablet products.  Moreover, his testimony was entirely conclusory and unsupported.  *See Cephalon*, 707 F.3d at 1338.

The testimony at Dkt. 880 at 55:9-60:22 related only to the "mapping table" of claim 86 of the '983 patent, and he did not identify the accused products about which he was testifying.  *See id.*  Again, this testimony was conclusory and unsupported, and thus, cannot sustain a non-infringement verdict.  *See Cephalon*, 707 F.3d at 1338.  None of the testimony cited by Amazon in footnote 10 relates to the other alleged non-infringement bases listed there – namely, whether the accused products send a "unique identifier," and whether the accused products include a sensor that detects an updated item status.

## III.  AMAZON OFFERED INSUFFICIENT EVIDENCE THAT THE ASSERTED CLAIMS ARE PATENT INELIGIBLE UNDER 35 U.S.C. § 101

Amazon's argument that "[s]ubstantial evidence supports the jury's verdict of patent-ineligibility at step 2 of the *Alice* test" (Dkt. 939 at 24) reveals a fundamental misunderstanding of the trial record and precisely highlights the reason Amazon's approach to its patent ineligibility defense resulted in error.  There was no "jury[] verdict of patent-ineligibility." Amazon's repeated assertions that there was such a verdict is mere wishful thinking and cannot change the trial record.  The jury made only a factual finding, answering "Yes" to Jury Verdict Question 3: "Did Amazon prove by clear and convincing evidence that that, when taken individually or when taken as an ordered combination, the following claims involved **ONLY** technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of August 10, 2006." Dkt. 853 at 4.  There was insufficient evidence to submit this question to the jury and doing so without Amazon setting forth the basis for its abstract idea patent ineligibility defense was error.

### A.  Amazon Presented Insufficient Evidence that the Ordered Combination of <u>Claim Limitations</u> was Well Known, Routine, and Conventional

Amazon presented insufficient evidence that the ordered combination of <u>claim limitations</u> was well known, routine, and conventional and did not provide an inventive concept.  This is a key omission because the "non-conventional and non-generic arrangement of known, conventional pieces" can yield a sufficiently inventive concept such that the subject matter is patent eligible (*Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016), and "[a]n inventive concept can be found in the ordered combination of claim limitations that transform the abstract idea … into a particular, practical application of that abstract idea" (*id*. at 1352).

Amazon's assertion that "Dr. Johnson provided an opinion on patent-ineligibility that included analysis of each of the claim elements and their use in combination" (Dkt. 939 at 29) is not supported by the trial record.  Dr. Johnson was precluded from testifying as to whether <u>specific claim limitations</u>, alone or in combination, were well known and conventional because such testimony was not within the scope of his report.  Dkt. 879 at 117:11-22 (Court sustaining

objection).  As set forth in Innovation's Motion "[t]he only testimony [Amazon's expert] Dr. Johnson provided was to give his opinion that <u>concepts</u> (not <u>claim limitations</u>) from certain claims were well-known and conventional."  Dkt. 908 at 22 (emphasis added).  Nothing in the Johnson trial testimony cited by Amazon purportedly addressing the ordering or combining of claim elements (Dkt. 939 at 27) refutes that Dr. Johnson testified about mere technology concepts unmoored from the actual claim limitations.  Dkt. 879 at 104:25-106:11; 115:7-117:14.

On this record, there is insufficient evidence that the ordered combination of <u>claim limitations</u> was well known, routine, and conventional and did not provide an inventive concept.

### B.  The Court Erred by Submitting to the Jury the *Alice* Step 2 Fact Questions

Submitting Jury Verdict Question 3, the *Alice* Step 2 fact questions from *Berkheimer* was error, resulting a meaningless finding of fact and confusion.  That the question has caused Amazon confusion is evidenced by its repeated assertions that there was a "jury[] verdict of patent-ineligibility."  Dkt. 939 at 24.

Amazon does not dispute that in prosecuting its patent ineligibility defense it never presented the Court with an articulation of the abstract idea to which the asserted patent claims were purportedly directed.  It was Amazon's burden to establish that the asserted claims were directed to an abstract idea and introduce evidence for each claim to show that there is not an "inventive concept" or something "significantly more" beyond the abstract idea and beyond merely well-known, routine, and conventional subject matter for the claim limitations of each asserted claim.  At a minimum, Amazon should have articulated, and the Court should have found, what the abstract idea was, so that Innovation could present evidence of the inventive concept beyond that abstract idea.  Such was not possible given the lack of an abstract idea.

Amazon's conclusion (Dkt. 939 at 28) that "[t]he testimony at trial, including the specific testimony cited and discussed above, established that these limitations were all conventional as of the time of the patents.  Thus, the asserted claims fail to recite an 'inventive concept,' amounting to 'significantly more' than their abstract ideas" is wholly unfounded.  No such abstract idea (or ideas) existed in this case to serve as the baseline for a "significantly more"

comparative analysis.  As such, the trial record is devoid of evidence for a reasonable jury to find that each claim was directed to well known, routine, and conventional subject matter lacking an "inventive concept" amounting to something "significantly more" than that abstract idea.

Amazon criticizes Innovation for advancing the argument that the abstract idea must be articulated to provide context to the jury's fact finding "cit[ing] no case holding to that effect." *Id*.  But it is only logical that in an analysis of alleged well known, routine, and conventional subject matter searching for an "inventive concept" that is "something more" than an abstract idea, the abstract idea must be known.  Amazon's assertion that "other courts have structured trial on § 101 just as this Court did" (*id*.) is proven wrong by the cases Amazon cites.  Not one of those cases left the abstract idea unarticulated by the party asserting the § 101 defense.[4]  *Maxell, Ltd. v. ZTE Corp.* ("portable terminal provided with the function of walking navigation, which can supply location-related information to the walking user"); *Peloton Interactive, Inc. v. Echelon Fitness, LLC* ("making exercise classes available online"); *Proto Labs, Inc. v. Ico Prods.* ("determining and providing a quote to a customer for a mold or molded part"); *Orbcomm Inc. v. Calamp Corp.*("translation"); *TRUSTID, Inc. v. Next Caller, Inc.*("collecting and analyzing telephonic information"); *S.I.SV.EL. Societa Italiana per lo Sviluppo Dell'Elettronica S.p.A v. Rhapsody Int'l Inc.*("organizing content based on the user's preferences").

Innovation was prejudiced by submitting Question 3 to the jury without the context of the abstract idea being articulated due to the risk that the jury, despite the attempted curative sentence that Question 3 is unrelated to invalidity, would conflate "well known, routine, and conventional" with a § 103 obviousness analysis determining the existence of each and every element of the claimed invention in the prior art.  Amazon compounded and exploited this risk by eliciting testimony from Dr. Johnson that blurred what were purportedly "well known" "aspects of home automation" with combinations of those aspects being "obvious" and "a

---

[4] The abstract idea in *Infernal Tech., LLC v. Sony Interactive Entm't LLC*, 2021 WL 405813, at *3 (E.D. Tex. 2012), was presumably articulated in the Expert Report of Anselmo Lastra Regarding Invalidity but the *Daubert* Motion was filed under seal.

common combination" while using asserted prior art as examples.  Dkt. 879 at 105:3-14.  The

testimony Amazon refers to confusingly conflates the concepts of patent eligibility and the

obviousness invalidity analysis.  There was insufficient evidence to submit Question 3 to the jury

and doing so without Amazon setting forth an abstract idea was prejudicial error.

## IV.    THE MOTION FOR A NEW TRIAL SHOULD BE GRANTED

### A.  The Written Description Instruction Was Wrong

*Reiffin v. Microsoft Corp.*, 214 F.3d 1342 (Fed. Cir. 2000), is directly on point and

controls the outcome of Amazon's "written description" defense.  Instead of acknowledging that

reality, Amazon mischaracterizes *Reiffin* in an attempt to distinguish it.  The district court in

*Reiffin* erred by granting summary judgment that the patents-in-suit were invalid for failure to

comply with the written description requirement because the claims were not properly supported

by the earlier 1982 application.  *See Reiffin*, 214 F.3d at 1345.  The Federal Circuit explained

that the written description requirement only asks whether the specification of the patents-in-suit

adequately support the claims – it has nothing to do with the prior ancestral applications.  See id.

As *Reiffin* further explains, "claims to subject matter in a later-filed application not supported by

an ancestor application in terms of § 112 ¶ 1 *are not invalidated*; they simply do not receive the

benefit of the earlier application's filing date."  *Id*. at 1346 (emphasis added).[5]

Here, the priority date was irrelevant.  Amazon did not rely on any prior art references

dated between the 2006 or 2007 priority date and the date the patents-in-suit were filed.  Amazon

misleadingly argues that its accused products would have been invalidating prior art if

Innovation were not entitled to the 2006 or 2007 priority dates.  First, that is effectively an

admission that the accused products were covered by the asserted claims.  Second, Amazon

never relied upon its own products as prior art in its invalidity contention <u>or</u> in its preliminary or

final election of prior art.  Third, if the Court had allowed Amazon to change its invalidity

contentions at trial to rely on its accused products, fairness would dictate that the Court similarly

---

[5]  Amazon incorrectly argues that Innovation agreed to the written description instruction.
Dkt. 939 at 30.  Innovation objected to that instruction.  Dkt. 885 at 200:21-201:5.

allow Innovation to rely on the May 2007 application to establish its priority date, thereby removing Amazon's accused products as potential prior art.

### B.  The Testimony of Tim Shriver was Inadmissible

Amazon's fact witness Tim Shriver's testimony was inadmissible at trial.  Innovation was prejudiced by the testimony because the only purportedly invalidating prior art Amazon presented to the jury was the 2019 litigation-constructed HAL System Shriver testified about. The record is clear that key parts of Shriver's testimony could not possibly be based on his personal knowledge and that Shriver's testimony was improper undisclosed expert testimony presented under the guise of lay opinion that was more prejudicial than probative of any fact.

#### 1.  Shriver Lacked Personal Knowledge of the Existence of any Pre-August 2006 HAL System Configured Like the 2019 Litigation-Constructed HAL System

As "the founder and CEO of Home Automated Living," Mr. Shriver allegedly "wrote code for the HAL2000 software and supported customers in configuring their home automation systems," and in 2019 "he helped to set up the system that Dr. Johnson examined."  Dkt. 939 at 32.  Even if true, none of that proves that the 2019 constructed "HAL System" existed before August 10, 2006.

Amazon's assertion that "[Shriver] knew that customers configured their HAL2000 software in the same manner as the HAL system" (*i.e.* the 2019 litigation-constructed HAL System presented to the jury) is unsupported.  Amazon's record citation (44:14-16)[6] shows that this assertion is out of context and deceptive.  In context, it is clear Shriver was not testifying about the configuration of the 2019 HAL System as a whole, but a particular configuration involving triggering an e-mail in response to a camera picking up motion:

> Q: Do you recall when we discussed the rules relating to triggering an e-mail in response to a camera picking up motion?
>
> A: Yes.
>
> Q: Was that a particular configuration that you know was used by

---

[6] The first cite (27:25-28:1) simply confirms that Shriver personally provided help to customers and did technical support.  That is not disputed.

users of HAL2000 prior to August 10, 2006?

A: Yes.

Dkt. 879 at 44:10-16.  Shriver did not, and could not, testify that he <u>knew</u> the 2019 litigation-constructed HAL System configuration was used prior to August 10, 2006.  On the contrary, as set forth in Innovation's Motion (Dkt. 908 at 30, citing Dkt 879 at 53-56), Shriver testified that each system constructed in the pre-August 10, 2006 prior art period was "unique … like a snowflake," that his company Home Automated Living only "would sell the software and the customer would configure it" in the pre-August 10, 2006 prior art period, that Home Automated Living was not "selling turnkey systems" such as the 2019-constructed HAL System in that time period, that he "wouldn't always know what customers' end use was when they bought [Home Automated Living's] software" in that period, and that ***he "wouldn't know whether a customer would have set up a system like [the 2019-constructed HAL System] on August 9th of 2006***." Based on this testimony, Mr. Shriver clearly did not have personal knowledge of the existence of any HAL System matching Amazon's 2019 litigation-constructed HAL System in the pre-August 10, 2006 prior art period.

### 2.  Mr. Shriver's Testimony that the 2019 HAL System "Could Have and Would Have" Operated a Certain Way was Inadmissible Lay Opinion

Amazon's argument that Shriver offered "no opinions regarding any … invalidity issue in this case" and "offered no opinions about whether HAL2000 disclosed any limitation of any claim in the patents at issue" is disingenuous and is demonstrably wrong.  The questions posed to Shriver at his deposition – which became his trial testimony due to Shriver's unavailability at trial – included an attorney-controlled demonstration of Amazon's 2019 litigation-constructed HAL System purportedly operating in accordance with limitations of the asserted claims followed by a question as to whether the operation performed "could have and would have been performed by HAL2000 prior to August 10, 2006."  Given that Shriver "wouldn't know whether a customer would have set up a system like [the 2019-constructed HAL System] on August 9th of 2006" (Dkt 879 at 55:24-56:1), testimony as to how an August 2006 HAL2000 "could have

and would have" performed is by definition opinion.  Amazon's assertion (Dkt 939 at 33) that "[Shriver's] testimony about how the HAL system "could have" or "would have" operated is also based on his personal knowledge" is clearly not true.  The system operations about which Shriver was questioned: the system detecting motion (*id.* at 36:5-17); the system sending a notification (e-mail) in response to motion (*id.* at 43:6-14); operation of HAL using a cellular phone to check on the temperature and set the thermostat at home (*id.* at 47:2-6) are all manifestations of the 2019 HAL System purportedly operating in accordance with claim limitations.  That the questions were constrained to the time period "prior to August 10, 2006" is unambiguously a reference to Innovation's priority date that Amazon was trying to pre-date for prior art invalidity purposes.  Shriver's testimony was improper undisclosed expert opinion that should have been excluded.  *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1376–78 (Fed. Cir. 2012), is inapposite.

Amazon attempts to refute Innovation's point that Amazon did not and could not proffer a pre-August 10, 2006 HAL System to corroborate Shriver's testimony by claiming that Amazon introduced into evidence "the physical system itself."  Once again, Amazon operates off the trial record it wishes it had, not the trial record in this case.  Amazon did not introduce into the evidence "the physical system itself."  The cited exhibits are undated screenshots (D74, D75, D79 and D80), undated "HAL system photos - HAL2000 software, accessories, and packaging" (D173); "HAL2000 Operating Manual" (D615) and undated "Physical Exhibit - HAL2000 software, accessories, and packaging" (D1179).

### C. The Videos Purporting to Show the HAL System In Operation Should Not Have Been Presented to the Jury Even as a Demonstrative

There was no underlying evidence or testimony for which the unauthenticated, hearsay videos were "demonstrative" and those video should never have been presented to the jury.

## V. CONCLUSION

Innovation respectfully requests the Court enter the requested judgment as a matter of law or grant Innovation's motion for a new trial.

Dated:  May 14, 2021             Respectfully submitted,

*/s/ Donald L. Jackson*
Donald L. Jackson
VA Bar No. 42,882 (Admitted E.D. Tex.)
James D. Berquist
VA Bar No. 42,150 (Admitted E.D. Tex.)
Gregory A. Krauss,
VA Bar No. 84839 (Admitted E.D. Tex.)
Alan A. Wright,
VA Bar No. 46506 (Admitted E.D. Tex.)
Walter D. Davis, Jr.
VA Bar No. 48127 (Admitted E.D. Tex.)
**DAVIDSON BERQUIST JACKSON &**
**GOWDEY LLP**
8300 Greensboro Dr., Suite 500
McLean, Virginia 22102
Tel.: (571) 765-7700
Fax: (571) 765-7200
djackson@davidsonberquist.com
jay.berquist@davidsonberquist.com
gkrauss@davidsonberquist.com
awright@davidsonberquist.com
wdavis@davidsonberquist.com

Roger D. Sanders
J. Michael Young
**SANDERS, MOTLEY, YOUNG, AND**
**GALLARDO, PLLC**
111 S. Travis Street
Sherman, Texas 75090
Tel.: (903) 892-9133
Fax: (903) 892-4302
rsanders@somlaw.net
myoung@somlaw.net

Lisa B. Blue
**BARON & BLUE**
3300 Oak Lawn Ave., 3rd Floor
Dallas, TX 75219
Tel. 214-532-3102
lblue@baronandblue.com

*Attorneys for Plaintiff Innovation Sciences, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

DATED: May 14, 2021                              */s/ Donald L. Jackson*
                                                        Donald L. Jackson

22