# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| INNOVATION SCIENCES, LLC, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-474 |
| | § | Judge Mazzant |
| AMAZON.COM, INC., et al | § | |
| | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Innovation's Rule 50(b) Motion for Judgment as a Matter of Law, or Alternatively, Rule 59(a) Motion for a New Trial (Dkt. #908). Having considered the motion and record, the Court finds that Plaintiff's motion should be **DENIED**.

## BACKGROUND

Innovation Sciences, LLC ("Innovation") sued Amazon.com, Inc., Amazon Digital Services, Inc., Amazon Digital Services, LLC, Amazon Web Services, LLC, Amazon Web Services, Inc., and Amazon Fulfillment Services, Inc. (collectively, "Amazon") for patent infringement (Dkt. #79 at p. 1). The suit involves the '798 Patent Family, including U.S. Patent Nos. 9,942,798 ("the '798 Patent"), 9,912,983 ("the '983 Patent"), and U.S. Patent No. 9,729,918 ("the '918 Patent") (collectively, the "Asserted Patents") (Dkt. #79). Along the way to trial, some Amazon entities merged with other Amazon entities.

On September 2, 2020, the jury returned a defense verdict after an eight-day trial. The jury found no patent infringement; that the asserted claims are invalid; and that the asserted claims involved only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of August 10, 2006 (Dkt. #853).

After this verdict, the Court asked the parties to submit a joint final judgment. After several months, the parties continued to disagree about how, if at all, the Court should enter judgment on

patent eligibility, which defendants should be named, and court costs. After receiving full briefing, on February 26, 2021, the Court entered final judgment for Amazon.com, Inc. and Amazon Web Services, Inc. on all claims (Dkt. #897). The final judgment also stated the jury's finding that "the asserted claims were each well-understood, routine, and conventional as of the time of the asserted patents" (Dkt. #897).

On March 26, 2021, Innovation filed its 50(b) and 59(a) motion (Dkt. #908). On April 30, 2021, Amazon responded (Dkt. #939). On May 14, 2021, Innovation replied (Dkt. #949).

## LEGAL STANDARD

### I.     Judgment as a Matter of Law

Upon a party's renewed motion for judgment as a matter of law following a jury verdict, the Court should properly ask whether "the state of proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict." *Am. Home Assurance Co. v. United Space All.*, 378 F.3d 482, 487 (5th Cir. 2004). "A JMOL may only be granted when, 'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

Under Fifth Circuit law, a court should be "especially deferential" to a jury's verdict and must not reverse the jury's findings unless substantial evidence does not support the findings. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211

F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden*, 693 F.3d at 498 (citation omitted). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Constr. Co.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted). However, "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

## II.     Motion for New Trial

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir. 1985). However, "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is grounds for granting a new

trial . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61.

To be entitled to a new trial, the movant must show that the verdict was against the great weight of the evidence, not merely against the preponderance of the evidence. *Taylor v. Seton Healthcare*, No. A-10-CV-650 AWA, 2012 WL 2396880, at *2 (W.D. Tex. June 22, 2012) (citing *Dresser–Rand Co. v. Virtual Automation, Inc.,* 361 F.3d 831, 838–39 (5th Cir. 2004); *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930 (5th Cir. 1982)). A jury verdict is entitled to great deference. *Dresser–Rand Co.,* 671 F.2d at 839. "Weighing the conflicting evidence and the inferences to be drawn from that evidence, and determining the relative credibility of the witnesses, are the province of the jury, and its decision must be accepted if the record contains any competent and substantial evidence tending fairly to support the verdict." *Gibraltar Savings v. LDBrinkman Corp.,* 860 F.2d 1275, 1297 (5th Cir. 1988).

## ANALYSIS

Innovation renews its motion for judgment as a matter of law and argues there was insufficient evidence for the jury's verdict. Alternatively, Innovation asks the Court to order a new trial. After considering each request, the Court finds the jury's verdict was supported and denies the motion.

### I.    Invalidity

Innovation asks the Court to enter judgment that the asserted claims were not proven invalid (Dkt. #908 at pp. 9-14). At trial, Amazon raised multiple grounds for invalidity, including written description, anticipation, and obviousness (*See* Dkt. #908 at p. 10). Because the jury did not specify which evidentiary theory it applied, Innovation must now establish that no theory is supported by substantial evidence. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed.

Cir. 2010), aff'd, 564 U.S. 91 (2011).  This is because the Court "assume[s] the jury considered all the evidence and relied upon a factual theory for which the burden of proof was satisfied." *Id.*

Upon review, the Court finds that Amazon's written description theory is supported by substantial evidence.  As the jury's verdict on invalidity is supported by at least one theory, the Court denies Innovation's motion on this ground.

### a.  Written Description

At trial, Amazon argued the asserted claims were invalid for lacking an adequate written description under 35 U.S.C. § 112.  Section 112 requires the applicant to "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession *of the invention*.  The invention is, for purposes of the 'written description' inquiry, *whatever is now claimed*." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1564 (Fed. Cir. 1991) (emphasis original).  In other words, written description "is a question whether the application necessarily discloses that particular device." *Martin v. Mayer*, 823 F.2d 500, 505 (Fed. Cir. 1987).

Innovation makes three arguments why Amazon's written description defense fails.  First, the jury instruction incorrectly stated the standard.  Second, Amazon provided no evidence that the asserted claims are not supported by the February 2, 2007 specification.  And third, the written description defense should not have been presented to the jury because Amazon stipulated to the priority date.  All are unpersuasive.

### i.  The Jury Instruction Was Proper

The Court provided the jury the following instruction on written description:

The written description requirement is designed to ensure that the inventor was in possession of the full scope of the claimed invention ***as of the patent's effective filing date***. Amazon contends that claim(s) of Innovation Sciences' patents are invalid because their shared specification does not show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification ***as of the patents' effective filing date***, which in this case is either August 10, 2006 (Application No. 11/501,747) or February

2, 2007 (Provisional Application No. 60/899,037), would not have recognized that it describes the full scope of the invention as it is finally claimed in the asserted claims of the asserted patents. If a patent claim lacks adequate written description, it is invalid.

(Dkt. #845 at p. 23) (Innovation's emphasis, *see* Dkt. #908 at p. 11).

Innovation takes issue with the Court's use of "effective filing date." Instead, Innovation argues the jury should have been instructed to determine if the specifications of the Asserted Patents themselves adequately describe the asserted claims (Dkt. #908 at p. 12). Innovation argues it was error to instruct the jury to compare the asserted claims to either the August 10, 2006 application or the February 2, 2007 application, rather than the specifications of the Asserted Patents generally.

This argument goes to Innovation's motion for a new trial, not for judgment as a matter of law, because it is based on the procedural fairness of the trial. FED. R. CIV. P. 59; *Smith*, 773 F.2d 610, 612-13 (explaining when a new trial may be granted under Rule 59, such as when a court's instructions were flawed). In the Fifth Circuit, two requirements must be met before a new trial will be granted based on an erroneous jury instruction. *Hatsell v. Doctor Pepper Bottling Co.*, 207 F.3d 269, 272 (5th Cir. 2000). First, the movant must demonstrate that: "the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Id.* Second, "even if the instruction was erroneous, the instruction must have affected the outcome of the case." *Id.* The Court thus examines the instruction for error.

To start, Innovation objects to language that it previously urged the Court to adopt (*See* Dkt. #787 at p. 43). In the joint proposed jury instructions, Innovation urged the Court to define written description as "designed to ensure that the inventor was in possession of the full scope of the claimed invention *as of the patent's effective filing date*."[1] (Dkt. #787 at p. 43 (emphasis

---

[1] This language comes from the Federal Circuit Bar Association's model instructions.

added)).  The Court used it.  Now, Innovation objects to the Court's usage of "the patent's effective filing date," when it previously urged the Court to adopt it (*Compare* Dkt. #787 at p. 43 (joint proposed jury instructions containing "as of the patent's effective filing date") *with* Dkt. #885 at 200:21-201:5 (objecting on the record to "as of the patent's effective filing date")).  This is unreasonable.  *See McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 476 (5th Cir. 2015) ("A party cannot complain on appeal of errors which he himself induced the district court to commit.").  Still, the Court considers Innovation's argument.

The Court followed Federal Circuit caselaw when it properly instructed the jury on the "effective filing date."  The test for sufficient written description is "whether . . . the inventors were in possession of the claimed generic invention on . . . the effective filing date."  *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (written description asks if "the inventors were in possession of the claimed generic invention on April 21, 1989—the *effective filing date* of the '516 patent"); *see, e.g.*, *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1366 (Fed. Cir. 2011) (discussing whether the invention was "'well-known' to a person of skill at the *effective filing date*"); *Vas-Cath*, 935 F.2d at 1563 (written description asks whether "the inventor had possession *at that time* of the later claimed subject matter."); *U.S. Steel Corp. v. Phillips Petroleum Co.*, 865 F.2d 1247, 1251 (Fed. Cir. 1989) (explaining that written description is determined based on the effective filing date).  This means that a claim in a later application receives the benefit of an earlier application's filing date, provided the earlier application's disclosure meets the written description requirement for that claim.  *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326 (Fed. Cir. 2008).  The Court's jury instruction comports with this caselaw by defining the test "as of the patent's effective filing date."

*Reiffin* does not lead to a different conclusion. *Reiffin v. Microsoft Corp.*, 214 F.3d 1342 (Fed. Cir. 2000). There, the patentee sought the filing date of 1990 and 1994 continuation applications that ultimately issued as the asserted patents. *Id.* at 1344-45. The district court considered the written description based on an even earlier 1982 application. *Id.* at 1345. The Federal Circuit held it was improper to rely on a filing date earlier than the filing date sought by the patentee. *Id.* (For written description, "earlier specifications are relevant only when the benefit of an earlier filing date is sought under 35 U.S.C. § 120."). But here, the jury was instructed with the filing dates Innovation asked for (*See, e.g.*, Dkt. #832, Exhibit 4 at ¶ 9; Dkt. #834). Innovation has long maintained that the asserted claims were entitled to an effective filing date of August 10, 2006 (*See, e.g.*, Dkt. #832, Exhibit 4 at ¶ 9 ("Each of the asserted claims of the '798, '918, '983, and '443 Patents is entitled to the Priority Date of August 10, 2006, the earliest application filing date"); Dkt. #871 at 157:2-5 (Dr. Wong testifying the patents have a 2006 priority date "because the specification, the application disclosure that we filed in 2006 fully disclosed and support what we claimed as our invention in the patents-in-suit."). At Innovation's request, the Court included an additional priority date, February 2, 2007, in the instructions (*See* Dkt. #834 (trial brief urging the Court add February 2, 2007 as its "back up priority date")). Because the jury was properly instructed on Innovation's requested filing dates, *Reiffin* does not lead to a different conclusion.

As the jury instruction was not erroneous, the Court need not consider whether the "instruction must have affected the outcome of the case." *Hatsell*, 207 F.3d at 272. Innovation's motion is denied on this ground.

### ii. There Was Sufficient Evidence of Lack of Written Description

Innovation argues Amazon presented insufficient evidence from which the jury could reasonably conclude that the common specification fails to provide adequate written description.

It argues there was no evidence that the provisional application dated February 2, 2007[2] lacked written description support.

This argument fails because Amazon presented sufficient evidence that the common specification lacks an adequate written description, regardless of Innovation's claimed priority date. Dr. Johnson testified that the asserted claims combine two separate ideas, but the specification fails to disclose how those ideas combine into the single invention in the claims (Dkt. #879 at 66:10-71:20). The first idea "is shown in Figure 5 in the patent" which "shows a monitor for detecting whether a baby's diaper has become wet and alerting a caregiver." (Dkt. #879 at 66:19-23). The second idea is "in Figure 9" which is "a schematic diagram illustrating an example of a mobile terminal signal conversion." (Dkt. #879 at 69:1-5). Dr. Johnson testified that the asserted claims require "a single device capable of performing both of these functions, receiving and converting video, while also monitoring and reporting about wetness of diapers." (Dkt. #879 at 71:13-17). But the patent does not describe "why anyone would want to combine a diaper monitor with a video conversion device" (Dkt. #879 at 71:18-20). From this, the jury could conclude that the specification fails to "convey with reasonable clarity to those skilled in the art that" the inventors possessed the invention recited in the asserted claims. *Vas-Cath*, 935 F.2d at 1563-64. Because the jury could find the common specification in the issued patents lacks adequate written description, the verdict is supported regardless of the priority date.

### iii. The Issue Properly Went to the Jury

Innovation argues it was improper to present evidence whether the asserted claims were supported by the August 10, 2006 patent application at all. Innovation contends that because Amazon stipulated to the priority date, Amazon cannot contest the written description.

---

[2] U.S. Provisional No. 60/899,037

The Court previously rejected this argument (Dkt. #868 at 14:5-18:4). In denying Innovation's argument the first time, the Court cited *Endo Pharm. Inc. v. Mylan Pharm. Inc.*, 11-CV-00717 (RMB/KW), 2014 WL 334178, at *26 (D. Del. Jan. 28, 2014). In *Endo*, the plaintiff argued that defendants waived the written description defense because the parties stipulated to the asserted patent's priority date. *Id.* The District Court of Delaware rejected this argument because defendants only intended to stipulate to the fact of the priority date, not the underlying validity. *Id.* Here, too, Amazon only intended to acknowledge the fact of the priority date (*See* Dkt. #868 at 14:5-18:4). Like the defendant in *Endo*, Amazon consistently maintained its written description defense during pretrial and included it in the joint final pretrial order (Dkt. #743 at pp. 6, 17).[3] *See id.* Although the *Endo* court later vacated that opinion because the parties settled, the court's reasoning was sound. *See Endo Pharm. Inc. v. Mylan Pharm. Inc.*, 11-CV-717 (RMB/KW), 2014 WL 2532179, at *12 (D. Del. June 2, 2014). The Court adopted *Endo*'s reasoning and overruled Innovation's objection.

At that time, the Court encouraged Innovation to "do your own research if you can find something different." (Dkt. #868 at 14:23-24). Innovation produced no cases during trial. Nor did Innovation raise this argument in a 50(a) motion (*See* Dkt. #849 (no argument that stipulation waives Amazon's defense); Dkt. #885 at 200:21-201:5 (raising other arguments regarding written description defense).[4] Now, Innovation brings the argument under a 50(b) motion and cites no cases (*See* Dkt. 908 at p. 7). On reply, Innovation argues *Endo* is merely dicta and should not be adopted, however this does not distinguish the *Endo* court's underlying reasoning. This is unpersuasive.

---

[3] Despite these pretrial disclosures, Innovation only raised this argument at trial.
[4] "Any argument made in a renewed motion for judgment as a matter of law under Rule 50(b) must have been previously made in a motion for judgment as a matter of law under Rule 50(a)." *OneBeacon Ins. Co. v. T. Wade Welch & Associates*, 841 F.3d 669, 676 (5th Cir. 2016).

In sum, the Court find that Amazon's written description theory was properly instructed, properly supported, and properly submitted to the jury. As the jury's verdict on invalidity is supported by substantial evidence on at least one theory, the Court upholds the jury's finding.

## II. Ineligibility

Innovation asks the Court to enter judgment that the asserted claims are not ineligible under 35 U.S.C. § 101. But the Court never entered judgment that the asserted claims were ineligible. The Court only entered judgment as to the jury's factual finding "that the asserted claims were each well-understood, routine, and conventional as of the time of the asserted patents." (Dkt. #897). This determination relates to step two of *Alice*; the Court has never ruled on step one. *See Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 217 (2014). The Court assumes Innovation challenges the jury's factual finding.

Innovation argues the Court should have ruled on step one of *Alice* before ever submitting the step two factual question to the jury. Innovation does not cite any cases holding that a district court must determine step one before step two.

The Court previously rejected this argument, stating that courts are "not required to rule on questions of law inherent in the *Alice/Mayo* framework before the matter is presented to the jury for questions of fact." (Dkt. #812 at p. 4 (Order on Motions in Limine)). Other courts have structured trials similarly. *See Infernal Tech., LLC v. Sony Interactive Entm't LLC*, 2:19-CV-00248-JRG, 2021 WL 405813, at *3 (E.D. Tex. Feb. 3, 2021) ("The Court will reserve any determinations under Alice Step 1 for post-verdict proceedings, to the extent it is still a live issue."); *Maxell, Ltd. v. ZTE (USA) Inc.*, No. 16-cv-00179-RWS, Dkt. #181 at pp. 9-10 (E.D. Tex. June 8, 2018) (Judge Schroeder declining to answer questions of law under *Alice/Mayo* before the jury resolves questions of fact).

Innovation argues these cases are distinguishable because here Amazon never articulated the abstract idea (Dkt. #949 at p. 22). But Amazon identified the abstract idea in the summary judgment briefing (*See* Dkt. #435 (arguing claims are directed at (1) receiving data, (2) processing data, and (3) providing or displaying data); Dkt. #605 (reply)). And the *Infernal Technology* court precluded the invalidity expert from testifying to the jury about the abstract idea because it was a question of law that the court would resolve post-verdict. *Infernal Tech.*, 2:19-CV-00248-JRG, 2021 WL 405813, at *3. The jury did not need to know the abstract idea to determine that the asserted claims were each well-understood, routine, conventional as of the time of the asserted patents. As there is no mandatory authority supporting Innovation's argument, and other courts have similarly deferred ruling on step one, the Court's actions were proper.

Next, Innovation argues Amazon provided insufficient evidence for the jury's finding. Under *Alice* step 2, the factfinder must determine whether the claim limitations involve more than performance of "well-understood, routine, conventional activity known to the industry." *Alice*, 573 U.S. at 225. Innovation argues Amazon must prove the claims were well-known, *and* routine, *and* conventional. In support, Innovation quotes *Berkheimer*: "The question of whether a claim element or combination of elements is well-understood, routine, **and** conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (emphasis added). Innovation argues that judgment should be overturned because Amazon did not prove that each claim was each well-known, and routine, and conventional.

Amazon counters that the evidence was sufficient and, even so, *Berkheimer* did not create a three-part test requiring separate proof that the claim limitations are each "well-known," "routine," and "conventional."

The *Berkheimer* language relies on *Alice*, which quotes *Mayo Collaborative Services v. Prometheus Laboratories, Inc*., 566 U.S. 66, 71 (2012). The direct language from *Mayo* contains no "and." 566 U.S. at 73, 79, 82 (2012). The *Mayo* Court uses "well-understood, routine, conventional activity" on three separate occasions to discuss the notion of an inventive concept. 566 U.S. at 73 ("In particular, the steps in the claimed processes (apart from the natural laws themselves) involve *well-understood, routine, conventional activity* previously engaged in by researchers in the field."); *id.* at 79 ("Thus, this step tells doctors to engage in *well-understood, routine, conventional activity* previously engaged in by scientists who work in the field."); *id.* at 82 ("These instructions add nothing specific to the laws of nature other than what is *well-understood, routine, conventional activity*, previously engaged in by those in the field."). Although *Berkheimer* may have included "and," the Supreme Court never has. Nor has any court adopted Innovation's argument that *Berkheimer* creates a three-part test. This Court declines to be the first.

Thus, the Court only considers whether there was sufficient evidence to support the jury's finding that the elements of the asserted claims involved nothing more than that which is "well-understood, routine, conventional activity" as of the priority date. *Mayo*, 566 U.S. at 73, 79, 82 (2012). The Court examines claim 22 of the '983 patent, which is representative. Doing so, the Court finds the jury's verdict is supported by expert testimony and the inventors' admissions on what they did not invent.

Claim 22 recites "[a] *wireless HUB system* for managing information communications comprising an input interface configured to receive a *wireless signal* though a *wireless communication network*" and "a network interface configured to provide a communication through a *network communication channel*." (Dkt. #908 at p. 67 (emphasis added)). Trial testimony

established that the named inventors did not invent these elements and that they were existing, conventional technologies (*See* Dkt. #878 at 162:15-163:17 (Dr. Wong's testimony that he did not invent WiFi, cellular technology, wireless networking, wireless interfaces); Dkt. #870 at 19:12-19, 20:13-23, 28:16-18, 29:11-14 (Mr. McAlexander's testimony that Anne Wong did not invent WiFi, WiFi computer chips or circuits, new wireless protocols, WiFi antennas, the Internet, WiFi routers); Dkt. #870 at 19:1-20:23 (Mr. McAlexander's testimony that WiFi, streaming, HDMI, and WiFi routers are conventional); Dkt. #879 at 83:17-23, 96:21-98:12, 106:12-114:12 (Dr. Johnson's testimony that wireless local area networks and wireless hubs for smart home automation systems were well-known and conventional)).

Claim 22 further recites that the "wireless HUB system" comprises "a decoder" and "wherein the wireless HUB system is configured to perform a *conversion of the wireless signal* to accommodate production of a corresponding information content, the wireless signal comprising a *compressed signal*, the *conversion* comprising *decompressing the compressed signal*" and "wherein the *decoder* is configured to *decompress the compressed signal*." (Dkt. #908 at p. 67). Trial testimony established that the named inventors did not invent these elements and that they were existing, conventional technologies (*See* Dkt. #878 at 162:24-164-21 (Dr. Wong's testimony that he did not invent signal compression, signal decompression, encoding or decoding methods, or HDMI); Dkt. #870 at 27:19-30:9 (Mr. McAlexander's testimony that Wong did not invent video compression technology, codecs, compression algorithms, decompression, or HDMI); Dkt. #879 at 83:23-84:7, 99:23-104:24 (Dr. Johnson's testimony that video conversion, video compression, decompression, and encoding aspects of the claim were all well-known and conventional in August 2006); Dkt. #870 at 25:11-30:12 (Mr. McAlexander's testimony that various codecs and compression technology in patents were conventional and well-understood)).

Claim 22 further recites that "wherein the wireless HUB system is further configured to communicate, through the network communication channel, information for managing an *item status of an item* in connection with a *short range wireless communication* regarding an *updated status of the item*" and "wherein the network communication channel is separate from a *wireless channel* for *short range wireless communication*." (Dkt #908 at p. 67). Trial testimony established that the named inventors did not invent these conventional short-range wireless communication channels like Zigbee or Bluetooth (*See* Dkt. #878 at 162:22-25, 164:13-19 (Dr. Wong did not invent ZigBee, Bluetooth, or short-range wireless communication)). Testimony also established that short-range wireless communication channels and sensors for detecting and communicating an updated status of an item were well-known, routine, conventional as of the priority date (*See* Dkt. #879 at 83:17-23, 86:17-89:24, 90:3-99:21, 98:13-99:11 (Dr. Johnson's testimony that these elements were well-known and conventional); Dkt. #870 (Mr. McAlexander's testimony that ZigBee is an industry standard for home automation wireless communication)).

Finally, trial testimony established that ordering or combining the elements recited by claim 22 was also well-understood, routine, conventional (*See* Dkt. #879 at 104:25-106:11(Dr. Johnson's testimony that combining different aspects of home automation with video compression was commonplace and well-known at the time), 115:7-117:14 (Dr. Johnson's testimony that item status updates, wireless hubs, wireless communications, short-range communications, and video compression and decompression either by themselves or in combination were well-known and conventional)). This established claim 22 as well-understood, routine, conventional activity as of the effective filing date.

For similar reasons, this evidence supports the jury's findings for the remaining claims. These other claims consist of minor variations and combinations of the same conventional

elements discussed above. Innovation's expert testified that the asserted claims have only minor differences (Dkt. #869 at 20:19-21:21). Although Innovation argues that Amazon must prove the claims are well-known "on a claim-by-claim, element-by-element basis," Innovation does not cite supporting caselaw (*See* Dkt. #908 at p. 30). Still, at the conclusion of his testimony, Dr. Johnson testified that "the individual elements of each of the asserted claims [are] only using and talking about well-understood, conventional, routine technology" and "the combination of those elements as they exist in the asserted claims . . . each element continues to perform only its well-known, conventional, well-understood function." (Dkt. #879 at 116:23-117:4).[5] The Court finds that the record supports the jury's finding.

## III. Infringement

Innovation asks the Court to enter judgment as a matter of law that the asserted claims were infringed. To prevail, Innovation must establish that every single claim limitation is present. *See* 2 Annotated Patent Digest (Matthews) § 11:4 Noninfringement (Mar. 2021). If substantial evidence supports Amazon's noninfringement arguments as to at least one element of each asserted claim, then the verdict stands. *See i4i*, 598 F.3d at 849.

Innovation argues its infringement case was fully supported and that Amazon's noninfringement case was flawed because: (1) there was no dispute that the accused products constituted a wireless hub; (2) Dr. Johnson testified that some claims require two interfaces; and (3) Dr. Johnson testified that a communication relating to a past event was required for infringement.

---

[5] Innovation objected to a follow-up question about claim 22 of the '983 patent as outside the scope of Dr. Johnson's report (Dkt. #879 at 117:11-21). The Court sustained the objection. Dr. Johnson's preceding testimony was not objected to and it was not struck.

This is insufficient to overturn the verdict. First, it was disputed whether the accused products served as a hub. Mr. McAlexander testified that each accused product is a hub (Dkt. #884 at 90:19-91:5). Dr. Johnson testified to the opposite, stating that "the Echo is not a wireless hub because it only interfaces to your WiFi router. Your WiFi router is a wireless hub, but not the Echo." (Dkt. #880 at 27:23-28:1); *see* (Dkt. #880 at 6:25-7:10 (testifying that the Fire Stick does not act as a wireless hub); 19:6-19 ("This morning I explained why the Fire TV cannot be a hub.")). Innovation points to portions of Dr. Johnson's testimony to show that Dr. Johnson agrees the Echo products are hubs:

> Q:      This is a summary. And you don't dispute that the Echo Plus 1, Echo Plus 2, and Echo Show 2 are hubs under your definition; is that right?
>
> A:      Each contain a ZigBee hub, yes.

(Dkt. #881 at 8:15-18). But Dr. Johnson immediately clarified that each Echo product "has those wireless capabilities, but it does not make it a hub." (Dkt. #881 at 8:19-23). This comports with his earlier testimony that "[t]he ZigBee to ZigBee communication is a wireless hub, but the WiFi to ZigBee or ZigBee to WiFi are not connected." (Dkt. #880 at 28:8-14). There was thus a dispute as to whether the accused products served as a hub.

Second, the Court already clarified that experts could opine to the ordinary meaning of claims that were either not construed at all, or construed to their plain meaning (Dkt. #812 at pp. 2-3). It was thus proper for Dr. Johnson to opine that some claims required two interfaces. And third, Dr. Johnson did not violate the claim construction order by testifying that there is no infringement because the accused products do not communicate an updated status. *See GREE, Inc. v. Supercell Oy*, 2:19-cv-71-JRG-RSP, 2020 WL 3893697, at *1 (E.D. Tex. July 9, 2020) ("An opinion that a person of ordinary skill in the art ('POSITA') would find the accused product does not meet a claim limitation constitutes a non-infringement opinion, does not amount to claim

construction, and is properly presentable to the jury."). This was an appropriate noninfringement opinion.[6]

Ultimately, Innovation asks the Court to make its own credibility determinations and find in Innovation's favor. This would be improper. *See Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.*, 554 F.3d 1010, 1024 (Fed. Cir. 2009) (recognizing that "the Fifth Circuit has made clear that the jury is entitled to disbelieve a party's expert if it chooses"); *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-CV-00744-JRG, 2017 WL 3704760, at *7 (E.D. Tex. Aug. 28, 2017) ("It is not the court's role, and in fact it is improper, for the Court to second guess the credibility determinations of the jury."). The jury weighed the competing evidence and evaluated the credibility of Mr. McAlexander and Dr. Johnson. In weighing the conflicting testimony and the respective credibility of the witnesses, the jury agreed with Amazon. The Court need not recount and rehash additional testimony in support of the verdict, of which there are ample amounts. (*See, generally*, Dkt. #939 at pp. 18-24). The jury's verdict is well supported by the record evidence. Judgment as a matter of law is inappropriate.

## IV.    Testimony of Timothy C. Shriver on HAL2000 System

Innovation argues the Court erred in permitting Timothy C. Shriver to testify about his experiences with the HAL2000 System. Mr. Shriver was the founder and CEO of Home Automated Living. He also designed and wrote code for the HAL2000 software and supported customers in configuring their home automation systems (Dkt. #879 at 26:3-28:7, 44:14-16, 55:16-23).

---

[6] On reply, Innovation argues that even if Amazon's "updated status" argument is correct, Amazon still infringes (*See* Dkt. #949 at p. 16). But "[f]ailure to raise an argument in a motion waives the argument; raising it for the first time in a reply memorandum is too late." *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 811 (E.D. Tex. 2014) (collecting cases). Even if the argument had been timely raised, it would fail. The Ring doorbell was not an accused product, Mr. McAlexander did not address it in his report, and the jury did not have to credit his testimony (*See* Dkt. #939 at p. 21-22 n. 9). *See GREE*, 2:19-cv-71-JRG-RSP, 2020 WL 3893697, at *1.

During discovery, Mr. Shriver helped set up a HAL system for Dr. Johnson's inspection (Dkt. #879 at 51:17-52:12). Mr. Shriver personally collected the HAL system components and documentation and confirmed they all existed before 2006 (Dkt. #879 at 51:20-52:1). These parts were then configured into a particular setup. Dr. Johnson inspected that configuration and opined that the HAL system "was, in fact, made and sold prior to August of 2006." (Dkt. #880 at 67:9-69:7, 69:22-70:4, 73:2-10, 74:23-75:1; 126:14-127:10). Dr. Johnson mapped the asserted claims and opined that the HAL system invalidates the asserted claims.

Innovation argues Mr. Shriver lacked personal knowledge about the existence of any matching HAL system existing pre-2006. *See* FED. R. EVID. 602. Mr. Shriver acknowledged that he did not know if this exact configuration existed pre-2006, but "the odds of it, it's probably happened." (Dkt. #879 at 54:2-7). He then confirmed that the individual parts were available at that time and they could have been configured into the system Dr. Johnson examined (Dkt. #879 at 53-56). As the Court ruled:

> Plaintiff points out that Mr. Shriver is less than certain as to whether the HAL system existed in the exact configuration necessary. But the fact that Mr. Shriver cast doubt on whether his company produced a HAL system with the relevant specifications for this case is a fact issue for the jury.

(Docket entry dated August 30, 2020). The Court determined there was sufficient evidence to support a finding that Mr. Shriver had personal knowledge of HAL systems, which components were available pre-2006, which configurations were possible pre-2006, and customer preferences and usages pre-2006. Mr. Shriver relied on this personal knowledge for his testimony. It was therefore proper under Rule 602.

Next, Innovation argues Mr. Shriver's testimony was improper expert testimony under Rules 701 and 702. As the Court ruled:

> Mr. Shriver founded a small company in the 1990s that produced these HAL systems. Mr. Shriver is testifying as to his personal knowledge about whether his company did a certain

thing or whether his companys main product could perform a certain task. This is similar to the testimony that we heard from Fred Torok. Mr. Shriver's testimony seems more akin to Mr. Torok's testimony than to Mr. McAlexander's testimony.

(Docket entry dated August 30, 2020). Mr. Shriver's testimony was proper because he testified as to his personal knowledge of his own company's activities. His testimony on whether a customer "could have" or "would have" assembled the specific configuration was based on his experiences assisting customers with configuring their systems. Although Mr. Shriver has technical expertise, he did not testify as an expert because he was merely "describ[ing] the products he has built." *Hynix Semiconductor Inc. v. Rambus Inc.*, C-00-20905 RMW, 2009 WL 230039, at *10 (N.D. Cal. Jan. 27, 2009), aff'd, 645 F.3d 1336 (Fed. Cir. 2011) ("the court does not believe it is 'expert' testimony . . . for an engineer to describe the products he has built . . . These examples clearly draw on 'technical' knowledge, yet they are not expert testimony."). It was therefore proper lay testimony.

Next, Innovation argues Mr. Shriver's testimony violated Rule 403 because he lacked personal knowledge and gave an improper expert opinion. As explained, Mr. Shriver's testimony was proper because he had personal knowledge and gave a lay opinion. As such, his testimony did not violate Rule 403.

Finally, Innovation argues the Court erroneously permitted Amazon to play demonstrative videos of the HAL system for the jury. In support, Innovation "incorporates by reference all of its arguments why the videos should not have been played for the jury." (Dkt. #908 at p. 40). The Court previously considered and rejected these arguments (Dkt. #880 at 85:16-86:2).

## V. Reconsideration of the Named Defendants

Innovation asks the Court to reconsider its Order determining that final judgment should be entered in favor of only Amazon.com, Inc. and Amazon Web Services, Inc. Innovation merely incorporates its prior arguments to preserve the issue for appeal (*See* Dkt. #908 at pp. 40-41

(incorporating Dkt. #890 and Dkt. #893)).  The Court previously considered and rejected these arguments (Dkt. #896 at pp. 5-7).

## VI.    Alternative Motion for New Trial

Alternatively, Innovation moves for a new trial.  For the above reasons, the Court declines. The trial was not unfair, the verdict was not against the great weight of the evidence, and no prejudicial error was committed.  *See Smith,* 773 F.2d at 613.  As discussed, the jury had evidence to find against Innovation.  The Court denies Innovation's motion for a new trial.

## CONCLUSION

It is therefore **ORDERED** that Innovation's Rule 50(b) Motion for Judgment as a Matter of Law, or Alternatively, Rule 59(a) Motion for a New Trial (Dkt. #908) is hereby **DENIED**.

**SIGNED this 24th day of May, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE